IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, <br><br> Defendants. | Case No: 24-cv-01108 |

**MOTION TO DISMISS**

Defendants, JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, and CANDICE ROSE, through their undersigned counsel, hereby moves to dismiss or stay Plaintiff's Complaint pursuant to the *Colorado River* Abstention Doctrine (12(b)(1)) and 12(b)(6).

**I.    INTRODUCTION**

This dispute has been pending in Circuit Court of Cook County since May 12, 2023. Karum[1] does not want to litigate in that court since an adverse ruling last summer and has since tried to remove the action, sought *ex parte* relief in California, and now filed this action all to escape Cook County. The instant complaint is a very loud and public denial of the allegations against Karum in the pending Cook County case and reiterates, verbatim, the allegations stated as an affirmative defense in Cook County. Karum cannot forum shop and a Federal District Court should not be troubled with this fatuous case. This action is the poster child for abstention.

---

[1] Karum is a manager of each Plaintiff limited liability company.

II.      **STATMENT OF MATERIAL FACTS**

On May 12, 2023, Ancel initiated a Complaint in Cook County against Karum. (Original Complaint Attached hereto as Exhibit "A" and incorporated herein hereinafter "Cook County Action). The Complaint alleged that Karum made numerous false statements about Ancel arising from their production of *The Unseen*. On August 13, 2023, Karum moved to dismiss the Complaint including an affirmative defense that the statements she made were true and included a prolix affidavit laying out the exact same facts alleged here. (Motion and Exhibits attached hereto as Exhibit "B") On October 10, 2023, the Cook County Court denied the affirmative defense without prejudice. (Order attached hereto as Exhibit "C").

On October 16, 2023, Ancel filed an Amended Complaint expanding his claims arising from this same corpus of facts to include claims for malicious prosecution arising from Karum's forum shopping an obtaining an *ex parte* order in California and Tortious Interference. (Amended Complaint attached hereto as Exhibit "D").

On November 9, 2023, Karum's co-defendant, represented by the same counsel, oddly removed the Cook County Action to this Court. (*Ancel v. Karum et al,* 1:23-cv-15834, Dckt #1) There was no valid basis for removal and after a genial email exchange pointing out the deficiency, Karum's counsel withdrew the case on November 22, 2023. (*Ancel v. Karum et al,* 1:23-cv-15834, Dckt #4)

After the jurisdiction dance Karum seemed to calm down and disappeared for a while until filing this action on February 8, 2024. Meanwhile, Karum ignored the Cook County Action and Ancel had to file a motion for Default to stimulate a response in Cook County on February 13, 2023.

The instant action is specifically plead as retaliation for the Cook County Action. The instant Complaint alleges the following express references to the Cook County Action including:

a. On information and belief, he responded by telling anyone who would listen that Karum was "dangerous," falsely telling people that she baselessly had accused him of sexual assault (which she did not). (Cmplt ¶ 105)

b. Ancel also commenced a suit against Karum sounding in False Light Invasion of Privacy and Defamation, specifically repeating the allegation that Karum wrongly accused him of sexual assault. (Cmplt ¶ 106)

c. Ancel began to falsely represent across social media that there was a class action suit against Karum and/or LFP in the works, in an effort to mislead people into believing that Karum had a history of making false accusations and encouraging people to spread the word about it. (Cmplt ¶ 109)

d. At least one freelance engineer with which LFP had worked productively and without incident in the past, cut ties with LFP specifically citing what they heard (ostensibly by Ancel) was a lawsuit against LFP, when in fact, LFP had not been named in any suit, clearly suggesting that he had been told about a pending suit rather than having actually seen the complaint. (Cmplt ¶ 126)

e. Similarly, at least one prospective partner in a project, with which discussions regarding investment and assistance with distributions had substantially advanced, precipitously ended negotiations citing to pending litigation "against the company," again suggesting that it had been told about a pending suit rather than having actually seen any complaint. (Cmplt ¶ 128)

f. And Ancel's false statements published to numerous third parties that Karum had wrongfully accused him of sexual assault, made before and after he filed his suit, were defamatory per se. (Cmplt. ¶ 138)

g. As set forth above, Ancel materially breached the NDA, both through social media, and by filing an unsealed and unredacted complaint that gratuitously discuss the project and disparages parties associated therewith, which he, in turn, widely circulated via social media and for which he actively sought publicity. (Cmplt. 149)

h. Exhibit "E" to the Complaint discusses the Cook County Action and includes links to the Complaint and press coverage on the Cook County Action.

The allegations in this action, if proven true, directly contradict Ancel's allegations in the Cook County Action. If Ancel prevails in Cook County, Karum could be collaterally estopped here. The instant Complaint copies an affidavit (Exhibit "B") from a failed defense employed in the state Court Action verbatim by way of example are several allegations copied from the failed affidavit:

3

a. "Shortly after they began working together, Ancel began to confide in Karum about unhappiness in his marriage, and about extra-marital affairs." (Cmplt. ¶ 65) *compare* "Shortly after we began working together, Jordan started to confide in me about his marriage, and then started speaking openly to me about his extra-marital affairs". (Ex. "B" Aff. ¶ 8)

b. "While surprised that Ancel would only discuss personal and sensitive topics like his marriage and infidelity with anyone with whom he was supposed to have a professional relationship, Karum was not bothered by it at first, as she viewed it as a sign that Ancel trusted her enough to confide in her. Thus, Karum tried to be understanding and sympathetic when Ancel confided in her." (Cmplt. ¶ 66) *Compare* "Since our relationship was primarily professional, I was quite surprised that Jordan would discuss his marriage and infidelity with me. I wasn't bothered by it at first, as I initially viewed it as a sign that he really trusted me, and so I tried to be sympathetic about the fact that he seemed unhappy in his marriage." (Ex. "B" Aff. ¶ 8)

c. "During pre-production and thereafter, however, Ancel's continued talk about his affairs became almost boastful in nature and thus increasingly off-putting. Karum felt particularly uneasy when Ancel told her about following a woman to a weekend yoga retreat in the hopes of rekindling an amorous relationship with her, which Karum considered "creepy" and "stalker-like."" (Cmplt. ¶ 67) *compare* "But eventually his talk about affairs became commonplace, and off-putting. When he started to tell me that he had followed some woman to a weekend yoga retreat in the hopes of developing an amorous relationship with her, I felt like that was "stalker-like" and politely asked him to refrain from discussing his sex life with me any further." (Ex "B" Aff. ¶ 9)

d. "Jordan also told Karum that he was "really attracted" to another young female staff member." (Cmplt. ¶ 71) *compare* Jordan also told me that me that he was "really attracted" to another young female staff member. (Ex. "B" Aff. ¶ 10)

Having lost her "truth" defense in Cook County as asserted in a motion to dismiss, Karum is seeking a second opinion by alleging the same facts verbatim that the Cook County Judge considered as a defense in the Cook County Action. The Cook County Action continues, and the next date is a clerk status on a fully briefed Motion to Dismiss set for April 19, 2024.

4

### III. ARGUMENT

#### A. THE COURT SHOULD DISMISS THIS CASE UNDER THE *COLORADO RIVER* ABSTENTION DOCTRINE.

The Court should abstain from exercising jurisdiction pursuant to the *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976). A motion pursuant to Rule 12(b)(1) is an appropriate avenue for raising a Colorado River abstention issue. *Beres v. Village of Huntley*, 824 F. Supp. 763, 766 (N.D. Ill. 1992). The party asserting jurisdiction (in this case, Karum) bears the burden of proof that jurisdiction is satisfied. *Closer v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009).

Under the *Colorado River* doctrine, a federal court "may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. Friedman*, 215 F. Supp. 3d 642, 648 (N.D. Ill. 2016) *quoting Colorado River*, 424 U.S. at 818. Application of the doctrine requires a two-part inquiry. First, a court must determine "whether the state and federal court actions are parallel." *Freed*, 215 F. Supp. 3d at 648. If the suits are parallel, "the court then must weigh ten non-exclusive factors to determine whether abstention is proper." *Id*. In this case, there is no question the two suits are parallel, and nine of the ten factors weigh in favor of abstention.

##### 1. The Federal and State Lawsuits Are Parallel.

Parallelism exists when "there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *Freed*, 215 F. Supp. 3d at 648 (citing *AAR Int'l[p*, 250 F.3d at 518). The lawsuits derive from and will be decided by exactly the same set of facts and legal issues involving the same parties. Indeed, adjudication of the claims in the Cook

5

County lawsuit would undoubtedly dispose of all the claims presented in this lawsuit based on the same statements.

Similarly, the *Freed* court also looked to "principles of *res judicata*" in determining that an adverse determination in state court "almost certainly would provide [the defendant] an immediate victory in [the federal] case." *Id*. at 650. The court further noted the possibility that while a state court ruling involving one party might not apply to a different party in the federal lawsuit, "parallelism under *Colorado River* requires only that there be 'a substantial likelihood,' not a certainty," that all claims will be disposed. *Id*. Further, suits "need not be identical to be parallel." *Freed*, 215 F. Supp. 3d at 648 (citing *Adkins v. VIM Recycling, Inc*., 644 F.3d 483, 498–99 (7th Cir. 2011) ("[F]or Colorado River purposes ... [p]recisely formal symmetry is unnecessary."); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). Notably, the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel. *AAR Int'l, Inc. v. Nimelias Enterprises S.A*., 250 F.3d 510, 518 (7th Cir. 2001). As the Seventh Circuit has stated: "[T]he parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action." *Clark v. Lacy,* 376 F.3d 682, 686–87 (7th Cir.2004). To be sufficiently similar it is not necessary that there be "formal symmetry between the two actions." *Id*. Rather, there should be a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.*

The addition of several limited liability companies owned by the parties and Rose does not render the cases not parallel. *See Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990) (finding cases parallel where plaintiff named additional defendants in state action). In Clark the Seventh Circuit reasoned that the addition of four parties did not render the cases not

parallel. *Clark v. Lacy*, 376 F.3d 682, 686. The Court explained, "Again, the requirement is that the parties be *substantially* the same--not completely identical. When we focus on the parties' litigation interests in these two lawsuits, it is clear that the addition of these four defendants has little impact on the overall similarity of the disputes. As with the other defendants, the four additional defendants have been sued collectively in their capacity as Sears officers and no individualized allegations have been made against any of them. Their inclusion in the federal proceeding does not alter the case's central issue (the same one presented by the *Brewster* action), i.e., whether Sears officers and/or directors breached their fiduciary duties to Sears in connection with Sears' entry into the MasterCard market." The same is true here where the gravamen of the dispute is that Karum and Ancel say mean things about each other. Whether Ancel allegedly employed Rose as his mouthpiece or whichever real or imaginary people Karum employed does not change the analysis of what this case is about.

    2.    *Nine of the Ten Colorado River Factors Weigh in Favor of Abstention.*

Evaluation of the factors "does not rest upon a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Rodriguez v. Ramsey*, No. 03 CV 3930, 2004 WL 2793150, at *2 (N.D. Ill. Jan. 28, 2004) (finding abstention proper where "several of these factors weigh against abstention."). In this case, every one of the applicable factors weighs in favor of abstention:

    1)    **whether the state has assumed jurisdiction over property;**

There is no property at issue in the present matter, so this factor does not apply.

    2)    **the inconvenience of the federal forum**;

Cook County is undoubtedly the more convenient forum as the two parties have been litigating a parallel case there since May 2023. The case is currently still pending.

7

3) **the desirability of avoiding piecemeal litigation**;

Litigating both actions would result in piecemeal litigation as both lawsuits turn on the same facts, "rais[ing] the prospect of inconsistent rulings." *Freed*, 215 F. Supp. 3d at 656. In both cases the truth of the statements made by Ancel and Karum are at issue. There is a significant risk of different fact finders reaching different conclusions when weighing credibility.

4) **the order in which jurisdiction was obtained by the concurrent forums**;

The Cook County lawsuit was filed in May 2023 and Karum filed her Motion reciting the same facts in defense in August 2023. The instant action was initiated in February 2024.

5) **the source of governing law, state or federal**;

All of the claims are governed by Illinois state law, not federal law. There are no federal statutes or laws that apply to this case.

6) **the adequacy of state-court action to protect the federal plaintiff's rights**;

Because all of the claims are state law claims, Cook County could grant Plaintiff all the same relief as this Court.

7) **the relative progress of state and federal proceedings**;

The Cook County action has been actively litigated for months, beginning in May, 2023, while this action just began.

8) **the presence or absence of concurrent jurisdiction;**

All of the claims could be brought in Cook County Circuit Court.

9) **the availability of removal;**

The claims in the Cook County lawsuit are non-removable as pled and no federal question otherwise exists, thus favoring abstention. *Freed,* 215 F. Supp. 3d at 657 (factor recognizes a policy

against a federal court's hearing claims that are closely related to non-removable state proceedings). Karum has already tried and failed to remove.

**10) the vexatious or contrived nature of the federal claim.**

Federal courts have found this factor favors abstention where, as here, Karum could have brought every claim in the original state court proceeding. *Freed*, 215 F. Supp. 3d at 657; *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) ("we see no reason why all claims and all parties could not have been, and still could not be, part of one suit). This action is the answer, affirmative defense, and counterclaim for the Cook County Action. It can be filed there in May in the same case. The additional parties are LLCs who's members are the parties to the Cook County action plus poor Mr. Rose who is dragged along for the ride now. *See* (Cmplt. ¶¶ 16, 5, 6, 8, and 9)

As the *Freed* court noted when it found the same factors weighing in favor of abstention: "that state of affairs more than suffices to support a finding that Colorado River abstention pending resolution of the state suits is warranted." *Freed*, 215 F. Supp. 3d at 658. As in *Freed*, the federal lawsuit serves as an overt attempt at maintaining redundant lawsuits in hopes of wasting resources and potentially picking between the more favorable forum. Accordingly, Defendant requests that the Court dismiss Plaintiff's Complaint.

**B. THE COMPLAINT VIOLATES THE REQUIREMENT IN RULE 8 THAT THE PLEADER MAKE A SHORT AND PLAIN STATEMENT.**

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The primary purpose of [Fed. R. Civ. P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). "[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged

wrongful conduct, dismissal is an appropriate remedy." *Id*. at 798. If neither the adverse party nor the court can make out the essence of the claims, "dismissal of a complaint on the ground that it is unintelligible is unexceptionable." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

That being said, "[a] district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter." *Id*. (internal quotation marks omitted). Rather, courts have found complaints wanting when they present a "vague, confusing, and conclusory articulation of the factual and legal basis for the claim and [take] a general 'kitchen sink' approach to pleading the case." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011). Such complaints frustrate Rule 8's objective of "fram[ing] the issues and provid[ing] the basis for informed pretrial proceedings." *Id*. at 797 (internal brackets omitted). "[J]udges and adverse parties need not try to fish a gold coin from a bucket of mud," *Garst*, 328 F.3d at 378; dismissal is the appropriate remedy for district courts presented with "a bucket of mud."

Similar to the court's analysis in *Garst*, neither this Court nor Defendants should be required to fish a gold coin out of the mess that Plaintiff has created. The twenty pages of factual allegations contain entirely irrelevant allegations that are merely intended to create a press release for Karum and exercise her still boiling anger. In the unlikely event this case remains in this Court, Plaintiff should be required to replead and refine her Complaint rather than being allowed to maintain the current muddy mess with which it has presented the Court.

C. **THE COMPLAINT FAILS TO STATE PLAUSIBLE CLAIMS THAT SHOULD BE DISMISSED UNDER RULE 12(b)(6).**

a. **Legal Standard**

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts

10

in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament,* 877 F.3d 272, 275 (7th Cir. 2017) (*quoting Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth*., 828 F.3d 597, 599 (7th Cir. 2016) (*quoting EEOC v. Concentra Health Serv*s., 496 F.3d 773, 776 (7th Cir. 2007)). A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007).

### b.  Karum Fails to State a Claim for Tortious Interference

"A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 555). That is exactly what Karum has attempted here with fact soup copied from a prior affdiavit followed by some only "labels and conclusions".

To state a claim for tortious interference with prospective economic advantage under Illinois law, Plaintiff must allege (1) its reasonable expectancy of entering into a valid business relationship; (2) Defendants knowledge of the expectancy; (3) Defendants intentional and unjustifiable interference that induced or caused a breach or termination of the expectancy; and (4) damage to Plaintiff from Defendants' conduct. *F:A J Kikson v. Underwriters Lab.,* 492 F.3d 794, 800 (7th Cir. 2007).

To establish the intent element and therefore survive a motion to dismiss, Karum must first allege that Defendants "directed wrongful conduct at a third party business prospect to induce the third party to end its relationship" with Karum. *Sunny Handicraft Ltd. v. Envision This!, LLC*, No. 14-CV-1512, 2015 WL 231108, at \*8 (N.D. Ill. Jan. 16, 2015). Second, Karum must allege "facts

which demonstrate that [Ancel] acted with the purpose of injuring [Karum] expectancies." *Sunny Handicraft*, 2015 WL 231108 at *8 (*citing F:A J Kikson*, 492 F.3d at 800). These necessary allegations are absent from the Complaint. Karum's Complaint contains nothing more than conclusory allegations that "Ancel and the Doe Defendants, through their smear campaign and direct acts of interference described above, caused the termination of those contracts, and prevented the prospective contracts and relationships from being solidified." (Cmplt ¶ 166). The "smear campaign" alleged is the Cook County Action! It lacks the bare-minimum pleading for damages for this tort: "some specific facts demonstrating that it was harmed" by Ancel. *ATC Healthcare Servs. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 956 (N.D. Ill. 2016). Put another way, Karum must present some plausible facts that suggest "the behavior of present or prospective customers was actually altered as a result of [Ancel's] allegedly interfering conduct." *Celex Grp., Inc. v. Exec. Gallery, Inc.,* 877 F. Supp. 1114, 1126 (N.D. Ill. 1995).

In Illinois a private party to litigation is "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Bedin v. Nw. Mem'l Hosp.*, 2021 IL App (1st) 190723, P 39, 187 N.E.3d 739 (quoting Restatement (Second) of Torts § 586 (1977)). Although the privilege applies to a narrow class of communications, the defamatory matter in the proposed or pending proceeding need only have "some relation to the proceeding." *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 742 N.E.2d 425, 438 (Ill. App. Ct. 2000). Thus, given that the statements need only have some relation to the proceeding and courts resolve all doubts in favor of pertinency. *Atturo Tire Corp. v. Toyo Tire Corp.*, 2022 U.S. Dist. LEXIS 84167, *7. Accordingly, since nearly

12

all the statements giving rise to this claim are in the Cook County Action or relate to it the statements are privileged and the claim fails.

### c. Karum Fails to State a Claim for Civil Conspiracy

While a civil conspiracy is based upon intentional activity, the element of intent is satisfied when a defendant knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner. *See Illinois Farmers Insurance Co. v. Preston,* 153 Ill. App. 3d 644, 505 N.E.2d 1343 (1987). There is no such thing as accidental, inadvertent, or negligent participation in a conspiracy. *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988). A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy. Restatement (Second) of Torts § 876, Comment c on Clause (a) (1977).) A defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly to do its part to further those objectives, however, is liable as a conspirator. *Jones*, 856 F.2d at 993.

Before liability for conspiracy may arise, "some act must be committed by one of the parties in pursuance of the agreement, which is itself a tort. Where means are employed, or purposes are accomplished, which are themselves tortious, the conspirators who have not acted but have promoted the act will be held liable". *Weber v. Cueto*, 253 Ill. App. 3d 509, 191 Ill. Dec. 593, 624 N.E.2d 442 (1993). Conspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails. *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432, 735 N.E.2d 649 (2000). The civil

conspiracy claim fails because there are no facts pled supporting any viable tort theory as discussed above.

"In order to state a claim for civil conspiracy, a plaintiff must plead a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atlantic Plant Maintenance, Inc*., 182 Ill. 2d 12, 23-24, 694 N.E.2d 565 (1998). It should be noted, however, that "[t]he mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Id.* at 23. This is exactly what Karum did here. There is no meat on the bones of her civil conspiracy claim. Instead, it is well established that, to allege a conspiracy, "the complaint must set forth with particularity the facts and circumstances constituting the alleged conspiracy." *Heying v. Simonaitis*, 126 Ill. App. 3d 157, 163, 466 N.E.2d 1137 (1984) (citing *Owens v. Green*, 400 Ill. 380, 393, 81 N.E.2d 149 (1948)). There are no such facts pled here and at least Rose should be dismissed with prejudice without leave to replead.

### d. Karum Fails to State a Claim for Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). No facts are alleged to satisfy these elements.

A plaintiff who complains "that a defendant's actions caused them simply to become annoyed, frustrated, stressful, distressed, embarrassed, humiliated, or nervous" fail to state a

claim. *Honaker v. Smith*, 256 F.3d 477, 497 (7th Cir. 2001). Karum is very angry. That's clear but her rage does not amount to emotional distress sufficient to support a claim.

## CONCLUSION

WHEREFORE, Defendants pray for an order dismissing Plaintiff's Complaint and awarding such other and further relief as the Court deems just.

Dated April 14, 2024                    Respectfully submitted,

**JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, and CANDICE ROSE,**
Defendants

By: *Alexander Loftus*

One of Their Attorneys

Alexander Loftus, Esq.
David A. Eisenberg, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com
david@loftusandeisenberg.com

15

**<u>CERTIFICATE OF SERVICE</u>**

I, Alexander N. Loftus, an attorney, hereby certify that on April 14, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing and via U.S. mail to:

George J. Spathis, Esq.
Levelfeld Pearlstein, LLC
120 S. Riverside Plaza, Suite 1800
Chicago, IL 60606
Email: gspathis@lplegal.com

                                             /s/ *Alexander N. Loftus*