**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | Case No. 1:24-cv-01108 |
| vs. | ) ) | Hon. Mag. Judge M. David Weisman |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, | ) ) ) ) ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
WITH RESPECT TO THE MULTIPLE VOLUMINOUS SETS OF
INTERROGATORIES SERVED UPON THEM BY DEFENDANTS**

Plaintiffs/Counter-Defendants, Lakefront Pictures, LLC ("Lakefront"), Jennifer Karum ("Karum") and The Curse, LLC ("TCL"), by their counsel, move this Honorable Court for the Entry of a Protective Order to redress the attempted abuse of the rules of orderly discovery by Defendants/Counter-Plaintiffs Jordan Ancel ("Ancel"), Jordan Ancel International, LLC ("Ancel International"), Rock City Road Films LLC ("Rock City"), and Candice Rose ("Rose"), namely the service of multiple sets of voluminous interrogatories in derogation of Federal Rule of Civil Procedure 33. In support of its Motion, the Plaintiffs state as follows:

**THE SUBJECT DISCOVERY AT ISSUE**

1. By email sent well after the close of business on December 9, 2025, counsel for the Defendants/Counter-Plaintiffs served the undersigned with what counsel himself fittingly called "a pile of discovery."

2. Within that "pile of discovery" were two separate requests for productions (one served by the Ancel, Ancel International and Rock City (collectively the "Ancel Defendants"), and

one served by Rose. Collectively, the two requests for production served by the Ancel Defendants and Rose posited a total of ***two hundred and sixty-six (266)*** separate production requests. Because F.R.C.P. 34 does not limit the number of permissible requests, Plaintiffs did not object to the sheer volume of requests and served timely response and objections to both.

3.      In addition to the two voluminous sets of requests for production, however, the same Defendants also served three (3) separate sets of interrogatories--Ancel served one set of interrogatories, Ancel International and Rock City also served a separate set of interrogatories, and for good measure, Rose filed her own set of separate interrogatories. Copies of the three sets of interrogatories are submitted herewith as **<u>Group Exhibit A</u>**.

4.      Notably, each of the three sets of interrogatories contain twenty-five separate enumerated interrogatories, and most of the interrogatories contain three (3) to six (6) embedded discrete parenthetical parts. With "subparts,"[1] the number of interrogatories posited by the Defendants easily exceeds eighty (80) in number. At no time has any Defendant sought or obtained leave or consent to exceed the limits set forth in F.R.C.P. 33.

5.      Prior to the time that Plaintiff's responses to the Interrogatories were due, the undersigned contacted Defendants' counsel to object to the excessive number of interrogatories. Despite extensive discussions, and attempts to reach a compromise,[2] the parties failed to reach an

---

[1]   This is an exceedingly conservative tally, only treating as "subparts" the parentheticals that effectively expand a single interrogatory into multiple discrete requests with respect to a topic/event (rather than simply provide clarity as to the detail to be subsumed in the response). If each of the parenthetical parts of the seventy-five enumerated interrogatories were deemed a subpart, as that term is used in FRCP 33, there would be more than 200 interrogatories.

[2]   The undersigned proposed the following as a compromise as to the number of interrogatories to be served: (1) each *side* (not parties) would be permitted to serve 35 interrogatories, with an understanding that as long as the "subparts" are integrated and merely serve to guide the required detail for the response to a single discrete topic, they would only count as a single interrogatory; and (2) each side would retain the right to seek leave of court for permission to exceed the 35 limit (following receipt of initial responses).

accord as to how to proceed, except that they agreed that rather than simply having Plaintiffs respond to a limited number of interrogatories and object to the rest, Plaintiffs would instead move for a protective order on or before January 14, 2026, with each side reserving all rights. This timely Motion was the product of that limited accord.

6.     As set forth more fully below, Plaintiffs Motion for Protective Order should be granted, and Defendants should be limited—at least initially or without subsequent leave of Court—to twenty-five interrogatories.

## LEGAL ARGUMENT

7.     This Honorable Court is vested with broad discretion in deciding when and whether a protective order is appropriate and what degree of protection is required. *See Sonrai Sys., LLC v. Romano*, 2020 WL 3960441, *1 (N.D. Ill. July 13, 2020). Rule 26(c)(1) contemplates the issuance of a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" where good cause exists. *See* court. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). Whether by design or indifference, Defendants' aggressive take on Federal Rule 33 is unduly burdensome and merits relief.

8.     Rule 33(a)(1) permits "no more than 25 written interrogatories, including all discrete subparts." This includes not only subparts that the propounding party has separately numbered, but also those that are subsumed in the interrogatory without benefit of enumeration. *See Bell v. Woodward Governor Co*., 2005 WL 3829134, *2-3 & n. 2 (N.D. Ill. June 30, 2005) ("Plaintiffs' Interrogatory # 1 improperly seeks to combine twenty-one questions into one" despite lack of discretely labeled subparts).

9.     Where there are multiple defendants that are only nominally separate, Courts have appropriately treated them as a single party, thereby permitting them to propound *a single set* of

twenty-five (25) interrogatories pursuant to Rule 33(a)(1) rather than twenty-five (25) interrogatories *per defendant. See, e.g., American Counsil of Blind Metropolitan Chicago v. City of Chicago,* 2021 WL 5140475, *1 (N.D. of Ill. Nov. 4, 2021)("…where as here, separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories).

10.     Indeed, in *American Counsil of Blind Metropolitan Chicago,* this Court expressly embraced the rationale espoused by procedural scholars that where there are multiple aligned parties, "[t]he best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation." *Id.,* citing Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8B *Fed. Prac. & Proc. Civ.* § 2168.1 (3d ed.); *see also I*(").

11.     Other Courts are firmly in accord in limiting the number of interrogatories that aligned defendants are permitted to serve. *See* Stiles v. Walmart, Inc., 2020 WL 264420, at *4 (E.D. Cal. 2020); *Rahman v. Smith & Wollensky Rest. Grp., Inc.,* 2007 WL 1521117, at *8 n.7 (S.D.N.Y. 2007*)*(same)*; Beeman v. Anthem Prescription Mgmt., Inc.,* 2017 WL 5564535, at *3 (C.D. Cal. 2017)(same); *Gucci Am., Inc. v. Exclusive Imports Int'l,* 2002 WL 1870293, at *5 (S.D.N.Y. Aug. 13, 2002)("where, as here, the parties are acting in unison and are represented by the same counsel, they may be treated as one party for purposes of the interrogatory limits"); *Fair Housing Center of Central Indiana, Inc. v. Welton*, 2019 WL 2422594 (S.D. Ind. June 10, 2019)("The limitation on number of depositions ... speaks in terms of "sides" rather than parties. Because it frequently happens that a number of parties on the same side are represented by a single attorney and in that sense act in unison, this concept might be attractive in the interrogatory setting as well.").

12.     In this case the alignment between the Defendants is clear and compelling. For starters, Ancel is the sole (or at least majority) member of his companies, Ancel International and Rock City and the Counterclaims that they have collectively asserted tacitly admit that the alleged damage to Ancel's reputation (which Plaintiffs maintain was self-inflicted) has purportedly injured them collectively.  Ancel and his Companies must be treated as one.

13.     The unity of interest, however, extends further to include Rose.  The same counsel—Loftus & Eisenberg, Ltd.—has represented *all* of the Defendants, filing a single joint answer for all Defendants, as well as filing a single counterclaim for the Defendants generally. Indeed, *every* pleading filed by Loftus & Eisenberg, Ltd., has been filed in the name of *all* the Defendants/Counter-Plaintiffs.

14.     Perhaps even more telling is the manner in which the various Defendants have posited interrogatories that relate to claims asserted by another Defendant.  *See; e.g.* Ancel Interrogatory No. 17 relates entirely to a claim asserted by Rose; Ancel Entities' interrogatory Nos. 3, 13, and 15 related, in part, to claims by Ancel.  This reinforces the Defendants' aligned interests and coordination of discovery.

15.     Finally, the fact that Rose is positing any interrogatories relating to her counterclaims is perplexing, given the pendency of the fully briefed Motion to Dismiss the Counterclaims in their entirety, with prejudice.  While Plaintiffs are mindful that filing a motion to dismiss generally does not automatically operate to stay discovery, in this case, the Defendants' Response to the Motion to Dismiss does not contest (or even address) the arguments directed at Rose's counterclaims.  Quite the contrary, the Motion to Dismiss is effectively unopposed as it relates to Rose's counterclaims, mandating the dismissal of her counterclaims and rendering most of the interrogatories she has served moot.  *See, e.g., Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466

(7th Cir.2010)("Failure to respond to an argument [in a motion to dismiss]-as the [plaintiffs] have done here-results in waiver."); *Boogaard v. National Hockey League*, 891 F.3d 289, 295 (N.D. Ill. 2018)("a district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss.").  Under these circumstances, there is good cause for entry of a Protective Order.

WHEREFORE, for the reasons set forth above, Plaintiffs' Motion should be granted and the Court should enter a protective order effectively striking the interrogatories propounded by the Defendants, and limiting each side to twenty-five interrogatories (including subparts) unless otherwise authorized by the Court (or with the consent of the opposing party), and granting Plaintiffs such additional relief as it deems just and equitable.

RESPECTFULLY SUBMITTED,

**LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC**

By:    */s/ George J. Spathis*
       One of their Attorneys

George J. Spathis (ARDC #6204509)
LEVENFELD PEARLSTEIN, LLC
120 South Riverside Plaza, Suite 1800
Chicago, Illinois 60606
312.346.8380
gspathis@lplegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2026, I caused the foregoing pleading to be electronically filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants of record in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system on the following persons:

**1:24-cv-01108 Notice has been electronically mailed to:**

George J. Spathis      nbailey@lplegal.com, gspathis@lplegal.com, kpatton@lplegal.com, druiz@lplegal.com, ikropiewnicka@lplegal.com

David Alan Eisenberg      david@loftusandeisenberg.com

Alexander Nicholas Loftus      alex@loftusandeisenberg.com, alexander.nicholas.loftus@gmail.com

*George J. Spathis*

# GROUP EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 24-cv-01108 |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, | ) ) ) ) ) | |
| Defendants. | ) | |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, | ) ) ) ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) ) ) | |
| Counter-Defendants. | ) ) | |

## DEFENDANT JORDAN ANCEL'S FIRST SET OF

## INTERROGATORIES TO PLAINTIFFS

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant JORDAN ANCEL

("Defendant" or "Ancel") serves the following Interrogatories on Plaintiff LAKEFRONT

PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC ("Plaintiffs"). Each answer

must be made separately and fully, in writing and under oath, within thirty (30) days of service.

If you withhold information under any claim of privilege, furnish a privilege log that complies

with Rule 26(b)(5)(A).

1

## INSTRUCTIONS AND DEFINITIONS

**Instructions:**

1.     These interrogatories are continuing in nature. If you obtain further information after submitting your answers, you are required to supplement your responses as provided in Federal Rule of Civil Procedure 26(e).

2.     Where an interrogatory requests information concerning communications, identify: (a) the date of the communication; (b) the form of communication (oral, written, electronic); (c) all persons who participated in or were present for the communication; (d) the substance of what was said or written; and (e) the location of any documents reflecting or relating to the communication.

3.     Where an interrogatory requests identification of a person, provide: (a) full name; (b) present or last known address; (c) telephone number; (d) email address; and (e) the person's relationship to the subject matter of the interrogatory.

4.     Where an interrogatory requests identification of a document, provide a description sufficient to identify it, including: (a) type of document; (b) date; (c) author(s); (d) addressee(s); (e) subject matter; and (f) present custodian.

**Definitions:**

5.     **"You"** or **"Your"** means each Plaintiff (Lakefront Pictures LLC, Jennifer Karum, and The Curse LLC) individually and collectively, including their agents, representatives, employees, attorneys, and anyone acting on their behalf.

6.     **"Ancel"** or **"Defendants"** means Jordan Ancel, Ancel International LLC, and Rock City Road Films LLC.

7.     **"Producer Agreement"** means the agreement dated May 31, 2021, between The Curse LLC and Ancel International LLC concerning the film *The Unseen*.

2

8.     **"The Unseen"** or **"the Film"** means the independent feature film project also known as *The Unseen* that was the subject of the Producer Agreement.

9.     **"Communication"** includes all forms of exchange of information, whether oral, written, electronic, or otherwise, including but not limited to conversations, emails, text messages, social media posts, letters, and meetings.

10.     **"Document"** has the meaning set forth in Federal Rule of Civil Procedure 34(a) and includes electronically stored information.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each and every act or omission by Ancel that You contend constituted a breach of the Producer Agreement, including the specific provision(s) allegedly breached, the date(s) of each alleged breach, and all facts supporting Your contention that such act or omission occurred.

**INTERROGATORY NO. 2:**

Identify each and every communication in which You provided Ancel International LLC with the 24-hour written cure notice referenced in the Producer Agreement before terminating or modifying Ancel's participation in the Film, including the date, method of delivery, sender, and content of each such notice.

**INTERROGATORY NO. 3:**

Describe in complete detail Your contention that Ancel was properly terminated from the Film or relieved of producer duties, including all factual bases, the date(s) of termination, who made the decision, and all reasons for the decision.

**INTERROGATORY NO. 4:**

Identify each and every distribution agreement, licensing deal, or revenue-generating arrangement entered into for the Film, including: (a) the name of each distributor or licensee; (b) the territory covered; (c) the date of each agreement; (d) the total compensation received or to be received; (e) whether any minimum guarantees were paid; and (f) the current status of each agreement.

**INTERROGATORY NO. 5:**

State the total amount of revenue received by You from all sources for the Film from inception through the present date, broken down by source (theatrical, streaming, foreign licensing, domestic distribution, etc.) and by quarter.

**INTERROGATORY NO. 6:**

Identify all communications between You and Gravitas Ventures concerning payment of the minimum guarantee referenced in the internal Lakefront Pictures emails dated July 12, 2023, including the amounts paid, dates of payment, and current location of all such funds.

**INTERROGATORY NO. 7:**

Identify all communications between You and The Coven concerning foreign licensing deals for the Film, including the territories licensed, amounts paid, dates of payment, and current location of all such funds.

**INTERROGATORY NO. 8:**

State whether You have ever provided any accounting, profit statement, or financial report to Ancel International LLC concerning revenues, expenses, or net profits for the Film. If so, identify each such communication. If not, explain in complete detail why no accounting has been provided.

**INTERROGATORY NO. 9:**

Calculate the amount You contend is due to Ancel International LLC under the Producer Agreement's 3% net profit provision, showing all work and identifying all revenues and expenses included in Your calculation.

**INTERROGATORY NO. 10:**

Identify each and every person or entity to whom You made any oral or written statement concerning Ancel's professional conduct, competence, or character between June 2022 and the present, including the date, method, and substance of each communication.

**INTERROGATORY NO. 11:**

Identify each and every statement You made to any third party characterizing Ancel as "dangerous," "unsafe to work with," a "Harvey Weinstein type," "abusive," "misogynistic," or using similar characterizations, including the person(s) to whom the statement was made, the date, and the exact words used.

**INTERROGATORY NO. 12:**

Identify all factual bases for any statement You made to third parties that Ancel "blew the budget" or mismanaged the finances of the Film, including specific expenditures You contend were improper and the total amount by which You contend the budget was exceeded.

**INTERROGATORY NO. 13:**

Describe in complete detail the factual basis for Your application for a temporary restraining order in Los Angeles Superior Court on or about June 15, 2023, including all incidents You contend demonstrated that Ancel posed a threat to Your safety.

**INTERROGATORY NO. 14:**

Identify all communications between You and Michael Trent or any other representative of Dances With Films festival concerning Ancel, including the June 7, 2023 letter from Your attorney and the June 8, 2023 email referenced in the counterclaim, and state the complete content of each such communication.

4

**INTERROGATORY NO. 15:**

Explain in complete detail why You allowed the temporary restraining order obtained in June 2023 to lapse without seeking a permanent restraining order, including all reasons for that decision and when the decision was made.

**INTERROGATORY NO. 16:**

Identify each and every social media account (including Instagram, Facebook, Twitter, TikTok, or any other platform) that You have created, operated, controlled, or contributed content to since January 2022, including pseudonymous or anonymous accounts, providing the platform, account name/handle, dates of operation, and purpose of each account.

**INTERROGATORY NO. 17:**

State whether You created, operated, or contributed content to social media accounts using the names or handles "FilmTruths," "IndieProtect," "Megan Elizabeth," "Elizabeth Meegan," "Ellie Lanta," "Elise Lanta," "Liz Ponter," "Lizzie Pont," or "artlady002." If You deny creating or operating any such account, identify all facts supporting Your denial and all steps You have taken to investigate who created such accounts.

**INTERROGATORY NO. 18:**

Identify each and every post, comment, or message You made on any social media platform concerning Ancel or Candice Rose, including the specific post quoted in the counterclaim stating "Anyone working with Candice Rose is condoning harassment tactics and blacklisting," including the date, platform, account name, and complete content of each such post.

**INTERROGATORY NO. 19:**

State whether You had any knowledge before July 2023 that Ancel or Ancel International LLC was in discussions with Final Boss Productions, the producers of *Girl Boxer*, or any other third party concerning potential film projects or business engagements. If so, describe Your knowledge in complete detail, including how You obtained such knowledge.

**INTERROGATORY NO. 20:**

Identify all communications between You and any representative of Final Boss Productions, the producers of *Girl Boxer*, the producers of *The Dream Guy*, the producers of *Salvation Ship*, Randy Stringer, or any coaching client of Ancel International LLC at any time since January 2022.

**INTERROGATORY NO. 21:**

Identify each and every cast or crew member who complained about Your on-set conduct during production of the Film, including the name of each person, the date(s) of complaints, to whom the complaint was made, and the substance of each complaint.

**INTERROGATORY NO. 22:**

State whether lead actors R.J. Mitte or any other cast member, or any department head, threatened to walk off the production of the Film in June 2022. If You deny this occurred, identify all facts supporting Your denial. If You admit this occurred, identify each person who made such a threat, the date, and the reasons given.

**INTERROGATORY NO. 23:**

Describe in complete detail the decision-making process by which You were removed from on-set duties during production of the Film in June 2022, including who made the decision, when it was made, all reasons for the decision, and all communications concerning this decision.

**INTERROGATORY NO. 24:**

Explain in complete detail the decision to list Ancel International LLC third in the producer credits for the Film rather than in second position or co-equal position as allegedly required by Section 8 of the Producer Agreement, including who made this decision, when it was made, the reasons for the decision, and whether You contend this credit placement complied with the Producer Agreement.

**INTERROGATORY NO. 25:**

Identify all facts and evidence supporting Your claim that Ancel breached any non-disclosure agreement, including: (a) each specific statement or disclosure You contend violated the agreement; (b) the date and method of each alleged disclosure; (c) to whom each disclosure was made; (d) how You learned of each alleged disclosure; and (e) what information You contend was confidential and why.

These Interrogatories are continuing; Plaintiff must supplement its answers in accordance with Rule 26(e) if it learns that any response is incomplete or incorrect in any material respect.

Dated:  December 9, 2025

Respectfully submitted,
**JORDAN ANCEL,**
Defendant/Counter-Plaintiff

By:  _Alexander Loftus_

One of Their Attorneys

Alexander Loftus, Esq.
LOFTUS & EISENBERG, LTD.
181 W. Madison, Suite 4700
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com

6

## **CERTIFICATE OF SERVICE**

I, Alexander N. Loftus, an attorney, hereby certify that on December 9, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing and via U.S. mail to:

George J. Spathis, Esq.
Levelfeld Pearlstein, LLC
120 S. Riverside Plaza, Suite 1800
Chicago, IL 60606
Email: gspathis@lplegal.com


/s/ *Alexander N. Loftus*

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 24-cv-01108 |
| | ) | |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, | ) | |
| | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**DEFENDANT JORDAN ANCEL'S FIRST SET OF
INTERROGATORIES TO PLAINTIFFS**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, ("Defendant" or "Ancel") serves the following Interrogatories on Plaintiff LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC ("Plaintiffs"). Each answer must be made separately and fully, in writing and under oath, within thirty (30) days of service. If you withhold information under any claim of privilege, furnish a privilege log that complies with Rule 26(b)(5)(A).

1

## INSTRUCTIONS AND DEFINITIONS

**Instructions:**

1.      These interrogatories are continuing in nature. If you obtain further information after submitting your answers, you are required to supplement your responses as provided in Federal Rule of Civil Procedure 26(e).

2.      Where an interrogatory requests information concerning communications, identify: (a) the date of the communication; (b) the form of communication (oral, written, electronic); (c) all persons who participated in or were present for the communication; (d) the substance of what was said or written; and (e) the location of any documents reflecting or relating to the communication.

3.      Where an interrogatory requests identification of a person, provide: (a) full name; (b) present or last known address; (c) telephone number; (d) email address; and (e) the person's relationship to the subject matter of the interrogatory.

4.      Where an interrogatory requests identification of a document, provide a description sufficient to identify it, including: (a) type of document; (b) date; (c) author(s); (d) addressee(s); (e) subject matter; and (f) present custodian.

**Definitions:**

5.      **"You"** or **"Your"** means each Plaintiff (Lakefront Pictures LLC, Jennifer Karum, and The Curse LLC) individually and collectively, including their agents, representatives, employees, attorneys, and anyone acting on their behalf.

6.      **"Ancel"** or **"Defendants"** means Jordan Ancel, Ancel International LLC, and Rock City Road Films LLC.

7.      **"Producer Agreement"** means the agreement dated May 31, 2021, between The Curse LLC and Ancel International LLC concerning the film *The Unseen*.

8.      **"The Unseen"** or **"the Film"** means the independent feature film project also known as *The Unseen* that was the subject of the Producer Agreement.

9.      **"Communication"** includes all forms of exchange of information, whether oral, written, electronic, or otherwise, including but not limited to conversations, emails, text messages, social media posts, letters, and meetings.

10.     **"Document"** has the meaning set forth in Federal Rule of Civil Procedure 34(a) and includes electronically stored information.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify with specificity each alleged breach of the Producer Agreement dated May 31, 2021 that you contend JAI or Rock City Road committed, including: (a) the specific provision you contend was breached; (b) the exact conduct constituting the breach; (c) the date(s) on which each breach allegedly occurred; (d) all persons with knowledge of the alleged breach; and (e) all documents supporting your contention.

### INTERROGATORY NO. 2:

State the complete factual and legal basis for your claim for rescission of the Producer Agreement, including: (a) each breach you contend justifies rescission; (b) when you first learned of each alleged breach; (c) why you contend each breach was material; (d) what steps you took after learning of each alleged breach; and (e) why you contend rescission rather than damages is the appropriate remedy.

### INTERROGATORY NO. 3:

Identify each alleged breach of the Non-Disclosure Agreement that you contend Ancel or JAI committed, including: (a) the specific NDA provision allegedly violated; (b) the date and manner of each alleged disclosure; (c) to whom each disclosure was made; (d) what confidential information was allegedly disclosed; and (e) how you learned of each alleged disclosure.

### INTERROGATORY NO. 4:

Describe in complete detail the factual basis for your allegation that JAI or Rock City Road "failed to perform duties under the Agreement in a workmanlike manner," including: (a) each specific duty you contend was not properly performed; (b) the contractual provision imposing each duty; (c) when each failure occurred; (d) who witnessed or has knowledge of each failure; and (e) what damage resulted from each alleged failure.

### INTERROGATORY NO. 5:

State the complete factual basis for your claim that there was "a complete and total failure of consideration" on JAI's or Rock City Road's part, including: (a) what consideration JAI promised to provide; (b) what consideration, if any, JAI actually provided; (c) the date on which

you contend the failure of consideration became complete; and (d) why you continued to work with JAI after any alleged failure became apparent.

**INTERROGATORY NO. 6:**

Describe in complete detail the events that occurred on set on or about June 20, 2022 that led to Karum's removal from set, including: (a) the specific conduct by Karum that led to complaints; (b) the identity of each person who complained about Karum's conduct; (c) the substance of each complaint; (d) what actions were taken in response; and (e) your version of why Karum was removed from set.

**INTERROGATORY NO. 7:**

 Identify each cast member, crew member, or other person who you contend threatened to walk off the production on or about June 20, 2022, including their name, position on the production, the date and manner of each threat, to whom each threat was communicated, and all documents reflecting such threats.

**INTERROGATORY NO. 8:**

Identify the "crew member" who allegedly sent an email on June 20, 2022 at approximately 6:32 PM to an investor named Lisa G., as referenced in paragraphs 47-52 of your Counterclaim, including: (a) the crew member's full name and contact information; (b) how you obtained this email; and (c) all documents reflecting this communication.

**INTERROGATORY NO. 9:**

 State the total gross revenue The Unseen has generated from all sources from inception through the present, itemized by source, including: (a) all distribution agreements; (b) all licensing deals; (c) all festival prizes or awards; (d) all sales or rentals; and (e) any other revenue streams.

**INTERROGATORY NO. 10:**

Identify all distribution agreements for The Unseen, including: (a) the distributor name and contact information; (b) the territory covered; (c) the date of the agreement; (d) the minimum guarantee amount, if any; (e) the revenue sharing terms; (f) all advances or payments received; and (g) all documents reflecting these agreements.

**INTERROGATORY NO. 11:**

State the total amount you contend The Unseen has earned in "Net Profits" as that term is defined in the Producer Agreement, including: (a) how you calculated this amount; (b) the total gross revenues; (c) all deductions from gross revenues; (d) all documents supporting your calculation; and (e) when Net Profits first became available for distribution.

**INTERROGATORY NO. 12:**

State whether you have paid any person or entity any share of The Unseen's profits, backend participation, or similar payments, and if so, identify: (a) each recipient; (b) the amount paid;

(c) the date of payment; (d) the contractual or other basis for the payment; and (e) why similar payments were not made to JAI.

**INTERROGATORY NO. 13:**

Identify each person in the entertainment industry to whom you or anyone acting on your behalf communicated any statement about Ancel, JAI, or Rock City Road between June 2022 and the present, including: (a) the person's name and contact information; (b) the date and manner of each communication; (c) the substance of what was communicated; (d) your purpose in making the communication; and (e) all documents reflecting such communications.

**INTERROGATORY NO. 14:**

Describe in complete detail your communications with Mike Wallace, Seth Chitwood, Helene Galek, Vincent Shade, and Lisa Gal regarding Ancel or JAI, including: (a) the date and manner of each communication; (b) the complete substance of what you told each person; (c) your purpose in contacting each person; (d) what response, if any, you received; and (e) all documents reflecting these communications.

**INTERROGATORY NO. 15:**

State whether you created, operated, or had any involvement with any social media accounts under pseudonymous names including "FilmTruths," "IndieProtect," "Megan Elizabeth," "Elizabeth Meegan," "Ellie Lanta," "Elise Lanta," "Liz Ponter," "Lizzie Pont," or "artlady002," and if so, identify: (a) each account; (b) the dates you operated each account; (c) all posts made from each account regarding Ancel or JAI; (d) your purpose in creating pseudonymous accounts; and (e) all persons with knowledge of your operation of these accounts.

**INTERROGATORY NO. 16:**

State whether you coordinated with any other persons ("Does 1-20" or otherwise) in making statements about Ancel or JAI to third parties, and if so, identify: (a) each such person; (b) the nature of your coordination; (c) what you asked each person to do or say; (d) what each person agreed to do or say; and (e) all communications reflecting such coordination.

**INTERROGATORY NO. 17:**

Regarding the Final Boss Productions project, state: (a) the complete factual basis for your contention that this opportunity was lost due to Plaintiffs' conduct; (b) all communications with Final Boss Productions regarding the project from inception through termination; (c) the identity and contact information of each person at Final Boss Productions who communicated with you about the project; (d) what Final Boss Productions told you about why they withdrew; and (e) all documents supporting your claims.

**INTERROGATORY NO. 18:** Regarding the Girl Boxer project, state: (a) the complete terms of the engagement that was allegedly offered to JAI; (b) the date and manner in which the offer was made; (c) the identity and contact information of each person who communicated the offer; (d) what you were told about why the engagement was withdrawn; (e) the factual basis for your contention that the withdrawal was caused by Plaintiffs' statements; and (f) all documents supporting your claims.

**INTERROGATORY NO. 19:**

Regarding "The Dream Guy" feature film and "Salvation Ship" TV series referenced in paragraphs 163-164 of your Counterclaim, provide for each project: (a) the identity and contact information of all persons or entities involved; (b) the date and terms of any agreement or offer; (c) how and when each opportunity was allegedly lost; (d) what you were told about why each opportunity was lost; (e) the factual basis for attributing the loss to Plaintiffs' conduct; and (f) all supporting documents.

**INTERROGATORY NO. 20:**

Regarding the alleged loss of JAI coaching clients, identify: (a) each client who you contend terminated or failed to renew services due to Plaintiffs' conduct; (b) for each client, their contact information, dates of service, fees paid, and reason given for termination; (c) the factual basis for attributing each termination to Plaintiffs' conduct; and (d) all documents supporting your claims.

**INTERROGATORY NO. 21:**

State whether you contend that The Curse was required under the Producer Agreement to provide JAI with written notice and an opportunity to cure before taking any action to terminate JAI's participation or withhold contractual benefits, and if so: (a) identify the specific provision requiring such notice; (b) describe what notice should have been provided; (c) state when such notice should have been provided; (d) identify what cure opportunity should have been afforded; and (e) explain how the outcome would have been different if notice had been provided.

**INTERROGATORY NO. 22:**

State the exact screen credit position you contend JAI was entitled to receive under the Producer Agreement, including: (a) the specific contractual language supporting your interpretation; (b) all facts supporting your contention that you were entitled to "second-position or co-equal producer credit"; (c) when you first learned you would not receive this credit; (d) all complaints you made about credit positioning; and (e) all documents supporting your position.

**INTERROGATORY NO. 23:**

Identify each instance where JAI was allegedly "systematically omitted from promotional materials" as alleged in paragraph 214 of your Counterclaim, including: (a) the specific promotional material; (b) the date it was created or published; (c) who created it; (d) how you learned of it; (e) whether you complained about the omission; and (f) all supporting documents.

**INTERROGATORY NO. 24:**

State with specificity all damages you claim to have suffered as a result of the conduct alleged in your Complaint against JAI and Rock City Road, itemized by category and cause of action, including: (a) the nature of each damage; (b) the amount; (c) how each amount was calculated; (d) the time period over which damages were incurred; and (e) all documents supporting each damage claim.

6

**INTERROGATORY NO. 25:**

State LFP's and The Curse's total revenue and net income for each of the following years: 2021, 2022, 2023, and 2024, identifying all sources of revenue and all documents supporting these figures.

These Interrogatories are continuing; Plaintiff must supplement its answers in accordance with Rule 26(e) if it learns that any response is incomplete or incorrect in any material respect.

Dated: December 9, 2025

Respectfully submitted,
**JORDAN ANCEL,**
Defendant/Counter-Plaintiff

By: _Alexander Loftus_

One of Their Attorneys

Alexander Loftus, Esq.
LOFTUS & EISENBERG, LTD.
181 W. Madison, Suite 4700
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 24-cv-01108 |
| | ) | |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, | ) | |
| | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**DEFENDANT CANDICE ROSE'S FIRST SET OF**

**INTERROGATORIES TO PLAINTIFFS**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant CANDICE ROSE

("Defendant" or "Rose") serves the following Interrogatories on Plaintiff LAKEFRONT

PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC ("Plaintiffs"). Each answer

must be made separately and fully, in writing and under oath, within thirty (30) days of service.

If you withhold information under any claim of privilege, furnish a privilege log that complies

with Rule 26(b)(5)(A).

1

## INSTRUCTIONS AND DEFINITIONS

### A. Instructions

1.     Unless otherwise stated, these Interrogatories cover the time period from January 1, 2023 to the present.

2.     If you cannot answer an Interrogatory in full after exercising due diligence to obtain the information, so state, and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

3.     Each Interrogatory shall be deemed continuing in nature so as to require supplemental answers as provided in Federal Rule of Civil Procedure 26(e).

4.     Where an Interrogatory calls for an answer that involves more than one part, answer each part separately and in full.

### B. Definitions

1.     "You" or "Your" means Defendant Jennifer Karum and any person acting on her behalf, including agents, representatives, employees, or attorneys.

2.     "The Instagram Post" means the Instagram post published by you on or about August 9, 2023, stating "Anyone working with Candice Rose is condoning harassment tactics and blacklisting" or words to that effect.

3.     "Related Statements" means any oral or written statements made by you concerning Candice Rose's alleged condoning of harassment tactics, engagement in blacklisting, or similar conduct.

4.     "Communication" means any transmission of information in any form, including oral, written, electronic, or any other means.

5.     "Document" has the meaning set forth in Federal Rule of Civil Procedure 34(a).

2

6. "Identify" when referring to a person means to state the person's full name, last known address, telephone number, and email address.

7. "Identify" when referring to a document means to state the date, author, addressee, type of document, subject matter, and present custodian

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify every factual basis supporting your statement in the Instagram Post that "Anyone working with Candice Rose is condoning harassment tactics."

**INTERROGATORY NO. 2:**

Identify every incident in which you contend Candice Rose engaged in, participated in, encouraged, condoned, or approved harassment tactics, including for each incident: (a) the date; (b) the location; (c) all persons present; (d) a detailed description of what occurred; and (e) all documents relating to the incident.

**INTERROGATORY NO. 3:**

Identify every person whom you contend Candice Rose harassed or whom Candice Rose condoned harassment of, including for each person: (a) their identity; (b) the date(s) of the alleged harassment; and (c) the nature of the alleged harassment.

**INTERROGATORY NO. 4:**

Identify every factual basis supporting your statement in the Instagram Post that "Anyone working with Candice Rose is condoning harassment tactics and blacklisting."

**INTERROGATORY NO. 5:**

Identify every instance in which you contend Candice Rose engaged in, participated in, encouraged, condoned, or approved blacklisting of any person in the entertainment industry, including for each instance: (a) the date; (b) the person allegedly blacklisted; (c) the manner in which the alleged blacklisting occurred; and (d) all documents relating to the alleged blacklisting.

**INTERROGATORY NO. 6:**

State whether you had any direct, personal knowledge of Candice Rose engaging in harassment tactics at the time you published the Instagram Post, and if so, describe in detail the factual basis for such knowledge.

**INTERROGATORY NO. 7:**

State whether you had any direct, personal knowledge of Candice Rose engaging in blacklisting at the time you published the Instagram Post, and if so, describe in detail the factual basis for such knowledge.

**INTERROGATORY NO. 8:**

If you relied on information provided by any third party in making the statements in the Instagram Post, identify each such third party and describe in detail the information each person provided to you, including the date and manner of each communication.

**INTERROGATORY NO. 9:**

Describe all efforts you undertook to verify the accuracy of your statements about Candice Rose before publishing the Instagram Post, including all persons you contacted and all documents you reviewed.

**INTERROGATORY NO. 10:**

State your purpose and intent in publishing the Instagram Post on August 9, 2023.

**INTERROGATORY NO. 11:**

Identify every person or entity to whom you communicated, orally or in writing, that Candice Rose condones harassment tactics, other than through the Instagram Post, including for each communication: (a) the identity of the person or entity; (b) the date of the communication; (c) the manner of communication; and (d) the substance of what you communicated.

**INTERROGATORY NO. 12:**

Identify every person or entity to whom you communicated, orally or in writing, that Candice Rose engages in blacklisting, other than through the Instagram Post, including for each communication: (a) the identity of the person or entity; (b) the date of the communication; (c) the manner of communication; and (d) the substance of what you communicated.

**INTERROGATORY NO. 13:**

Identify every person in the entertainment industry with whom you discussed Candice Rose's alleged professional misconduct, fitness to work, or character between January 1, 2023 and the present, including for each person: (a) their identity; (b) the approximate date(s) of the discussion; and (c) the substance of what you communicated about Candice Rose.

**INTERROGATORY NO. 14:**

Describe in detail your understanding of the meaning of the term "harassment tactics" as used in the Instagram Post.

4

**INTERROGATORY NO. 15:**

Describe in detail your understanding of the meaning of the term "blacklisting" as used in the Instagram Post.

**INTERROGATORY NO. 16:**

State whether you intended the Instagram Post to cause entertainment industry professionals to refrain from working with or hiring Candice Rose, and if so, explain your reasoning.

**INTERROGATORY NO. 17:**

State whether you were aware, at the time you published the Instagram Post, that the statements you made about Candice Rose were false, and if you contend they were true, identify every factual basis supporting their truth.

**INTERROGATORY NO. 18:**

Identify every person who assisted you in drafting, editing, or reviewing the Instagram Post before it was published.

**INTERROGATORY NO. 19:**

Identify every person or entity from whom you received a response or reaction to the Instagram Post, including for each: (a) the identity of the person or entity; (b) the date of the response; (c) the manner of response; and (d) the substance of the response.

**INTERROGATORY NO. 20:**

Identify every entertainment industry professional, casting director, producer, director, or production company that you are aware communicated with, contacted, or took action regarding Candice Rose after you published the Instagram Post.

**INTERROGATORY NO. 21:**

State whether you had any communication with Lakefront Pictures, LLC or The Curse, LLC regarding the content of the Instagram Post before you published it, and if so, describe in detail each such communication, including the date, participants, and substance.

**INTERROGATORY NO. 22:**

State whether you published the Instagram Post within the scope of your role as a managing member of Lakefront Pictures, LLC, and explain the factual basis for your answer.

**INTERROGATORY NO. 23:**

Identify every business opportunity, acting role, project, or professional engagement that you are aware Candice Rose lost, was denied, or did not receive as a result of the Instagram Post or Related Statements.

**INTERROGATORY NO. 24:**

State whether you continue to maintain that the statements made in the Instagram Post are true, and if so, identify every factual basis supporting your current belief in their truth.

**INTERROGATORY NO. 25:**

Identify every document in your possession, custody, or control that relates to, refers to, or concerns: (a) Candice Rose's alleged harassment tactics; (b) Candice Rose's alleged blacklisting conduct; (c) the Instagram Post; or (d) any Related Statements about Candice Rose.

Dated: December 9, 2025                Respectfully submitted,
                                        **CANDICE ROSE,**
                                        Defendant/Counter-Plaintiff

By:         *Alexander Loftus*

                            One of Their Attorneys

Alexander Loftus, Esq.
LOFTUS & EISENBERG, LTD.
181 W. Madison, Suite 4700
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com

## CERTIFICATE OF SERVICE

I, Alexander N. Loftus, an attorney, hereby certify that on December 9, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing and via U.S. mail to:

George J. Spathis, Esq.
Levelfeld Pearlstein, LLC
120 S. Riverside Plaza, Suite 1800
Chicago, IL 60606
Email: gspathis@lplegal.com


/s/ *Alexander N. Loftus*