**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) ) ) | |
| | ) | **No. 24 C 1108** |
| Plaintiffs, | ) ) | |
| | ) | **Magistrate Judge M. David Weisman** |
| v. | ) ) | |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS, LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20, | ) ) ) ) ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

The case is before the Court on plaintiffs' motion to dismiss defendants' counterclaim. For the reasons set forth herein, the Court grants the motion [56].

**Facts**

Jordan Ancel is a resident of California, who works as a film producer and career coach. (ECF 43, Countercl. ¶ 1.) He is the sole member of Jordan Ancel International ("JAI"), a California limited liability and film production company. (*Id.* ¶¶ 3-4.) Rock City Road Films is a defunct Illinois limited liability company, of which Ancel was the sole member. (*Id.* ¶ 6.) Candice Rose is an Illinois-based actor. (*Id.* ¶ 7.) Jennifer Karum is an Illinois resident, and Lakefront Pictures is an Illinois limited liability and film production company, whose managing member is Karum. (*Id.* ¶¶ 9-11.) Lakefront Pictures developed the independent feature film, *The Unseen*. (*Id.* ¶ 9.) The Curse is an Illinois special purpose entity that owns *The Unseen*. (*Id.* ¶ 13.) Karum is the managing member of The Curse. (*Id.* ¶ 12.)

In 2021, JAI and The Curse executed a producer agreement for *The Unseen*, and Ancel, through JAI, begin providing producing services for the production. (*Id.* ¶¶ 21, 25.) Under Ancel's management "the production proceeded on schedule and within budget." (*Id.* ¶ 34.) During filming, Karum engaged in "disruptive and unprofessional conduct, which created a hostile work environment and interfered with the production schedule." (*Id.* ¶¶ 38-39.) Cast and crew complained about Karum's conduct, and "both lead actors and multiple department heads threatened to walk off the production if Karum remained on set." (*Id.* ¶¶ 40-42.) Because the departure of these actors and crew members would have shut down production of the film, Ancel removed Karum from the set. (*Id.* ¶ 44.)

After Ancel removed Karum from the set, she sent a text message to him that said, "'I'm going to make sure nobody in this town will work with you again.'" (*Id.* ¶¶ 53-54.) Karum also sent a text message to the entire crew, falsely accusing Ancel of having "'caused delays, blown [the] budget, and terrorized women on set.'" (*Id.* ¶¶ 56-62.)

In 2023, *The Unseen* was accepted to screen at the Dances With Films festival in Los Angeles, and the premiere was set for June 30, 2023, at the TCL Chinese Theater. (*Id.* ¶¶ 64, 66.) In the weeks leading up to it, Karum took actions to keep Ancel from the premiere. (*Id.* ¶¶ 68-69.) On June 7, 2023, Karum's lawyer sent a letter to the festival's executive director that said, "'Mr. Ancel's involvement was a consistent source of tension and strife, as he was misogynistic and verbally abusive, frequently engaging in tirades laced with grotesque profanity that should never be tolerated in any work environment.'" (*Id.* ¶¶ 70-74.) The next day, Karum sent an email to the festival's publicity team that said, "'I do not feel safe with him there . . . . He threatened to ruin careers if anyone spoke badly about him.'" (*Id.* ¶¶ 75-81.) On June 15, 2023, Karum filed an ex parte petition for a TRO in Los Angeles, falsely alleging that Ancel had violated California's civil harassment statute. (*Id.* ¶¶ 83-87.) Based on Karum's misrepresentations, the court granted the TRO, which barred Ancel from attending the premiere. (*Id.* ¶ 88.)

Karum's alleged campaign against Ancel also included falsely telling "industry peers and influential gatekeepers" that Ancel is unsafe to work with, he is a Harvey Weinstein type, he is incompetent and toxic to film productions, he was abusive to women on the set, and he mismanaged the budget of *The Unseen*. (*Id.* ¶¶ 92-98.) In addition, Karum created and operated multiple pseudonymous accounts on Instagram and Facebook to which she posted similar misrepresentations. (*Id.* ¶¶ 105-09.) Ancel alleges that Karum's misrepresentations caused several parties with whom he had been negotiating on various projects to terminate the negotiations. (*Id.* ¶¶ 143-64.) He further alleges that Karum's misrepresentations caused him to lose paying clients of his career coaching service. (*Id.* ¶¶ 165-77.) Rose alleges that Karum made misrepresentations about her as well, which had a chilling effect on her career opportunities. (*Id.* ¶¶ 180-202.)

## Discussion

"The legal standard for a motion to dismiss a counterclaim is the same as for a motion to dismiss a complaint." *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 730 F. Supp. 3d 740, 750 (N.D. Ill. 2024) (citing *Cozzi Iron & Metal Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs argue that JAI, which is a foreign corporation not registered to transact business in this state and is not a party to the producer agreement, lacks standing and capacity to assert the contract claims in Counts I-III of the counterclaim. The Court agrees. (*See* 805 Ill. Comp. Stat. 5/13.70(a) ("No foreign corporation transacting business in this State without authority to do so is permitted to maintain a civil action in any court of this State, until the corporation obtains that

2

authority."); *RehabCare Grp. E., Inc. v. Camelot Terrace, Inc.*, No. 10 CV 02350, 2010 WL 5174369, at *3 (N.D. Ill. Dec. 15, 2010) ("[A] corporation's capacity to sue is a question of substantive law. As a result, the [Illinois Business Corporation] Act applies to a corporation, lacking a certificate of authorization from the Illinois Secretary of State, that brings an action in federal court that sits in diversity and applies Illinois substantive law.") (citations omitted); *Caswell v. Zoya Int'l, Inc.*, 654 N.E.2d 552, 554 (Ill. App. Ct. 1995) ("In order for a plaintiff third party to have standing to sue under a contract, the contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear.") (quotations, alterations, and citations omitted). JAI does not allege that it is registered to transact business in Illinois and because it is not party to the producer agreement nor designated as a beneficiary of the agreement, it has no standing or capacity to raise the contract counterclaims. Accordingly, the Court dismisses without prejudice Counts I-III of JAI's counterclaim.

In Counts IV, V, VI, IX, X, and XI, JAI and JAI Road[1] allege claims against Karum and Lakefront for tortious interference with prospective economic advantage (Count IV), tortious interference with contract (Count V), injurious falsehood and commercial disparagement (Count VI), violation of the Illinois Deceptive Trade Practices Act (Count IX), and civil conspiracy (Count XI). Ancel and JAI allege claims for violation of the California Unfair Competition Law (Count X), and civil conspiracy (Count XI).

Plaintiffs contend that these claims are barred by res judicata because they were adjudicated on the merits in state court. Because "an Illinois state court rendered the . . . judgment, this Court must apply Illinois preclusion law to determine whether res judicata bars [defendants'] claims." *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 955 (7th Cir. 1997) (citing 28 U.S.C. § 1738; *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985).) "For res judicata to apply, there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the same parties or their 'privies.'" *Chi. Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1079 (7th Cir. 2011) (citing *Hudson v. City of Chi.*, 889 N.E.2d 210, 215 (Ill. 2008)). "'[R]es judicata bar[s] not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit.'" *Hudson*, 889 N.E.2d at 217 (quoting *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1205 (Ill. 1996)).

Plaintiffs argue that the state court order dismissing Ancel's defamation, false light/invasion of privacy and tortious interference claims against plaintiffs was a judgment on the merits because the order does not say that the claims are dismissed without prejudice or give Ancel leave to replead them. (*See* ECF 58, Ex. B)[2]; Ill. Sup. Ct. R. 273 (stating that "an involuntary

---

[1] These claims are also asserted by JAI Road. If JAI Road is another name for Rock City Road, the claims must be dismissed because Rock City Road is not registered to transact business in this state (ECF 43 ¶ 6), and thus as discussed supra, it lacks capacity to sue. The result is the same if JAI Road is an independent entity because there are no allegations in the counterclaim tying it to the events on which the counterclaim is based. The Court therefore dismisses without prejudice the claims purportedly asserted by JAI Road.

[2] The Court can take judicial notice of matters of public record. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

3

dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits."). Defendants contend that the order was not an adjudication on the merits:

> On July 19, 2024, the state court dismissed Count III (malicious prosecution). On March 4, 2025, the parties entered an agreed order: "Plaintiff's claim for malicious prosecution is voluntarily dismissed pursuant to 735 ILCS 5/2-1009 without prejudice with leave to refile, subject to payment of costs to Defendant. This express language is dispositive. . . . The dismissal "without prejudice with leave to refile" confirms no final judgment exists.

(ECF 63 at 3-4.)

The state court order does not state that the defamation, false light/invasion of privacy, and tortious interference claims were dismissed without prejudice or that Ancel had leave to replead them. Rather, the parties agreed that Ancel could replead the malicious prosecution claim and only that claim. In short, the state court's order dismissing Ancel's false light/invasion of privacy, defamation, and tortious interference with economic advantage claims was a final adjudication of those claims. Thus, the first element of res judicata is met as to those claims.

The second element requires that the causes of action in the two suits be the same. "Illinois uses a transactional test to decide what counts as the same cause of action. According to that test, 'separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.'" *Chi. Title*, 664 F.3d at 1079-80 (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998)). "'[T]he transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction.'" *Id.* (quoting *River Park*, 664 F.3d at 1080)).

In his state court complaint, Ancel alleged that plaintiff had falsely portrayed him to the public "as a sexual harasser and incompetent producer" (ECF 58, Ex. B ¶ 67; *see id.* ¶¶ 36, 50 (alleging that Karum falsely stated that Ancel sexually assaulted Karum, sexually harassed Karum and other female cast and crew members, and was the sole cause of any and all problems on set") ¶ 38 (alleging that Karum publicly diminished Ancel's contributions to the film and said that "she did everything for the production") ¶ 37 ("Karum told anyone who would listen that Ancel was not to be trusted, that he did little for the Project, that he caused numerous problems on set, that he was 'having problems' with other producers in Los Angeles, that he did not really have high level contacts in the industry, and that he is a terrible person."); ¶¶ 53-57 (alleging that Karum filed for and obtained an ex parte TRO against Ancel, which was based on lies and made him unable to attend the film's premiere).) He further alleged that Karum's actions were designed to, and did, harm his reputation, interfere with his prospective economic advantage, and cause him economic loss. (*Id.* ¶¶ 71, 73-77.) In the counterclaims in this suit, Ancel alleges that Karum: (1) said he "'caused delays, [had] blown [the] budget, and terrorized women on set;'" (2) told the director of

4

a film festival that Ancel's involvement in the production "'was a consistent source of tension and strife, as he was misogynistic and verbally abusive, frequently engaging in tirades laced with grotesque profanity that should never be tolerated in any work environment;'" (3) "falsely described Ancel as 'unsafe' to work with and characterized him as a 'Harvey Weinstein type,'" who was "professionally incompetent and toxic to film productions;" (4) told him, "'I'm going to make sure nobody in this town will work with you again;" and (5) obtained a baseless TRO to prevent Ancel from attending the film's premiere. (ECF 43 ¶¶ 54, 57, 73, 92-97, 101-03.) Because the two sets of allegations are nearly identical and they all arise from the same transaction, the second element of res judicata is met.

The last element is met if there is an identity of parties. Ancel filed the state court suit against Karum, and he and JAI assert the counterclaims against Karum.[3] JAI is a limited liability company whose sole member is Ancel. (ECF 1 ¶¶ 8-9.) *See Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018) ("The present action was brought by the Baeks and C & L [an LLC] against NCB and several of its employees. The presence of C & L as a defendant does not preclude the operation of res judicata because Mr. Baek is the manager and sole member of C & L." (citing (*Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1034 (Ill. App. Ct. 2015).) Because there is an identity of parties, the third element of res judicata is met. Therefore, the Court dismisses with prejudice Counts IV-VI and IX-XI on the basis of res judicata.[4]

In Counts VII and VIII, defendant Rose asserts claims for defamation per se and conspiracy against Karum.[5] "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006) (citing *Krasinski v. United Parcel Serv., Inc.,* 530 N.E.2d 468 (Ill. 1988) (citing Restatement (Second) of Torts § 558 (1977).) "In Illinois, there are five categories of statements that are considered defamatory per se: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome and communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication. *Id.* (citing *Van Horne v. Muller*, 705 N.E.2d 898 (Ill. 1998) (citing *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207 (Ill. 1996)).) "A statement is defamatory per se if its harm is obvious and apparent on its face." *Id.* (citing *Owen v. Carr*, 497 N.E.2d 1145 (Ill. 1986)). "A statement may be defamatory per se and still not be actionable" if, inter alia, it is "the expression of an opinion." *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (citing *Solaia,* 852 N.E.2d at 839). "Whether a statement is an opinion or

---

[3] Ancel purports to assert the counterclaims "vicariously" against Lakefront but does not explain the basis for that theory of liability. Accordingly, the Court construes the counterclaims as being asserted only against Karum.

[4] The Count X claim for violation of the California Unfair Competition Law is also subject to dismissal because the statute does not apply extra-territorially. *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (CA 2011) ("Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force.").

[5] *See* n.3.

assertion of fact is a question of law. *Id.* (citing *Moriarty v. Greene*, 732 N.E.2d 730, 740 (Ill. 2000) (citing *Owen*, 497 N.E.2d at 1148 (Ill. 1986).) To determine whether a statement is fact or opinion, courts consider: "(1) whether the statement 'has a precise and readily understood meaning;' (2) whether the statement is factually verifiable; and (3) whether the 'literary or social context signals that [the statement] has factual content.'" *Id.* (citing *Solaia*, 852 N.E.2d at 840). "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* at 1129-30 (citing *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17–21 (1990).)

Rose's defamation claim is based on the allegation that Karum made a public Instagram post that said: "'Anyone working with Candice Rose is condoning harassment tactics and blacklisting.'" (ECF 43 ¶¶ 186-88, 284-86.) This statement does not have a precise and readily understood meaning. What are "harassment tactics" and how does one condone them? Likewise what does it mean to condone blacklisting? The ambiguity of the statement also means it is not objectively verifiable. Rather, it is the expression of Karum's subjective view. As such, it cannot be the basis for a defamation claim.

In Count XI, defendants assert a claim for civil conspiracy. "A civil conspiracy requires an underlying tort in furtherance of the conspiracy." *540 N. Lake Shore Drive Condo. Ass'n v. MCZ Dev. Corp.*, 266 N.E.3d 1193, 1206–07 (Ill. App. Ct. 2025) (citing *Merrilees v. Merrilees*, 998 N.E.2d 147, 162 (Ill. App. Ct. 2013). If the "plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails." *Id.* (quotation and citation omitted). Because the Court has dismissed the underlying claims, the conspiracy claim must also be dismissed.

### Conclusion

For the reasons discussed above, the Court dismisses without prejudice Counts 1-III and VII and VIII and dismisses with prejudice Counts IV-VI and IX-XI. Defendants have fourteen days from the date of this Order to file an amended complaint, if they can do so and remain in compliance with Rule 11.

**SO ORDERED.**                    **ENTERED:  February 2, 2026**

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**