## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

LAKEFRONT PICTURES, LLC, JENNIFER ) 
KARUM and THE CURSE, LLC, )
 )
    Plaintiff, )
 )
    v. )    Case No: 24-cv-01108
 )
JORDAN ANCEL, JORDAN ANCEL )
INTERNATIONAL, LLC, ROCK CITY ROAD )
FILMS LLC, CANDICE ROSE, and DOE )
DEFENDANTS 1-20, )
 )
    Defendants. )
 )
 )
JORDAN ANCEL, JORDAN ANCEL )
INTERNATIONAL, LLC, ROCK CITY ROAD )
FILMS LLC, )
 )
 )
    Counter-Plaintiffs, )
 )
    v. )
 )
LAKEFRONT PICTURES, LLC, JENNIFER )
KARUM and THE CURSE, LLC, )
 )
    Counter-Defendants. )
 )

### AMENDED COUNTERCLAIMS

Defendants/Counter-Plaintiffs Rock City Road Films LLC ("Rock City Road") and Jordan Ancel ("Ancel") (collectively, "Counter-Plaintiffs"), by and through their undersigned counsel, for their Second Amended Counterclaims against Counter-Defendants Lakefront Pictures, LLC

1

("LFP"), Jennifer Karum ("Karum"), and The Curse LLC ("The Curse") (collectively, "Counter-Defendants"), state as follows:

## I. PARTIES

1. Counter-Plaintiff Rock City Road Films LLC ("Rock City Road") is a California limited liability company. In the Producer Agreement described below, it is identified as "Lender" f/s/o ("for the services of") Jordan Ancel. Rock City Road is the successor-in-interest to Jordan Ancel, Inc. ("JAI"), the entity through which Ancel initially operated.

2. All rights, interests, and obligations under the Producer Agreement that were originally held by JAI have been assigned to and are now held by Rock City Road. Counter-Defendants were aware of and acquiesced in this succession and continued to deal with Rock City Road with respect to the Film. Rock City Road has standing to assert all claims arising from the Producer Agreement.

3. Counter-Plaintiff Jordan Ancel is an individual residing in California. Ancel is a professional film producer and entertainment industry professional who personally rendered the producing services for the motion picture *The Unseen* that are governed by the Producer Agreement and related Artist's Inducement.

4. Ancel has produced multiple films and relies on accurate producer credits to secure future employment, producing engagements, and business opportunities.

5. Ancel's professional reputation and future earning capacity are directly tied to accurate attribution of his producing work.

6. Misattribution or omission of Ancel's producer credit on *The Unseen* directly harms his professional reputation, creates a likelihood of confusion about his role in the Film, and diminishes his commercial prospects.

7. Ancel has a direct commercial interest in the truthful presentation to consumers and the trade of the origin, sponsorship, and authorship of *The Unseen*.

8. Counter-Defendant, The Curse LLC is an Illinois limited liability company. In the Producer Agreement, The Curse is identified as the "Production Company" for the feature-length motion picture presently known as *The Unseen*.

9. Counter-Defendant, Lakefront Pictures, LLC is an Illinois limited liability company associated with the development, production, and exploitation of *The Unseen*.

10. LFP is the entity through which Counter-Defendant Karum conducts business under the name "Jennifer A. Goodman" in connection with the marketing and distribution of the Film.

11. Counter-Defendant, Jennifer Karum, is an individual residing in Illinois and is the managing member of LFP and The Curse.

12. Upon information and belief, Karum has conducted business in connection with the marketing and distribution of *The Unseen* under the name "Jennifer A. Goodman." Multiple sources confirm this identity: Reel Chicago has reported on "Chicago filmmakers Jennifer A. Goodman (also known as Jennifer Karum) and Ryan Atkins" in connection with the Film. All references herein to "Goodman" refer to Counter-Defendant Karum.

## II. JURISDICTION AND VENUE

6. The Court has subject-matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 because Counter-Plaintiffs assert claims under the Lanham Act, 15 U.S.C. § 1125(a). These federal claims provide an independent basis for federal question jurisdiction.

3

7. The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case or controversy as Plaintiffs' claims and Counter-Plaintiffs' Lanham Act claims, and are so related that they form part of the same Article III "case or controversy."

8. Venue is proper in this District under 28 U.S.C. § 1391 because Counter-Defendants reside in this District, a substantial part of the events giving rise to these counterclaims occurred in this District (including the execution and performance of the Producer Agreement and the ongoing marketing and distribution of the Film), and Plaintiffs chose this forum by filing their Complaint here.

## III. FACTUAL ALLEGATIONS

### A. The Producer Agreement and Artist's Inducement

9. On or about March 9, 2022, The Curse, as "Production Company," and Rock City Road, as "Lender" f/s/o ("for the services of") Jordan Ancel, entered into a written Producer Agreement regarding Ancel's producing services on the feature-length motion picture presently known as *The Unseen* (the "Producer Agreement").

10. The Producer Agreement is addressed to "Rock City Road Films LLC c/o Jordan Ancel" and recites that it is "by and between The Curse LLC ('Production Company') and Rock City Road Films LLC ('Lender') f/s/o Jordan Ancel ('Ancel') concerning Ancel's services as producer in connection with the feature-length motion picture presently known as THE UNSEEN."

11. Paragraph 1 of the Producer Agreement ("Employment/Services") provides that, provided Ancel is available when and where reasonably required by Production Company, Production Company "shall engage Ancel as Producer for the Picture, and Lender and Ancel accept such employment," and that Ancel will render all services customarily rendered by

producers in the motion picture industry with respect to development, pre-production, production, and post-production.

12. Paragraph 2 ("Term") provides that Ancel's services commence in or about June (in accordance with the schedule determined by Production Company in consultation with Ancel) and continue through complete delivery of the Picture, including all delivery requirements provided by any sales agent and/or distributor.

13. Paragraph 3.1 ("Compensation") provides that Production Company shall pay Rock City Road a flat fee of $5,000, payable in installments including $2,500 upon commencement of principal photography and $500 upon delivery of the final cut of the Picture.

14. Paragraph 3.2 further provides that "Lender shall be entitled to receive Three Percent of One Hundred Percent (3% of 100%) of the 'Net Profits' of the Picture, if any." The timing, manner of payment, and definition of Net Profits (set forth in Exhibit A) are to be "no less favorable than that accorded to any other individual or entity receiving a share of Net Profits on the Picture."

15. Paragraph 4 ("Credit") provides that Production Company "shall accord Ancel a 'Producer' credit on-screen on either no less than the single third producers' card or, at Production Company's discretion, the second producers card, shared only with Ryan Atkins, in the main titles on all positive and/or digital prints of the Picture," with such credits to be of the same size, type, duration, manner of placement, and boldness as other similar credits. The Agreement further provides that "[n]o inadvertent or casual failure by Production Company or any failure by a third party to accord the credit provided herein shall be deemed a breach of this Agreement."

16. Paragraph 5 grants Production Company the right to use Ancel's name in connection with the Picture, provided that no such use in connection with commercial advertising

other than in connection with the Picture is permitted without Ancel's prior written consent, and provided that no use of his name is derogatory or defamatory.

17. Paragraph 6 confirms that Ancel's services are "work-for-hire" and that Production Company shall be the sole owner of the Picture and the results and proceeds of Ancel's services, subject to the compensation and credit obligations described above.

18. Paragraph 9 ("Remedies") states that the sole remedy available to Rock City Road and Ancel for Production Company's breach "shall be an action at law for damages and in no event shall Lender and/or Ancel seek or be entitled to injunctive or other equitable relief for any such breach or non-compliance of this Agreement."

19. Paragraph 11(b)(ii) provides that if Ancel fails to perform, Production Company must notify Ancel in writing specifying the nature of the alleged "Default," and Ancel "shall have 24 hours after receipt of such notice to cure the Default." Only if the Default is not cured within that period may Production Company terminate the Agreement.

20. The Producer Agreement is signed by The Curse and by Rock City Road, by Ancel as its authorized representative.

21. In an attached Artist's Inducement, Ancel personally "consents and agrees to the execution and delivery of said agreement by [Rock City Road]" and "agrees to render all the required, material services therein provided to be rendered by the undersigned," joining in Rock City Road's warranties, representations, agreements, and indemnities.

22. By being expressly identified as the artist "for the services of" whom the Producer Agreement was made and by executing the Artist's Inducement agreeing to be bound by it, Ancel is at least an intended third-party beneficiary of, and a direct contracting party with respect to, the Producer Agreement as to his services, credit, and use of name and likeness.

6

**B. Counter-Plaintiffs' Performance and the Film's Exploitation**

23.     Following execution of the Producer Agreement and Artist's Inducement, Ancel rendered producing services for *The Unseen* as contemplated by the Agreement, including development, pre-production, production, and post-production work.

24.     Among other contributions, Ancel assisted in arranging and facilitating financing for the Picture, including raising equity capital through his industry contacts; participated in casting and attaching talent, including securing the involvement of principal cast; and provided on-set producing services during principal photography.

25.     Principal photography for *The Unseen* was conducted in or about April and June 2022, with Ancel providing on-set assistance as required by the Producer Agreement.

26.     Throughout the period in which Ancel rendered producing services, neither The Curse nor LFP provided Rock City Road or Ancel with any written notice of Default specifying non-performance or any 24-hour cure notice pursuant to Paragraph 11(b)(ii).

27.     The film was completed and has been exploited commercially. Among other things, *The Unseen* received a North American distribution agreement with Gravitas Ventures that included a minimum guarantee paid in installments, and foreign licensing agreements through international sales agent The Coven.

28.     Revenue has been, and continues to be, generated from the distribution and exploitation of *The Unseen* in the United States and abroad through at least nine (9) commercial streaming and video-on-demand platforms, including Amazon Prime Video, Apple TV, Tubi, The Roku Channel, Plex, Hoopla, Fandango at Home, Xumo Play, and YouTube/Google Play.

29.     Despite Rock City Road's and Ancel's performance and the film's exploitation, The Curse has not paid Rock City Road its three percent (3%) of Net Profits as defined in Exhibit

7

A to the Producer Agreement, nor has it provided any Net Profit statements or accounting to Rock City Road.

### C. Withholding of Contractual Payments and Accounting

30.     Rock City Road has received neither Net Profit participation payments nor the financial reporting necessary to calculate those profits, despite *The Unseen*'s distribution and revenue-generating activity.

31.     On information and belief, The Curse and LFP have received monies from Gravitas Ventures, The Coven, and other exploitation of *The Unseen* but have retained these funds without remitting the percentage owed to Rock City Road or providing any statements or accounting of Net Profits.

32.     The Curse did not invoke the Producer Agreement's Default and cure provisions prior to withholding Net Profits or treating Ancel as no longer entitled to participation or credit.

33.     The refusal to pay Net Profits and to provide financial information is inconsistent with the express Net Profit provision and the good-faith expectations inherent in such a profit-participation arrangement.

### D. Manipulation of Screen Credits and Promotional Exclusion

34.     *The Unseen* premiered and has been distributed on various platforms.

35.     In the released version of the Picture, Ancel's "Producer" credit appears in a position and manner less prominent than contemplated by Paragraph 4, including being placed after other producers and being omitted or downplayed in certain promotional materials, in a way that is not inadvertent or casual but reflects deliberate credit decisions by Production Company and LFP.

8

36. LFP and Karum controlled promotional materials and social-media announcements for *The Unseen*, and in at least some such materials they omitted or minimized Ancel's role as a producer while emphasizing other producers' roles.

37. These decisions diminished the professional visibility and reputational value of Ancel's producer credit, which was an important part of the consideration for his services.

38. Producer credit is a material term in a film production agreement, and single-card producer credit can significantly influence a producer's reputation and financial prospects.

**E. Ongoing Consumer-Facing Misrepresentations (Lanham Act Focus)**

38. After the conclusion of prior Illinois state-court proceedings between Ancel and Karum that adjudicated Ancel's defamation, false light, and tortious-interference claims (the "State Court Judgment" entered on or about July 19, 2024), Counter-Defendants continued to market and exploit *The Unseen* in interstate commerce.

39. In connection with this ongoing exploitation, Counter-Defendants have used credits and promotional language that present *The Unseen* to consumers and the trade as a film produced solely by LFP, The Curse, and/or Karum/Goodman, while omitting or materially diminishing Ancel's role and Rock City Road's producer interest.

40. Specifically, after entry of the State Court Judgment on or about July 19, 2024, Counter-Defendants caused *The Unseen* to be offered and promoted on at least nine (9) commercial streaming and video-on-demand platforms in interstate commerce, including Amazon Prime Video, Apple TV, Tubi, The Roku Channel, Plex, Hoopla, Fandango at Home, Xumo Play, and YouTube/Google Play, as well as through the official Lakefront Pictures website at https://www.lakefrontpictures.com/theunseen and a curated press page at

https://www.lakefrontpictures.com/press, using credits, descriptions, and promotional materials that:

a. Present the film using language such as "Goodman wrote and produced The Unseen under her Chicago-based banner Lakefront Pictures alongside Co-Founder Ryan Atkins" (Screen Magazine), "Produced by Goodman's Chicago-based Lakefront Pictures" (ChicagoFilm.com), and "the first feature from neurodiverse multihyphenate Jennifer A. Goodman" (Deadline), thereby identifying the film as produced by and originating solely from LFP, The Curse, and/or Karum/Goodman; and

b. Do not identify Ancel as a producer or recognize Rock City Road's interest, despite the Producer Agreement and Artist's Inducement.

41. On the official film website maintained by Counter-Defendants at https://www.lakefrontpictures.com/theunseen, which prominently advertises the film as "now available on VOD," Counter-Defendants describe *The Unseen* as being produced by "Jennifer A. Goodman" and "Lakefront Pictures," without any mention of Ancel or Rock City Road. The website's "Founders" page at https://www.lakefrontpictures.com/founders describes Co-Founder Ryan Atkins as the "Director of Photography and Post-Production Manager for The Unseen" but makes no reference whatsoever to Ancel's role as Producer. Counter-Defendants further maintain a curated press page at https://www.lakefrontpictures.com/press that aggregates and promotes third-party articles about the film, each of which credits the film solely to Goodman/Karum and Lakefront Pictures while omitting Ancel.

42. On or about June 2024, Screen Magazine published an article reporting that the film would premiere at the Dances With Films festival and stating that "Goodman wrote and produced The Unseen under her Chicago-based banner Lakefront Pictures alongside Co-Founder Ryan

10

Atkins" (available at https://screenmag.com/chicago-fire-breaking-bad-stars-lead-the-unseen-to-dances-with-films-premiere/). The article makes no mention of Ancel. Upon information and belief, this article was published with Counter-Defendants' knowledge and cooperation, and Counter-Defendants continue to promote this article through the curated press page at https://www.lakefrontpictures.com/press.

43.     On or about February 2024, ChicagoFilm.com published an article titled "The Unseen: Family Secrets and the Undead in Chicago-Set Thriller" stating that the film was "Produced by Goodman's Chicago-based Lakefront Pictures" (available at https://chicagofilm.com/2024/02/the-unseen-family-secrets-and-the-undead-in-chicago-set-thriller/). The article makes no reference to Ancel or Rock City Road.

44.     Fangoria, a nationally distributed horror-genre publication, published an article describing Goodman as writing and producing *The Unseen* "under her banner Lakefront Pictures" (available at https://www.fangoria.com/feast-your-eyes-on-first-look-images-of-rj-mitte-starring-the-unseen/), omitting any mention of Ancel or Rock City Road.

45.     Deadline described *The Unseen* as "the first feature from neurodiverse multihyphenate Jennifer A. Goodman," attributing the film's origin exclusively to Goodman without any acknowledgment of Ancel's producing role.

46.     CBS Los Angeles aired a television segment promoting the film (available at https://www.youtube.com/watch?v=g0-yDF1jpOc) that similarly presented the film without crediting Ancel as a producer.

47.     By contrast, the Internet Movie Database ("IMDb") listing for the film at https://www.imdb.com/title/tt13304086 identifies Ancel as a producer alongside Karum/Goodman, Atkins, and Vincent V. Shade. The Snowdance Independent Film Festival

similarly credited "Jennifer Karum, Ryan Atkins, Jordan Ancel, and Vincent V. Shade" as producers. These third-party credits confirm Ancel's producing role and demonstrate that Counter-Defendants' omission of Ancel from their own marketing materials is a deliberate choice, not an inadvertent oversight.

48.     These credits and descriptions are disseminated in commerce as part of *The Unseen*'s marketing and serve as commercial advertising and promotion designed to induce consumers to purchase, rent, or stream the film.

49.     Because the Producer Agreement specifically accords Ancel a "Producer" credit and recognizes Rock City Road's profit participation, Counter-Defendants know that Ancel and Rock City Road are among the producers and originators of the film. Their ongoing omission and misdesignation in consumer-facing materials is therefore knowing and willful.

50.     Counter-Plaintiffs' Lanham Act claims below are based solely on this consumer-facing misdesignation and false advertising occurring after entry of the State Court Judgment. They do not seek to re-litigate or obtain relief for the reputational statements, TRO, or "smear campaign" previously at issue in the Illinois state-court suit.

### F. Post-Judgment Breaches of the Producer Agreement

51.     The State Court Judgment was entered on or about July 19, 2024. Since that date, Counter-Defendants have continued to exploit *The Unseen* through streaming platforms, VOD services, and commercial distribution, generating ongoing revenue from the Film.

52.     Since entry of the State Court Judgment, Counter-Defendants have failed to provide Rock City Road with any Net Profit statements, accounting, or financial reporting for any fiscal period, including but not limited to the fiscal years ending December 31, 2024 and December 31, 2025, despite the ongoing generation of revenue from the Film's exploitation. Each fiscal period

for which Counter-Defendants have failed to provide accounting constitutes a separate, post-judgment breach of the Producer Agreement.

53. Since entry of the State Court Judgment, Counter-Defendants have failed to remit any Net Profit participation payments to Rock City Road despite the Film's continued commercial exploitation. On information and belief, the Film has generated revenues in excess of its production costs during this period, giving rise to Net Profits in which Rock City Road is entitled to share. Each distribution of proceeds without payment to Counter-Plaintiffs constitutes a separate, post-judgment breach.

54. Since entry of the State Court Judgment, Counter-Defendants have created, published, and maintained marketing materials, streaming platform descriptions, and promotional content that omit Ancel's contractually required "Producer" credit, including the specific platform listings, website content, and press materials described in Section E above. Each such omission constitutes a separate, post-judgment breach of the credit provisions of the Producer Agreement.

55. Counter-Defendants have had exclusive control over all marketing, distribution, and financial decisions concerning *The Unseen* during the post-judgment period. Counter-Plaintiffs have had no access to Counter-Defendants' books and records, financial information, or distribution agreements, and are unable to determine the precise amounts owed without a court-ordered accounting.

56. The post-judgment breaches described herein are independent of, and arise from conduct occurring after, the State Court Judgment. These breaches could not have been litigated in the state court action because they had not yet occurred at the time of that proceeding.

57. Counter-Defendants' pattern of withholding accounting, failing to pay Net Profits, and omitting Ancel's credit from marketing materials constitutes a deliberate, ongoing course of

conduct designed to deprive Counter-Plaintiffs of the contracted-for benefits of the Producer Agreement.

## IV. CLAIMS FOR RELIEF

<u>COUNT I</u>
**BREACH OF CONTRACT**
(Rock City Road and Ancel v. The Curse)

58.     Counter-Plaintiffs Rock City Road and Ancel incorporate by reference paragraphs 1–57.

59.     Rock City Road and The Curse entered into a valid, written Producer Agreement, effective as of March 9, 2022, governing Ancel's producing services on *The Unseen*.

60.     By virtue of the Artist's Inducement, Ancel is an intended third-party beneficiary of, and a direct contracting party with respect to, the provisions of the Producer Agreement relating to his services, credit, and use of name and likeness.

61.     Rock City Road and Ancel fully performed all material obligations required of them under the Producer Agreement.

62.     The Curse materially breached the Producer Agreement by, among other things:

a. Failing and refusing to pay Rock City Road the three percent (3%) of Net Profits owed under Paragraph 3.2, including for all fiscal periods following entry of the State Court Judgment on July 19, 2024, during which the Film has continued to generate revenue;

b. Failing to provide Rock City Road with Net Profit statements, profit calculations, or other financial information for any fiscal period, including but not limited to the fiscal years ending December 31, 2024 and December 31, 2025;

c. Failing to accord Ancel the on-screen "Producer" credit described in Paragraph 4 in post-judgment marketing and promotional materials, in a manner that is not "inadvertent or casual" and not attributable solely to a third party; and

d. Treating Ancel as in "Default" and effectively terminating his participation and benefits without providing the written notice and 24-hour opportunity to cure required by Paragraph 11(b)(ii).

63. Counter-Defendants' failure to provide accounting makes precise calculation of damages impossible, but damages exceed $75,000.

64. As a direct and proximate result of these breaches, Rock City Road has suffered damages in the form of unpaid Net Profit participation and lost economic benefits, and Ancel has suffered damages in the form of diminished credit value and the loss of professional and economic opportunities.

65. Pursuant to Paragraph 9 of the Producer Agreement, Rock City Road and Ancel seek an action at law for damages and do not, under this Count, seek injunctive or other equitable relief.

**WHEREFORE**, Counter-Plaintiffs Rock City Road and Ancel respectfully request judgment against The Curse for (a) compensatory damages for breach of contract in an amount to be proven at trial, but not less than $75,000; (b) damages for the loss and diminution of Ancel's contractually promised producer credit; (c) pre- and post-judgment interest; (d) costs; and (e) such other and further legal relief as the Court deems just and proper.

<strong><u>COUNT II</u></strong><br>
<strong>BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</strong><br>
(Rock City Road and Ancel v. The Curse)

66. Counter-Plaintiffs incorporate by reference paragraphs 1–65.

67. The Producer Agreement contains an implied covenant of good faith and fair dealing requiring The Curse to act in a manner that does not deprive Rock City Road or Ancel of the benefits of their bargain.

68. The Curse breached the implied covenant by unreasonably and in bad faith:

a. Deliberately withholding all Net Profit participation and financial information while continuing to receive and retain revenues from the Film's distribution, thereby preventing Counter-Plaintiffs from determining the amounts owed to them;

b. Deliberately diminishing and manipulating Ancel's producer credit in post-judgment marketing materials in a manner inconsistent with Paragraph 4, including structuring promotional materials to attribute the Film solely to Goodman/Karum and Lakefront Pictures; and

c. Failing to provide the contractually required written notice and opportunity to cure before treating Ancel as no longer entitled to participation and credit.

69. The Curse's conduct was a conscious and deliberate act, prompted not by honest mistake or bad judgment, but by a design to appropriate for itself the economic and reputational fruits of Counter-Plaintiffs' performance while denying them the contracted-for benefits.

70. As a direct and proximate result, Rock City Road and Ancel have suffered damages including lost revenues, diminished credit value, and reduced future earning capacity.

71. The post-judgment breaches of the implied covenant described herein are independent of, and arose after, the State Court Judgment and could not have been litigated in the state court action.

**WHEREFORE**, Counter-Plaintiffs request compensatory damages in an amount to be proven at trial, pre- and post-judgment interest, costs, and such other and further legal relief as the Court deems just and proper.

**<u>COUNT III</u>**
**ACCOUNTING (IN AID OF DAMAGES)**
(Rock City Road v. The Curse)

72. Counter-Plaintiff Rock City Road incorporates by reference paragraphs 1–71.

73. Under Paragraph 3.2 of the Producer Agreement, Rock City Road is entitled to three percent (3%) of the Net Profits of *The Unseen* as defined in Exhibit A.

74. The information necessary to determine Net Profits—including gross receipts from Gravitas Ventures and The Coven, distribution fees, recoupment, expenses, and profit allocations—is exclusively within the possession and control of The Curse and LFP. Without access to Counter-Defendants' books and records, Counter-Plaintiffs cannot calculate precise damages. See *Jon Van Dyke v. Lions Gate Entertainment Inc.*, No. 8:13-cv-00454, at *4 (C.D. Cal. Jul. 24, 2013) (accounting claims appropriate where plaintiff seeks "an unascertained sum—a portion of the Film's profits").

75. Rock City Road has not received Net Profit statements, profit calculations, or other financial reporting from The Curse sufficient to determine the amounts owed for any fiscal period.

76. A detailed accounting is necessary to determine the damages owed to Rock City Road for The Curse's breach and to compute Rock City Road's legal damages with reasonable certainty.

77. Rock City Road seeks an accounting as relief in aid of its damages claim, and not as independent equitable relief inconsistent with Paragraph 9 of the Producer Agreement.

**WHEREFORE**, Counter-Plaintiff Rock City Road respectfully requests that the Court order The Curse to render a full accounting of all receipts and disbursements relating to *The Unseen* for the purpose of calculating Rock City Road's legal damages, and that the Court appoint a special master or accountant to review Counter-Defendants' books and records if necessary, and grant such further and related relief as the Court deems just and proper.

<u>**COUNT IV**</u>
**FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)**
(Ancel and Rock City Road v. LFP, The Curse, and Karum)

78. Counter-Plaintiffs Ancel and Rock City Road incorporate by reference paragraphs 1–77.

79. Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits misrepresentations in commercial advertising or promotion of the "nature, characteristics, qualities, or geographic origin" of goods or services. The Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), "addressed only the applicability of section 43(a)(1)(A) to reverse passing off claims" and "explicitly left open the possibility that some false authorship claims could be vindicated under the auspices of [section 43(a)(1)(B)'s] prohibition on false advertising." *Clauson v. Eslinger*, 455 F. Supp. 2d 256, 261–62 (S.D.N.Y. 2006).

80. Counter-Defendants made false and misleading statements of fact in commercial advertising and promotional materials by representing, through streaming platform descriptions, press releases, the Lakefront Pictures website, and curated press pages, that *The Unseen* was

produced solely by Goodman/Karum and Lakefront Pictures while omitting Ancel's role as a contractually credited producer.

81. As described in paragraphs 38–50 above, these representations include statements such as "Goodman wrote and produced The Unseen under her Chicago-based banner Lakefront Pictures alongside Co-Founder Ryan Atkins" (Screen Magazine) and "the first feature from neurodiverse multihyphenate Jennifer A. Goodman" (Deadline). These misrepresentations of authorship constitute misrepresentations of the "nature, characteristics, [and] qualities" of the Film within the meaning of § 1125(a)(1)(B).

82. The omission of Ancel's producer credit and the affirmative attribution of the Film solely to Goodman/Karum and Lakefront Pictures deceives, or has the tendency to deceive, a substantial segment of its audience, including consumers who select films based on producer attribution, industry professionals who evaluate producing credentials for future engagements, and festival programmers and critics who rely on accurate credit information.

83. The false and misleading statements are material because producer credits are material to consumer decision-making in selecting films, and being connected to a successful producer makes it more likely that a product will be chosen by consumers and makes the producer seem more substantial, credible and credentialed. For industry professionals, accurate producer attribution is material to decisions about future collaborations, hiring, and deal-making.

84. *The Unseen* is distributed through national streaming platforms accessible across state lines, including Amazon Prime Video, Apple TV, Tubi, The Roku Channel, Plex, Hoopla, Fandango at Home, Xumo Play, and YouTube/Google Play. The marketing materials and website content are published on the internet and accessible nationwide. The false statements have entered interstate commerce.

19

85.     Counter-Plaintiffs are injured by the false advertising through (a) damage to Ancel's professional reputation as a film producer; (b) loss of future business opportunities and producing engagements due to absence of proper credit; (c) dilution of the value of Ancel's producer credit and associated profit participation; and (d) the unjust commercial advantage gained by Counter-Defendants from falsely presenting themselves as the sole producers of the Film.

86.     Counter-Defendants' false advertising is knowing and willful, as they were parties to the Producer Agreement establishing Ancel's producer credit and Rock City Road's profit participation.

87.     Counter-Defendants have not modified or repackaged *The Unseen* but are distributing the identical film that Ancel helped produce while misrepresenting its authorship and origin in commercial advertising.

88.     Counter-Plaintiffs' false advertising claim is based solely on post-judgment, consumer-facing misrepresentations in commercial advertising and promotion. It is distinct from, and in addition to, any injury arising from the conduct that was the subject of the earlier Illinois state-court case.

89.     As a direct and proximate result of Counter-Defendants' violations of 15 U.S.C. § 1125(a)(1)(B), Ancel and Rock City Road have suffered commercial injury including the loss and diminution of the reputational and market value of their producer credit and consequent harm to their ability to obtain future producing engagements.

**WHEREFORE**, Counter-Plaintiffs respectfully request that the Court (a) declare that Counter-Defendants' conduct violates 15 U.S.C. § 1125(a)(1)(B); (b) enter injunctive relief requiring Counter-Defendants to correct credits and marketing materials to accurately identify Ancel and Rock City Road; (c) award actual damages and Counter-Defendants' profits attributable

20

to the violations, with enhancement for willful conduct; (d) award treble damages under 15 U.S.C. § 1117 to the extent the Court finds the violation was willful; (e) award reasonable attorneys' fees and costs under 15 U.S.C. § 1117; and (f) grant such other relief as the Court deems just and proper.

## COUNT V
## FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A)
(Alternative to Count IV)
(Ancel and Rock City Road v. LFP, The Curse, and Karum)

89. Counter-Plaintiffs incorporate by reference paragraphs 1–88.

90. In the alternative to Count IV, Counter-Defendants' use of *The Unseen* in commerce with false or misleading designation of origin creates a likelihood of confusion as to Counter-Plaintiffs' affiliation, connection, or association with the Film.

91. The Supreme Court in *Dastar* noted that a Lanham Act claim "would undoubtedly be sustained" if a defendant had merely "repackaged" plaintiff's work as its own. 539 U.S. at 31. Here, Counter-Defendants took Counter-Plaintiffs' producing work and passed it off as their own without revision or proper accreditation. The facts "cleanly fit within the exception enunciated by *Dastar*." *Defined Space, Inc. v. Lakeshore East, LLC*, No. 09-cv-1831, 2011 WL 3882714, at *4 (N.D. Ill. Sept. 1, 2011) (denying motion to dismiss where defendant "took [plaintiff's works] and passed them off as their own…without revision or proper accreditation").

92. This case does not involve works in the public domain or modifications to the underlying work. Counter-Defendants are distributing the identical film that Ancel helped produce—the very same *The Unseen*—while stripping Ancel's name from the credits and marketing materials and presenting it as originating solely from LFP, The Curse, and Karum/Goodman.

93. Counter-Defendants' false designation of origin creates a likelihood of confusion as to:

21

a. The affiliation, connection, or association of *The Unseen* with Ancel and Rock City Road; and

b. Whether *The Unseen* is produced, sponsored, or approved exclusively by LFP, The Curse, and/or Karum.

94. Counter-Defendants know these designations are misleading because they were parties to the Producer Agreement and Artist's Inducement.

95. This Count is limited to post-judgment, consumer-facing misdesignations in commercial advertising and promotion and does not seek to re-litigate any claims adjudicated in the state court action.

96. As a direct and proximate result of Counter-Defendants' violations of 15 U.S.C. § 1125(a)(1)(A), Ancel and Rock City Road have suffered commercial injury.

**WHEREFORE**, Counter-Plaintiffs respectfully request the same relief as set forth in Count IV.

### COUNT VI
### DECLARATORY JUDGMENT
(28 U.S.C. § 2201; Fed. R. Civ. P. 57)

(Rock City Road and Ancel v. The Curse, LFP, and Karum)

97. Counter-Plaintiffs incorporate by reference paragraphs 1–96.

98. An actual, justiciable controversy exists between the parties regarding Counter-Plaintiffs' rights under the Producer Agreement to profit participation, accounting, and screen credit; the proper calculation of "Net Profits" under the Producer Agreement; Counter-Plaintiffs' right to prevent continued exploitation of the Film without proper credit and compensation; and whether Counter-Defendants' post-judgment conduct violates the Producer Agreement.

99. Counter-Plaintiffs seek a declaration that:

22

a. Rock City Road is entitled to three percent (3%) of Net Profits from all exploitation of *The Unseen*;

b. Rock City Road is entitled to periodic accounting statements reflecting all receipts and disbursements related to the Film;

c. Ancel is entitled to on-screen "Producer" credit in the form specified in Paragraph 4 of the Producer Agreement in all positive and/or digital prints and in all marketing and promotional materials;

d. Counter-Defendants must provide proper attribution in all current and future marketing and promotional materials; and

e. The proper method for calculating Net Profits under the Producer Agreement and Exhibit A thereto.

100. A declaratory judgment will serve a useful purpose in clarifying and settling the legal relations at issue and will terminate and afford relief from the uncertainty giving rise to the controversy.

101. Counter-Plaintiffs are entitled to declaratory relief under 28 U.S.C. § 2201 to establish their continuing rights under the Producer Agreement going forward.

102. To the extent the declaratory relief sought herein constitutes equitable relief, Counter-Plaintiffs note that it is sought in connection with their Lanham Act claims (for which equitable remedies are expressly authorized under 15 U.S.C. § 1116) and is not barred by the remedies limitation in Paragraph 9 of the Producer Agreement, which applies only to "breach or non-compliance" with the Agreement itself.

103. The post-judgment disputes giving rise to this claim could not have been adjudicated in the state court action because they concern Counter-Defendants' ongoing and

23

continuing obligations under the Producer Agreement that have accrued and been breached since entry of the State Court Judgment.

**WHEREFORE**, Counter-Plaintiffs respectfully request that the Court enter a declaratory judgment establishing Counter-Plaintiffs' rights as set forth above, and grant such other and further relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

Counter-Plaintiffs respectfully request that the Court enter judgment in their favor and against Counter-Defendants, and award the following relief:

1. Compensatory damages for breach of contract and breach of the implied covenant, in an amount to be proven at trial, but not less than $75,000;

2. An accounting and disclosure of all revenues and expenses related to the exploitation of *The Unseen*;

3. Injunctive relief requiring Counter-Defendants to correct all marketing and promotional materials to include proper producer credit for Ancel;

4. A declaratory judgment establishing Counter-Plaintiffs' rights under the Producer Agreement as set forth in Count VI;

5. For the Lanham Act claims: actual damages, Counter-Defendants' profits, and costs of the action pursuant to 15 U.S.C. § 1117;

6. Treble damages under 15 U.S.C. § 1117 to the extent the Court finds Counter-Defendants' violations were willful;

7. Reasonable attorneys' fees under 15 U.S.C. § 1117 in this exceptional case;

8. Pre-judgment and post-judgment interest;

9. Costs of suit; and

24

10. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Counter-Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right under the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.

Dated: February 17, 2026

Respectfully submitted,

**JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, and ROCK CITY ROAD FILMS LLC,**

Defendants/Counter-Plaintiffs

By:

One of Their Attorneys

Alexander Loftus, Esq.
LOFTUS & EISENBERG, LTD.
181 W. Madison, Suite 4700
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com

25

## CERTIFICATE OF SERVICE

I, Alexander N. Loftus, an attorney, hereby certify that on February 17, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing and via U.S. mail to:

George J. Spathis, Esq.
Levelfeld Pearlstein, LLC
120 S. Riverside Plaza, Suite 1800
Chicago, IL 60606
Email: gspathis@lplegal.com

/s/ *Alexander N. Loftus*

26