# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LAKEFRONT PICTURES, LLC, )
JENNIFER KARUM and THE CURSE, )
LLC, )
                        )      **No. 24 C 1108**
      **Plaintiffs,** )
                        )      **Magistrate Judge M. David Weisman**
      **v.** )
                        )
JORDAN ANCEL, JORDAN ANCEL )
INTERNATIONAL, LLC, ROCK CITY )
ROAD FILMS, LLC, CANDICE ROSE, )
and DOE DEFENDANTS 1-20, )
                        )
      **Defendants.** )

## ORDER

The case is before the Court on plaintiffs' motion to dismiss the Ancel defendants' amended counterclaims. For the reasons set forth below, the Court grants in part and denies in part the motion [109].

"The legal standard for a motion to dismiss a counterclaim is the same as for a motion to dismiss a complaint." *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 730 F. Supp. 3d 740, 750 (N.D. Ill. 2024) (citing *Cozzi Iron & Metal Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

Plaintiffs argue that the first three counts of the counterclaim, each of which asserts a state-law claim, must be dismissed because Rock City, the signatory to the Producer Agreement, is a California LLC that has no authority to transact business in Illinois. *See* https://apps.ilsos.gov/businessentitysearch/businessentitysearch (last visited Apr. 20, 2026); 805 Ill. Comp. Stat. Ann. 5/13.70(a) ("No foreign corporation transacting business in this State without authority to do so is permitted to maintain a civil action in any court of this State, until the corporation obtains that authority."). Because Rock City does not have authority to transact business in Illinois and the claims it alleges in Counts I-III of the counterclaim are state law claims, Rock City Road does not have the capacity to assert these claims. *See Coach, Inc. v. Sunstar Video, LLC*, No. 12-194-MJR, 2013 WL 11325068, at *2 (S.D. Ill. Feb. 26, 2013) ("Here, because this Court has original jurisdiction, it will apply federal substantive law to the claims that arise under federal law. As such, the IBCA is inapplicable to these claims. The Court, however, will be

applying Illinois substantive law to the claims in which it has supplemental jurisdiction over, thus the IBCA will apply to those claims.").

Even if that is true, defendants argue that Ancel is a third-party beneficiary of the Producer Agreement and thus can sue to enforce it. "[F]or a nonparty to qualify as a third-party beneficiary, the language of the contract must show that 'the contract was made for the direct, not merely incidental, benefit of the third person.'" *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021) (quoting *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (2009)). This intention "'must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs.'" *Porter v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:25-CV-03011-SEM-DJQ, 2025 WL 1984269, at *8 (C.D. Ill. July 17, 2025) (quoting *Sosa*, 8 F.4th at 639.) The Producer Agreement not only identifies Ancel as a beneficiary of the contract, it also treats Ancel as a party to it. (*See, e.g.,* ECF 111, Ex. A ¶ 1 ("Provided Ancel is available when and where reasonably required by Production Company, Production Company shall engage Ancel as Producer for the Picture, and Lender and Ancel accept such employment, upon the terms and conditions herein contained."); ¶ 3.1 ("As full and complete consideration for all of the undertakings and services of Ancel and all rights and materials herein purchased, granted and agreed to be granted and upon the condition Ancel shall fully and faithfully complete all services that may be required hereunder and provided that Ancel is not in material uncured breach hereof, Production Company shall pay to Lender, and Lender and Ancel shall accept, the following [fee structure.]") ¶ 3.2 ("[U]pon the condition Ancel shall fully and faithfully complete all services that may be required hereunder and provided that neither Lender nor Ancel is in material uncured breach hereof, Lender shall be entitled to receive Three Percent of One Hundred Percent (3% of 100%) of the "Net Profits" of the Picture, if any.")). Because Ancel is expressly named in the Agreement as a beneficiary of it, he can sue to enforce it.

Count I of the counterclaim is a breach of contract claim based on plaintiffs' alleged failure to pay Rock City and Ancel a share of the net profits of the film; give a cure notice before excluding Ancel from post-production and promotion of the film; and give Ancel proper screen credit. The Agreement defines "net profits" in part as:

> [G]ross receipts actually received by Production Company, its affiliates, licensees and assigns in connection with the worldwide licensing, sale, distribution and/or other exploitation of the Picture and/or any ancillary and/or subsidiary rights thereto in perpetuity in any and all media and all rights in connection therewith remaining, if any, after the deduction of only the following: (a) all actual, direct, verifiable, out of pocket, unaffiliated third party costs, charges, expenses and liabilities reasonably incurred in connection with the acquisition, preparation, development, production, completion and delivery of the Picture, including without limitation, repayment of an amount equal to 120% of the financiers' at-risk capital contributions to the Production Company in connection with the Picture . . . .

(*Id.*, Ex. A, ¶ 3.2 & Ex. A.) Plaintiffs argue that the condition precedent to their obligation to pay net profits to Rock City and Ancel was repayment of the financiers' capital contributions to the production company. Plaintiffs say that this condition precedent has not occurred, and defendants

2

do not allege otherwise. Absent an allegation that the conditions precedent to plaintiffs' obligation to pay defendants net profits have all occurred, defendants have not stated a claim for breach of contract with respect to profit participation.

Defendants also argue that plaintiffs breached the Agreement because they did not give defendants notice of default or an opportunity to cure before ending Ancel's participation in the project. (ECF 87 ¶ 26.) The Agreement contemplates two kinds of terminations, for cause:

> If Ancel fails or refuses to perform or comply with any terms or conditions hereof other than by reason of Incapacity ("Default"), then prior to termination of this Agreement by Production Company based upon Default, Production Company shall notify Ancel in writing, specifying the nature of the Default, and Ancel shall have 24 hours after receipt of such notice to cure the Default. If the Default is not cured within the 24 hour period, Production Company may terminate this Agreement forthwith.

(ECF 111, Ex. A ¶ 11(b)(ii)), and without cause:

> Production Company may terminate this Agreement and the Term hereof without Cause and without any further obligation to Ancel other than its obligation hereunder to pay Lender any Fees accrued and otherwise payable solely through the date prior to such termination in accordance with the terms of this Agreement.

(*Id.* ¶ 11(b).) Defendants allege that plaintiffs terminated Ancel for cause without giving him notice and the opportunity to cure, thereby breaching the Agreement. Plaintiffs argue that they terminated the Agreement without cause and thus defendants' allegation that they did not receive notice and time to cure does not state a breach of contract claim. Which method plaintiff used to terminate the Agreement is a question of fact that the Court cannot resolve on a motion to dismiss. For now, it is sufficient that defendants have alleged all the elements of a contract claim.

Finally, defendants allege that plaintiffs breached paragraph 4 of the Agreement, which provides:

> In the event that the Picture is produced by Production Company and provided Ancel performs all of his material services hereunder and that neither Lender nor Ancel is in material uncured breach hereof, Production Company shall accord Ancel a "Producer" credit on-screen on either no less than the single third producers' card or, at Production Company's discretion, the second producers card, shared only with Ryan Atkins, in the main titles on all positive and/or digital prints of the Picture. Such credits shall be of the same size, type, duration, manner of placement and boldness as all other similar credits and shall appear wherever and whenever any other similar credits on the Picture appear or are otherwise listed. All other matters relating to credit shall be determined by Production Company in its sole and exclusive discretion and subject to the standards and operating policies and practices as established and determined by the network, studio or similar party.

(*Id.*, Ex. A ¶ 4.) Defendants allege that "[i]n the released version of the film, Ancel's 'Producer' credit appears in a position and manner less prominent than contemplated by Paragraph 4, including being placed after other producers and being omitted or downplayed in certain promotional materials." (ECF 87 ¶ 35.) They further allege that plaintiffs omitted Ancel's name or minimized his role as a producer in promotional materials and social media announcements they controlled. (*Id.* ¶ 36.) Plaintiffs deny these allegations, but that creates a fact issue that cannot be decided on a motion to dismiss. This breach of contract claim survives.

In Count II of the counterclaim defendants assert a claim for breach of the covenant of good faith and fair dealing. "Under Illinois law, a covenant of good faith and fair dealing is implied in every contract unless expressly disavowed. . . . This covenant requires that contractual discretion be exercised reasonably and not arbitrarily or capriciously." *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 995 F. Supp. 929, 932 (N.D. Ill. 1998). "If discretion is exercised in bad faith, a breach of contract occurs and the court must grant relief to the aggrieved party." *Greer Props., Inc. v. LaSalle Nat. Bank*, 874 F.2d 457, 461 (7th Cir. 1989). Defendants allege that the Producer Agreement vests plaintiffs with discretion over promotional materials and social media announcements and that plaintiffs exercised that discretion unreasonably to diminish "the professional visibility and reputational value of Ancel's produced credit, which was an important part of the consideration for his services." (ECF 87 ¶¶ 36, 37.) That is sufficient to state a breach of contract claim based on the alleged breach of the covenant of good faith and fair dealing.

In Count III, defendants seek an accounting. An accounting is an equitable remedy. *Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005). Paragraph nine of the Producer Agreement states that, "Lender and Ancel acknowledge and agree that the sole remedy available to them for Production Company's breach of or non-compliance with any of the provisions of this Agreement shall be an action at law for damages and in no event shall Lender and/or Ancel seek or be entitled to injunctive or other equitable relief for any such breach or non-compliance of this Agreement." (ECF 111, Ex. A ¶ 9.) Further, a viable claim for accounting requires an allegation that there is no adequate remedy at law, which defendants cannot make given their assertion of a breach of contract claim. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). Because the plain language of the Agreement bars defendants from seeking equitable relief, this count is dismissed.

In Counts IV and V, defendants allege that plaintiffs made false and misleading statements about the film's producers and its origin in violation of the Lanham Act. (ECF 87 ¶¶ 80-81); *see* 15 U.S.C. § 1125(a)(1)(A). "To establish a claim under the false or deceptive advertising prong of the Lanham Act, a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999) With respect to the false designation of origin claim, the Supreme Court has held that:

4

> [R]eading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were ), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). Moreover, "[a]n omission is not actionable as a false advertisement under the Lanham Act, unless the omission is relevant to an affirmative statement that is made false or misleading by its omission." *Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*, No. 618CV02171GAPDCI, 2020 WL 12178190, at *7 (M.D. Fla. Jan. 7, 2020); *see FMC Corp. v. Summit Agro USA, LLC*, No. CV 14-51-LPS, 2014 WL 6627727, at *6 (D. Del. Nov. 14, 2014) ("[W]hile a[] key omission of fact might contribute to a Section 43(a) claim's efficacy, in and of itself an omission is insufficient; the plaintiff must also point to an actionable affirmative statement in order to breathe life into such a claim."); *Milso Indus. Corp. v. Nazzaro*, No. 3:08CV1026 AWT, 2012 WL 3778978, at *23 (D. Conn. Aug. 30, 2012) ("[T]he mere fact that information that was material to consumers was omitted in advertising and promotional materials is not enough to support a claim under the Lanham Act in light of the fact that the Lanham Act imposes no affirmative duty of disclosure.") (quotations, citations and alteration omitted); *Clark Consulting, Inc. v. Fin. Solutions Partners, LLC*, No. 05 Civ. 06296(SAS), 2005 WL 3097892, at *3 & n.38 (S.D.N.Y. Nov. 17, 2005) ("The [Lanham] Act imposes no affirmative duty of disclosure . . . and a claim cannot be based on the failure to disclose a fact.") (citations omitted). Defendants' Lanham Act claims are based on plaintiffs' alleged failure to disclose Ancel as a producer in promotional materials for the film. (ECF 87 ¶¶ 80-87.) Thus, defendants have not stated viable Lanham Act claims.

Finally, in Count VI, defendants ask the Court for a judgment declaring that:

a. Rock City Road is entitled to three percent (3%) of Net Profits from all exploitation of The Unseen;

b. Rock City Road is entitled to periodic accounting statements reflecting all receipts and disbursements related to the Film;

c. Ancel is entitled to on-screen "Producer" credit in the form specified in Paragraph 4 of the Producer Agreement in all positive and/or digital prints and in all marketing and promotional materials;

d. Counter-Defendants must provide proper attribution in all current and future marketing and promotional materials; and

e. The proper method for calculating Net Profits under the Producer Agreement and Exhibit A thereto.

(*Id.* ¶ 99.) "The purposes of declaratory judgments are to 'clarify[ ] and settl[e] the legal relations at issue' and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th

Cir. 1987) (quoting Borchard, *Declaratory Judgments* 299 (2d ed. 1941)). The Court "has discretion to decline to hear a declaratory judgment action, and one of the reasons it will do so is if "the claim for declaratory judgment substantially overlaps with Plaintiff's substantive claims." *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015). Such is the case here. Thus, the Court dismisses with prejudice Count VI.

## Conclusion

For the reasons discussed above, the Court grants without prejudice plaintiffs' motion to dismiss counterclaim Count I for breach of contract based on plaintiffs' alleged failure to pay net profits and the Lanham Act claims in Counts VI and V and dismisses with prejudice the Count III claim for an accounting. The remaining contract claims in Count I and Count II stand.

**SO ORDERED.**                                    **ENTERED: May 6, 2026**

**M. David Weisman**
**United States Magistrate Judge**