**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and THE CURSE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:24-cv-01108 |
| v. | ) ) | Hon. Mag. Judge M. David Weisman |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, and CANDICE ROSE, | ) ) ) ) ) | |
| Defendants. | ) | |

**ANCEL DEFENDANTS' MOTION TO COMPEL PLAINTIFFS'
DISCOVERY RESPONSES**

Defendants and Counter-Plaintiffs Jordan Ancel, Jordan Ancel International, LLC, and Rock City Road Films LLC (the "Ancel Defendants"), under Federal Rule of Civil Procedure 37(a) and Local Rule 37.2, move to compel Plaintiffs Lakefront Pictures, LLC, Jennifer Karum, and The Curse, LLC (collectively, "Plaintiffs") to cure the discovery deficiencies that remain after Plaintiffs' June 5, 2026 amended responses and supplemental production. In support, the Ancel Defendants state:

**INTRODUCTION**

Jennifer Karum wants to claim more than $200,000 in emotional distress damages while disclosing nothing about the emotional distress. She swore in her own restraining-order application—a document she produced in this case—that the Ancel Defendants' conduct "caused me to go on anti-depression medication." (LFP000137.) She now values that distress in excess of $200,000, says she takes a prescribed antidepressant, and admits she received mental health treatment before the events of this case. (Karum Supp. Resp. Interrog. No. 18; id. RTA No. 24.)

Yet she will not name the provider who prescribed the medication, will not produce a single treatment record, and answered the interrogatory asking how the Ancel Defendants caused her injuries by copying her damages answer.

This is the sword-and-shield problem in its starkest form, and the record removes every excuse for it. The Ancel Defendants have accepted Attorneys'-Eyes-Only treatment for all of Karum's mental health and medical records; confidentiality is resolved. They told Karum a year ago how to end the dispute without producing anything—by stipulating that she does not seek emotional distress damages. (Apr. 8, 2026 Letter.) She declined. And after a court-ordered conference and a 1,514-document supplemental production spanning more than 6,400 pages, Karum has handed over the Producer Agreement, distribution emails, and thousands of social-media screenshots—but not one mental health record, not one provider name, not one native file, and no privilege log. She produced everything except the proof of the claim she insists on keeping.

The remedy is an election. A plaintiff cannot demand a quarter-million dollars for a clinical condition and simultaneously withhold the evidence of that condition from the party she blames for it. Karum must choose: withdraw her claim for emotional distress damages, or comply fully and produce the records that claim necessarily places at issue. She may not keep the claim and bury its foundation. And the delay is its own prejudice. Plaintiffs filed this case more than two years ago; fact discovery closes on September 14, 2026; and the Ancel Defendants need Karum's records now—to take her deposition with those records in hand and to move for summary judgment before discovery closes. Continued withholding does not protect Karum; it runs out the clock. The Ancel Defendants therefore ask the Court (1) to order Karum to elect, within fourteen days, between a binding stipulation withdrawing all emotional distress damages

2

and complete supplementation of the emotional distress discovery, on pain of preclusion under Rule 37(c)(1); and to compel Plaintiffs to (2) produce their electronically stored information in native format with metadata, (3) serve a privilege log, and (4) answer Interrogatory 25.

## RELEVANT BACKGROUND

Plaintiffs filed this action in 2024. The Ancel Defendants answered and asserted counterclaims, and the parties consented to this Court's jurisdiction for all proceedings. (ECF 46, 48.) The Ancel Defendants served Interrogatories 18 through 25, Requests to Admit 24 through 26, and Requests for Production 22 through 34, directed at the nature, scope, and basis of Karum's individual emotional distress claim, and Requests for Production 1 through 21, directed at the defamation and business-tort claims and counterclaims.

Plaintiffs' initial responses to the emotional-distress discovery, served April 2, 2026, refused every interrogatory and request to admit on a single "personal medical information" objection and provided no substantive answer. On April 8, 2026, undersigned counsel sent Plaintiffs' counsel, George J. Spathis, a fifteen-page letter detailing the deficiencies in those responses. That letter offered Plaintiffs a way to avoid producing anything on the emotional distress claim: a binding stipulation that they would not seek emotional distress damages under any count. Plaintiffs did not stipulate. On May 15, 2026, undersigned counsel and Mr. Spathis conferred by telephone. The same day, Mr. Spathis confirmed the conference in writing, called it "productive," and committed that Plaintiffs would complete their document production and serve amended discovery responses, with the Ancel Defendants reserving all rights. On May 19, 2026, the Court entered a schedule requiring amended discovery responses by June 5, 2026, and closing fact discovery on September 14, 2026. (ECF 123.)

3

On June 5, 2026, Plaintiffs served amended and supplemental responses and a supplemental document production. The production bears Bates numbers LFP000681 through LFP007113—1,514 documents spanning more than 6,400 pages. On June 9, 2026, undersigned counsel sent Mr. Spathis a second deficiency letter identifying the deficiencies that survived the June 5 supplementation and again offered to confer. Those deficiencies remain uncured. This case is now more than two years old; fact discovery closes September 14, 2026; and the Ancel Defendants still lack the discovery they need to depose Karum about her claimed distress and to move for summary judgment.

## COMPLIANCE WITH LOCAL RULE 37.2

This motion satisfies Local Rule 37.2 and this Court's case procedures, which require a good-faith effort to resolve discovery disputes through communication that takes place face-to-face or by telephone, not by the exchange of correspondence alone. Stating with specificity when and how the Ancel Defendants complied: on May 15, 2026—the date the Court ordered the parties to confer (ECF 121)—undersigned counsel and Plaintiffs' counsel George J. Spathis conferred by telephone in a good-faith effort to resolve the disputes presented here. During that conference, counsel discussed each category of deficiency; Mr. Spathis agreed that Plaintiffs would complete their document production and serve amended discovery responses; and the Ancel Defendants reserved all rights. That same day, Mr. Spathis confirmed the conference in writing and called it "productive." Counsel also exchanged two detailed deficiency letters—fifteen pages on April 8, 2026, and a further letter on June 9, 2026—and the Ancel Defendants offered to confer again after Plaintiffs served their June 5 supplementation.

The conference resolved confidentiality—the Ancel Defendants accept Attorneys'-Eyes-Only treatment for Karum's medical and mental health records—and narrowed the privilege-log

dispute, but it did not resolve the matters presented here, each of which turns on a contested question of scope, relevance, or privilege rather than on any misunderstanding. The parties are at a genuine impasse, and further conference would not change it.

## LEGAL STANDARD

A party may move to compel when an opposing party fails to answer an interrogatory under Rule 33 or fails to produce documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). An evasive or incomplete answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4). The scope of discovery reaches "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and information within that scope "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The party resisting discovery bears the burden to substantiate its objections. An objection to an interrogatory must "be stated with specificity," and "[a]ny ground not stated in a timely objection is waived." Fed. R. Civ. P. 33(b)(4). Generalized objections that a request is "vague," "overly broad," "unduly burdensome," or "harassing" do not satisfy these requirements, and a party that rests on such boilerplate while withholding privileged material without a log forfeits the protections it claims. *See United Auto. Ins. Co. v. Veluchamy*, 747 F. Supp. 2d 1021, 1026–28 (N.D. Ill. 2010).

## ARGUMENT

**I.   KARUM MUST ELECT BETWEEN HER EMOTIONAL DISTRESS CLAIM AND DISCLOSURE OF ITS BASIS.**

**A. Karum Has Placed Her Mental Condition in Controversy and Cannot Wield the Claim While Withholding Its Proof.**

A plaintiff who seeks damages for a mental condition puts that condition in issue and must answer for it in discovery. The Supreme Court settled the principle: a party "who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent

of such asserted injury." *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). The Seventh Circuit applies that principle to emotional distress claims directly: "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006). And this District draws the line that decides this motion: a party "cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999); *accord Krocka v. City of Chicago*, 193 F.R.D. 542, 544 (N.D. Ill. 2000).

Karum has injected exactly that. She pleads a standalone claim for intentional infliction of emotional distress (Am. Compl. ¶¶ 215–218 (Count IX)), and she pleads that the Ancel Defendants "purposely exploited Karum's sensitivities and vulnerability associated with her being neuro-diverse" and "weaponize[d] Karum's autism" (id. ¶¶ 74–75, 218). She values the resulting distress in excess of $200,000, says she sought medical attention, and says she takes a prescribed antidepressant. (Karum Supp. Resp. Interrog. No. 18.) Most tellingly, Karum already disclosed the core of this claim under oath. In her sworn Request for Civil Harassment Restraining Order, filed in Los Angeles Superior Court and produced in this case, she stated: "His threats, harassments caused me extreme emotional distress. The stress he provoked caused me to go on anti-depression medication." (LFP000137.) A litigant who swears in one court that the opposing party's conduct drove her to clinical medication cannot tell another court that the same subject is "personal medical information" beyond discovery. Her objection (Karum Supp. Resp. Interrog. Nos. 20, 21, 23) is not a privilege; it is a refusal.

This is not garden-variety distress. Garden-variety distress is limited to "humiliation, embarrassment, and other similar emotions" and excludes "any resulting symptoms or

conditions," including "sleeplessness, nervousness, [and] depression." *Flowers v. Owens*, 274 F.R.D. 218, 220 (N.D. Ill. 2011) (quoting *Santelli*, 188 F.R.D. at 309); *see Vann-Foreman v. Ill. Cent. R.R. Co.*, No. 1:19-cv-08069 (N.D. Ill. Oct. 23, 2020). Karum alleges depression and anxiety, ongoing treatment, prescription medication, and exploitation of her autism—every marker that takes a claim past garden-variety. Nor can she avoid that result by promising not to introduce her records at trial: "[t]he critical inquiry is the nature and severity of the claimed emotional harm," not the plaintiff's litigation choice about what to offer. *Flowers*, 274 F.R.D. at 220. Even the most plaintiff-favorable recent authority confirms the point; waiver occurs when a plaintiff "seeks damages for emotional distress for which they later sought psychotherapeutic treatment or otherwise affirmatively puts the privileged communication directly at issue." *McConico v. Vill. of Carol Stream*, No. 1:24-cv-01654 (N.D. Ill. June 10, 2025). Karum has done exactly that.

Because Karum's mental condition is in controversy and the Ancel Defendants have accepted Attorneys'-Eyes-Only treatment, the only question is whether Karum will support the claim or keep it. The Ancel Defendants do not ask the Court to force a choice for her—only to require her to make one.

## B. The Election the Court Should Order.

A year ago, the Ancel Defendants offered Karum a clean exit: a binding stipulation that she would not pursue emotional distress damages, which "would moot the discovery dispute." (Apr. 8, 2026 Letter.) Karum neither stipulated nor complied. She instead served answers that engage the subject just enough to keep the claim alive while disclosing nothing that would let the Ancel Defendants test it. That middle path is the one option the Rules do not allow. A plaintiff who keeps a claim must support it; a plaintiff who will not support it must give it up.

7

The Court should require Karum to choose. Within fourteen days, she should either (i) file a binding stipulation that she withdraws and will not seek emotional distress damages under any count, including her intentional-infliction claim (Count IX), and amend her pleading accordingly; or (ii) fully comply—answer Interrogatories 19, 20, and 21, identify every treating provider, and produce all responsive mental health and medical records under the accepted Attorneys'-Eyes-Only designation. If she does neither, the consequence the Federal Rules prescribe should follow: preclusion of all emotional distress evidence at trial. The remaining subsections explain why each component of "full compliance" is required and why the June 5 supplementation did not provide it.

**C. Interrogatory 19 Is a Verbatim Copy of the Interrogatory 18 Answer.**

Interrogatory 19 asked Karum, for each emotional injury she claims, to identify the specific act by Ancel that caused it, when it first manifested, and how she determined causation. Rule 33 requires that the answer be "answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Karum instead reproduced, nearly word for word, her answer to Interrogatory 18—the damages interrogatory. (Compare Karum Supp. Resp. Interrog. No. 18 with id. No. 19.) The response identifies no act that caused any specific injury, states no date of onset beyond "[t]hese conditions began," and never explains how Karum determined causation—an omission made conspicuous by her admission that no provider has connected the Ancel Defendants' conduct to any diagnosed condition. (Id. RTA No. 25.) Answering a causation interrogatory with a copy of a damages answer is the definition of an evasive, incomplete response, which the Rules treat as no response at all. Fed. R. Civ. P. 37(a)(4).

**D. Karum Cannot Use Rule 33(d) to Avoid Naming Her Own Treatment Providers.**

Interrogatory 20 asked Karum to identify each mental health provider who has treated her since January 1, 2020, with each provider's name, address, dates of treatment, diagnoses, and

prescribed medications. Without that information, the Ancel Defendants cannot subpoena a record, depose a treater, or retain a responsive expert. Karum named no provider. She objected that the request is "overly broad, harassing, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence," then invoked Rule 33(d) to offer documents "regarding her treatment since mid-2023," contingent on an Attorneys'-Eyes-Only designation. (Karum Supp. Resp. Interrog. No. 20.) The response fails three times over.

First, Rule 33(d) does not apply. The business-records option is available only when "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). The identity of one's own doctors is not derived from records; it is personal knowledge. The Seventh Circuit holds that "a party that knows or has access to an interrogatory answer may not use Rule 33(c) to avoid furnishing a responsive interrogatory answer where . . . the answer cannot be ascertained from the documents." *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). Karum knows who prescribed her antidepressant. Rule 33(d) does not excuse her from saying so. Second, the answer is conditional—Karum will produce only if the Ancel Defendants first accept her confidentiality terms, *terms they have already accepted*, which moots the condition and exposes it as a stall. Third, the response is truncated to treatment "since mid-2023," even though Karum admits she received treatment before June 2022. (Karum Supp. Resp. RTA No. 24.) Pre-existing treatment bears directly on causation, and the Ancel Defendants are entitled to learn whether Karum's depression predates the conduct she blames for it.

### E. A Single 2011 Form Does Not Answer Interrogatory 21, and the Production Confirms the Withholding.

Interrogatory 21 asked whether Karum had any mental health diagnoses, conditions, or treatments before June 2022—including conditions related to her autism—and, if so, to identify each. Karum offered a single 2011 "Physical/emotional impairment disclosure form." (Karum

9

Supp. Resp. Interrog. No. 21.) Fifteen of the sixteen subparts of Request for Production 24 receive that same single form (Karum Supp. Resp. RFP Nos. 24(a)–(k), (m)–(p)); the sixteenth, subpart 24(l), draws only "there are no responsive documents." A form from 2011 cannot account for the treatment Karum admits she received before June 2022 (id. RTA No. 24), and it leaves the years from 2011 through mid-2023 entirely undisclosed.

The supplemental production removes any doubt that records are being withheld rather than that none exist. Karum produced more than 6,400 pages—the Producer Agreement, distribution emails, festival correspondence, a tax-form exchange, and thousands of social-media screenshots—without a single mental health treatment record, prescription record, or provider record among them. A party cannot satisfy its disclosure obligations by burying the opposing party in unrelated paper; a plaintiff may not "satisfy its duty to disclose damages by producing quantities of . . . documents and then letting [the defendant] take depositions in which it could try to piece together a damages theory from those fragments." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 605 (7th Cir. 2024). Karum produced the fragments of every claim except the one she values at $200,000.

### F. Karum Must Produce Her Mental Health Records (Attorneys'-Eyes-Only Accepted).

Requests for Production 22, 23, 24, 29, 30, and 31 seek Karum's mental health treatment records, prescription records, pre-existing-condition records, post-2022 treatment records, billing and insurance records, and provider communications. Karum agreed to produce only treatment "since mid-2022," again contingent on confidentiality. (Karum Supp. Resp. RFP Nos. 22, 23, 29, 30, 31.) Because Karum's psychological state is in issue, "the defendant is entitled to discover any records of that state." *Doe*, 456 F.3d at 718. Electronic data and "documents" under Rule 34 include these records, and a responding party "must . . . translate" inaccessible data "into usable

form." *See Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383–84 (7th Cir. 1993). With Attorneys'-Eyes-Only accepted, the Court should order production of all responsive mental health and medical records, pre- and post-June 2022, under that designation—unless Karum elects to withdraw the claim instead.

## II. PLAINTIFFS MUST PRODUCE ELECTRONICALLY STORED INFORMATION IN NATIVE FORMAT WITH METADATA.

The Ancel Defendants' Request for Production Instruction No. 12 specified that electronic documents be produced "in their native format with all metadata preserved." Plaintiffs ignored it twice. Their entire production—the original tranche and the June 5 supplement, Bates LFP000001 through LFP007113—consists of PDF image files and print-to-PDF screenshots, more than half of which carry no electronic text. No native-format production has been made.

Rule 34 governs the form of production, and Plaintiffs disregarded it. When a request specifies a form for producing electronically stored information, the responding party must produce in that form or, if it objects, "state the form or forms it intends to use." Fed. R. Civ. P. 34(b)(2)(D). Plaintiffs did neither. They did not object to the native-format specification, did not identify an alternative form, and simply produced screenshots. That forfeits any objection to form and entitles the Ancel Defendants to the format they requested. The leading authority in this District confirms the point by negative implication: a court "will not compel the production of metadata when a party did not make that a part of its request," *Autotech Techs. LP v. Automationdirect.Com, Inc.*, 248 F.R.D. 556, 559–60 (N.D. Ill. 2008)—but the Ancel Defendants did make it part of their request. Metadata such as creation and modification dates, authorship, and message threading is relevant to authenticity, custody, and the timeline of the parties' communications, and converting native files to screenshots strips it away. Because electronic data is discoverable under Rule 34 and must be produced in usable form, *Crown Life*,

11

995 F.2d at 1383–84, the Court should order Plaintiffs to reproduce their electronically stored information in native format with metadata intact, or to state a specific basis for withholding it.

### III.  PLAINTIFFS MUST ANSWER INTERROGATORY 25 AND IDENTIFY KARUM'S OTHER LITIGATION.

Interrogatory 25 asked Plaintiffs to identify each lawsuit, arbitration, administrative proceeding, or formal claim by or against Karum or any Plaintiff entity within the last ten years. Plaintiffs objected that the request is "burdensome, harassing, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence," and refused to answer. (Pls.' Am. Resp. Interrog. No. 25.) The objection is boilerplate, it invokes a relevance standard the 2015 amendments removed from Rule 26(b)(1), and it is wrong.

Karum's extensive litigation history is relevant under Rule 26(b)(1) on at least three grounds. It bears on her credibility. It bears on the pattern of conduct alleged in the Ancel Defendants' counterclaims. And it bears directly on her emotional distress claim: a plaintiff who attributes depression and anxiety to the Ancel Defendants must account for other sources of stress, including the litigation stress of other proceedings she is prosecuting or defending. That information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Nor is the request burdensome—a party can identify her own lawsuits, and publicly available records already reflect that Karum is a party to several additional matters she has not disclosed. Plaintiffs must answer Interrogatory 25 for all litigation within the past ten years.

### IV.  THE COURT SHOULD AWARD EXPENSES AND PROVIDE FOR PRECLUSION IF KARUM NEITHER COMPLIES NOR WITHDRAWS.

Rule 37(a)(5)(A) provides that, when a motion to compel is granted, the court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney's fees, absent circumstances that make an award unjust. Plaintiffs

12

were on specific written notice of each deficiency in the April 8 and June 9 letters and through a telephonic conference, were offered a no-cost exit by stipulation, and instead served supplemental responses that repeated the same evasions. An award of the Ancel Defendants' reasonable expenses is warranted.

Preclusion is the right backstop to the election. A party that fails to provide information required by Rule 26(a) may not use that information at trial, and the Seventh Circuit holds that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). That rule applies with full force to a plaintiff who refuses to disclose the basis of a damages claim: a party may not "satisfy its duty to disclose damages by producing quantities of . . . documents," *Chicago Joe's*, 94 F.4th at 605, and exclusion of the damages evidence follows where the opposing party is left unable to investigate the claim, *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011). The Seventh Circuit has recognized that the probable sanction for a plaintiff who refuses to support an emotional distress claim through discovery is "an order striking [the plaintiff's] claim for damages on account of mental and physical distress." *Reise v. Bd. of Regents*, 957 F.2d 293, 295 (7th Cir. 1992). The Ancel Defendants do not ask the Court to strike the claim now. They ask the Court to order the election and to provide that, if Karum neither withdraws the claim nor fully complies within the time set, she is precluded under Rule 37(c)(1) from offering any evidence of emotional distress at trial.

13

**CONCLUSION**

For these reasons, the Ancel Defendants respectfully request that the Court enter an order:

(1) directing that, within fourteen days, Jennifer Karum shall elect one of the following, and that if she does neither she shall be precluded under Rule 37(c)(1) from offering any evidence of emotional distress at trial—including testimony regarding depression, anxiety, treatment, medication, or any damages valuation based on those conditions:

(a) file a binding stipulation that she withdraws and will not seek emotional distress damages under any count of the operative pleading, including her claim for intentional infliction of emotional distress (Count IX), and amend her pleading to conform; or

(b) serve complete, non-evasive supplemental answers to Interrogatories 19, 20, and 21—identifying each specific act causing each claimed injury and when it manifested; identifying by name, address, and dates of treatment each mental health provider who has treated Karum from January 1, 2020, to the present, with all diagnoses and medications; and identifying each pre-existing mental health condition, when first diagnosed, by whom, and the treatment provided—and produce all documents responsive to Requests for Production 22, 23, 24, 29, 30, and 31, pre- and post-June 2022, under the Attorneys'-Eyes-Only designation the Ancel Defendants have accepted;

(2) compelling Plaintiffs, within fourteen days, to produce all electronically stored information in native format with metadata as specified in Instruction No. 12, or to state with specificity the basis for withholding native files;

(3) compelling Plaintiffs, within fourteen days, to serve a Rule 26(b)(5)(A) privilege log for all withheld documents (excepting attorney-client communications with counsel of record

14

and work product prepared for this litigation), and to state for Requests for Production 17 through 20 what has been produced and what is withheld;

(4) compelling Plaintiffs, within fourteen days, to answer Interrogatory 25 and identify all litigation involving Karum or any Plaintiff entity within the past ten years;

(5) awarding the Ancel Defendants their reasonable expenses, including attorney's fees, incurred in making this motion under Rule 37(a)(5)(A); and

(6) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,
**LOFTUS & EISENBERG, LTD.**

By: /s/ *Alexander N. Loftus*

Alexander N. Loftus
181 W. Madison Street, Suite 4700
Chicago, Illinois 60602
(312) 899-6625
alex@loftusandeisenberg.com
*Attorneys for Defendants Jordan Ancel, Jordan Ancel International, LLC, and Rock City Road Films LLC*

**CERTIFICATION UNDER LOCAL RULE 37.2**

Undersigned counsel certifies that, before filing this motion, counsel for the Ancel Defendants conferred in good faith with counsel for Plaintiffs in an effort to resolve the disputes described in this motion without court intervention, including by telephone conference on May 15, 2026, between Alexander N. Loftus for the Ancel Defendants and George J. Spathis for Plaintiffs, and through written correspondence dated April 8 and June 9, 2026. Those efforts resolved the question of confidentiality and narrowed the privilege-log dispute but did not resolve the matters presented here.

/s/ *Alexander N. Loftus*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Alexander N. Loftus*