**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and THE CURSE, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:24-cv-01108 |
| | ) | |
| v. | ) | Hon. Mag. Judge M. David Weisman |
| | ) | |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, and CANDICE ROSE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

**THE ANCEL DEFENDANTS' PARTIAL MOTION TO DISMISS THE
AMENDED COMPLAINT UNDER RULE 12(b)(6)**

Defendants Jordan Ancel, Jordan Ancel International, LLC, and Rock City Road Films LLC (the "Ancel Defendants"), under Federal Rule of Civil Procedure 12(b)(6), move to dismiss Count V and Count VIII, Count IV as to Jordan Ancel individually, and Count I in part, and to dismiss Counts VII, IX, X, and XI to the extent stated below. In support, the Ancel Defendants state:

1. Plaintiffs amended after this Court (Cummings, J.) denied dismissal of the original tort claims. Their new pleading, filed without leave of court, attaches the two written agreements and the communications on which their claims rest; those exhibits are part of the pleading the Court reads on this motion, and where they contradict the allegations, they control.

2. The exhibits and Plaintiffs' own allegations defeat the claims they touch. The attached Producer Agreement and Plaintiffs' allegation that Ancel performed services and was paid negate the total failure of consideration that rescission requires (Count V). The attached Non-Disclosure Agreement—governed by California law—shows Ancel signed only as his LLC's

1

agent, leaving a conclusory alter-ego theory to carry the entire personal claim against him (Count IV). And Plaintiffs' own allegations show that the statement Ancel made in his own lawsuit is absolutely privileged (Count I, in part).

3.      Karum's new individual interference claim pleads only a hope of unidentified future acting work, not a reasonable expectancy of a specific business relationship of her own (Count VIII).

4.      As to the claims this Court sustained, the amendment supplies narrower grounds— not new exhibits, but new allegations: Plaintiffs now allege that Rose remained Karum's friend into 2023, which places the alleged Ancel–Rose conspiracy after the only 2022 conduct that states a tort against Ancel, and they now attribute the interference with specific relationships to Rose and Amanda Gecewicz rather than Ancel. The Ancel Defendants answer Count III (false light), Count VI (the inducement binds Ancel directly), the NDA claim against the entity Ancel International, and the portions of Counts I, VII, and IX that survive.

The grounds are set out in the accompanying memorandum. The Ancel Defendants ask the Court to dismiss Count V and Count VIII, to dismiss Count IV as to Jordan Ancel individually, to dismiss Count I in part, to dismiss Counts VII, IX, X, and XI to the extent they rest on non-actionable opinion, truthful information, privileged statements, or acts the Amended Complaint attributes to others, and to grant such further relief as is just.[1]

---

[1] The undersigned appreciates this is a lot of briefing for a small case but attacking the pleadings is the most efficient course to avoid far more significant expenditures of time later. Defendants counsel is engaged on a flat fee basis with the goal of expediting the litigation short of trial.

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

A plaintiff is the master of the complaint, but the complaint binds its master. Plaintiffs' pleading attaches the operative contracts and the messages, posts, and emails on which their claims depend, and the Amended Complaint adds new allegations and new exhibits besides. Those exhibits are part of the pleading: the Court reads them on a Rule 12(b)(6) motion, and where an exhibit contradicts an allegation, the exhibit controls. *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013*)*. A plaintiff who attaches documents that establish a defense or negate an element has pleaded itself out of court. *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025).

That is what happened here on four claims:

**Rescission (Count V).** The attached Producer Agreement fixed Ancel's pay at a flat fee and made that payment a full discharge of the company's obligations, whether or not it used his services. Plaintiffs allege that Ancel did perform—he introduced investors who contributed capital and offered script ideas Karum used. Partial performance and payment cannot be a total failure of consideration, and rescission requires nothing less.

**Personal liability on the NDA (Count IV).** The attached Non-Disclosure Agreement is between Lakefront and Jordan Ancel International, LLC; Ancel signed only as that company's CEO; and the agreement is governed by California law. The sole route to Ancel personally is alter ego, which California—like Illinois—will not infer from the four conclusory labels Plaintiffs plead. The count compounds the problem by alleging breach of the wrong agreement, with damages to the wrong plaintiff.

3

**Defamation (Count I, in part).** The accusation Plaintiffs press hardest—that Karum falsely accused Ancel of assault—is absolutely privileged to the extent Ancel made it in his own lawsuit. His out-of-court repetition of it, and his 2022 statements that Karum misappropriated funds and broke into hotel rooms, are not privileged; the Ancel Defendants answer those. The privilege narrows Count I; it does not defeat the claim, and the Ancel Defendants do not move on the companion false-light count.

**Karum's interference claim (Count VIII).** Karum's new personal claim pleads a hope of landing unidentified future acting roles. A hope is not the reasonable expectancy of a specific business relationship the tort requires.

The strong, never-adjudicated grounds are Counts V and IV: rescission, which Plaintiffs' own contract and allegations foreclose, and personal liability on the NDA, which rests on a conclusory alter-ego theory California law will not credit. The Ancel Defendants move to dismiss Count V and Count VIII, Count IV as to Jordan Ancel individually, and Count I in part, and— because the amendment reopened the claims that survived the first motion—to dismiss Counts VII, IX, X, and XI to the extent the new allegations show they rest on opinion, truthful information, privilege, or acts the pleading now lays at others' feet. They answer Count III, Count VI, the NDA claim against the contracting entity, and the parts of Counts I, VII, and IX that survive.

4

## BACKGROUND

Plaintiffs filed suit in February 2024 alleging a smear campaign arising from a soured film collaboration. (Dkt. 1.) The Ancel Defendants moved to dismiss the tortious-interference, emotional-distress, and conspiracy claims; the Court denied that motion and directed an answer. (Dkt. 42.) After discovery, Plaintiffs amended on June 19, 2026. (Dkt. 130 ("FAC").) The Amended Complaint adds two new claims, adds Rose to several counts, drops the Doe defendants, and—central here—attaches the Producer Agreement (FAC Ex. A), the Non-Disclosure Agreement (FAC Ex. B), and the messages and posts alleged to compose the campaign (FAC Group Exs. E–G). The agreements and the core communications were attached to the original 77-page complaint as well; the Amended Complaint adds the Rose–Karum messages (Group Ex. E) and the Rose–Ancel coordination (Group Ex. G), and the new allegations described below.

The Producer Agreement is between Plaintiff The Curse, LLC and Rock City Road Films LLC, the loan-out for Ancel's services. (FAC Ex. A.) It set a flat fee of $5,000 (id. § 3.1) and stated that the company had "fully discharged its obligations" by paying that fee, and was not obligated to use Ancel's services or their results (id. § 3.3); the Producer Agreement is governed by Illinois law (id. § 15). The Non-Disclosure Agreement is between Lakefront and Jordan Ancel International, LLC; Ancel signed as "CEO, Jordan Ancel Inter[national], LLC," and the agreement is governed by California law. (FAC Ex. B § 17.) Plaintiffs allege that Ancel introduced Lakefront to "additional investors who contributed capital" and offered "helpful ideas that Karum incorporated into the script." (FAC ¶ 57.)

## LEGAL STANDARD

To survive dismissal, a complaint must plead facts that state a claim plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Threadbare recitals of a claim's elements and conclusory assertions are not entitled to the presumption of truth, and a "formulaic recitation of a cause of action's elements will not do." *Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d 599, 602–03 (7th Cir. 2009). On a Rule 12(b)(6) motion the Court considers the exhibits Plaintiffs attached, and "where an exhibit and the complaint conflict, the exhibit typically controls"; if the attached document "reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." *Bogie, 705 F.3d at 609*. The face of the complaint includes those incorporated documents, and where they "admit[] all the ingredients of an impenetrable defense," dismissal under Rule 12(b)(6) follows. *Holmes, 141 F.4th at 822*.

## ARGUMENT

I. **THE COURT SHOULD DISMISS THE RESCISSION CLAIM BECAUSE THE ATTACHED PRODUCER AGREEMENT AND PLAINTIFFS' OWN ALLEGATIONS OF PERFORMANCE AND PAYMENT NEGATE THE TOTAL FAILURE OF CONSIDERATION RESCISSION REQUIRES (COUNT V).**

The Producer Agreement is governed by Illinois law (FAC Ex. A § 15), under which rescission is an extraordinary remedy. "Not every breach of contract will warrant" it; a party may rescind only for "substantial nonperformance" or "a total breach" so material that it justifies treating the whole transaction as at an end. *Finke v. Woodard,* 122 Ill. App. 3d 911, 917 (Ill. App. Ct. 4th Dist. 1984). And because rescission unwinds the bargain, it is available only where the court can restore the parties to the status quo as it existed before the contract. *Id.* Count V alleges a "complete and total failure of consideration." (FAC ¶ 195.) Plaintiffs' own pleading refutes that label.

Two documents Plaintiffs put before the Court establish performance and payment. The Producer Agreement set a flat fee of $5,000, payable in installments tied to the start of photography and delivery, and specified that the company "shall have fully discharged its obligations" by

6

paying it—and was "not obligate[d] … to use Ancel's services, or the results of such services." (FAC Ex. A § 3.1 (fee); id. § 3.3 (discharge; no obligation to use services).) Plaintiffs then allege that Ancel did perform: he "introduced [Lakefront] to additional investors who contributed capital," and "offered helpful ideas that Karum incorporated into the script." (FAC ¶ 57.) A producer who supplied funding sources and accepted script contributions, and who was paid a fee that by contract discharged the company, did not deliver a "total" failure of consideration. At most Plaintiffs allege a disappointing performance—the stuff of a damages claim, which they plead in the alternative (Count VI), not the "extraordinary" remedy of rescission.

The status-quo requirement independently defeats the claim. The film was shot, completed, and premiered (FAC ¶ 121), and the fee was paid—Plaintiffs themselves seek "disgorgement of sums paid to Rock City" (FAC ¶ 195). No order can return these parties to their precontract positions. Where the exhibits and the complaint establish performance, payment, and a transaction that cannot be unwound, rescission is foreclosed as a matter of law, and the Court should dismiss Count V. *Bogie, 705 F.3d at 609*. Dismissal should be with prejudice. It is certain here: Plaintiffs cannot unplead the performance they allege (FAC ¶ 57) or undo the completed, premiered film, so no repleaded rescission theory could state a claim.

## II. THE COURT SHOULD DISMISS THE NDA CLAIM AGAINST ANCEL INDIVIDUALLY BECAUSE HE SIGNED ONLY AS HIS COMPANY'S AGENT AND THE ALTER-EGO THEORY IS PLEADED WITH LABELS, NOT FACTS (COUNT IV).

Count IV seeks to hold Ancel personally liable for breach of an agreement to which he is not a party. The attached NDA runs between Lakefront and Jordan Ancel International, LLC, and Ancel signed it only as that company's "CEO." (FAC Ex. B.) To reach Ancel, Plaintiffs must pierce the corporate veil—and they must do so under the law the NDA itself selects.

A. **California law governs the NDA, and California disregards the corporate form only on a showing of unity of interest and an inequitable result.**

The NDA provides that it "shall be governed by and construed in accordance with the laws of the State of California" (FAC Ex. B § 17), and Ancel International is a California limited liability company (FAC ¶ 8). Both the parties' chosen law and the internal-affairs doctrine point the alter-ego question to California law: whether to disregard a California entity's separate existence is governed by the law of the State that created it. Under that law, two conditions must be met before the corporate or LLC form is disregarded—"(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.,* 39 Cal. 3d 290, 300 (1985). The standards "are high, and the imposition of liability … is to be exercised reluctantly and cautiously." *Id.* Unity of interest turns on concrete facts—commingling of funds, holding out, identical ownership, shared offices and employees, use of the entity as a mere shell, inadequate capitalization, and disregard of formalities—and the inequitable-result prong demands "conduct amounting to bad faith"; mere "[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy this standard." *Sonora Diamond Corp. v. Superior Court,* 83 Cal. App. 4th 523, 538–39 (2000).

B. **Plaintiffs plead alter ego as labels, which California rejects at the pleading stage, and the count alleges breach of the wrong agreement by the wrong plaintiff.**

California requires a plaintiff to "allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor." *Leek v. Cooper,* 194 Cal. App. 4th 399, 415 (2011). Even "[a]n allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient." *Id.* Stripped of conclusions, Count IV offers four labels: Ancel International is a "subterfuge," there is a "unity of interest," the company was "undercapitalized," and it has "since been dissolved." (FAC ¶¶ 184–85, 188.) Those are the

8

elements' labels, not facts—no commingling, no ignored formalities, no siphoned assets, no capitalization figures—and dissolution alone is not the bad-faith, inequitable result the second prong requires. *Sonora Diamond,* 83 Cal. App. 4th at 539; see *Iqbal,* 556 U.S. at 678 (conclusory allegations get no presumption of truth). Illinois law is in accord, so the result does not turn on the choice. See *Tower Invs., LLC v. 111 E. Chestnut Consultants, Inc.,* 371 Ill. App. 3d 1019, 1033–34 (1st Dist. 2007*)* (contract-case piercing demands the most stringent showing). The count then contradicts itself—alleging breach of "the Producer Agreement" (FAC ¶ 186), not the NDA, and damage to "The Curse" (FAC ¶ 187), which is neither a party to the NDA nor the plaintiff on this count—but the dispositive defect is the alter ego: shorn of labels, nothing ties Ancel personally to an agreement his company signed. The Court should dismiss Count IV as to Ancel individually. The Ancel Defendants do not seek dismissal of the NDA claim against the contracting entity, Ancel International—which paragraphs 189 and 190 plead—and will answer it.

III. **THE COURT SHOULD DISMISS KARUM'S NEW INDIVIDUAL INTERFERENCE CLAIM AND, ON THE AMENDMENT'S NEW ATTRIBUTION ALLEGATIONS, NARROW THE SUSTAINED LAKEFRONT INTERFERENCE CLAIM (COUNTS VIII AND VII).**

The amendment added a new individual interference count for Karum and re-attributed the interference acts. The Ancel Defendants do not relitigate the Court's ruling sustaining Lakefront's claim; they raise only the grounds the amendment itself supplies.

A. **Karum's new individual claim pleads only a hope of future acting work (Count VIII).**

Count VIII is new: for the first time, Karum personally—apart from Lakefront—claims tortious interference with prospective economic advantage. The tort requires a reasonable expectancy of a specific, valid business relationship, the defendant's knowledge of it, intentional interference preventing the expectancy from ripening, and resulting damage. *Kapotas v. Better Gov't Ass'n,* 2015 IL App (1st) 140534, ¶ 80. The expectancy must be real, not hoped-for: "When

a business relationship affords the parties no enforceable expectations, but only the hope of continued benefits," there is no protectable interest. *Soderlund Bros. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615 (1st Dist. 1995). Karum pleads exactly that hope. She alleges "established and/or working relationships with casting directors and talent agencies" and "a reasonable expectation of landing acting roles through those agents and agencies." (FAC ¶ 211.) "Landing acting roles" from the industry at large is a generalized hope; she identifies no specific role, audition, or booking she was positioned to obtain and lost. The remaining injuries she invokes—the lost clients, internship pipelines, and trade-association relationships—are pleaded in Count VII as Lakefront's, not her own. Because Karum pleads no reasonable expectancy of her own in a specific relationship, Count VIII should be dismissed.

**B.    The amendment now attributes the sustained interference to Rose and Gecewicz, narrowing Count VII as to Ancel.**

What the amendment changed for the sustained claim is attribution. Plaintiffs now allege that the interference with the named relationships—DePaul, Columbia, the Independent Film Alliance, Google, Bankston Talent, and ERIS Talent—was carried out by Rose and Amanda Gecewicz. (FAC ¶¶ 139–40, 147–50.) And the statements the amendment ties to Ancel—that Plaintiffs were "dangerous" and to be avoided (FAC ¶¶ 116, 124–25)—are non-actionable opinion or truthful information, a ground the first motion did not raise. *Soderlund Bros. v. Carrier Corp.*, 278 Ill. App. 3d 606, 620 (1st Dist. 1995); *Law Offs. of David Freydin, P.C. v. Chamara,* 24 F.4th 1122, 1129–30 (7th Cir. 2022). Setting those aside, the interference against Ancel narrows to his own 2022 statements to investors and cast—a far smaller claim than the campaign Count VII describes, and one the Ancel Defendants will meet on the merits. To that extent, Count VII should be narrowed.

10

IV. **THE COURT SHOULD DISMISS THE CIVIL-CONSPIRACY CLAIMS BECAUSE CONSPIRACY IS NOT AN INDEPENDENT TORT AND THE AMENDED COMPLAINT'S OWN NEW TIMELINE PLACES THE ALLEGED AGREEMENT AFTER THE ONLY CONDUCT THAT STATES ONE (COUNTS X AND XI).**

Civil conspiracy is derivative: it "is not an independent tort," and it requires not just an agreement but a tortious act committed in furtherance of it. *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC, 2024 IL 129183,* ¶¶ 41. What is new is the timeline. Plaintiffs now allege that Rose remained Karum's friend "through the spring of 2023," and turned only "when Ancel began rallying sycophants." (FAC ¶¶ 115–16.) That places any Ancel–Rose agreement in 2023—after the only conduct that states a tort against Ancel, his 2022 statements to investors and cast. (FAC ¶¶ 165–66.) Because conduct that predates an agreement cannot be an act in furtherance of it, the conspiracy counts identify no actionable tort postdating the agreement the amendment now pleads, and they should be dismissed.

V. **THE COURT SHOULD DISMISS THE DEFAMATION CLAIM IN PART BECAUSE THE STATEMENT PLAINTIFFS ALLEGE ANCEL MADE IN HIS OWN LAWSUIT IS ABSOLUTELY PRIVILEGED ON THE FACE OF THE PLEADING (COUNT I).**

Count I rests in part on the allegation that Ancel "repeat[ed]" in his own Cook County complaint the charge that Karum had falsely accused him of assault. (FAC ¶¶ 109–10.) A private litigant is absolutely privileged to publish defamatory matter in a judicial proceeding to which he is a party, so long as the matter has some relation to the proceeding; the privilege is absolute and is not defeated by a showing of malice. Restatement (Second) of Torts § 587 (1977). *Doe v. Williams McCarthy, LLP,* 92 N.E.3d 607, 612 (1st Dist. 2018). The privilege is an affirmative defense, but where it is established on the face of the complaint—including the documents and allegations the complaint supplies—the Court may dismiss on it under Rule 12(b)(6). *Holmes,* 141 F.4th at 822. Plaintiffs' own allegation places the statement in Ancel's pleading in a related action; to that extent, Count I is barred.

11

The Ancel Defendants ask no more than that. They do not invoke the privilege for any out-of-court statement, and they do not seek dismissal of the balance of Count I. The privilege reaches only litigation-related statements and does not extend to communications with unrelated third parties—the precise limit this Court drew in denying the defense before. (Dkt. 42, at 7.) Plaintiffs' allegations that Ancel told investors and cast in 2022 that Karum misappropriated funds and broke into hotel rooms (FAC ¶¶ 165–66), and that he repeated the assault charge to third parties outside any proceeding (FAC ¶¶ 108–10), are not privileged, and the Ancel Defendants will answer them. Count I narrows to the extent it rests on the privileged in-pleading statement; it does not otherwise fall.

VI.   **THE COURT SHOULD DISMISS THE EMOTIONAL-DISTRESS CLAIM BECAUSE THE AMENDED COMPLAINT NOW FRAMES THE MATTER AS A BUSINESS AND LITIGATION DISPUTE AND ATTRIBUTES THE PUBLIC CAMPAIGN TO OTHERS (COUNT IX).**

Intentional infliction of emotional distress demands conduct beyond all bounds of decency. What the amendment adds points away from Ancel: it attributes the severe, public conduct—the contacts with talent agencies and the interference with internships—to Rose and Gecewicz (FAC ¶¶ 139–40, 147–50), and it casts Ancel's own post-termination conduct as litigation activity and protected speech. The Ancel Defendants do not relitigate the on-set allegations the Court sustained, which they will answer; they ask only that the claim not be expanded, on this new record, to reach conduct that is protected, truthful, or another's.

12

## CONCLUSION

The Ancel Defendants respectfully ask the Court to dismiss Count V and Count VIII, to dismiss Count IV as to Jordan Ancel individually, to dismiss Count I in part, and to dismiss Counts VII, IX, X, and XI to the extent they rest on non-actionable opinion, truthful information, privileged statements, or acts the Amended Complaint attributes to others. Dismissal of Count V should be with prejudice: as Argument I shows, no repleading can cure a rescission claim that Plaintiffs' own performance allegations and the completed, premiered film foreclose, so amendment would be futile. The remaining dismissals may be without prejudice.

Dated: June 30, 2026

Respectfully submitted,
**LOFTUS & EISENBERG, LTD.**

By: /s/ *Alexander N. Loftus*

Alexander N. Loftus
181 W. Madison Street, Suite 4700
Chicago, Illinois 60602
(312) 899-6625
alex@loftusandeisenberg.com
Counsel for the Ancel Defendants

## CERTIFICATE OF SERVICE

I certify that on June 30, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Alexander N. Loftus

13