## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | Case No. 1:24-cv-01108 |
| vs. | ) ) | Hon. Mag. Judge M. David Weisman |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, and CANDICE ROSE, | ) ) ) ) | |
| Defendants/Counter-Plaintiffs. | ) ) | |

## THE CURSE, LLC'S RESPONSE IN OPPOSITION TO THE
## ANCEL DEFENDANTS' MOTION TO STRIKE AFFIRMATIVE DEFENSES

Plaintiff/Counter-Defendant The Curse, LLC ("TCL"), by its counsel, responds as follows in opposition to the Motion to Strike TCL's Affirmative Defenses to the Counterclaims asserted against it by Counter-Plaintiffs, Jordan Ancel and Rock City Road Films LLC (collectively, "Ancel").

## INTRODUCTION

The underlying dispute arises from a Producer Agreement between the parties related to a film called "The Unseen." The only surviving counts of Ancel's amended counterclaim allege breach of the Producer Agreement (Count I) and breach of the implied covenant of good faith and fair dealing (Count II). The surviving breach of contract claim alleges that TCL failed to accord Ancel the placement of his on-screen "Producer" credit and in post-judgment marketing and promotional materials, and that TCL treated Ancel as being in "Default" without providing the written notice and 24-hour cure opportunity required by Paragraph 11(b)(ii) of the Agreement.

Prior to litigation, TCL provided Ancel with a prescreening copy of the film for his review and comment, and Ancel neither objected to the placement credits nor requested any changes.

TCL maintains the following four affirmative defenses:[1] that Ancel's material breach of the Producer Agreement excused any alleged obligation with respect to the placement of the producer credit (First Aff. Defense); that Ancel waived any alleged right with respect to the placement of his on-screen credit by failing to request a change from the prescreening copy that was provided to him expressly for his review and comment (Second Aff. Defense); and that Ancel's lengthy delay in raising any objection to the credits has resulted in substantial prejudice to TCL, and thus his claim is barred by the doctrine of laches (Fourth Aff. Defense).

Ancel has moved to strike these affirmative defenses, seeking an order striking the First, and Fourth Affirmative Defenses with prejudice, and the Second Affirmative Defense stricken without prejudice. As set forth more fully below, the Motion to Strike should be denied in its entirety.

## APPLICABLE STANDARD

"[A]n affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true." *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016)(internal quotations omitted). Courts may strike affirmative defenses when they are insufficient on their face, although such motions are generally disfavored. *City of Chicago v. DoorDash, Inc.*, 636 F.Supp.3d 916, 919 (N.D. Ill. 2022); *see also Heller Fin. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)("Motions to strike are not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state

---

[1]   TCL withdraws its Third and Fifth Affirmative Defenses alleging Amendment and Setoff.

of the facts which could be proved in support of the defense, and are inferable from the pleadings." Indeed, the emerging consensus within the Northern District is that affirmative defenses need not meet the pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) in order to withstand Rule 12(f) scrutiny. *DoorDash,* 636 F.Supp.3d at 920, *citing Aylin & Ramtin, LLC v. Barnhardt,* No. 19-cv-3402, 2022 WL 658786, at *1–3 (N.D. Ill. Mar. 4, 2022). "As long as the defendants are on sufficient notice of the nature of the claim, the plaintiff has satisfied federal pleadings requirements." *Cleland v. Stadt*, 670 F. Supp. 814, 816 (N.D. Ill. 1987). "Before granting a motion to strike an affirmative defense, the Court must be convinced that there are no unresolved questions of fact, that any questions of law are clear, and that under no set of circumstances could the defense succeed." *Reis Robotics USA, Inc. v. Concept Indus., Inc.,* 462 F.Supp.2d 897, 905 (N.D. Ill. 2006).

## LEGAL ARGUMENT

As set forth more fully below, each of the referenced affirmative defenses asserted by TCL meet the standard set forth above and have been both appropriately stated and sufficiently pled.[2] The Motion to Strike should be denied in its entirety.

### A. TLC Has Adequately Stated and Pled its First Affirmative Defense, Based Upon Ancel's Material Breach of the Producer Agreement

Ancel tacitly concedes that a material breach is a proper affirmative defense that excuses non-performance by the non-breaching party. *Assaf v. Trinity Medical Center*, 696 F.3d 681, 685-86 (7th Cir. 2012)("It is true that Illinois forbids a party in material breach of a contract from taking advantage of terms in that contract benefitting him."). Ancel contends, however, that TLC has

---

[2]   To the extent the Court deems otherwise, TCL should be given the opportunity to file amended affirmative defenses.

3

offered only bare bones conclusory allegations, and thus he is "left guessing" regarding the basis for the Defense. Ancel's claim is disingenuous. Whether by design or oversight, Ancel overlooks the very first paragraph of the affirmative defense, which incorporates by reference the factual allegations of TCL's complaint, which details the many ways in which Ancel breached the Producer Agreement. More pertinently, Ancel's Motion also somehow ignores TCL's June 5, 2026, Amended Responses to Interrogatories in which Ancel's material breaches of the Producer Agreement are amply laid bare:

> INTERROGATORY NO. 1: Identify each act or omission by Ancel that You contend constituted a breach of the Producer Agreement, including the specific provision(s) allegedly breached, the exact conduct constituting the breach, the date(s) on which each breach allegedly occurred, and all persons with knowledge of each alleged breach.
>
> **RESPONSE: Plaintiffs object to the request on the grounds that the request is unduly burdensome. Subject to and without waiving their objections, Plaintiffs state that Rock City and Ancel breached the Producer Agreement in multiple ways, prior to, during and after the filming of The Unseen, including: (a) during the pre-production stage, Ancel often abdicated his responsibilities as a producer, failing to competently complete tasks in a timely fashion, even when Ancel was given detailed instructions and timelines; (b) during production, Ancel engaged in conduct that violated SAG rules, including Ancel's drug use (marijuana) openly on set, as observed by cast and crew, and giving THC infused gummies to an intern who was under the age of consumption in Illinois on the set, as observed by cast and crew; (c) during production, Ancel exceeded his authority and usurped authority vested with the film's primary producers in paragraph 1 of the Agreement; (d) during production, Ancel engaged in conduct on the set that was highly unprofessional, including sexual harassment, verbal abuse, creating a hostile work environment, and fomenting dissent and discord among cast, crew, producers, investors, agents/managers and SAG in express violation of paragraphs 1 and 10 of the Agreement; (e) during production, Ancel encouraged cast and crew to call SAG and suggest that the they felt unsafe around Karum, and encouraged the lead actor to threaten to walk-off the set (or misrepresented to crew that the lead actor was prepared to walk-off the set), observed by cast, crew and investors, in express violation of paragraphs 1 and 10 of the Agreement; (f) during production, Ancel misrepresented to Lisa Gal that SAG had shut down the production, and instructed her not to have her daughter, an actor on the film, to return to the set for the final day of filming in express violation of paragraphs 1 and 10 of the Agreement; (g) during production, Ansel failed and refused to complete tasks assigned to him,**

**including replacement of a door damaged during filming, investors, in express violation of paragraphs 1 and 10 of the Agreement; (h) following production, Ancel breached the written warranty not to engage in any conduct that might impair the rights granted to Lakefront Pictures in express violation of paragraph 10 of the Agreement; (i) usurping credit from the film's primary producers, by holding himself out (without permission) on social media as the producer of the film in express violation of paragraphs 1, 4 and 10 of the Agreement, (j) interfered with promotion of the film, including by preventing or discouraging the lead actor from promoting the film, and (k) interfering with The Curse's relationship with the film's distributors in violation of paragraphs 1, 4 and 10. Pursuant to FRCP 33(d), Plaintiffs shall produce documents (including production agendas, meeting minutes and communications) that further reflect and detail the tasks assigned to Ancel that were not timely fulfilled, text messages in which Ansel acknowledges his own persistent drug use on the set, communications that detail Ancel's angry outbursts, misogyny and sexual harassment, Ancel's communications encouraging investors to contact the film's distributors and Ancel's social media posts touting The Unseen as the movie that *he* produced, each a material breach of the Agreement by Rock City/Ancel.**

(emphasis in original). Taken together with the incorporated allegation, the foregoing Interrogatory Response gives Ancel more than fair notice of the legal theory (material breach), the contract at issue (the Producer Agreement), the party who breached (Ancel), and the consequence (excuse of the credit obligation) on which the first affirmative defense is premised. The fact that these details were not restated in TLC Answer and Affirmative Defense is immaterial. *See Tarau v. Coltea*, No. 15-CV-03545, 2017 WL 467682, *5 (N.D. Ill.)(the court declined to strike an affirmative defense even where the factual support for the defense appeared in a separately filed pleading rather than in the answer itself, reasoning that no purpose would be served by striking the defense absent a showing of prejudice to the opposing party); *see also LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F.Supp.2d 840 (N.D. Ill. 2008)(This case held that a breach of contract affirmative defense was pleaded with adequate specificity where it incorporated by reference the facts alleged in the defendant's counterclaims and where the underlying breach of contract counterclaims were not entirely without merit.).

Ancel's contention that the material breach defense must fail as a matter of law in light of the fact that he was never afforded a cure period is misguided. Indeed, with respect to the breaches outlined above, many (if not most) simply could not be cured, the most obvious being Ancel's drug use on set (a SAG violation) and giving THC infused gummies to an intern on set who was a minor (a crime). Courts within the Northern District (and a number of Courts in other jurisdictions) have recognized that a claim for material breach exists and has consequences regardless of any corresponding notice and cure provisions. *See Peoria Partners, LLC v. Mill Group, Inc.,* No. 15 C 6680, 2015 WL 8989675, *7 (N.D. Ill. Dec. 16, 2015)("the prevailing approach in other jurisdictions (and at least one leading treatise) is that a non-breaching party need not comply with a contractual notice and cure provision when the material breach is incurable…. It is sufficient for this Court to note that The Mill Group may have had grounds to terminate the Office Lease even had it not complied with [the notice and cure provisions of the Lease].")(internal citations omitted); *Gleike Taxi Inc. v. Challenger CAB, LLC,* No. 13 CV 6715, 2016 WL 1450048, *8 (N.D. Ill. April 13, 2016)(" Under Illinois law, a party who materially breaches the contract may not enforce the contract, *take advantage of the terms of the contract that benefit it*, or recover damages from the other party to the contract.")(emphasis added); *Tilted Kilt Franchise Operating, LLC v. 1220, LLC,* No. 15-cv-10377, 2016 WL 4063172, *7 (N.D. Ill. July 29, 2016)("As a result, Tilted Kilt has alleged both that a crime has been committed and repeated violations of the law and of the AD Agreement, for which good cause without the requirement of notice and opportunity to cure exists…"). On this record, there is no basis to strike the defense, and certainly not a basis to strike the defense with prejudice. The Motion should be denied as to the First Affirmative Defense.

**B. TLC Has Adequately Stated and Pled its Second Affirmative Defense, based Upon Ancel's Waiver of his claims that TCL Breached the Producer Agreement.**

TCL's Second Affirmative Defense alleges that prior to the release of The Unseen, Ancel was provided a prescreening copy of the film with its proposed on-screen credits for his review, that Ancel approved without objecting to the credits nor requested any changes, and that this conduct operated as a waiver of any claim that he was denied proper credit. Ancel argues this defense fails as a matter of law under Illinois law because waiver requires 'a clear, unequivocal, and decisive act' manifesting an intention to relinquish a known right, and that mere silence or failure to object to a prescreening copy cannot satisfy this standard. Ancel is wrong as to the law.

Under Illinois law, waiver is defined as the voluntary and intentional relinquishment of a known right, which can be made by express agreement, or implied from the conduct, acts, or words of the party who is alleged to have waived a right. *Ryder v. Bank of Hickory Hills*, 146 Ill.2d 98, 104-05 (1991); *see also Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right, or where that person's conduct is inconsistent with any other intention than to waive the right. *Id.* While inaction or silence *alone* may not suffice in certain circumstances, it is an overstatement of the law to suggest that inaction or silence can *never* amount to waiver. The question is whether the silence or inaction, viewed in context, objectively (subjective intention is immaterial) manifests a clear, unequivocal, and decisive intention to relinquish the right. *Id.* With respect to this case, context really matters. Ancel, who boasts of his prowess as an experienced producer and touts the significance in the industry tied directly to credits earned,[3] and who was

---

[3] In his Amended Counterclaim, Ancel alleges that his "professional reputation and future earning capacity are directly tied to accurate attribution of his producing work" (par. 5), that "misattribution…. [of his credit]

specifically given the opportunity to review the credits before release and approved them without comment, was in a qualitatively different position from a party who simply failed to notice a problem. The deliberate review and approval, without objection, is the kind of affirmative conduct that — combined with knowledge of the contractual right — can plausibly constitute the clear, unequivocal, and decisive act Illinois law requires. As such, there is no credible basis to conclude at this stage of the proceedings that there are no set of circumstances, viewed objectively, in which TCL's waiver defense could not succeed. Thus, the Motion must be denied as to the Second Affirmative Defense. *See Reis Robotics,* 462 F.Supp.2d at 905.

### C. TLC Has Adequately Stated and Pled its Fourth Affirmative Defense, Based Upon the Doctrine of *Laches*.

Finally, Ancel argues that TCL's Fourth Affirmative Defense, sounding in *laches*, fails as a matter of law because Illinois law does not apply laches to a suit seeking only money damages, for which he claims the laches defenses is *never* available. Even assuming that damages sought by Ancel under the guise of a breach of the implied covenant of good faith do not count as a claim that is quasi-equitable in nature, the Seventh Circuit has acknowledged, "Illinois courts are in conflict over the vanishing line between law and equity" with respect to the defense of laches." *Nature Conservancy v. Wilder Corp., of Delaware,* 656 F.3d 646, 650 (7th Cir. 2011)(dismissing defense in a case in which plaintiff sought solely money damages but only because there was no evidence of an unreasonable delay in asserting a claim). *See also Mo v. Hergan,* 2012 IL App. (1st) 113179, ¶ 35 (1st Dist.)("Although she seeks only monetary relief, and although statutes of limitation exist to govern the legal actions she has brought, the plaintiff makes no argument in her

---

directly harms his professional reputation" (par. 6) and that "Producer credit is a material term in a film production agreement, and single-card producer credit can significantly influence a producer's reputation and financial prospects." Par. 38.

8

brief that the doctrine of laches should be inapplicable to this case. Given no reason to stray from the holding in *Bill,* we assume that a laches defense may be asserted here."); *Monson v. County of Grundy,* 394 Ill.App.3d 1091, 1095 (3d Dist. 2009)("*Laches* does apply, however, to Pace's request for a monetary award representing subsidies that Pace alleges it should have received in the years 1996 through 2001. When Pace filed its complaint, these budget years had concluded, and, presumably, the funds at issue were no longer available."); *Bill v. Board of Educ. Of Cicero School Dist. 99,* 351 Ill.App.3d 47, 58 (1st Dist. 2004)(in a wage claim, the Court held, "[L]aches is simply the permissible interposition of an equitable defense in an action at law."); *Kotsias v. Continental Bank, N.A.,* 235 Ill.App.3d 472, 476 (1st Dist. 1992)(in a case in which Plaintiff sought monetary damages, the court held: "Although unnecessary to our disposition, we believe plaintiff's claims against Continental are barred by the doctrine of laches…. While traditionally the doctrine has been viewed as barring equitable actions only, recent cases have applied it to bar claims of law as well."); *Coleman v. O'Grady,* 207 Ill.App.3d 43, 51-52 (1st Dist. 1990)("Contrary to plaintiff's assertion, it is not black letter law that *laches* is inapplicable to actions at law. Rather, it has been held that the doctrine is not strictly and unequivocally limited to suits in equity…. *Laches* being applicable to such proceedings notwithstanding the monetary claims made therein, is applicable to plaintiff's action in its entirety."); *Bay v. Matthews,* 108 Ill.App.3d 1112, 1116 ("We conclude that the doctrine of laches is not strictly and unequivocally limited to suits in equity…".).

In this case, Ancel expressly knew of his on-screen credit placement, had ample opportunity to address it before the finished film went to market, yet waited years before he first even raised the issue, prejudicing TCL by attempting to saddle it with purported damages that were, in reality, entirely self-inflicted by Ancel's inexplicable inaction. *Laches* should apply. At the very least, there is a question of law as to the application of the defense to this dispute that

9

should prohibit making any injury entirely self-inflicted. *See Heller Financial, Inc., v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989)("Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact").

WHEREFORE, for the reasons set forth above, TCL requests that this Honorable Court deny Ancel's Motion to Strike with respect to its First, Second and Fourth Affirmative Defenses, and grant such additional relief as the Court deems just and proper.

Dated: July 2, 2026          RESPECTFULLY SUBMITTED,

**THE CURSE, LLC**

By:    */s/ George J. Spathis*
         One of its Attorneys

George J. Spathis (6204509)
LEVENFELD PEARLSTEIN, LLC
120 South Riverside Plaza, Suite 1800
Chicago, Illinois 60606
312.346.8380
gspathis@lplegal.com

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2026, I caused the foregoing pleading to be electronically filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants of record in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**1:24-cv-01108 Notice has been electronically mailed to:**

Alexander Nicholas Loftus     alex@loftusandeisenberg.com

Christian Novay     Christian.Novay@lewisbrisbois.com, angela.miller@lewisbrisbois.com

David Alan Eisenberg     david@loftusandeisenberg.com

George J. Spathis     gspathis@lplegal.com, druiz@lplegal.com, gnegrete@lplegal.com, ikropiewnicka@lplegal.com, kpatton@lplegal.com, nbailey@lplegal.com

Jack Thomas Grochowski     jgrochowski@bbp-chicago.com

Mark S. Jamil     mjamil@bbp-chicago.com

Megan DeMarco     mdemarco@rshc-law.com, docketdept@rshc-law.com

Sean P. Patrick     spatrick@rifkindpatrick.com

Vincent Dominick Pinelli     vpinelli@bbp-chicago.com, aposluns@bbp-chicago.com


    *George J. Spathis*