**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and THE CURSE, LLC, | ) ) ) ) | Case No. 1:24-cv-01108 |
|  | ) ) |  |
| Plaintiff, | ) |  |
| vs. | ) ) |  |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, And DOES 1-20, | ) ) ) ) | Honorable Jeffrey I. Cummings Magistrate Judge Hon. M. David Weisman |
|  | ) ) |  |
| Defendants. | ) |  |

**DEFENDANT CANDICE ROSE'S MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**

**I. INTRODUCTION**

Plaintiffs' Amended Complaint misreads its own contract, attempt to place a lifetime non-disparagement obligation on Defendant Candice Rose ("Rose") for less than $500 of consideration for the same contract, and makes a flailing attempt to sue Rose, who had a small supporting role in the subject film, for alleged film-industry personal opinions and gossip. "The surrounding circumstances of the complaint may make for compelling cinematic drama, but courts of law are not theaters of drama." (Minute Entry, July 12, 2024, before Hon. M. David Weisman). Accordingly, the case against Rose should be summarily dismissed with prejudice.

**II. LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the plaintiff's claims. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must include sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible only when the pleaded factual content permits the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court accepts well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive dismissal. *Id.*

The Seventh Circuit has likewise recognized that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). While detailed factual allegations are unnecessary, a plaintiff must allege enough factual content to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Allegations that are merely consistent with liability, or that require the Court to speculate regarding essential elements of a claim, fail to satisfy the federal pleading standard. *Iqbal*, 556 U.S. at 678-79.

Moreover, where a complaint repeatedly attributes alleged misconduct collectively to multiple defendants without pleading facts demonstrating each defendant's individual conduct, dismissal is appropriate because Rule 8 requires that each defendant receive fair notice of the claims asserted against him or her and the factual basis supporting those claims. See *Bank of*

2

*Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("A complaint based on a theory of collective responsibility must be dismissed.").

### III. PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT TO ESTABLISH ROSE'S INDIVIDUAL LIABILITY.

Federal pleading standards require Plaintiffs to allege facts demonstrating what Rose herself allegedly did that gives rise to liability. Instead, the Amended Complaint repeatedly attributes alleged misconduct collectively to "Ancel and Rose," while relying on conclusory assertions that Rose "directed," "encouraged," "induced," "coordinated," or "conspired" with others. These allegations amount to little more than legal conclusions couched as factual allegations and are insufficient under Rule 8.

Although the Amended Complaint spans more than one hundred pages and identifies dozens of individuals, organizations, and alleged communications, its allegations against Rose consistently suffer from the same defect: Plaintiffs allege the result they seek to establish without pleading the underlying facts that make those conclusions plausible. Rather than identifying specific communications demonstrating Rose's individual conduct, Plaintiffs frequently allege "upon information and belief" that Rose encouraged or induced third parties to sever relationships with Plaintiffs, directed others to make statements, or acted in concert with Defendant Ancel. Such allegations require the Court to speculate that Rose engaged in actionable conduct without alleging the factual basis necessary to support those conclusions.

The pleading repeatedly illustrates this defect. Plaintiffs allege that Rose "directed," "encouraged," "induced," or "coordinated" the actions of talent agencies, universities, casting professionals, freelancers, investors, and numerous other third parties. Yet, with few exceptions, the Amended Complaint does not identify the particular communication, when it allegedly

3

occurred, the substance of what Rose supposedly said, or facts demonstrating that any recipient acted because of Rose's alleged statements rather than exercising independent judgment. The pleading instead invites the Court to assume causation and agreement from the mere fact that Rose allegedly communicated with a third party before that third party later made an adverse business decision. Rule 8 requires factual allegations, not speculation.

For example, Plaintiffs repeatedly allege that Rose "directed, induced or encouraged" talent agencies, casting directors, educational institutions, industry organizations, freelancers, and numerous other third parties not to work with Plaintiffs. Yet the Amended Complaint frequently omits the factual allegations necessary to make those assertions plausible, including what Rose allegedly said, when she said it, to whom it was communicated, how the recipient acted in response, or facts demonstrating that any independent decision made by those third parties was caused by Rose rather than their own independent judgment. Instead, Plaintiffs invite the Court to infer causation simply because a communication allegedly occurred before an adverse business decision.

Likewise, Plaintiffs repeatedly assert that "Ancel and Rose" acted together without distinguishing Rose's individual conduct. See, e.g., Am. Compl. ¶¶ 3, 112, 120, 123, 132, 159. However, allegations that defendants acted "together," "in concert," or pursuant to an agreement are insufficient absent factual allegations plausibly demonstrating the existence of such an agreement. The Amended Complaint identifies communications between Rose and various third parties and separately alleges extensive misconduct by Ancel, but it rarely pleads facts demonstrating that Rose herself entered into any agreement with Ancel to accomplish an unlawful objective. Rule 8 requires factual allegations establishing Rose's own conduct; it does not permit liability by association.

4

The Seventh Circuit has repeatedly rejected complaints that attribute alleged misconduct collectively to multiple defendants without identifying each defendant's individual actions. In *Bank of America, N.A. v. Knight*, the Seventh Circuit explained that a complaint alleging collective responsibility without specifying "who did what" fails to provide the fair notice required by Rule 8. *Bank of America, N.A. v. Knight* 725 F.3d 815, 818 (7th Cir. 2013). Similarly, courts have held that generalized allegations lacking factual enhancement do not satisfy the plausibility standard established by *Twombly* and *Iqbal*. 578 F.3d 574, 581 (7th Cir. 2009).

That pleading defect permeates every claim asserted against Rose. Rather than pleading facts demonstrating Rose's own actionable conduct, Plaintiffs repeatedly rely upon conclusory assertions, speculative inferences, and impermissible group pleading. Those deficiencies independently warrant dismissal of each claim asserted against Rose.

## IV. COUNT II FAILS TO STATE A CLAIM FOR DEFAMATION.

To state a claim for defamation under Illinois law, a plaintiff must plausibly allege: (1) the defendant made a false statement concerning the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication damaged the plaintiff. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). Although certain statements may constitute defamation *per se*, a plaintiff must nevertheless plead sufficient factual matter demonstrating that the challenged statement is an actionable assertion of fact rather than protected opinion or rhetorical hyperbole.  Measured against those standards, Plaintiffs' Amended Complaint fails to plausibly allege a claim for defamation against Rose.

## A. The Amended Complaint Fails to Identify Actionable False Statements with the Requisite Specificity.

5

A defamation claim must identify the allegedly defamatory statements with sufficient specificity to permit the Court to evaluate whether the statements are capable of defamatory meaning and whether they constitute actionable assertions of fact. Instead, Plaintiffs repeatedly allege in generalized fashion that Rose described Karum as "dangerous," "unsafe," "blacklisted," or otherwise made disparaging comments concerning Plaintiffs. Elsewhere, Plaintiffs allege that Rose "spread false rumors," "maligned" Plaintiffs, or "echoed" statements allegedly made by Ancel. These generalized allegations fail to distinguish between statements of fact, protected opinion, rhetorical hyperbole, and legal conclusions.

Rather than identifying the specific content of many allegedly defamatory communications, Plaintiffs frequently summarize or characterize what Rose allegedly communicated to third parties. Such conclusory allegations do not satisfy Rule 8 or permit the Court to determine whether the challenged statements are capable of defamatory meaning as a matter of law.

**B. Many of the Alleged Statements Constitute Non-Actionable Opinion.**

Illinois courts evaluate allegedly defamatory statements in context and distinguish between objectively verifiable factual assertions and subjective evaluations, rhetorical hyperbole, or expressions of personal opinion. See *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 100 (1996); *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 581-82 (2006). Statements describing an individual as "dangerous," "unsafe," or advising others to avoid working with that person ordinarily depend upon the speaker's subjective perceptions and experiences and are not susceptible to objective verification. To the extent Plaintiffs predicate liability upon such statements, they fail to allege actionable defamation as a matter of law.

Illinois law distinguishes between verifiable statements of fact and expressions of opinion. Statements that cannot reasonably be interpreted as asserting objectively verifiable facts are not actionable. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 581-82 (2006); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 100 (1996). Much of the Amended Complaint is predicated upon alleged statements describing Karum as "dangerous," "unsafe," or expressing subjective warnings about working with Plaintiffs. Such characterizations are inherently subjective and depend upon the speaker's personal perceptions and experiences. Critical reviews of services are generally protected under the First Amendment. *Freydin v. Chamara*, No. 21-cv-01234 (N.D. Ill. 2022) Whether an individual considers another person "dangerous," "unsafe," or someone to avoid is not susceptible to objective verification and therefore falls squarely within the realm of protected opinion.

For example, Plaintiffs allege Rose commented that working with Lakefront was "dangerous" and advised others to "RUN." (Am. Compl. ¶ 125.) Such language reflects subjective evaluation and personal opinion rather than objectively verifiable factual assertions. Similarly, allegations that Rose warned others not to work with Plaintiffs, expressed dissatisfaction with Plaintiffs, or urged caution regarding future professional relationships are not, standing alone, actionable factual assertions. To the extent Plaintiffs rely upon these statements to support their defamation claim, the claim fails as a matter of law.

**C. Plaintiffs Impermissibly Group Distinct Statements Together Without Pleading Falsity.**

Even where Plaintiffs identify statements that arguably could be interpreted as factual, the Amended Complaint fails to plead facts plausibly demonstrating that Rose made those statements, that they were false, or that Rose knew them to be false. Instead, Plaintiffs

7

repeatedly allege that "Ancel and Rose" engaged in a coordinated campaign of falsehoods and then attribute various statements interchangeably to both defendants. Such collective pleading does not permit the Court to determine which allegedly false statements are actually attributed to Rose, which are attributed to Ancel, and which are merely alleged to have been repeated by others.

Plaintiffs allege, among other things, that Rose described Karum as "dangerous" (Am. Compl. ¶¶ 116, 120), represented that Karum had been sued for misappropriating production funds (¶ 173), and warned others not to work with Plaintiffs (¶¶ 125, 137, 143). Yet the Amended Complaint frequently summarizes these alleged communications rather than identifying the precise statements allegedly made by Rose.

Rule 8 requires Plaintiffs to plead facts establishing Rose's own allegedly defamatory statements—not merely her association with another defendant accused of making defamatory statements. Because the Amended Complaint repeatedly relies upon generalized allegations and impermissible group pleading, it fails to state a plausible claim for defamation against Rose. Accordingly, Count II should be dismissed.

## V. COUNT III FAILS TO STATE A CLAIM FOR FALSE LIGHT INVASION OF PRIVACY.

The false light claim fails for substantially the same reasons as Plaintiffs' defamation claim. To state a claim for false light under Illinois law, Plaintiffs must plausibly allege that: (1) Rose placed Karum before the public in a false light; (2) the false light would be highly offensive to a reasonable person; and (3) Rose acted with actual malice. *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 17–18 (1992).

8

As discussed above, the Amended Complaint fails to identify actionable false statements attributable to Rose, relies heavily upon subjective opinions and rhetorical characterizations, and repeatedly groups Rose together with Ancel without distinguishing her alleged conduct. Moreover, Plaintiffs fail to plead facts plausibly establishing actual malice or identifying publicity sufficient to satisfy the elements of a false light claim. Count III simply reincorporates the same allegations underlying Count II. Compare Am. Compl. ¶¶ 171-176 with ¶¶ 177-181, and therefore should be dismissed.

## VI. COUNTS VII AND VIII FAIL TO STATE CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL OR PROSPECTIVE BUSINESS RELATIONSHIPS.

Counts VII and VIII allege that Rose tortiously interfered with Lakefront's and Karum's existing and prospective business relationships by allegedly communicating with talent agencies, casting directors, educational institutions, industry organizations, clients, freelancers, and other third parties. These claims fail because the Amended Complaint does not plausibly allege the essential elements of tortious interference under Illinois law.

To state a claim for tortious interference with prospective economic advantage, a plaintiff must plead: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of that expectancy; (3) purposeful interference by the defendant that prevents the expectancy from ripening into a valid business relationship; and (4) resulting damages. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511 (1991). Similarly, a claim for tortious interference with contract requires the existence of a valid and enforceable contract, the defendant's knowledge of that contract, intentional and unjustified inducement of its breach, a

subsequent breach caused by the defendant's conduct, and resulting damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154-55 (1989). Plaintiffs fail to plausibly plead these elements.

**A. Plaintiffs Do Not Plausibly Allege the Existence of Specific Protectable Business Relationships or Expectancies.**

Although the Amended Complaint references numerous individuals and entities—including talent agencies, casting directors, universities, industry organizations, freelancers, and prospective clients—it largely fails to identify specific contracts or protectable business expectancies with the certainty required under Illinois law.

Instead, Plaintiffs rely on generalized allegations that they expected to continue doing business with various third parties or anticipated future opportunities. The pleading does not identify the terms of the alleged relationships, whether any agreement existed, the nature of any pending opportunity, or facts demonstrating that any expectancy was sufficiently concrete to receive legal protection. General hopes of future business opportunities or continued professional relationships are insufficient to support a tortious interference claim.

**B. Plaintiffs Fail to Plead Facts Showing that Rose Intentionally Caused Any Third Party to Terminate a Relationship with Plaintiffs.**

Even assuming the existence of protectable business expectancies, the Amended Complaint fails to plausibly allege that Rose intentionally and unjustifiably caused any third party to terminate those relationships. Throughout the Amended Complaint, Plaintiffs repeatedly allege that Rose "directed," "encouraged," or "induced" third parties to cease working with

Plaintiffs. However, those allegations are almost invariably presented as legal conclusions rather than factual allegations.

Plaintiffs allege Rose "directed, induced or encouraged" Bankston Talent (¶ 139), ERIS Talent (¶ 140), Shari Shaw (¶ 138), DePaul University (¶ 147), Columbia College (¶ 148), and IFA (¶¶ 149-150). Yet the Amended Complaint generally does not identify the substance of the alleged communications or plead facts demonstrating that those organizations acted because of Rose's alleged statements rather than their own independent judgment.  The Amended Complaint repeatedly asks the Court to infer causation solely because Rose allegedly communicated with a third party before that third party later declined to work with Plaintiffs. Such allegations are insufficient under *Twombly* and *Iqbal*.

**C. Plaintiffs Fail to Plausibly Allege Proximate Causation.**

The Amended Complaint likewise fails to plausibly allege that any alleged communication by Rose proximately caused Plaintiffs' asserted economic injuries. Rather than alleging facts demonstrating that any specific third party relied upon statements made by Rose in deciding to terminate or decline a business relationship, Plaintiffs simply conclude that Rose caused the resulting decision. In many instances, the pleading identifies no facts explaining why the third party acted, whether the third party independently investigated Plaintiffs, whether other events influenced the decision, or whether other alleged conduct—particularly the extensive conduct attributed to Defendant Ancel—was the actual cause of the alleged harm.

The Amended Complaint identifies numerous agencies, organizations, educational institutions, and individuals that allegedly ceased doing business with Plaintiffs. It does not, however, plausibly allege why those entities acted. Plaintiffs simply allege that Rose communicated with a third party and later conclude that the third party's subsequent decision

11

must have resulted from Rose's communication. For example, Plaintiffs allege that "Days after dinner with Rose," Bankston Talent terminated Karum. (Am. Compl. ¶ 139.) But temporal sequence alone does not plausibly establish that Rose caused the agency's independent business decision.

Such allegations establish temporal sequence—not proximate causation. Rule 8 requires factual allegations plausibly connecting Rose's alleged conduct to the challenged business decision rather than inviting the Court to infer causation through speculation. These speculative allegations do not plausibly establish proximate causation.

**D. The Allegations Against Rose Remain Impermissibly Conclusory.**

Finally, Counts VII and VIII exemplify the pleading deficiencies that permeate the Amended Complaint. Plaintiffs repeatedly substitute conclusory allegations that Rose "interfered," "induced," or "encouraged" others for factual allegations demonstrating actionable interference. Rule 8 requires factual allegations, not labels. Because Plaintiffs fail to plead sufficient factual matter establishing protected business relationships, intentional interference by Rose, or proximate causation, Counts VII and VIII fail to state claims upon which relief can be granted. Accordingly, Counts VII and VIII should be dismissed.

**VII. COUNT IX FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Count IX alleges that Rose intentionally inflicted emotional distress upon Karum by participating in an alleged campaign of harassment and reputational attacks. Even accepting Plaintiffs' factual allegations as true, the conduct alleged does not approach the exceptionally

12

demanding standard required to state a claim for intentional infliction of emotional distress under Illinois law.

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must plausibly allege: (1) extreme and outrageous conduct by the defendant; (2) that the defendant either intended to inflict severe emotional distress or knew there was a high probability that such distress would result; and (3) that the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988).

Illinois courts have repeatedly emphasized that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 86. Rather, the alleged conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274 (2003). Courts applying Illinois law have consistently rejected attempts to transform professional disputes, interpersonal conflicts, criticism, or reputational disagreements into intentional infliction of emotional distress claims. The tort is reserved for conduct so extreme that it exceeds all bounds tolerated by a civilized society, not disagreements arising from deteriorated business or professional relationships. The allegations against Rose fall far short of that standard.

Plaintiffs principally rely upon allegations that Rose communicated with industry professionals, commented on social media, encouraged others not to work with Plaintiffs, and allegedly described Karum as "dangerous." See Am. Compl. ¶¶ 116-161. Even assuming those allegations are true, such conduct consists primarily of interpersonal conflict, criticism, and allegedly disparaging communications arising from a deteriorated professional relationship. Illinois courts consistently hold that comparable conduct—even where offensive, upsetting, or

13

intentionally harmful—does not constitute the type of extreme and outrageous conduct necessary to sustain an IIED claim.

Moreover, Count IX relies almost entirely upon the same generalized allegations incorporated from the preceding counts. Plaintiffs repeatedly assert that Rose "participated" in a coordinated campaign or "encouraged" others to act but do not plead factual allegations demonstrating conduct by Rose that independently satisfies the demanding standard applicable to IIED claims. Instead, Plaintiffs ask the Court to aggregate alleged conduct involving numerous individuals over several years and attribute the entirety of that conduct collectively to Rose. Rule 8 does not permit such group pleading. Because the conduct alleged against Rose does not, as a matter of Illinois law, constitute extreme and outrageous conduct, Count IX should be dismissed.

## VIII. COUNTS X AND XI FAIL TO STATE CLAIMS FOR CIVIL CONSPIRACY.

The civil conspiracy claims suffer from the same fundamental defect that permeates the Amended Complaint: Plaintiffs repeatedly conclude that Rose conspired with Defendant Ancel without pleading factual allegations plausibly establishing the existence of any agreement between them.

Under Illinois law, civil conspiracy is not an independent tort. Rather, it is a theory of derivative liability requiring: "(1) a combination of two or more persons; (2) for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means; and (3) one or more tortious acts committed in furtherance of the agreement." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62-63 (1994). "A conspiracy requires facts permitting an inference of an actual agreement, not merely parallel conduct." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999).

The Amended Complaint repeatedly alleges that Rose and Ancel acted together, coordinated their efforts, or jointly orchestrated a campaign against Plaintiffs. Yet those allegations are almost invariably pleaded as conclusions rather than facts. For example, Plaintiffs allege that Rose "joined" Ancel's campaign, "coordinated" with him, "directed" others, and "enlisted" third parties. However, the Amended Complaint rarely alleges the underlying facts demonstrating that Rose and Ancel actually entered into an agreement to accomplish an unlawful objective. Instead, Plaintiffs rely upon allegations that Rose communicated with Ancel, communicated with third parties, or expressed opinions similar to those allegedly expressed by Ancel. Those allegations describe, at most, parallel conduct. They do not plausibly establish the existence of an agreement.

Plaintiffs specifically allege that Rose "joined" Ancel's campaign (Am. Compl. ¶ 116), "willingly obliged" him (id. ¶ 112), had "a whole team" working against Plaintiffs (id. ¶ 142), and "directed, encouraged, incentivized and/or rewarded others" to participate in the alleged smear campaign (id. ¶ 158). Yet these allegations merely recite legal conclusions. The Amended Complaint does not identify when Rose and Ancel allegedly reached an agreement, what the terms of that agreement were, what communications created the alleged conspiracy, or how Rose exercised direction or control over the independent actions of the numerous third parties identified throughout the pleading.

The Seventh Circuit has made clear that conclusory allegations of conspiracy are insufficient under Rule 8. See *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (affirming dismissal where allegations of conspiracy consisted of conclusions unsupported by factual content). Plaintiffs repeatedly substitute legal conclusions for factual allegations. The phrase "directed, induced or encouraged" appears throughout the Amended

15

Complaint. See, e.g., ¶¶ 133-150. Merely repeating those words, however, does not plead the factual basis necessary to render the alleged conspiracy plausible. Merely attaching those verbs to alleged conduct does not plausibly plead the existence of an agreement. The Amended Complaint does not identify when any unlawful agreement was reached, the terms of that agreement, the communications giving rise to it, or facts demonstrating that Rose exercised direction or control over the independent actions of the numerous third parties identified throughout the pleading. Instead, Plaintiffs ask the Court to infer a conspiracy from allegedly similar conduct occurring over an extended period. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient under *Iqbal*, 556 U.S. at 678.

Indeed, many of the allegations merely state, "upon information and belief," that Rose induced or encouraged third parties to take adverse actions against Plaintiffs. Such allegations require the Court to infer both the existence of an agreement and the existence of unlawful concerted action without pleading factual content supporting either inference.

Nor can Plaintiffs salvage the conspiracy claims by repeatedly alleging that Rose and Ancel acted "together." As the Seventh Circuit has recognized, Rule 8 requires plaintiffs to identify what each defendant allegedly did, rather than relying upon collective allegations that multiple defendants engaged in misconduct. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Here, the Amended Complaint frequently attributes conduct to "Ancel and Rose" interchangeably while failing to distinguish Rose's alleged conduct from that of Ancel.

Finally, because Plaintiffs fail to plausibly plead several of the underlying tort claims asserted against Rose—including defamation, false light, tortious interference, and intentional infliction of emotional distress—the conspiracy claims likewise fail. A conspiracy claim cannot

16

survive in the absence of an adequately pleaded underlying tort. *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶ 28.  Accordingly, Counts X and XI should be dismissed.

### IX. COUNT XII FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

Plaintiffs' final claim against Rose alleges that she breached the parties' 2021 Demo Reel Agreement by later making statements that allegedly brought Lakefront into "public disrepute" or otherwise reflected unfavorably upon Plaintiffs. The claim fails because the Amended Complaint does not plausibly allege that the Demo Reel Agreement imposed the continuing post-performance obligations Plaintiffs seek to enforce.  Clearly, the agreement imposes restrictions on Rose only during the performance of the contract, not for an infinite period of time thereafter.

Plaintiffs expressly rely upon the Demo Reel Agreement, which is attached to and incorporated into the Amended Complaint. Because the Agreement is embraced by the pleadings and forms the basis of Count XII, the Court may consider its language in resolving this Rule 12(b)(6) motion without converting the motion into one for summary judgment. "The Court may consider documents attached to the complaint, documents referred to in the complaint that are central to the claims, and matters of which judicial notice may properly be taken." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

To state a claim for breach of contract under Illinois law, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach by the defendant; and (4) resulting damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (applying Illinois law).  Although Plaintiffs allege the existence of the

17

Demo Reel Agreement, they fail to plausibly allege that Rose breached any contractual obligation contained therein.

**A. The Demo Reel Agreement Does Not Create the Perpetual Post-Performance Obligation Alleged in the Amended Complaint.**

Plaintiffs allege that Rose breached the Demo Reel Agreement by making allegedly disparaging statements approximately two years after the agreement had been fully performed. Plaintiffs specifically rely upon Paragraph 231 of the Amended Complaint, alleging that Rose agreed to refrain from committing any act "which might tend to bring [Lakefront], its members or owners into public disrepute, scandal or ridicule." (Am. Compl. ¶ 231.) The Amended Complaint, however, neither explains how that provision creates a perpetual post-performance restriction on Rose's future speech nor alleges facts demonstrating that the parties intended such an expansive obligation. Instead, Plaintiffs simply assume that a limited services agreement governing the creation of a demo reel imposed continuing restrictions years after the parties' contractual relationship ended. The Amended Complaint, however, identifies no contractual language creating a perpetual obligation prohibiting Rose from expressing future opinions regarding Plaintiffs or their services.

Plaintiffs specifically rely upon the Demo Reel Agreement attached to and incorporated into the Amended Complaint. Although Plaintiffs contend that the Agreement prohibited Rose from later making statements that allegedly brought Lakefront into "public disrepute," the Amended Complaint neither quotes nor explains how the language of the Agreement creates a perpetual post-performance restriction on Rose's future speech. Rather, Plaintiffs simply assume that a limited services agreement governing the production of a demo reel imposed an indefinite obligation extending years beyond completion of the parties' contractual relationship. Illinois law

18

requires courts to interpret contracts according to their plain language and does not permit courts to rewrite agreements by imposing obligations the parties themselves did not undertake.

Instead, Plaintiffs seek to transform a limited agreement governing the creation of a demo reel into an indefinite restraint on future speech. Nothing in the Amended Complaint plausibly alleges that the parties intended the agreement to impose such continuing obligations after completion of the contracted services. Contract interpretation begins with the language of the agreement itself, and courts may not rewrite contracts to impose obligations the parties did not undertake. Plaintiffs' interpretation would expand the agreement far beyond its plain language and the limited services relationship alleged in the Amended Complaint. Illinois law does not permit courts to rewrite contracts by imposing obligations the parties themselves did not undertake.

**B. Plaintiffs Fail to Plausibly Allege That Rose Breached Any Express Contractual Provision.**

Even accepting Plaintiffs' allegations as true, the Amended Complaint does not identify specific contractual language prohibiting the alleged conduct or explain how Rose's post-performance communications violated any express provision of the agreement. Rather, Plaintiffs simply conclude that Rose's later statements constituted a breach because they allegedly reflected negatively upon Lakefront. Such conclusory allegations are insufficient to state a plausible claim for breach of contract.

A plaintiff cannot state a breach of contract claim merely by alleging that a defendant acted inconsistently with the plaintiff's expectations. Plaintiff's statements even as alleged are classic non-actionable opinion. The complaint must identify the contractual obligation allegedly

19

breached and plead facts demonstrating how the defendant's conduct violated that obligation. Plaintiffs fail to do so here.

## C. Plaintiffs Fail to Plausibly Allege Resulting Contract Damages.

Finally, the Amended Complaint does not plausibly allege damages arising from the alleged contractual breach that are distinct from the speculative reputational and economic injuries asserted throughout the remainder of the pleading. Instead, Plaintiffs incorporate by reference the same generalized allegations underlying their tort claims and conclude that Rose's alleged breach caused damage to Lakefront. Such conclusory allegations do not plausibly plead recoverable contract damages and allege no proximate cause by Rose. Accordingly, Count XII fails to state a claim upon which relief may be granted and should be dismissed.

## D. The Alleged Lifetime Non-Disparagement Provision Lacks Adequate Consideration

The Demo Reel Agreement provided for a "Demo Reel" in exchange for less than $1,000.00. Illinois requires bargained-for consideration. *Steinberg v. Chicago Medical School,* 69 Ill. 2d 320, 331–32 (1977). Also in Illinois, restrictive covenants like the one alleged in the Demo Reel Agreement require separate consideration, and continued employment or prior services do not suffice as adequate consideration. *Fifield v. Premier Dealer Services, Inc.,* 2013 IL App (1st) 120327, ¶¶ 27–36. Accordingly, as the Demo Reel Agreement lacks specific or adequate provisions for the restrictive non-disparagement covenant, Plaintiff's breach of contract claim fails as a matter of law.

## X. DISMISSAL SHOULD BE WITH PREJUDICE.

Plaintiffs have already amended their Complaint after having the opportunity to review Defendants' motions directed at the original pleading and after obtaining substantial discovery in this litigation. Despite that opportunity, the Amended Complaint continues to rely upon conclusory allegations, impermissible group pleading, and legal conclusions unsupported by factual allegations sufficient to satisfy Rule 8. Because the deficiencies identified herein are not the result of technical pleading errors but rather the absence of factual allegations plausibly establishing Rose's liability, further amendment would be futile. Accordingly, dismissal should be entered with prejudice.

## XI. CONCLUSION

For all of the foregoing reasons, Defendant Candice Rose respectfully requests that this Court grant her Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss Counts II, III, VII, VIII, IX, X, XI, and XII of Plaintiffs' Amended Complaint with prejudice, and grant such other and further relief as this Court deems just and proper.

\* \* \*

Respectfully Submitted,

CANDICE ROSE

By: */s/ Sean Patrick*
Sean Patrick
An Attorney for Defendant

RIFKIND PATRICK LLC
3025 N Lincoln Ave
Chicago, Illinois 60657

21

(312) 725-4229
ARDC#: 6313699
legal@rifkindpatrick.com
*Attorneys for the Defendant*