## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC, | ) | |
| | ) | |
| Plaintiffs/Counter-Defendants, | ) | Case No. 1:24-cv-01108 |
| vs. | ) | |
| | ) | Hon. Mag. Judge M. David Weisman |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, and CANDICE ROSE, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO THE ANCEL DEFENDANTS' MOTION TO COMPEL

Plaintiffs, Lakefront Pictures, LLC, Jennifer Karum and The Curse, LLC (collectively, the "Plaintiffs"), by their counsel, respond as follows in opposition to the Motion to Compel Discovery Responses filed by Jordan Ancel, Jordan Ancel International, LLC and Rock City Road Films LLC (collectively, "Ancel" or the "Ancel Defendants").

### INTRODUCTION

Ancel's Motion to Compel labors to tell a fictional tale of Plaintiffs' recalcitrance or evasiveness, particularly with respect to Karum's claim for emotional distress. To the contrary, Plaintiffs have made it clear in their pleadings and discovery responses that Karum's claims for emotional distress damages stem solely from Ancel's conduct beginning in or about June 2023 (long after filming and post-production were completed), when she learned that Ancel had filed a suit against her in the Circuit Court of Cook alleging that she had defamed him and falsely accused him of sexual assault (an allegation that was demonstrably false and reckless), and then went on a whistle-stop tour of social media to enlist supporters to assist him in taking Karum down "in an epic way" and to "burn her life down," falsely claiming on social media that there was a class

LP 26785660.1 \ 48288.140226

action in the works against Karum and encouraging people to send him any ammunition that he could use against Karum. With the assistance of Defendant Rose (there is documentary evidence of their coordination), Ancel's call to arms unleashed a prolonged and intense campaign of smears, harassment, and cyber-bullying from all corners of social media, including from people with whom Karum had never met or worked with, yet who felt emboldened to viciously attack and malign her based upon "what they had heard." Ancel, and his enlisted minions were directly responsible for, among other things, (a) causing multiple Lakefront clients and crew to cancel or withdraw from pending projects; (b) inducing Karum's agents to drop her as an acting client; (c) causing other agents (throughout the country) and casting directors to ignore Karum's outreach; (d) contacting cast and crew with whom Karum and Lakefront had worked to smear her as "dangerous"); (e) Karum being banned from local networking events; (f) Karum's Production Company (Lakefront Pictures) being effectively precluded from hiring interns from two local area colleges; (g) having Lakefront's Google business profile disabled, and (h) falsely reporting across social media that Kaurm had been "blackballed" in the Chicago film community. This harassment and cyber-bullying campaign has continued for more than *three years running*, forcing Karum to live with the daily stress that anything she posts or any prospective clients post on social media mentioning Karum or Lakefront will be met with a torrent of negative comments or anonymous messages of warning. All of this harassment began immediately after Ancel's ominous call to arms. Critically, Karum had neither been in the care of any mental health professional nor on any medication for depression for more than two years before Ancel decided to "go nuclear" (to use Ancel's own words) on Karum. That undisputed sequence—a period of stability followed by a resumption of treatment only after Ancel's conduct began--is powerful evidenced of causation, and precisely why a production of a limited, pre-conduct baseline of records is warranted, rather that the lifetime disclosure of records that the Ancel Defendants seek to compel.

More importantly, and contrary to what Ancel's motion suggests, Karum has *never* refused to produce evidence regarding her autism diagnosis, and in fact has offered to produce both the earliest and the most comprehensive autism spectrum diagnoses, the latter of which expressly details how autism impacts Karum specifically. Similarly, Karum *never* refused to produce her medical records for the relevant period—from 2023 to the present, and for good measure has offered to produce medical records dating back to mid-2022 when Karum and Ancel worked together on set. Quite the contrary, Karum's objections have been limited to the overly broad temporal breadth of the records requested, as Ancel has steadfastly demanded ALL of her medical records (ostensibly dating back to childhood), claiming that by seeking recovery for emotional injuries that began in 2023, Karum has necessarily opened the door to full disclosure of all mental health records, without limitation. She has not. Ancel's gross overreach in seeking all of Karum's medical records is little more than a thinly veiled attempt to further bully Karum into dropping her claim for emotional distress damages. It is quite telling that Ancel filed this Motion seeking full disclosure of all of Karum's medical records before Karum even had the opportunity to voluntarily produce any of the relevant records. That speaks volumes as to Ancel's motives. The Court should decline to order Karum to produce anything more than what she has already offered.

Along the same lines, Ancel's Motion to Compel perplexingly feigns indignance over Karum's failure to produce her privilege log and to produce ESI, namely the native versions of her texts and emails. To be clear, Karum had agreed and has since provided a privilege log (which consists of a single communication), which was delayed simply due to the undersigned's medical leave (see below). Similarly, the protests regarding ESI, and the failure to produce texts and emails, ring palpably hollow since none of the Defendants have seen fit to produce any ESI (which was similarly requested). The Defendants cannot have it both ways, and they must be prepared to "reap what they sow." As set forth more fully below, the Motion to Compel should be denied.

## LEGAL ARGUMENT

### A. The Ancel Defendants Failed to Make a Good Faith Effort to Resolve the Matters in Dispute Before Filing the Instant Motion to Compel.

Before addressing the merits of the Motion to Compel, Plaintiffs are compelled to point out that the instant Motion is premature. Indeed, the Ancel Defendants' claim in their Motion (p. 4) that they made a good faith effort to resolve the subject discovery disputes is notably misleading if not overtly false. While the parties met and conferred a single time (in mid-May 2026) regarding the Ancel Defendants' prior Motion to Compel, those discussions were limited in nature to: (1) a brief explanation as to the basis for certain responses and objections to Requests to Admit (which Defendants acknowledged were appropriate based upon how the request was phrased); (2) an agreement between the parties that no party would have to provide a privilege log for communications with their respective counsel that took place *after* the litigation between the parties ensued in May 2023; and (3) primarily whether Karum was claiming emotional injury beyond the type that Courts have regarded as "garden variety" emotional injury claims, which Plaintiff clarified in Karum's Supplemental Responses to the Ancel Defendants Amended Responses served on June 5, 2026. To be clear, *none* of the other matters listed in the renewed Motion to Compel were or have ever been discussed.

Moreover, while the Ancel Defendants took issue with the Amended and Supplemental Discovery Responses served by Plaintiffs on June 5th,[1] as set forth in their June 9th letter that

---

[1] Specifically, on June 5, 2026, Plaintiffs served Amended Responses and Objections to the Ancel Defendants' Request for Production and Amended Responses and Objections to the Ancel Defendants' Consolidated Interrogatories, while Karum also served Supplemental Responses and Objections to the Ancel Defendants' Request for Production, Supplemental Responses and Objections to the Ancel Defendants' Consolidated Interrogatories, and Responses and Objections to the Ancel Defendants' Requests to Admit. Because all of the foregoing discovery responses were marked as Confidential or Attorneys' Eyes Only, they have not been attached as Exhibits to this Response. Plaintiffs shall provide copies to the Court (via email) and if the Court requests or requires, will file the same under seal.

purported to require a response by June 23, 2026, the undersigned expressly advised the Ancel Defendants and this Court that Plaintiffs would need additional time to respond as expressly explained in the parties' Joint Status Report [Dkt. 128]:

> Plaintiffs are similarly reviewing the most recent discovery responses and production by the Ancel Defendants, and intend to identify deficiencies in their responses/production, as well as respond to the June 9th letter, **although the undersigned (George Spathis) will be unable to do so by June 23, 2026, due to scheduled surgery on June 22, 2026, and a period of convalescence thereafter (returning to the office on June 30th). The undersigned therefore expects to respond by July 6, 2026.[2]**

Emphasis added. Inexplicably, the Defendants filed their Motion on June 30th, giving the undersigned no opportunity to consider or address any aspects of the letter. Thus, contrary to the Ancel Defendants' claims, there was no genuine effort to comply with either the letter or spirit of Local Rule 37.2.

These failures are not mere technicalities. Local Rule 37.2 prevents the Court from hearing any discovery motion unless the movant certifies that, "after consultation in person or by telephone and good faith attempts to resolve differences," the parties could not agree. LR 37.2. The consultation must be a genuine, issue-by-issue effort to resolve the dispute. "Chatting for a bit about a dispute and maintaining an untenable position . . . is not engaging in a good faith meet and confer." *Sapia v. Bd. of Educ. of the City of Chicago*, 318 F. Supp. 3d 1049, 1051 n.2 (N.D. Ill. 2018). "An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion." *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018). Where, as here, the disputes now pressed were never actually discussed, the motion must be denied: a party may not confer on a handful of issues and

---

[2] The undersigned had cancer surgery on June 22, 2026. My last day in the office before medical leave was June 16, 2026. I resumed working (from home) on a limited basis on June 30th, a post-operative complication required a return to the hospital, additional medical attention and new medication, that kept me from fully resuming work until July 6, 2026.

then move to compel on others it never raised, but must conduct a further conference directed at the new disputes before seeking the Court's intervention. *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 624 (N.D. Ill. 2016). That principle has particular force on a renewed motion. The Ancel Defendants' first motion to compel (Dkt. 119) was stricken for this very defect (Dkt. 121); a renewed motion is expected to reflect genuine intervening conferral, not a repackaging of matters the parties never discussed. *See id*. Filing on June 30 – days before the July 6 response date the undersigned had committed to in a Joint Status Report, and in the midst of counsel's cancer surgery and convalescence – was the antithesis of the good-faith effort the Local Rules require. The motion should be denied without prejudice on this ground alone. *New England Speed Factory, LLC v. Snap-On Equip., LLC*, 438 F. Supp. 3d 867, 868–69 (N.D. Ill. 2020).

**B.**      <u>**The Ancel Defendants' Fishing Expedition Into Karum's Life-Long Medical History is an Egregious Overreach That This Court Should Not Permit.**</u>

To be clear, Karum does not dispute that a plaintiff who seeks emotional distress damages must provide fulsome discovery *with respect to that claim*, and she was and remains prepared to produce all of her medical and mental health records dating back to mid-2022 (when the professional relationship between Karum and Ancel fractured) which predates by a full year the period for which Karum seeks emotional distress damages (mid-2023 to the present). The issue for this Court is not whether *any* disclosure is required, but how much, and whether the specific records sought are proportional to the needs of the case under Rule 26(b)(1). The Ancel Defendants have not demonstrated that decades of records predating the alleged conduct are necessary, and proportionality principles limit the scope of any waiver to records causally connected to the claims at issue rather than Karum's entire lifetime mental health history. *See Jakes v. Boudreau*, No. 19 C 2204, 2020 WL 5297007, at *4 (N.D. Ill. Sept. 4, 2020).

6

The United States Supreme Court has long-recognized a psychotherapist-patient privilege. *Jaffee v. Redmond*, 518 U.S. 1, 15–16 (1996). Like any privilege, however, the psychotherapist-patient privilege can be waived, intentionally or by implication when the patient places it "at issue." *Id.* at 15 n.14. Courts in this District have not settled on a definitive test to determine when and how the privilege is deemed waived and have taken various approaches. *Coleman v. City of Chicago*, No. 1:18-cv-00998, 2019 WL 7049918, at *1 (N.D. Ill. Dec. 23, 2019). The narrow approach holds that the waiver of the privilege only applies when a plaintiff seeks to affirmatively use his or her communications with a psychotherapist in the litigation, including by calling the therapist as a witness. *Id.* At the other end of the spectrum, the broad approach suggests that a plaintiff waives the privilege merely by seeking emotional-distress damages. *Id.* Between these two extremes, the middle-ground approach holds that a plaintiff waives the privilege only when he or she alleges something more than "garden variety" emotional damages, that is something more than negative emotions experienced as the intrinsic result of the defendant's alleged conduct. *See Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999). Since the Supreme Court decided *Jaffee,* the Seventh Circuit has only weighed in on this privilege-waiver issue on just one occasion in which it offered in a brief passage without much analysis that "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records *of that state*." *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006)(emphasis added); *see also Jakes v. Boudreau,* 2020 WL 5297007 at *1 (recognizing the unsettled nature of the question of waiver that persists).

In their Motion to Compel, the Ancel Defendants conflate the threshold for non-garden-variety distress with an unlimited waiver of all mental health records across all time periods. This position is badly misguided. In *Jakes,* the Plaintiff alleged that his wrongful imprisonment for 20 years, subjected him to "extreme suffering, humiliation, fear, nightmares, anxiety, depression, and

despair," which the Court concluded went beyond "garden variety" emotional damages, thus waiving the privilege. 2020 WL 5297007, at *3. The Court, however, rejected the defendants' attempt to probe the Plaintiff's medical and mental health records for a thirty-year period that included the 10 years preceding his imprisonment. *Id.* at * 4 ("Although Defendants are certainly entitled to some records predating Plaintiff's arrest and incarceration as they are relevant to his claims, the Court must ensure that the discovery sought is proportional."). Instead, The *Jakes* Court took a more tailored, proportionality-based approach to the breadth of discovery, limiting pre-incarceration discovery to a period of five years, which it held was sufficient to allow the defendants to "establish Plaintiff's baseline health prior to his arrest and allegedly wrongful [20 year] incarceration." *Id.*

Similarly, in *Johnson v. Guevara.*, No. 1:20-cv-4156, 2021 WL 12298819 (N.D. Ill. Aug. 2, 2021), Court rejected the defendant's attempts to probe medical records beyond the two-year period prior to Plaintiff's incarceration at age 15. *Id.* at *1-2. Despite the fact that Plaintiff alleged to have suffered "extreme physical and psychological pain and suffering, humiliation, constant fear, nightmares, anxiety, depression, despair, rage, and other physical and psychological effects," the Court limited Defendant's foray into prior medical records. *Id.* at *3 ("the Court does not believe that counseling records from 5th through 8th grade are relevant to Johnson's mental health at the age of fifteen."). *See also Coleman*, 2019 WL 7049918, at *6 ("Whereas mental health records in the two years preceding [wrongfully convicted plaintiff's] arrest and confession have a higher probative value as to [his] mental state at the time of confession, worthy of the burden of production and the privacy interests intruded.").

8

Plaintiffs believe that Karum's emotional distress claim is "garden variety" in nature,[3] although the Court need not resolve that question to deny the relief the Ancel Defendants seek as the scope of any resulting waiver is still cabined by proportionality. A finding that the privilege is waived answers only *whether* any records are discoverable. It does not answer how far back that discovery should be permitted. On that question, the courts of this District are consistent: even where a plaintiff pleads an intentional-infliction claim and alleges symptoms far more severe than Karum's, the waiver does not open the plaintiff's entire life to inspection. *See Jakes*, 2020 WL 5297007, at \*4; *Coleman*, 2019 WL 7049918, at \*5–7. In her Supplemental Interrogatory Responses, Karum attests that the emotional toll of the prolonged harassment and cyber-bullying includes "bouts of depression, humiliation, distress and anxiety," but that it has not caused any "lost professional opportunities" or an inability to work (though the distress "has made work exceedingly more difficult"). Moreover, In Karum's case, the gravamen of the distress is not a clinical symptom or a course of treatment, but the sheer duration of the harassment and bullying,[4] a further reason the Ancel Defendants' demand for a lifetime of unrelated records is disproportionate. Thus, even if Karum's emotional distress claims are deemed to go beyond "garden variety" distress, Karum's distress pales, in both intensity and duration, beside the claims

---

[3] In *Flowers v. Owens*, 274 F.R.D. 218, 225-26 (N.D. Ill. 2011) this Court aptly described the contours of "garden variety emotional damages" to include "the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized, the generalized insult, hurt feelings and lingering resentment which anyone could be expected to feel given the defendant's conduct, the normal distress experienced as a result of the [claimed injury], the negative emotions that [plaintiff] experienced essentially as the intrinsic result of the defendant's alleged conduct, but not the resulting symptoms or conditions that she might have suffered." *Id.* at 225 (internal citations and quotations omitted). Put more simply, the Court in *Flowers* held that garden variety emotional damages involve "generalized insult, hurt feelings, and lingering resentment that does not involve a significant disruption of the plaintiff's work life and rarely involves more than a temporary disruption of the claimant's personal life." *Id.* at 226. The latter describes Karum's claimed emotional damages to a tee, and the mere fact that she sought and obtained treatment during part of that period *so that she could* continue on with her professional activities should not automatically mandate a finding that her emotional damages were beyond those deemed to be "garden variety" in nature, or require a compete waiver of all medical records, particularly if the Plaintiff is not seeking to introduce medical testimony at trial. *Id.*

[4] *See Daniels v. City of Chicago*, 920 F.Supp. 901, 904 (N.D. Ill. 1996)("The paradigm case [of intentional inflection of emotional distress] is repeated harassment over time.").

9

and symptoms asserted by the plaintiffs in *Jakes, Johnson*, and *Coleman*.  In each of those cases the court confined discovery to a tailored, pre-conduct window – two years in *Coleman* and *Johnson*, and five years in *Jakes* – precisely to establish the plaintiff's "baseline health" before the conduct at issue, and each rejected the broader, decades-long reach the defendants demanded. *Coleman*, 2019 WL 7049918, at *5–7; *Johnson*, 2021 WL 12298819, at *3; *Jakes*, 2020 WL 5297007, at *4. A five-year, pre-conduct limit was likewise imposed in *Laudicina v. City of Crystal Lake*, even under the broad view of waiver. 328 F.R.D. 510, 511 (N.D. Ill. 2018). Karum's offer already meets and exceeds that standard: producing records from mid-2022 forward supplies a full year of pre-conduct baseline before the June 2023 campaign began – a window at least as generous as those the courts of this District have approved.  To remove any doubt that this is a genuine proportionality dispute and not a refusal, Karum is prepared to identify her treating providers for the agreed period and to produce responsive records within that window under the Attorneys'-Eyes-Only designation the Ancel Defendants have accepted.  The Court should not order the lifetime disclosure the Ancel Defendants seek.  No decision in this District supports it.[5]

Because this is a proportionality dispute over temporal scope—not a refusal to provide discovery—the Ancel Defendants' demand that Karum be forced to "elect" between her claim and preclusion is misplaced. Preclusion under Rule 37(c)(1) is a sanction for a party who fails to provide required discovery; it has no application to a plaintiff who has produced more than 7,000 pages, has offered her relevant records under an Attorneys'-Eyes-Only designation, and disputes

---

[5]   Karum's Supplemental Responses to Interrogatory Nos. 19 and 20 are not evasive or insufficient.  Interrogatory No. 19 to identify each of her emotional injuries, Ancel's conduct that caused the injury, when the injuries first manifested and how she determined Ancel was the cause.  Karum's Response address each of these topics.  Moreover, given the temporal overreach by Ancel, it was appropriate for Karum to provide her actual medical records from mid-2023 to the present from which the physician, treatment, diagnosis, and medication can be easily established.  It would have been imprudent to disclose the identity of any treating physicians (thereby inviting subpoenas that are similarly overbroad) until the question of temporal scope could be resolved.

only how far back an otherwise-agreed production must reach. Karum's interrogatory answers are not evasive. Her response to Interrogatory 19 identifies the conduct she alleges caused her injuries and when that injury manifested, tied to the June 2023 campaign detailed above; it is not a mere copy of her damages answer, and to the extent the Ancel Defendants believe further detail is required, that is a subject for conferral, not compulsion. And as explained above, Karum will identify her treating providers for the agreed period—the Ancel Defendants' reliance on the rule that a party may not use Rule 33(d) to avoid stating information within its own knowledge is beside the point once the temporal scope is fixed.

## C. The Ancel Defendants' Position With Respect to ESI is Unreasonable.

The Ancel Defendants' eleventh-hour objections to the fact that text messages and emails were produced by Plaintiffs[6] in searchable PDF format rather than in native electronic format is curious to say the least, since the Defendants have not produced *any* documents in their native electronic format (despite the request for production of ESI) and similarly produced everything in PDF format. Indeed, neither side has strictly complied with the native-format specifications. Under these circumstances, the Ancel Defendants' demand that Plaintiffs reproduce all 7,113 Bates-numbered pages in native format is both duplicitous and runs afoul of the "proportionality" guardrail designed to streamline and avoid unreasonably onerous discovery burdens. Simply stated, the subject social media screenshots, printed text messages and other scanned documents do not have a meaningful native electronic format distinct from the PDF images produced. The Ancel Defendants have not identified any specific document or category of documents for which the absence of metadata has caused actual prejudice or for which the metadata would yield

---

[6] Plaintiffs' initial production was made in early March 2026, and the Ancel Defendants never objected to the fact that texts and emails were produced as PDFs (in part by necessity, because the volume of text stored messages exceeded what could be stored on mobile phones).

materially different information than the produced PDF. A blanket re-production order would offer little if any useful information, while imposing significant burden and expense on Plaintiffs disproportionate to any demonstrated need. *See, e.g., Sedabres v. World Wide Technology, LLC, No.* 3:24-cv-02402-SMY-RJD, 2026 WL 1723646, \*9 (S.D. Ill. June 15, 2026) (court denied a motion to compel re-production of nearly 1,600 pages in native format where both sides had produced pdfs, the requesting party failed to tie the request to any specific information obtained during discovery, and it offered no justification for not seeking native-format production earlier ); *Neiman v. Grange Mut. Ins. Co.,* No. 11-cv-3404, 2012 WL 5029875,\*9 (C.D. Ill. Oct., 17, 2012) (the court declined to order a blanket re-production of all documents in native format with metadata, instead directing the producing party to provide native-format files only for those electronically stored documents that the producing party also possessed in a native electronic format *distinct from the paper or PDF versions already produced*); *Covad Communications Co. v. Revonet, Inc.,* 267 F.R.D. 14, 20 (D.D.C., 2010) ("In the absence of some reason to believe that the metadata will yield an answer that the hard copy will not, production of the information in native format at this stage of the protracted struggle is not necessary.").

Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure requires only that Plaintiffs produce their electronically stored information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form."  The searchable PDFs of Karum's texts and emails are reasonably usable, and the social-media screenshots have no distinct native form to produce. Courts in this District decline to compel metadata or re-production where a requesting party could have pressed the point earlier and shows no concrete need – the requesting party "was the master of its production requests" and "it seems a little late to ask for metadata after documents responsive to a request have been produced." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 559–60 (N.D. Ill. 2008). The Court should not require any party to make a

12

complete re-production of documents at this late stage of discovery. At most, the Court should require all parties to identify which (if any) documents they believe would contain metadata that would be genuinely relevant to disputed issues, before ordering any supplemental production by any party.

**D.** **The Ancel Defendants' Demand for Documents Relating to Litigation to which Karum is a Party Within the Last Ten Years Is Not Reasonable or Proportional.**

While Plaintiffs believe that the Ancel Defendants' demand for documents relating to any litigation with which any of the Plaintiffs have been involved in the last ten years is neither relevant nor proportional, to avoid further burdening the Court Plaintiffs have produced the only three complaints (present action excluded) in which they (or any one of them) was a plaintiff. The only case in which Karum is/was a defendant (Ancel's state court action excluded) related to a minor vehicle collision that plainly is not relevant and was not produced.

**E.** **Sanctions Simply Are Not Warranted Under these Circumstances.**

Finally, the Court should deny the Ancel Defendants' request for attorneys' fees. Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure bars any fee award where the movant "filed the motion before attempting in good faith to obtain the disclosure or discovery without court action" – which, for the reasons set forth in Section A, is exactly what occurred here. The Ancel Defendants' failure to meaningfully meet and confer about these issues is, itself, a basis to deny a fee award. *See Taylor v. ABT Electronics, Inc.,* No. 05-cv-576, 2007 WL 1455842, *3 (N.D. Ill. May 14, 2007) (affirming Magistrate's order declining an award of fees in part because defendants' aggressive pursuit of discovery was premature). In any case, an award of attorneys' fees under Rule 37(a)(5)(A) is not automatic and is inappropriate where, as here, Plaintiffs' objections were substantially justified, making an award unjust. The test for substantial justification is whether a "genuine dispute" exists or whether "reasonable people could differ" on

the contested question. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Courts in this District routinely hold that good-faith objections – particularly to privileged or private mental-health information – constitute substantial justification that precludes any award even where the motion is otherwise granted. *Earthy, LLC v. BB&HC, LLC*, No. 16 CV 4934, 2017 WL 11884319, at *3 n.3 (N.D. Ill. Feb. 22, 2017); *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-CV-10706, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017). Karum's refusal to produce unlimited mental health records reflects a genuine, good-faith assertion of privacy interests as to sensitive medical information—a position that has support in the case law and that the Ancel Defendants tacitly recognized in accepting an Attorneys-Eyes-Only designation for any records produced. *Taylor*, 2007 WL 1455842, at *2 ("We agree with Magistrate Judge Denlow's reasoning that allowing such discovery 'would discourage people from coming forward to bring these kinds of claims if as a result their whole life becomes an open book.'"). The fact that Plaintiffs have already produced more than 7000 pages demonstrates responsiveness rather than bad faith. The dispute over the unrestricted scope of emotional distress discovery involves unsettled questions about the breadth of waiver and the relevance of pre-existing conditions, which are legitimate legal disputes rather than dilatory tactics. Under these circumstances, an award of fees would be unjust. *Forrest v. Wilkie*, No. 20 CV 4134, 2022 WL 22903322, at*9 n.5 (N.D. Ill. June 21, 2022) ("Although plaintiff asks in cursory fashion for fees and costs related to his motion to compel, the motion presented good faith discovery disputes, and so the Court concludes that fee shifting is not warranted in this case under Federal Rule of Civil Procedure 37(a)(5)(C)."); *Stevens v. Sch. City of Hobart*, 306 F.R.D. 609, 611–12 (N.D. Ind. 2015) (denying request to shift fees despite order to compel production because losing party was substantially justified in arguing against the production); *Andrews v. Sangamon County, Illinois*, No. 18-cv-1100, 2018 WL 6523186, *2 (C.D. Ill. Dec. 11, 2018) (Court declined to award attorney's fees under Rule 37(a)(5)(A) finding that an

14

award would be unjust under the circumstances, where the withholding party faced a genuine conflict between protecting and waiving the privacy of mental health records, reasoning that this difficult legal position provided sufficient justification to deny fees even after ordering production). At most, the Court should order compliance on a proportional basis without a fee award.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Ancel Defendants' Motion to Compel in its entirety. In the alternative, if the Court finds that any further production is warranted, Plaintiffs request that the Court (i) limit the temporal scope of Karum's mental-health and medical records to a defined, pre-conduct baseline period rather than her lifetime history; (ii) decline to order the wholesale re-production of documents in native format; and (iii) deny the Ancel Defendants' request for attorneys' fees. Plaintiffs further request such other and further relief as the Court deems just and proper

Dated: July 21, 2026                                  RESPECTFULLY SUBMITTED,

**LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC**

By:    _/s/ George J. Spathis_
                One of its Attorneys

George J. Spathis (6204509)
LEVENFELD PEARLSTEIN, LLC
120 South Riverside Plaza, Suite 1800
Chicago, Illinois 60606
312.346.8380
gspathis@lplegal.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2026, I caused the foregoing pleading to be electronically filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants of record in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**1:24-cv-01108 Notice has been electronically mailed to:**

Alexander Nicholas Loftus     alex@loftusandeisenberg.com

Christian Novay     Christian.Novay@lewisbrisbois.com, angela.miller@lewisbrisbois.com

David Alan Eisenberg     david@loftusandeisenberg.com

George J. Spathis     gspathis@lplegal.com, druiz@lplegal.com, gnegrete@lplegal.com, ikropiewnicka@lplegal.com, kpatton@lplegal.com, nbailey@lplegal.com

Jack Thomas Grochowski     jgrochowski@bbp-chicago.com

Mark S. Jamil     mjamil@bbp-chicago.com

Megan DeMarco     mdemarco@rshc-law.com, docketdept@rshc-law.com

Sean P. Patrick     spatrick@rifkindpatrick.com

Vincent Dominick Pinelli     vpinelli@bbp-chicago.com, aposluns@bbp-chicago.com

_George J. Spathis_