IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAKEFRONT PICTURES, LLC, JENNIFER )
KARUM, and THE CURSE, LLC, )
)
    Plaintiffs, )     No. 1:24-cv-01108
)
v. )     Hon. Mag. Judge M. David Weisman
)
JORDAN ANCEL, JORDAN ANCEL )
INTERNATIONAL, LLC, ROCK CITY ROAD)
FILMS LLC, and CANDICE ROSE, )
)
    Defendants. )

**REPLY IN SUPPORT OF THE ANCEL DEFENDANTS' PARTIAL MOTION TO
DISMISS THE AMENDED COMPLAINT**

**INTRODUCTION**

A plaintiff is the master of the complaint, but the complaint binds its master. Plaintiffs attached the two contracts and the communications their claims depend on, and they pleaded the specific facts that decide this motion. On a Rule 12(b)(6) motion the Court accepts those well-pleaded facts as true, but it does not credit the legal labels layered over them, and it does not let a conclusory label survive the specific facts that contradict it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the exhibits or the plaintiff's own factual allegations establish a defense or negate an element, the claim fails as a matter of law. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025).

Plaintiffs' Response does not meet that standard; it changes the subject. On rescission, it never addresses the allegation that Ancel performed—that he introduced investors who contributed capital and supplied script ideas the film used (FAC ¶ 57)—or the allegation that the film was shot, completed, and premiered (FAC ¶ 121). On the alter-ego claim, it does not cure the pleading's own admission that Count IV sues on the wrong contract and for the wrong plaintiff, and it answers the

1

California pleading standard with out-of-district decisions applying other States' law. On the litigation privilege, it briefs pages of out-of-court statements the Ancel Defendants never claimed were privileged. And on interference and conspiracy, it relies on the very allegations the amendment moved onto other actors. Where the Response does marshal authority, that authority does not survive inspection: to keep the rescission claim alive at the pleading stage, it leans on one decision that does not exist and another that holds the opposite of the proposition for which it is cited. (*See* Part I; Ex. A.)

The Ancel Defendants' requests are narrow and follow from Plaintiffs' own pleading. The Court should dismiss the rescission claim, which Plaintiffs' allegations of performance and a completed film foreclose; dismiss the NDA claim against Ancel individually, which rests on labels California law does not credit; dismiss Count VIII as to the Ancel Defendants, which pleads a generalized hope rather than a protectable expectancy and attributes the specific interference to others; dismiss the conspiracy counts as to Ancel, which the amendment's new timeline defeats; bar the single privileged statement Plaintiffs' pleading places in Ancel's own lawsuit; and confirm that the surviving claims do not reach non-actionable opinion or acts the amendment attributes to Rose and Gecewicz.

**ARGUMENT**

I. **PLAINTIFFS' ALLEGATIONS OF PERFORMANCE AND A COMPLETED FILM FORECLOSE RESCISSION (COUNT V).**

Rescission is an extraordinary remedy. Under Illinois law—which governs the Producer Agreement (FAC Ex. A § 15)—a party may rescind only for "substantial nonperformance or breach" so material that it defeats the essential purpose of the contract and justifies treating the whole transaction as at an end. *Finke v. Woodard*, 122 Ill. App. 3d 911, 917 (4th Dist. 1984). And because rescission unwinds the bargain, it is available only where the parties can be returned to

the status quo as it existed before the contract. *Int'l Ins. Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 629 (1st Dist. 1993). Plaintiffs' own allegations put both requirements beyond reach.

First, Count V's premise is a label its own pleading contradicts. The count alleges a "complete and total failure of consideration" (FAC ¶ 195). A total failure of consideration means the complaining party received nothing of value. But paragraph 57 alleges that Plaintiffs received value: Ancel "introduced LAKEFRONT to additional investors who contributed capital, and during script meetings, offered helpful ideas that Karum incorporated into the script" (FAC ¶ 57). A party that obtained funding sources and script contributions the film used did not suffer a "total" failure of consideration. The phrase "complete and total failure of consideration" is a legal conclusion, not a well-pleaded fact, and it is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. Stripped of the label, what the pleading actually alleges is that Ancel performed some of his role and performed the rest poorly (FAC ¶¶ 57-58)—the premise of the alternative damages claim (Count VI), not of rescission.

This is not a matter of pitting one allegation against another and asking the Court to choose. The Court may accept every fact in paragraphs 57 and 195 as true and the count still fails, because the only thing in tension with paragraph 57 is the legal conclusion in paragraph 195, which earns no deference. *Iqbal*, 556 U.S. at 678. Nor does alternative pleading save the claim. Rule 8(d) lets a plaintiff plead inconsistent theories and remedies; it does not let a plaintiff state a claim that its own well-pleaded facts negate. The rescission theory fails not because Plaintiffs also seek damages, but because their factual allegations establish that consideration passed.

The cases Plaintiffs marshal confirm the point. Each denied dismissal where the pleading alleged a failure of the bargained-for exchange. *See Facility Wizard Software, Inc. v. Se. Tech. Servs., LLC*, 647 F. Supp. 2d 938, 948-49 (N.D. Ill. 2009); *MAN Roland Inc. v. Quantum Color*

3

*Corp.*, 57 F. Supp. 2d 568, 570 (N.D. Ill. 1999). Here the pleading alleges the opposite. Whether a proven breach is "material" may be a fact question, but that question is not presented where the plaintiff has affirmatively pleaded that it received consideration.

Plaintiffs' remaining authority for the proposition that adequacy of consideration cannot be tested at the pleading stage does not support it—it holds the opposite. The Response cites "*Oxford Clothes XX, Inc. v. Expeditors Inter. of Washington, Inc.*," No. 94-cv-7734, 1995 WL 408193, at *5 (Resp. 4), for a supposed ruling that the question is "fact-dependent" and "not amenable to dismissal without a fuller evidentiary record." The only litigation of that name held the reverse. In *Oxxford Clothes XX, Inc. v. Expeditors International of Washington, Inc.*, 127 F.3d 574 (7th Cir. 1997), the plaintiff sought to undo a settlement it claimed lacked consideration; the district court dismissed the suit with prejudice, and the Seventh Circuit affirmed, rejecting the want-of-consideration theory outright. The court resolved the consideration question against the plaintiff at the threshold—it did not decline to resolve it—and the pleading-stage holding the Response attributes to the case appears in no opinion in it. The Ancel Defendants have been unable to locate any district-court order at the citation the Response gives.

Second, the transaction cannot be unwound. The film was shot, completed, and premiered (FAC ¶ 121), the flat fee was paid, and Plaintiffs themselves seek "disgorgement of sums paid to Rock City" (FAC ¶ 195). No order can restore these parties to their pre-contract positions. Plaintiffs answer that perfect restoration is not required, quoting *Sargent & Lundy*. But the exception they invoke runs against them. Restoration is excused only where it "has been rendered impossible by circumstances not the fault of the party seeking rescission, and the party opposing the rescission has obtained a benefit." *Sargent & Lundy*, 242 Ill. App. 3d at 629. Here it is Plaintiffs who seek rescission, Plaintiffs who completed and premiered the film that makes restoration impossible, and

Plaintiffs who retained the investors and script contributions Ancel supplied (FAC ¶ 57). The exception excuses the party who was not at fault and did not keep the benefit; it does not excuse the party who caused the impossibility and kept the benefit.

Plaintiffs' status-quo authority does not fill the gap. Their cases hold only that a court need not order perfect restoration in every case; none holds that a plaintiff may rescind a completed transaction it finished and whose benefits it kept. The one decision Plaintiffs offer for a contrary rule—that the duty to restore "does not even arise until the court finds the relief to be appropriate"—cannot be located. Plaintiffs cite *Roston Investments v. Opus Corp.*, No. 90-cv-2524, 1990 WL 139140, at *3 (N.D. Ill. Sept. 13, 1990) (Resp. 5-6), but no such decision appears in the Westlaw or Lexis databases, on the cited docket, or in any reporter; a search of the citation, the docket number, the party names, and the quoted language returns nothing.[1] The Ancel Defendants respectfully request that Plaintiffs be directed to furnish a copy of the opinion, and that the Court otherwise disregard the citation. The point does not change the result. The remaining

---

[1] Plaintiffs' reliance on a decision that does not exist—and, separately, on a decision that holds the opposite of the proposition for which it is cited—is not mere miscitation. Citation to a nonexistent opinion violates counsel's obligation under Rule 11(b)(2) to advance only legal contentions "warranted by existing law," because "[a] fake opinion is not 'existing law'" and "[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448, 461 (S.D.N.Y. 2023); *accord Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (Rule 11 requires counsel to "read, and thereby confirm the existence and validity of, the legal authorities on which they rely"; referring counsel for discipline). Courts in this District and Circuit sanction the practice. *See Obi v. Cook County*, No. 1:25-cv-03096, 2026 WL 1001481, at *10 (N.D. Ill. Apr. 9, 2026) (striking the filing and imposing sanctions; "Filing a document that contains citations to nonexistent cases, quotes language that comes from no real case, or that contains arguments wholly unsupported by the record violates Rule 11."); *Perez-Castillo v. Blanche*, No. 25-1988 (7th Cir. June 1, 2026) (imposing a $5,000 sanction for a brief containing artificial-intelligence "hallucinations" and holding counsel's duty to verify citations nondelegable). The court's inherent authority to sanction fabrications presented to it reaches, in egregious cases, dismissal. *See Martin v. Redden*, 34 F.4th 564 (7th Cir. 2022). The Ancel Defendants do not, on this record, ask the Court to sanction anyone; they ask that the offending citations be disregarded along with the arguments they are offered to support, *see Wehrs v. Wells*, 688 F.3d 886 (7th Cir. 2012), and note that these are not isolated lapses—the Response's further citation irregularities are catalogued in the accompanying Declaration of Counsel (Ex. A). The Ancel Defendants do not attribute these lapses to Plaintiffs' lead counsel, George J. Spathis, whose submissions in this matter have been careful and accurate; the irregularities appear only in the Response, filed after additional counsel appeared for Plaintiffs.

cases Plaintiffs cite addressed a rescinding party seeking to undo an exchange it had not completed—not a plaintiff seeking to unwind a finished, premiered film while keeping what it received—and the settled Illinois rule is that restoration to the status quo is a precondition to rescission. *Sargent & Lundy*, 242 Ill. App. 3d at 629.

Two of the decisions Plaintiffs marshal to keep the rescission claim alive at the pleading stage thus do no work: one cannot be found, and the other holds the opposite of the proposition for which it is cited. Stripped of them, nothing in the Response answers the point that Plaintiffs' own allegations of performance and a completed film foreclose the remedy. Because those allegations establish that consideration passed and that the transaction cannot be unwound, rescission is foreclosed. Dismissal should be with prejudice. The defect is not a drafting gap that repleading can close; Plaintiffs cannot unplead the performance they allege (FAC ¶ 57) or undo the completed, premiered film (FAC ¶ 121). Any repleaded rescission theory would founder on the same admissions, so amendment would be futile.

## II. THE ALTER-EGO CLAIM AGAINST ANCEL INDIVIDUALLY FAILS UNDER THE CALIFORNIA LAW PLAINTIFFS CHOSE (COUNT IV).

Count IV seeks to hold Ancel personally liable on an agreement he signed only as his company's agent. The NDA runs between Lakefront and Ancel International, and Ancel signed as "CEO, Jordan Ancel Inter[national], LLC" (FAC Ex. B; ¶¶ 54-56). The NDA is governed by California law (FAC Ex. B § 17), and Ancel International is a California LLC (FAC ¶ 8). California law therefore decides whether to disregard the entity—a point Plaintiffs do not contest.

California disregards the corporate form only on a showing of both "(1) . . . such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985). At the pleading stage,

6

"[c]onclusory allegations of 'alter ego' status are insufficient"; a plaintiff "must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). Owning the company and making its decisions is not enough. *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011).

Count IV offers labels. It alleges that Ancel International was a "subterfuge," that there is a "unity of interest," that the company was "undercapitalized," and that it "has since been dissolved" (FAC ¶¶ 184-85, 188). Those are the elements restated, not facts supporting them—no commingled funds, no ignored formalities, no siphoned assets, no capitalization figures. *Neilson*, 290 F. Supp. 2d at 1116; *Iqbal*, 556 U.S. at 678. Dissolution after a dispute is not the inequitable result the second prong requires, and an entity's inability to satisfy a creditor does not supply it. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000) (difficulty enforcing a judgment or collecting a debt "does not satisfy this standard"). Illinois law is in *accord*, so the result does not turn on the choice of law. *Tower Invs., LLC v. 111 E. Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1033-34 (1st Dist. 2007).

Plaintiffs' authority does not close the gap. Their lead case, *H.C. Duke & Son*, 2012 WL 2792443, at *5, is cited as an "N.D. Ill." decision (Resp. 6); it is a Central District of Illinois decision, and it denied dismissal under both Nevada and California law on allegations of specific misconduct—not the bare labels pleaded here. Their remaining alter-ego authority, *Federal Reserve Bank of San Francisco v. HK Systems*, No. C-95-1190, 1997 WL 227955 (N.D. Cal. Aug. 24, 1997) (Resp. 6-7), is an out-of-district decision that merely catalogs factual routes that may satisfy California's test; it dismisses nothing here, because Count IV pleads none of those facts. And *Sonora Diamond*, which Plaintiffs cite (Resp. 7 n.3), states the rule the Ancel Defendants rely

on: the standard is high, exercised reluctantly, and not met by an inability to collect. 83 Cal. App. 4th at 538-39.

Count IV compounds the problem by suing on the wrong agreement, for the wrong plaintiff. It alleges breach of "the Producer Agreement" (FAC ¶ 186)—not the NDA—and damage to "The Curse" (FAC ¶ 187), which is neither a party to the NDA nor the plaintiff on this count. Plaintiffs call these "mere pleading oversights that can be cured by amendment" (Resp. 6 n.2). On a Rule 12(b)(6) motion the claim is measured as pleaded. The dispositive defect, however, is the alter ego: stripped of labels, nothing ties Ancel personally to an agreement his company signed. The Court should dismiss Count IV as to Ancel individually. The Ancel Defendants do not seek dismissal of the NDA claim against the contracting entity, Ancel International (FAC ¶¶ 189-90), and will answer it.

### III.  THE ABSOLUTE LITIGATION PRIVILEGE BARS THE ONE STATEMENT PLAINTIFFS' PLEADING PLACES IN ANCEL'S OWN LAWSUIT (COUNT I, IN PART).

The Ancel Defendants moved to dismiss Count I only to the extent it rests on the allegation that Ancel "repeat[ed]" in his own Cook County complaint the charge that Karum had falsely accused him of assault (FAC ¶¶ 109-10). The Response spends most of five pages establishing that out-of-court statements to the press and on social media are not privileged. On that, there is no dispute. The Ancel Defendants did not move on any out-of-court statement; they said so (Mot. 12), and they will answer those allegations. That showing answers an argument no one made.

The narrow question the motion raises is whether a party's statement in his own pleading, in a related judicial proceeding, is privileged. It is. A party to litigation "is absolutely privileged to publish defamatory matter concerning another . . . during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."

8

Restatement (Second) of Torts § 587 (1977), adopted in *Malevitis v. Friedman*, 323 Ill. App. 3d 1129, 1131 (1st Dist. 2001). The privilege is absolute; it is not defeated by malice; and its relevance requirement is applied liberally, with doubts resolved in favor of pertinency. *Id.* Plaintiffs' own authority draws the line exactly where the motion draws it: the privilege attaches to statements made "as a part of" a judicial proceeding, even as it does not reach a party's separate, out-of-court repetition to unconnected third parties, and a party cannot manufacture the privilege by repeating his pleading to others outside the case. *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 703-05 (1st Dist. 2000). Ancel's in-pleading allegation falls on the privileged side of that line; his alleged out-of-court statements fall on the other, and the Ancel Defendants will answer them.

The privilege is an affirmative defense, so the Court did not resolve it on the original complaint, holding that the pleading did not then establish every element. (Dkt. 42, at 7.) An affirmative defense may nonetheless be resolved on a Rule 12(b)(6) motion where the complaint itself establishes it—including through the allegations the complaint supplies. *Holmes*, 141 F.4th at 822. Dismissing Count I to the extent it rests on the privileged in-pleading statement does not dismiss the count; it removes one legally barred basis of liability while the balance of Count I— the out-of-court statements the Ancel Defendants concede are not privileged and will answer— proceeds. Here, that narrow bar is established on the face of the pleading: Plaintiffs' own allegation places the challenged statement in Ancel's pleading in a related action (FAC ¶¶ 109-10). To that limited extent, and no further, Count I is barred; the privilege reaches the act of alleging the matter in Ancel's own complaint, not any out-of-court dissemination.

9

IV.   **KARUM'S INDIVIDUAL INTERFERENCE CLAIM PLEADS A HOPE, AND ATTRIBUTES THE SPECIFIC INTERFERENCE TO OTHERS (COUNT VIII).**

Count VIII is new: for the first time, Karum personally—apart from Lakefront—claims tortious interference with prospective economic advantage against the Ancel Defendants. The tort requires a reasonable expectancy of a specific business relationship, the defendant's intentional interference, and resulting damage. *Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 80. A generalized hope of future benefits is not a protectable expectancy; "[t]he hope of receiving a job offer is not a sufficient expectancy" to state the claim. *Id.* ¶ 81; *see Soderlund Bros. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615 (1st Dist. 1995) (a relationship affording "only the hope of continued benefits" is not protectable). Count VIII fails against the Ancel Defendants for two independent reasons.

First, what the pleading ties to Karum's own expectancy is a hope, not a relationship. She alleges "a reasonable expectation of landing acting roles through those agents and agencies" (FAC ¶ 211)—acting work from the industry at large. She identifies no specific role, audition, or booking she was positioned to obtain and lost. That is the hope *Kapotas* rejects.

Second, the specific relationships Plaintiffs now point to were interfered with, on the pleading's own terms, by others. The amendment attributes the inducement of the named agencies to drop Karum—Bankston Talent and ERIS Talent—to Rose, and the interference with the DePaul, Columbia, and Independent Film Alliance relationships to Rose and Amanda Gecewicz (FAC ¶¶ 139-40, 147-50). Whatever those allegations state against Rose, they do not supply the element Count VIII needs against the Ancel Defendants: intentional interference by Ancel. The Response's authority does not bridge that gap. *Cook v. Winfrey*, 141 F.3d 322, 327-28 (7th Cir. 1998), excuses a plaintiff from naming the specific third party, but it still requires that a valid expectancy exist

and that the defendant have interfered with it; and its pleading holding applied the notice-pleading standard of Conley v. Gibson that *Twombly* retired. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). Count VIII should be dismissed as to the Ancel Defendants.

## V. CIVIL CONSPIRACY IS DERIVATIVE, AND THE AMENDMENT LEAVES NO ACTIONABLE TORT BY ANCEL TO SUSTAIN IT (COUNTS X AND XI).

Civil conspiracy is not an independent tort. It requires an agreement and "a tortious act committed in furtherance of that agreement," and its essence "is not the agreement but rather the tortious acts performed in furtherance of the agreement." *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 41; *accord Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63-64 (1994). Because the tort is derivative, it rises or falls with an underlying, actionable wrong—and against Ancel the amended pleading supplies none that will carry the conspiracy counts.

First, the conspiracy counts cannot enlarge Ancel's exposure beyond the torts that underlie them. To the extent Counts VII and IX are read against the amended pleading to exclude non-actionable opinion and the acts the amendment now assigns to Rose and Gecewicz (Part VI), the conspiracy claims against Ancel narrow with them. A conspiracy claim adds nothing where the predicate torts against the defendant do not stand.

Second, as to Ancel's own conduct, the amendment leaves no independent tort by him in furtherance of the agreement it now pleads. The pleading identifies Ancel's own actionable statements in 2022 (FAC ¶¶ 59, 165-66) but dates the Ancel-Rose alliance to 2023 (FAC ¶¶ 115-16); conduct that predates an agreement is not an act in furtherance of it. Plaintiffs' cited answer—joint-and-several liability (*Roberts v. Alexandria Transp., Inc.*, 2021 IL 126249, ¶ 27 (Resp. 12))—does not reach the point, because that doctrine apportions the damages of an established tort rather than supplying one. To the extent the conspiracy counts instead rest on the acts the amendment assigns to Rose and Gecewicz, the counts remain derivative: they rise or fall with the actionability

11

of that conduct, which the Ancel Defendants address in Part VI and will meet on the merits. Because a conspiracy claim adds nothing to a defendant's exposure beyond the predicate torts, the counts against Ancel should track whatever survives of the interference and emotional-distress claims and reach no further. The Court's prior ruling sustained conspiracy on the original pleading, before the amendment re-attributed the interference and moved the agreement to 2023; the Ancel Defendants raise only the ground the amendment itself supplies.

## VI. THE AMENDMENT NARROWS WHAT REMAINS AGAINST ANCEL ON COUNTS VII AND IX.

The Ancel Defendants do not relitigate the interference and emotional-distress claims the Court sustained; they will answer them. They ask only that those claims be read against the pleading as amended, and that Count VII and Count IX be dismissed to the extent the new allegations show they rest on non-actionable material. A Rule 12(b)(6) motion may dismiss a claim to the extent it depends on statements the law does not reach. The amendment attributes the interference with the named relationships to Rose and Gecewicz (FAC ¶¶ 139-40, 147-50), which leaves against Ancel his own characterization of Plaintiffs as "dangerous" and to be avoided (FAC ¶ 116). A statement that a person is "dangerous" is non-actionable opinion, and a report of truthful information is not tortious; neither can ground interference or emotional distress. *Soderlund*, 278 Ill. App. 3d at 620; *Law Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129-30 (7th Cir. 2022). And to the extent Count IX rests on Ancel's post-termination litigation conduct, that conduct cannot supply the "extreme and outrageous" element; a party "who has done nothing more than . . . demand legal rights in a permissible way" is not liable for intentional infliction of emotional distress. *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 445 (2d Dist. 2005). The Ancel Defendants will answer the on-set allegations the Court sustained; they ask only that the claims not be expanded, on the new pleading, to reach conduct that is protected, truthful, or another's.

12

**CONCLUSION**

The Ancel Defendants respectfully ask the Court to dismiss Count V with prejudice; to dismiss Count IV as to Jordan Ancel individually; to dismiss Count VIII as to the Ancel Defendants; to dismiss Counts X and XI as to Ancel; to dismiss Count I to the extent it rests on the statement in Ancel's own pleading; to dismiss Counts VII and IX to the extent they rest on non-actionable opinion, truthful information, privileged statements, or acts the Amended Complaint attributes to others; and to grant such further relief as is just.

Dated: July 27, 2026

Respectfully submitted,
**LOFTUS & EISENBERG, LTD.**

By: */s/ Alexander N. Loftus*
Alexander N. Loftus
LOFTUS & EISENBERG, LTD.
181 W. Madison Street, Suite 4700
Chicago, Illinois 60602
(312) 899-6625
alex@loftusandeisenberg.com
Counsel for the Ancel Defendants

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and THE CURSE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:24-cv-01108 |
| v. | ) ) | Hon. Mag. Judge M. David Weisman |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, and CANDICE ROSE, | ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF ALEXANDER N. LOFTUS IN SUPPORT OF
THE ANCEL DEFENDANTS' REPLY**

1.      I am an attorney licensed to practice law in the State of Illinois and admitted to the bar of this Court, and I am counsel of record for the Ancel Defendants. I have personal knowledge of the matters stated below and, if called as a witness, could and would testify competently to them.

2.      I submit this Declaration to record the citation irregularities in Plaintiffs' Response in Opposition to the Partial Motion to Dismiss (Dkt. 152) and to describe the searches undertaken to locate the authority cited at pages 5-6 of the Response.

3.      Plaintiffs cite *Roston Investments v. Opus Corp.*, No. 90-cv-2524, 1990 WL 139140 (N.D. Ill. Sept. 13, 1990), for the proposition that a plaintiff's duty to restore consideration "does not even arise until the court finds the relief to be appropriate." To locate that decision, I (and attorneys and staff acting at my direction) searched for it by its Westlaw citation, by its Lexis citation, by the cited docket number, by the party names, and by the quoted language. No decision

1

by that name, at that citation, on that docket, or containing that language was found in any source searched. To my knowledge, no such decision exists.

4.      The Response also cites, at page 4, "*Oxford Clothes XX, Inc. v. Expeditors Inter. of Washington, Inc.*," No. 94-cv-7734, 1995 WL 408193, at *5 (N.D. Ill. June 12, 1995), for the proposition that the adequacy of consideration is "fact-dependent" and "not amenable to dismissal without a fuller evidentiary record." I could not locate any district-court opinion at that citation. The only litigation by that name that I located is *Oxxford Clothes XX, Inc. v. Expeditors International of Washington, Inc.*, 127 F.3d 574 (7th Cir. 1997), in which the district court dismissed the suit with prejudice and the Seventh Circuit affirmed, rejecting the plaintiff's want-of-consideration theory. That decision does not hold that adequacy of consideration cannot be resolved at the pleading stage; it resolved the plaintiff's consideration theory against the plaintiff.

5.      The Response contains the additional citation irregularities identified in the table below. This Declaration does not contend that any of these were intentional. For the avoidance of doubt, the Ancel Defendants do not dispute the existence of *Federal Reserve Bank of San Francisco v. HK Systems*, No. C-95-1190, 1997 WL 227955 (N.D. Cal. Aug. 24, 1997), which is a genuine decision.

| No. | Citation (and location in the Response) | Defect | Explanation |
|---|---|---|---|
| 1 | *Roston Investments v. Opus Corp.*, No. 90-cv-2524, 1990 WL 139140 (Resp. 5-6) | Nonexistent / unlocatable | No decision by this name or at this citation appears in the cited docket (No. 90-cv-2524), Google Scholar, CourtListener, or any reporter. The quoted proposition appears in no opinion. Cited as the lead authority that status-quo restoration is not a pleading concern. |

2

| No. | Citation (and location in the Response) | Defect | Explanation |
|---|---|---|---|
| 2 | *Windy City Metal Fabricators* & Supply, Inc. v. CIT Tech. Fin. Servs., 536 F.3d 663, 668 (Resp. 2) | Fabricated quotation | The quoted language ("a well pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" and "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence") does not appear anywhere in the opinion at the cited page; it is language from *Bell Atl. Corp. v. Twombly* presented, in quotation marks, as a Windy City quotation. |
| 3 | *H.C. Duke & Son*, 2012 WL 2792443 (Resp. 6) | Wrong court / mischaracterized | Cited as an "N.D. Ill." decision. It is a Central District of Illinois decision (No. 4:11-cv-04006), and it denied dismissal under both Nevada and California law—not, as implied, a Northern District of Illinois decision applying California law to allegations like those here. |
| 4 | *Cranberry Prod., Inc. v. Maharishi Ayur Veda Univ.*, No. 00-cv-1953, 2000 WL 1745278 (Resp. 12) | Facially impossible date (real case) | Cited as decided "Nov. 12, 1999." A case bearing a 2000 docket number and a 2000 Westlaw citation cannot have been decided in 1999; the decision issued November 27, 2000 (No. 1:00-cv-01953, N.D. Ill.). Unlike the citation, the underlying decision is genuine and does support the pleading-stage proposition for which it is offered; the defect is the facially impossible date, not the substance. |
| 5 | *Thompson v. Frank*, 313 Ill. App. 3d 661, 664 (Resp. 8-9) | Altered quotation | The Response quotes "the classification of absolute is necessarily narrow." The opinion reads "the classification of absolutely privileged communications is necessarily narrow." Words were omitted from within quotation marks. |
| 6 | *Rosenbaum v. Samler*, 2025 IL App (1st) 240039, ¶ 56 (Resp. 10) | Misattributed quotation | The sentence quoted to Rosenbaum ¶ 56 is verbatim language from *Qualizza v. Freeman*, 2024 IL App (1st) 231534-U, ¶ 32; the cited paragraph could not be confirmed to contain it. |

3

| No. | Citation (and location in the Response) | Defect | Explanation |
|---|---|---|---|
| 7 | *Roberts v. Alexandria Transp., Inc.,* 2021 IL 126249, ¶ 32 (Resp. 12-13) | Wrong pinpoint | The quoted joint-and-several-liability language appears at ¶ 27, not the cited ¶ 32. |
| 8 | *Oxford Clothes XX, Inc. v. Expeditors Inter. of Washington, Inc.*, No. 94-cv-7734, 1995 WL 408193 (Resp. 4) | Fabricated / holds the opposite | Cited (with the party name misspelled "Oxford") for a ruling that the adequacy of consideration is "fact-dependent" and "not amenable to dismissal" at the pleading stage. No district-court opinion could be located at the citation given. The only litigation by that name — *Oxxford Clothes XX, Inc. v. Expeditors International of Washington, Inc.*, 127 F.3d 574 (7th Cir. 1997) — holds the opposite: the district court dismissed the suit with prejudice and the Seventh Circuit affirmed, rejecting the plaintiff's want-of-consideration theory. The pleading-stage holding the Response attributes to the case appears in no opinion in it. |

6.      I do not attribute the irregularities identified in this Declaration to George J. Spathis, Plaintiffs' lead counsel. In my experience in this matter, Mr. Spathis's submissions have been careful and accurate, and the irregularities identified here appear only in the Response, which was filed after additional counsel appeared for Plaintiffs.

7.      I declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed: July 27,  2026

/s/ Alexander N. Loftus
Alexander N. Loftus
LOFTUS & EISENBERG, LTD.

4

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ Alexander N. Loftus*