**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and THE CURSE, LLC, | ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | Case No. 1:24-cv-01108 |
| v. | ) ) | Hon. Mag. Judge |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, and CANDICE ROSE, | ) ) ) ) ) ) | M. David Weisman |
| Defendants/Counter-Plaintiffs. | ) | |

**ANCEL DEFENDANTS' AMENDED MOTION TO COMPEL
PLAINTIFFS' DISCOVERY RESPONSES**

Defendants and Counter-Plaintiffs Jordan Ancel, Jordan Ancel International, LLC, and Rock City Road Films LLC (the "Ancel Defendants"), under Federal Rule of Civil Procedure 37(a) and Local Rule 37.2, move to compel Plaintiffs Lakefront Pictures, LLC, Jennifer Karum, and The Curse, LLC (collectively, "Plaintiffs") to cure the discovery deficiencies that remain after Plaintiffs' June 5, 2026 amended responses and supplemental production. The Court struck the Ancel Defendants' prior motion to compel [ECF No. 134] without prejudice by minute order entered July 24, 2026 [ECF No. 153], directing that any amended motion attach as exhibits the discovery requests and answers at issue. The Ancel Defendants now do so. The responses at issue are marked Confidential — and, by Plaintiffs, Attorneys' Eyes Only — under the Agreed Confidentiality Order (ECF No. 85); the Ancel Defendants submit them as Exhibits A through E and contemporaneously move for leave to file those exhibits under seal. In support, the Ancel Defendants state:

1

Exhibits A–E each set forth verbatim each interrogatory, document request, or request to admit, followed by Plaintiffs' response: Exhibit A — Plaintiffs' Amended Response and Objections to the Ancel Defendants' Interrogatories (June 5, 2026); Exhibit B — Karum's Supplemental Response and Objections to Interrogatories 18–23 (June 5, 2026); Exhibit C — Plaintiff's Amended Response and Objection to the Ancel Defendants' Requests for Production (June 5, 2026); Exhibit D — Karum's Supplemental Response and Objections to Requests for Production 22–34 (June 5, 2026); Exhibit E — Karum's Supplemental Response and Objections to Requests to Admit 24–26 (June 5, 2026). Exhibit F — Plaintiffs' July 21, 2026 supplemental document production (LFP007115–LFP007193).

## INTRODUCTION

Jennifer Karum claims more than $200,000 for a clinical condition she refuses to document. She swore in her own Los Angeles restraining-order application — a document she produced — that the Ancel Defendants' conduct "caused me to go on anti-depression medication." (LFP000137.) She now values that distress in excess of $200,000, says she takes a prescribed antidepressant, and admits under oath that she received mental-health treatment before June 2022. (Ex. B, Interrog. No. 18; Ex. E, RTA No. 24.) Yet she will not name the provider who prescribed the medication, will not produce a single treatment record, and answered the interrogatory asking how the Ancel Defendants caused her injuries by copying, nearly verbatim, her damages answer. (Ex. B, Interrog. Nos. 18–19.)

The Ancel Defendants ask the Court to require three things. First, an order compelling the discovery Karum's emotional-distress claim places at issue: the choice whether to keep that claim is hers, but having kept it, she must produce its foundation rather than bury it. Second, production of Plaintiffs' electronically stored information in the native format the Ancel Defendants

2

requested. Third, the reasonable expenses of this motion, which was necessary to force even the partial compliance Karum has now provided.

Plaintiffs' response resists on the merits, and the record answers each theme. Karum says the medical demand is a "lifetime" fishing expedition — but the requests reach back to 2016 and 2020, not childhood, and every case Karum cites ordered a multi-year pre-conduct baseline while she offers barely one. Karum says the native-format dispute is manufactured — but she never objected to the format specification or named an alternative, which the Rules treat as forfeiture. And though Karum refused as "irrelevant" to identify her other litigation, she produced those records the day she opposed this motion — confirming both that the motion was necessary to pry them loose and that her litigation history is one of vexatious and unreasonable litigation. (Ex. F.)

This is not a case about the reach of confidentiality. The Agreed Confidentiality Order already protects Karum's medical information (ECF No. 85 ¶ 2(d)); the privacy she invokes is secured, and the Ancel Defendants do not oppose any reasonable heightened protection to which the parties may stipulate. What remains is a plaintiff who produced more than 6,400 pages of everything except the proof of the one claim she values most.

## RELEVANT BACKGROUND

Plaintiffs filed this action in 2024. The Ancel Defendants answered and asserted counterclaims (ECF No. 43), and the parties consented to this Court's jurisdiction (ECF No. 48). The Ancel Defendants served Interrogatories 18 through 25, Requests to Admit 24 through 26, and Requests for Production 22 through 34, directed at the nature, scope, and basis of Karum's individual emotional-distress claim, and Requests for Production 1 through 21, directed at the defamation and business-tort claims and counterclaims.

Plaintiffs' initial emotional-distress responses, served April 2, 2026, refused every interrogatory and request to admit on a single "personal medical information" objection. On April 8, 2026, undersigned counsel sent Plaintiffs' counsel a fifteen-page deficiency letter that also offered Plaintiffs a way to avoid producing anything: a binding stipulation that they would not seek emotional-distress damages. Plaintiffs did not stipulate. On May 15, 2026 — the day the Court ordered the parties to confer (ECF No. 121) — counsel conferred by telephone. That conference resolved confidentiality: the Court had entered the parties' Agreed Confidentiality Order (ECF No. 85), which protects medical information as Confidential (id. ¶ 2(d)). The conference also narrowed the privilege-log dispute, but resolved none of the matters presented here. On May 19, 2026, the Court set a schedule requiring amended responses by June 5, 2026, and closing fact discovery on September 14, 2026. (ECF No. 123.)

On June 5, 2026, Plaintiffs served amended and supplemental responses (Exs. A–E) and a supplemental production of 1,514 documents spanning more than 6,400 pages (LFP000681–LFP007113). On June 9, 2026, undersigned counsel sent a second deficiency letter and again offered to confer. The deficiencies remained uncured, and the Ancel Defendants moved to compel on June 30, 2026. Plaintiffs responded on July 21, 2026, and, the same day, served the supplemental production of litigation records at issue in Part III below (Ex. F, LFP007115–LFP007193). On July 24, 2026, the Court struck the motion [ECF No. 134] without prejudice for want of the discovery exhibits, directing that any amended motion attach them. (ECF No. 153.) This amended motion follows. Fact discovery closes September 14, 2026; the Ancel Defendants still lack the discovery needed to depose Karum about her claimed distress and to move for summary judgment.

## COMPLIANCE WITH LOCAL RULE 37.2

This motion satisfies Local Rule 37.2. On May 15, 2026 — the date the Court ordered the parties to confer — undersigned counsel and Plaintiffs' counsel George J. Spathis conferred by telephone in a good-faith effort to resolve these disputes; counsel discussed each category of deficiency, Mr. Spathis agreed that Plaintiffs would complete their production and amend their responses, and the Ancel Defendants reserved all rights. Counsel also exchanged detailed deficiency letters — fifteen pages on April 8 and a further letter on June 9, 2026. After Plaintiffs' June 5 supplementation, undersigned counsel and Mr. Spathis conferred again by telephone about the deficiencies pressed here — including the format in which Plaintiffs produced their electronically stored information — and confirmed that they are at a genuine impasse on each. The parties agree that these disputes are ripe and, with fact discovery closing September 14, 2026, require the Court's prompt resolution. The conferences resolved confidentiality and narrowed the privilege-log dispute, but the matters presented here remain unresolved, each turning on a contested question of scope, relevance, or privilege rather than on any misunderstanding.

Plaintiffs' contrary suggestion — that the disputes were "never discussed" and the prior motion was premature — cannot carry a renewed motion. The deficiencies were identified in specific writing in April and June and addressed at the Court-ordered conference; Plaintiffs' own response defends each objection on its merits, which confirms a genuine impasse rather than a misunderstanding. And whatever force a timing objection had when the prior motion was filed, it is spent now: Plaintiffs have since responded in full, the Court reset the schedule, and this amended motion follows the Court's own direction after complete briefing.

## LEGAL STANDARD

A party may move to compel when an opposing party fails to answer an interrogatory under Rule 33 or to produce documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). An evasive

or incomplete answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4). Discovery reaches "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and such information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The party resisting discovery bears the burden to substantiate its objections; an interrogatory objection must "be stated with specificity," and "[a]ny ground not stated in a timely objection is waived." Fed. R. Civ. P. 33(b)(4). Boilerplate objections that a request is "vague," "overly broad," "unduly burdensome," or "harassing" do not satisfy these requirements. *See United Auto. Ins. Co. v. Veluchamy*, 747 F. Supp. 2d 1021, 1026–28 (N.D. Ill. 2010).

## ARGUMENT

I. **THE COURT SHOULD COMPEL THE DISCOVERY KARUM'S EMOTIONAL-DISTRESS CLAIM PLACES AT ISSUE.**

A. **Karum has placed her mental condition in controversy and cannot wield the claim while withholding its proof.**

A plaintiff who seeks damages for a mental condition puts that condition in issue and must answer for it in discovery. A party "who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy." *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). The Seventh Circuit applies that principle to emotional-distress claims: "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006). This District draws the line that decides this motion: a party "cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999).

6

Karum has injected exactly that. She pleads a standalone claim for intentional infliction of emotional distress (Am. Compl. ¶¶ 215–218 (Count IX)) and alleges that the Ancel Defendants "weaponize[d] Karum's autism" (id. ¶¶ 74–75, 218). She values the resulting distress in excess of $200,000, says she sought medical attention, and says she takes a prescribed antidepressant. (Ex. B, Interrog. No. 18.) She swore the same in another court: in her Los Angeles restraining-order application, she stated that the Ancel Defendants' conduct "caused me to go on anti-depression medication." (LFP000137; *see* Ex. A, Interrog. No. 17.) A litigant who swears in one court that the opposing party drove her to clinical medication cannot tell this Court that the same subject is "personal medical information" beyond discovery. (Ex. A, Interrog. Nos. 19–21.) That objection is not a privilege; it is a refusal.

This is not garden-variety distress. Garden-variety distress is limited to "humiliation, embarrassment, and other similar emotions" and excludes "any resulting symptoms or conditions," including "sleeplessness, nervousness, [and] depression." *Flowers v. Owens*, 274 F.R.D. 218, 220 (N.D. Ill. 2011). Karum's pleaded IIED claim alone crosses that line: because severe emotional distress is an element of the claim, her mental health is squarely at issue and the privilege is waived. *Jakes v. Boudreau*, No. 1:19-cv-02204, 2020 WL 5297007, at *2 (N.D. Ill. Sept. 4, 2020). Her claimed depression, anxiety, ongoing treatment, and prescription medication cross it again. *Coleman v. City of Chicago*, No. 1:18-cv-00998, 2019 WL 7049918, at *2 (N.D. Ill. Dec. 23, 2019) (claims of anxiety and trouble sleeping "indicate that [plaintiff] is not simply seeking 'garden variety' emotional damages"). And she may not avoid the result by promising to limit her proof later; the court decides "the case as it stands now," and Karum "has made no stipulation or promise not to pursue such damages." *Jakes*, 2020 WL 5297007, at *2.

7

B.      **The choice is Karum's; having kept the claim, she must disclose its basis.**

The choice is Karum's. She may limit or withdraw her emotional-distress claim and keep her records private, or she may maintain the claim and disclose its basis; what she may not do is keep the claim while withholding its proof. See *Santelli*, 188 F.R.D. at 309. The Ancel Defendants offered her the first path months ago — a binding stipulation withdrawing emotional-distress damages, which would moot this dispute. (Apr. 8, 2026 Letter.) She declined, and instead served answers that engage the subject enough to keep the claim alive while disclosing nothing that would let the Ancel Defendants test it. Because Karum has kept the claim, the Court should compel her to support it: answer Interrogatories 19, 20, and 21, identify every treating provider, and produce the responsive mental-health and medical records, subject to the Agreed Confidentiality Order. Karum remains free to moot that order by stipulating to withdraw the claim. The subsections below explain why the June 5 supplementation did not amount to compliance.

C.      **Interrogatory 19 is a verbatim copy of the Interrogatory 18 answer.**

Interrogatory 19 asked Karum, for each emotional injury, to identify the specific act that caused it, when it first manifested, and how she determined causation. Rule 33 requires an answer "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Karum reproduced, nearly word for word, her answer to the damages interrogatory. (*Compare* Ex. B, Interrog. No. 18, *with id.* No. 19.) The response identifies no act that caused any specific injury, states no date of onset beyond "[t]hese conditions began," and never explains causation — an omission underscored by her admission that no provider has connected the Ancel Defendants' conduct to any diagnosed condition. (Ex. E, RTA No. 25.) Answering a causation interrogatory with a copy of a damages answer is an evasive, incomplete response, which the Rules treat as no response at all. Fed. R. Civ. P. 37(a)(4).

**D.    Karum cannot use Rule 33(d) to avoid naming her own treatment providers.**

Interrogatory 20 asked Karum to identify each mental-health provider who treated her since January 1, 2020, with each provider's name, address, dates of treatment, diagnoses, and medications. Without that information, the Ancel Defendants cannot subpoena a record, depose a treater, or retain a responsive expert. Karum named no provider. She objected that the request is "overly broad, harassing," and irrelevant, then invoked Rule 33(d) to offer documents regarding treatment "since mid-2023," contingent on an Attorneys'-Eyes-Only designation. (Ex. B, Interrog. No. 20.) The response fails three times over.

First, Rule 33(d) does not apply. The business-records option is available only when "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). The identity of one's own doctors is personal knowledge, not something derived from records. "[A] party that knows or has access to an interrogatory answer may not use Rule 33(c) to avoid furnishing a responsive interrogatory answer where . . . the answer cannot be ascertained from the documents." *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). Karum knows who prescribed her antidepressant; Rule 33(d) does not excuse her from saying so. Second, the answer is conditioned on an "Attorneys' Eyes Only" designation the operative order does not contain. The Agreed Confidentiality Order has a single Confidential tier that already protects medical information (ECF No. 85 ¶¶ 2, 2(d)), and it provides that a party seeking protection greater than the Order affords "must move[] for an order providing such special protection" (id. ¶ 8) — which Karum has not done. Her confidentiality condition is therefore no basis to withhold: the Order already protects these records, and the Ancel Defendants do not oppose any reasonable heightened protection to which the parties may stipulate. Third, the offer is truncated to treatment "since mid-2023," even though Karum admits she received treatment before June 2022. (Ex. E,

RTA No. 24.) Karum's brief now promises records "dating back to mid-2022," but her verified response offered only "since mid-2023" — after the conduct began. Pre-existing treatment bears directly on causation, and the Ancel Defendants are entitled to learn whether Karum's depression predates the conduct she blames for it.

**E.**   **A single 2011 form does not answer Interrogatory 21, and the production confirms the withholding.**

Interrogatory 21 asked whether Karum had any mental-health diagnoses, conditions, or treatments before June 2022 — including conditions related to her autism — and, if so, to identify each. Karum offered a single 2011 "Physical/emotional impairment disclosure form." (Ex. B, Interrog. No. 21; Ex. D, RFP No. 24.) A 2011 form cannot account for the treatment Karum admits she received before June 2022 (Ex. E, RTA No. 24), and it leaves the years between undisclosed. The supplemental production removes any doubt that records are being withheld rather than that none exist: Karum produced more than 6,400 pages — the Producer Agreement, distribution emails, and thousands of social-media screenshots — without a single mental-health treatment record, prescription record, or provider record among them. A plaintiff may not "satisfy its duty to disclose damages by producing quantities of . . . documents and then letting [the defendant] take depositions in which it could try to piece together a damages theory from those fragments." *Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 605 (7th Cir. 2024).

**F.**   **Karum must produce her mental-health records under the accepted designation, and her proportionality objection collapses on her own authority.**

Requests for Production 22, 23, 24, 29, 30, and 31 seek Karum's mental-health treatment, prescription, pre-existing-condition, post-2022 treatment, billing, and provider-communication records. (Ex. D.) Because Karum's psychological state is in issue, "the defendant is entitled to discover any records of that state." *Doe*, 456 F.3d at 718. Karum agreed to produce only treatment

from "mid-2022" forward, again contingent on confidentiality. (Ex. D, RFP Nos. 22, 23, 29, 30, 31.)

Karum recasts the dispute as a demand for her "entire lifetime" of records. It is not. The requests reach January 1, 2020 for provider identity and treatment records (Ex. B, Interrog. No. 20; Ex. D, RFP Nos. 22–23) and January 1, 2016 for the pre-existing-condition baseline (Ex. D, RFP No. 24) — not childhood, and not a lifetime. More telling, every case Karum cites ordered a multi-year pre-conduct baseline. *Coleman* ordered records for "two years prior to" the conduct. 2019 WL 7049918, at *8. *Jakes* — Karum's lead authority — set "a temporal limit . . . of 5 years before" the conduct, precisely to let the defendant "establish Plaintiff's baseline health prior to" the events, "relevant and proportional here." 2020 WL 5297007, at *4. *Laudicina* ordered records "for five years preceding the date of the incident." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 511 (N.D. Ill. 2018). Karum offers barely one year — and would cut it off in mid-2022, after the very pre-June-2022 treatment she admitted under oath (Ex. E, RTA No. 24). Her own cases refute her: the lowest baseline any of them approved was two years (*Coleman*), and the recognized outer window is five (*Jakes*, *Laudicina*) — each measured before the conduct, each reaching the pre-2022 treatment Karum concedes, and each far exceeding the sliver she offers. The privacy concern that animates those decisions is resolved here: the Agreed Confidentiality Order protects these records as Confidential (ECF No. 85 ¶ 2(d)), and to the extent Karum seeks still greater protection, the Order requires her to move for it (id. ¶ 8). The Court should order production of all responsive mental-health and medical records for the periods requested — the provider and treatment records from January 1, 2020, which sit comfortably within the two-to-five-year range these authorities approve, and the pre-existing-condition records that Karum's admission places in

11

issue — or, at a minimum, for the five-year pre-conduct baseline this District recognizes, unless Karum elects to withdraw the claim instead.

## II. PLAINTIFFS MUST PRODUCE ELECTRONICALLY STORED INFORMATION IN NATIVE FORMAT WITH METADATA.

The Ancel Defendants' document requests specified, in Instruction No. 12, that electronically stored information be produced in native format with metadata preserved. Plaintiffs' production — original and supplemental — consists of PDF images and print-to-PDF screenshots, more than half carrying no electronic text. No native-format production has been made, and Plaintiffs' response concedes that native ESI "was similarly requested."

Rule 34 resolves the point. When a request specifies a form for producing electronically stored information, the responding party must produce in that form or, if it objects, "state the form or forms it intends to use." Fed. R. Civ. P. 34(b)(2)(D). Plaintiffs did neither: they did not object to the native-format specification and did not identify an alternative form. That forfeits any objection to form. This is the distinction *Autotech* draws. That court declined to compel metadata because the requesting party had "not made that a part of its request," and cautioned that it is "a little late to ask for meta-data after documents responsive to a request have been produced." *Autotech Techs. LP v. Automationdirect.Com, Inc.*, 248 F.R.D. 556, 559–60 (N.D. Ill. 2008). The Ancel Defendants did make native format part of their request, from the outset, so neither concern applies. Karum's remaining answer — that the Ancel Defendants also produced in PDF — charges a shared default, not a defense to her own; if Plaintiffs want the Ancel Defendants' native files, the remedy is a request, not the withholding of theirs.

The Ancel Defendants do not seek to convert social-media screenshots that have no native form. They seek the text messages and emails that do, where metadata — dates, authorship, and threading — bears on the authenticity, custody, and timeline of the parties' communications, the

12

central factual disputes in this case. The Court should order Plaintiffs to reproduce, in native format with metadata, the responsive text messages and emails within their production, or to certify that a given item exists only as an image. To keep the obligation even-handed, the Ancel Defendants will reciprocate as to their own responsive text messages and emails.

### III. THE COURT SHOULD AWARD THE ANCEL DEFENDANTS THE EXPENSES THIS MOTION REQUIRED.

Rule 37(a)(5)(A) requires an award of the movant's reasonable expenses not only when a motion to compel is granted, but also when "the . . . requested discovery is provided after the motion was filed." Fed. R. Civ. P. 37(a)(5)(A). This case fits the rule exactly. Interrogatory 25 asked Plaintiffs to identify each lawsuit or formal proceeding by or against any Plaintiff within the past ten years. Plaintiffs refused outright, on a boilerplate objection that the request is "burdensome, harassing," and irrelevant, and produced nothing. (Ex. A, Interrog. No. 25.) That changed only when the Ancel Defendants moved. On July 21, 2026 — the day Plaintiffs opposed the motion — they served the litigation records they had withheld. (Ex. F.) A response supplied only after, and because of, a motion to compel is the paradigm trigger for a fee award under Rule 37(a)(5)(A).

What the production revealed confirms that the withholding was tactical, not justified. The records disclose a litigation history that is itself vexatious and unreasonable. In November 2023, Karum filed a Cook County action and invoked pre-suit discovery to unmask an anonymous account she said was impersonating her. *Karum v. Meta Platforms, Inc.*, No. 2023 L 011222 (Cir. Ct. Cook Cnty. filed Nov. 2, 2023) (LFP007142). In 2024, she brought a second Cook County pre-suit-discovery proceeding, complete with a domesticated California subpoena, to unmask the anonymous authors of online "suggestions" that led to the removal of Lakefront's Google business profile. *Karum v. Google LLC*, No. 2024 L 000669 (Cir. Ct. Cook Cnty. filed Jan. 18, 2024)

13

(LFP007169; LFP007188). And in April 2026, while this very discovery was pending, she filed a federal copyright, DMCA, and Lanham Act suit accusing a former collaborator of waging a "smear campaign" against her. *Lakefront Pictures, LLC v. Gecewicz*, No. 1:26-cv-04038 (N.D. Ill. filed Apr. 10, 2026) (LFP007115). A litigant who has repeatedly gone to court — twice deploying pre-suit discovery to expose those she casts as adversaries — plainly can identify her own lawsuits. Her flat refusal to do so was not an oversight or a defensible reading of Rule 26; it was of a piece with the litigation history she preferred the Ancel Defendants not examine.

None of Rule 37(a)(5)(A)'s exceptions applies. The Ancel Defendants did not file "before attempting in good faith to obtain the . . . discovery without court action"; they conferred on May 15 and sent two detailed deficiency letters. Karum's boilerplate refusal to list litigation within her own knowledge was not substantially justified — she supplied the information the moment she was pressed. And no circumstance makes an award unjust; a party who withholds discovery, forces a motion, and then produces on the day of her response should bear the expense of the motion her conduct made necessary. The Ancel Defendants are entitled to the reasonable expenses, including attorney's fees, they incurred in obtaining those records and in bringing this motion.

The Ancel Defendants do not ask the Court to strike Karum's claim or to preclude evidence now. They ask only for an order compelling the discovery described above. Should Karum defy that order, Rule 37(b)(2) supplies a range of remedies, up to and including "an order striking [the plaintiff's] claim for damages on account of mental and physical distress." *Reise v. Bd. of Regents*, 957 F.2d 293, 295 (7th Cir. 1992). The Court need not reach that question unless and until Karum disobeys.

## CONCLUSION

For these reasons, the Ancel Defendants respectfully request that the Court enter an order:

14

(1) compelling Jennifer Karum, within fourteen days, to serve complete, non-evasive supplemental answers to Interrogatories 19, 20, and 21 — identifying each specific act causing each claimed injury and when it manifested; identifying by name, address, and dates of treatment each mental-health provider who has treated Karum from January 1, 2020 to the present, with all diagnoses and medications; and identifying each pre-existing mental-health condition, when first diagnosed, by whom, and the treatment provided — and to produce all documents responsive to Requests for Production 22, 23, 24, 29, 30, and 31 for the periods set out above, subject to the protections of the Agreed Confidentiality Order (ECF No. 85); and providing that Karum may instead moot this paragraph by filing, within the same period, a binding stipulation withdrawing and agreeing not to seek emotional-distress damages under any count of the operative pleading, including Count IX, and amending her pleading to conform;

(2) compelling Plaintiffs, within fourteen days, to produce all responsive text messages and emails in native format with metadata as specified in Instruction No. 12, or to certify with specificity which items exist only as images, with the Ancel Defendants to reciprocate as to their own responsive text messages and emails;

(3) awarding the Ancel Defendants their reasonable expenses, including attorney's fees, incurred in obtaining Plaintiffs' July 21, 2026 production and in making this motion, or such portion thereof as the Court deems just, under Rule 37(a)(5); and

(4) granting such other and further relief as the Court deems just and proper.

<div style="margin-left:40%">

Respectfully submitted,

LOFTUS & EISENBERG, LTD.

By: /s/ *Alexander N. Loftus*

</div>

Alexander N. Loftus
181 W. Madison Street, Suite 4700
Chicago, Illinois 60602

(312) 899-6625
alex@loftusandeisenberg.com
Attorneys for Defendants Jordan Ancel, Jordan Ancel
International, LLC, and Rock City Road Films LLC

**CERTIFICATION UNDER LOCAL RULE 37.2**

Undersigned counsel certifies that, before filing this motion, counsel for the Ancel Defendants conferred in good faith with counsel for Plaintiffs in an effort to resolve the disputes described in this motion without court intervention, including by telephone conferences between Alexander N. Loftus for the Ancel Defendants and George J. Spathis for Plaintiffs on May 15, 2026 and again after Plaintiffs' June 5, 2026 supplementation, and through written correspondence dated April 8 and June 9, 2026. Those efforts resolved the question of confidentiality and narrowed the privilege-log dispute but did not resolve the matters presented here, on which the parties are at a genuine impasse.

/s/ *Alexander N. Loftus*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Alexander N. Loftus

17