UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

LAKEFRONT PICTURES, LLC, JENNIFER
KARUM, and THE CURSE, LLC,

Plaintiffs,

v.

JORDAN ANCEL, JORDAN ANCEL
INTERNATIONAL, LLC, ROCK CITY ROAD
FILMS LLC, and CANDICE ROSE,

Defendants.

Case No. 1:24-cv-01108

Mag. Judge M. David Weisman

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CANDICE ROSE'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
ilya@zce.law

George J. Spathis
LEVENFELD PEARLSTEIN, LLC
120 South Riverside Plaza, Suite 1800
Chicago, Illinois 60606
Tel: (312) 346-8380
gspathis@lplegal.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

LEGAL STANDARD..............................................................................................................3

ARGUMENT ...........................................................................................................................4

    I.    The Amended Complaint Pleads Rose's Own Conduct and Does Not Rest on Impermissible "Group Pleading." ......................................................................................4

    II.    Plaintiffs Have Properly Alleged Defamation in Count II. ..................................7

        a.    The allegations as to defamation contained in the Amended Complaint meet all relevant pleading requirements. ...................................................................................7

        b.    Rose's false statements as to financial violations committed by Plaintiffs qualify as defamatory per se. ....................................................................................................8

        c.    Rose's defamatory statements do not qualify as opinion or hyperbole, nor are they subject to any innocent construction. ...........................................................................9

        d.    Plaintiffs did not have the obligation to plead the existence of "actual malice" for purposes of the defamation claim, but Plaintiffs have nevertheless sufficiently alleged the existence thereof...........................................................................................................11

        e.    Plaintiffs have sufficiently alleged the existence of special damages for purposes of defamation per quod. ...................................................................................................11

    III.  Plaintiffs Have Properly Alleged a Claim for False Light Invasion of Privacy in Count III. 12

    IV.  Plaintiffs Have Properly Alleged Tortious Interference Claims in Counts VII and VIII...13

        a.    Despite not having an obligation to identify specific third parties in the pleadings, the Plaintiffs have nevertheless done so.......................................................................14

        b.    Plaintiffs have sufficiently pleaded that Rose caused damages to Plaintiffs through Rose's tortious interference............................................................................................14

        c.    The Court has already acknowledged that Plaintiffs have sufficiently pleaded that Rose's interference was intentional and unjustified...........................................................15

    V.    Plaintiffs Have Properly Alleged a Claim for Intentional Infliction of Emotional Distress in Count IX.........................................................................................................................15

    VI.  Plaintiffs Have Properly Alleged Civil Conspiracy Claims in Counts X and XI. .............18

    VII. Plaintiffs Have Properly Alleged The Breach-of-Contract Claim in Count XII. ...............20

    VIII. Any Potential Dismissal Should Be Without Prejudice. ....................................................23

CONCLUSION........................................................................................................................24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adcock v. Brakegate, Ltd.*,
 164 Ill. 2d 54, 645 N.E.2d 888 (1994) ...............................................................................19

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ..................................................................................................................4

*Bank of America, N.A. v. Knight*,
 725 F.3d 815 (7th Cir. 2013)...................................................................................................6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................................4

*Bennett v. Schmidt*,
 153 F.3d 516 (7th Cir. 1998)..................................................................................................18

*Boese v. Paramount Pictures Corp.*,
 952 F. Supp. 550 (N.D. Ill. 1996) .........................................................................................12

*Brown v. Budz*,
 398 F.3d 904 (7th Cir. 2005)....................................................................................................6

*Bryson v. News Am. Publ'ns, Inc.*,
 174 Ill. 2d 77, 672 N.E.2d 1207 (1996) ............................................................................8, 10

*Carlson v. CSX Transp., Inc.*,
 758 F.3d 819 (7th Cir. 2014)....................................................................................................3

*Coady v. Harpo, Inc.*,
 308 Ill. App. 3d 153, 719 N.E.2d 244 (1999) .......................................................................23

*Cook v. Winfrey*,
 141 F.3d 322 (7th Cir. 1998)............................................................................................13, 14

*DAN Joint Venture III, L.P. v. Touris*,
 598 B.R. 430 (N.D. Ill. 2019) ...............................................................................................20

*Daniels v. City of Chicago*,
 920 F. Supp. 901 (N.D. Ill. 1996) .........................................................................................16

*Delta Mining Corp. v. Big Rivers Elec. Corp.*,
 18 F.3d 1398 (7th Cir. 1994)..................................................................................................21

*Douglass v. Hustler Mag., Inc.*,
 769 F.2d 1128 (7th Cir. 1985).................................................................................................11

*Fellhauer v. City of Geneva*,
 142 Ill.2d 495, 568 N.E.2d 870 (1991) ..................................................................................13

*Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*,
 161 F. Supp. 2d 876 (N.D. Ill. 2001) .....................................................................................15

*Gertz v. Robert Welch, Inc.*,
 418 U.S. 323 (1974)................................................................................................................11

*Giant Screen Sports v. Canadian Imperial Bank*,
 553 F.3d 527 (7th Cir. 2009)..............................................................................................8, 10

*Graham v. Commonwealth Edison Co.*,
 318 Ill. App. 3d 736, 742 N.E.2d 858 (2000) .......................................................................16

*Honaker v. Smith*,
  256 F.3d 477 (7th Cir. 2001)........................................................................15, 17, 18
*Hrubec v. Nat'l R.R. Passenger Corp.*,
  981 F.2d 962 (7th Cir. 1992)....................................................................................18
*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
  227 Ill. 2d 381, 882 N.E.2d 1011 (2008) ...................................................................9
*Kibbons v. Taft Sch. Dist. 90*,
  563 F. Supp. 3d 798 (N.D. Ill. 2021) ......................................................................16
*Kolegas v. Heftel Broad. Corp.*,
  154 Ill.2d 1, 607 N.E.2d 201 (1992) ..........................................................9, 12, 16
*Krasinski v. United Parcel Service*,
  124 Ill.2d 483, 530 N.E.2d 468 (1988) ....................................................................11
*L. Offs. of David Freydin, P.C. v. Chamara*,
  24 F.4th 1122 (7th Cir. 2022) ...............................................................................7, 8
*Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*,
  933 F.3d 806 (7th Cir. 2019)......................................................................................4
*Lenard v. Argento*,
  699 F.2d 874 (7th Cir. 1983)....................................................................................19
*Lovgren v. Citizens First Nat'l Bank*,
  126 Ill. 2d 411, 534 N.E.2d 987 (1989) ...................................................................12
*Lusher v. Becker Bros., Inc.*,
  155 Ill. App. 3d 866, 509 N.E.2d 444 (1987) ...........................................................14
*Madison v. Frazier*,
  539 F.3d 646 (7th Cir. 2008)......................................................................................9
*Marcure v. Lynn*,
  992 F.3d 625 (7th Cir. 2021)......................................................................................4
*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
  386 F. Supp. 3d 926 (N.D. Ill. 2019) ...................................................................8, 10
*McClure v. Owens Corning Fiberglas Corp.*,
  188 Ill.2d 102, 720 N.E.2d 242 (1999) ...............................................................19, 20
*McGrath v. Fahey*,
  126 Ill. 2d 78, 533 N.E.2d 806 (1988) .....................................................................15
*MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*,
  730 F. Supp. 3d 740 (N.D. Ill. 2024) ..................................................................10, 12
*Milliman v. McHenry Cnty.*,
  No. 11 C 50361, 2012 WL 5200092 (N.D. Ill. Oct. 22, 2012) ................................19
*Molina v. Latronico*,
  430 F. Supp. 3d 420 (N.D. Ill. 2019) ..................................................................19, 20
*Montel Aetnastak, Inc. v. Miessen*,
  998 F. Supp. 2d 694 (N.D. Ill. 2014) ......................................................................22
*Muzikowski v. Paramount Pictures Corp.*,
  322 F.3d 918 (7th Cir. 2003)............................................................................7, 8, 10
*Patlovich v. Rudd*,
  949 F. Supp. 585 (N.D. Ill. 1996) ...........................................................................22
*Pippen v. NBCUniversal Media, LLC*,
  734 F.3d 610 (7th Cir. 2013).....................................................................................12

iv

*PNC Bank, Nat'l Ass'n v. Boytor*,
  109 F.4th 495 (7th Cir. 2024) ......................................................................................22

*Reger Dev., LLC v. Nat'l City Bank*,
  592 F.3d 759 (7th Cir. 2010).......................................................................................20

*River Plaza Homeowner's Ass'n v. Healey*,
  389 Ill. App. 3d 268, 904 N.E.2d 1102 (2009) .........................................................21

*Roberts v. Alexandria Transp., Inc.*,
  2021 IL 126249, 183 N.E.3d 701..................................................................................6

*Robles v. City of Chicago*,
  354 F. Supp. 3d 873 (N.D. Ill. 2019) ........................................................................4, 5

*Rodgers v. Peoples Gas, Light & Coke Co.*,
  315 Ill.App.3d 340, 733 N.E.2d 835 (2000) ..............................................................19

*Rusinowski v. Vill. of Hillside*,
  835 F. Supp. 2d 641 (N.D. Ill. 2011) .........................................................................16

*Scott v. Aldi, Inc.*,
  301 Ill. App. 3d 459, 703 N.E.2d 526 (1998) ...........................................................19

*Sexton v. Bd. of Educ., Dist. 130, Cook Cnty., Illinois*,
  815 F. Supp. 3d 801 (N.D. Ill. 2025) ....................................................................4, 5, 6

*Solaia Tech., LLC v. Specialty Publ'g Co.*,
  221 Ill. 2d 558, 852 N.E.2d 825 (2006) ....................................................................7, 8

*Stanley v. Carrier Mills-Stonefort Sch. Dist. No. 2*,
  459 F. Supp. 2d 766 (S.D. Ill. 2006) ............................................................................9

*Starks v. City of Waukegan*,
  123 F. Supp. 3d 1036 (N.D. Ill. 2015) .......................................................................20

*Sun v. Xu*,
  99 F.4th 1007 (7th Cir. 2024) ....................................................................................17

*Svanaco, Inc. v. Brand*,
  417 F. Supp. 3d 1042 (N.D. Ill. 2019) .......................................................................11

*The Ctr. for Self Leadership, Inc. v. PESI, Inc.*,
  No. 25 C 11339, 2026 WL 963123 (N.D. Ill. Apr. 9, 2026).....................................21

*Trahanas v. Nw. Univ.*,
  64 F.4th 842 (7th Cir. 2023) .........................................................................................9

*Utica Mut. Ins. Co. v. David Agency Ins., Inc.*,
  327 F. Supp. 2d 922 (N.D. Ill. 2004) .........................................................................11

*W.W. Vincent & Co. v. First Colony Life Ins. Co.*,
  351 Ill.App.3d 752, 814 N.E.2d 960 (2004) ..............................................................20

*Williamson v. Curran*,
  714 F.3d 432 (7th Cir. 2013)..........................................................................................4

*Yost v. Carroll*,
  No. 20 C 5393, 2022 WL 185199 (N.D. Ill. Jan. 20, 2022).....................................19

*Zaidi v. 1-800-Pack-Rat, LLC*,
  No. 24 C 9857, 2025 WL 744080 (N.D. Ill. Mar. 8, 2025) ......................................21

*Zimmerman v. Bornick*,
  25 F.4th 491 (7th Cir. 2022) ...................................................................................4, 23

**STATUTES**

Illinois Freedom to Work Act, 820 ILCS 90/1, *et seq.*..................................................................23

**RULES**

Federal Rule of Civil Procedure 12(b)(6)................................................................................1, 3, 4

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 766 ............................................................................................15

Plaintiffs Lakefront Pictures, LLC ("Lakefront"), Jennifer Karum ("Karum"), and The Curse, LLC ("TCL" and, together with Lakefront and Karum, collectively, "Plaintiffs") respectfully submit this response in opposition to Defendant Candice Rose's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. 143-2] and the memorandum in support thereof ("Mem.") [Dkt. 143-1].

## PRELIMINARY STATEMENT

This case arises from a coordinated, multi-year campaign of defamation, harassment, and interference that Defendants Jordan Ancel and Candice Rose have waged against Plaintiffs. Contrary to Rose's characterization, the Amended Complaint does not lump the defendants together or rest on labels. It devotes dozens of specific, particularized paragraphs to what Rose personally said and did: the false statements she made about Karum, the third parties she contacted, the talent agencies and universities she induced to sever ties with Plaintiffs, and the group texts in which Rose recruited others and reveled in the damage she caused. (Am. Compl. ¶¶ 112–162.)

Rose's motion does not engage those allegations on their own terms. It recasts detailed factual allegations as "conclusions," ignores the many specific statements and communications the Amended Complaint attributes to Rose by name, and asks the Court to draw inferences in Rose's favor, when it is well settled that Rule 12(b)(6) requires that inferences be drawn in favor of the non-movant. As shown below, each count states a plausible claim on the face of the pleading. Furthermore, on the two questions of law Rose does raise – *i.e.*, whether Rose's statements are capable of a defamatory meaning and whether the Demo Reel Agreement's covenant bound Rose – the law favors Plaintiffs, not Rose. This conclusion is reinforced at the outset by the law of this case. The Court has already denied a Rule 12(b)(6) motion by these same defendants – including Rose – directed at the tortious-interference, intentional-infliction, and civil-conspiracy claims in

1

the original complaint, on materially the same allegations of a coordinated smear campaign. (Dkt. 42.) The Amended Complaint pleads that same campaign, and more. Rose's motion should be denied in its entirety.

## **STATEMENT OF FACTS**

Rose and Karum were friends and colleagues before this dispute. Rose attended classes with Karum, scenes were filmed at Rose's home, and Lakefront produced a demo-reel scene for Rose, for which Rose gave Lakefront a glowing public review. (Am. Compl. ¶¶ 40, 113.) Lakefront later cast Rose in its film *The Unseen*, and Rose and Karum stayed in regular communication – discussing both professional and personal matters – through the spring of 2023, with "no issues" between them. (*Id.* ¶¶ 114–115.) That changed when Defendant Jordan Ancel launched a campaign against Karum. Ancel publicly threatened to "burn [Karum's] life down" and to "ruin" Karum and Lakefront, taunting her: "Bitch, you can't do shit to me." (*Id.* ¶ 2.) When Ancel "began rallying sycophants to speak out against Karum on social media," Rose abruptly cut off all communication with Karum and joined him, "willingly and maliciously echoing Ancel's false smears to casting directors and others," including that Karum is "dangerous." (*Id.* ¶ 116.)

Rose's statements were specific and damaging. She told a fellow actor, Emma Jo Boyden, that *The Unseen*'s investors had sued Karum "for her misused funds" (which was entirely untrue), adding: "I'm thrilled. Hope she goes down hard." (*Id.* ¶ 143.) She misrepresented that Karum "had been sued for misappropriated money from the budget." (*Id.* ¶ 173.) She spread a false rumor that Karum was suing 21 other filmmakers in federal court – boasting to one contact that "[Rose] acted like it was an afterthought" – and misrepresented to ERIS Talent that a class action by supposed victims of Karum's "abuse" was "in the works." (*Id.* ¶¶ 137, 140.) She warned the film community that working with Lakefront was so dangerous that others should "RUN," a comment Ancel

"liked," promoting a narrative that Karum was "dangerous" and "blacklisted" across social-media groups with "tens of thousands of members." (*Id*. ¶¶ 120, 123–125.)

Rose also set out to interfere with Karum's and Lakefront's professional relationships. Bankston Talent, which had represented Karum for three years and secured her an appearance on the show *Better Call Saul*, terminated Karum days after Bankston's chief executive dined with Rose. (*Id*. ¶ 139.) Rose induced ERIS Talent to drop Karum with a "forewarned is forearmed" email. (*Id*. ¶ 140.) She worked to exclude Karum from a workshop hosted by Shari Shaw – a yearlong paying relationship – and from casting director Erica Arvold's workshops. (*Id*. ¶¶ 136, 138.) At Rose's prompting, an intermediary persuaded DePaul University to discontinue its internship pipeline to Lakefront, and Rose pressed to have Lakefront cut off by Columbia College and the Independent Film Alliance-Chicago. (*Id*. ¶¶ 147–150.)

Throughout, Rose coordinated with Ancel. She sent him a screenshot identifying a Lakefront collaborator as "the girl I sent you the email for"; Ancel "liked" Rose's disparaging posts; Rose reported the campaign's results to Ancel and their recruits in group texts; and Rose recruited a "whole team" to "join in the crusade" because Karum "has to be stopped." (*Id*. ¶¶ 125, 128, 142, 147, 150, 158.) The campaign has continued "for three years running." (*Id*. ¶ 119.)

In addition to the various common law principles at play, Rose's relationship with Lakefront was governed by a written Demo Reel Agreement, under which Rose agreed to refrain from any act "which might tend to bring [Lakefront,] its members or owners into public disrepute, scandal or ridicule." (*Id*. ¶ 231; Ex. H.)

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). Under Rule 8, a plaintiff must

3

allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the plaintiff's factual allegations – as opposed to any legal conclusions – must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all of the plaintiff's well-pleaded factual allegations and must view them – and all reasonable inferences – in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019).

The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). Further, Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Unless the Court is "certain that amendment would be futile or otherwise unwarranted," the plaintiff should be given "at least one opportunity to amend his complaint." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022).

## ARGUMENT

### I. The Amended Complaint Pleads Rose's Own Conduct and Does Not Rest on Impermissible "Group Pleading."

Rose's lead argument – that Plaintiffs impermissibly attribute conduct collectively to "Ancel and Rose" – misstates both the pleading and the law. There is no "group pleading" doctrine that categorically forbids allegations against defendants collectively. *Sexton v. Bd. of Educ., Dist. 130, Cook Cnty., Illinois*, 815 F. Supp. 3d 801, 806 (N.D. Ill. 2025) (quoting *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019)). Such allegations are inadequate only when they refer to defendants collectively in a way that ambiguously attributes conduct to an unknown

4

defendant, and they are sufficient where the complaint provides fair notice of what each defendant is alleged to have done. *Sexton*, 815 F. Supp. 3d at 806; *see also*, *Robles*, 354 F. Supp. 3d at 875 ("[T]he complaint in this case does not employ ambiguous formulations of collective action by multiple defendants that fail to adequately connect specific defendants to illegal acts.") (internal quotation marks omitted). Rule 8 requires only a short and plain statement that gives each defendant fair notice of the claim and its grounds. It does not oblige a plaintiff who sues joint tortfeasors to parse, act by act, which defendant did what – least of all where, as here, the defendants are alleged to have acted in concert. When a complaint both details a defendant's individual conduct and alleges that she acted jointly with a co-defendant in a coordinated campaign, a collective reference to "Ancel and Rose" for jointly undertaken acts is proper, and the plaintiff need not plead each defendant's precise role, which is developed in discovery. *See Robles*, 354 F. Supp. 3d at 876 ("The defendants here are alleged to have operated as a coordinated unit working to pull off a common objective and the complaint plainly alleges that all of the defendants participated in the challenged conduct."); *Sexton*, 815 F. Supp. 3d at 808 ("While Plaintiff alleges fewer direct actions against [a particular defendant], when read in combination with the pleadings against all defendants, she has met the requirements for notice pleading.") (collecting cases).

In each instance, the Amended Complaint identifies Rose's own words and acts. It alleges that Rose personally "echo[ed] Ancel's false smears to casting directors and others," including that Karum is "dangerous" (Am. Compl. ¶ 116); that Rose "purposefully began spreading false rumors" that Karum was suing 21 other filmmakers in federal court (*id*. ¶ 137); that Rose falsely told actor Emma Jo Boyden that *The Unseen*'s investors had sued Karum "for her misused funds," adding "I'm thrilled. Hope she goes down hard" (*id*. ¶ 143); that Rose represented Karum had been "sued for misappropriated money from the budget" (*id*. ¶ 173); that Rose recruited a "whole team" to the

campaign (*id*. ¶ 142); and that Rose contacted Bankston Talent, ERIS Talent, Shari Shaw, Erica Arvold, DePaul University, Columbia College, and the Independent Film Alliance-Chicago, among others (*id*. ¶¶ 136–150). These are individualized allegations of what Rose did. Even setting aside every allegation phrased as to "Ancel and Rose" jointly, the conduct attributed to Rose alone states each claim asserted against her. Moreover, because Plaintiffs allege that Rose and Ancel acted in concert to commit intentional torts, each is jointly and severally liable for the resulting injury. *See Roberts v. Alexandria Transp., Inc.*, 2021 IL 126249, ¶ 32, 183 N.E.3d 701, 707 ("when two or more individuals tortiously contribute to the same indivisible injury, each individual may be held jointly and severally liable for the entire injury"). Thus, Rose cannot escape liability by shifting the blame to those whom she invited to join the campaign.

Rose's reliance on *Bank of America, N.A. v. Knight* is misplaced. (*See* Mem. at 5.) The problem in that case was a complaint that alleged only that "the defendants" looted a corporation without any details about who did what. 725 F.3d 815, 818 (7th Cir. 2013). The court dismissed the complaint in *Knight* because liability is personal and each defendant is entitled to know what such defendant is alleged to have done wrongfully. *Id*. Here, by contrast, the Amended Complaint alleges the specific conduct in which Rose participated. *See Sexton*, 815 F. Supp. 3d at 807 ("Since the complaint alleged the specific conduct was done by all the defendants, this provided sufficient notice to each defendant of the claims against them.").

In addition, Rose criticizes Plaintiffs' use of allegations founded on "information and belief." (Mem. at 16.) The criticism is misguided. Where the pleaded facts – such as what Rose said in a private message or agreed with Ancel – are peculiarly within the defendants' knowledge, "conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). The Amended Complaint properly pleads those assertions.

6

### II. Plaintiffs Have Properly Alleged Defamation in Count II.

To state a defamation claim under Illinois law, a plaintiff "must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (quoting *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 852 N.E.2d 825, 839 (2006)).

Rose seeks to misframe the inquiry by pointing solely to the words "dangerous," "unsafe," and "RUN" in isolation as not actionable "standing alone." (*See, e.g.*, Mem. at 6–7.) This is a disingenuous approach, because a statement is never assessed "standing alone," but rather is always assessed in context. Read in the context of a campaign asserting that Karum committed financial wrongdoing and had been "blacklisted" (Am. Compl. ¶¶ 120, 124), those words imply defamatory facts and are reasonably capable of a defamatory meaning. Regardless, as discussed below, Plaintiffs' defamation claim is founded on allegations well beyond these isolated words, including specifically verifiable false statements as to purported financial violations, which independently sustain the claim. The Amended Complaint supplies abundant context, in the form of a coordinated, multi-year campaign of specific, repeated, and mutually reinforcing false statements. (*Id*. ¶¶ 112–162.)

#### a. The allegations as to defamation contained in the Amended Complaint meet all relevant pleading requirements.

Rose's contention that the false statements are not pleaded with sufficient specificity fails at the threshold, because Rose applies the wrong standard. Illinois' heightened fact-pleading rule for defamation does not apply in a federal court, where defamation per se claims are governed by ordinary Rule 8 notice pleading, not Rule 9. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). In fact, federal pleading standards, just like Illinois pleading

7

standards, may be met even if the publication does not name the plaintiff. *Id.* at 925–26 (citing *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 672 N.E.2d 1207, 1218 (1996)). Further, a plaintiff need not set out the offending words verbatim. *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 941 (N.D. Ill. 2019). It is enough that the substance be pleaded with sufficient precision to permit review of the statement's defamatory content, which "does not amount to a heightened pleading requirement." *Id*. The Amended Complaint quotes Rose's words, identifies the recipients (including Emma Jo Boyden and ERIS Talent), and describes the channels and sequence of the statements. That is well beyond what Rule 8 requires.

### b. Rose's false statements as to financial violations committed by Plaintiffs qualify as defamatory per se.

A statement is defamatory per se – *i.e.*, actionable without proof of special damages – when, among other categories, it imputes to a person: (1) commission of a crime, (ii) an inability to perform, or lack of integrity in performing, employment duties, or (iii) "that the person lacks ability in his profession or the words otherwise prejudice the person in his profession." *Chamara*, 24 F.4th at 1129 (citing *Solaia Tech.*, 852 N.E.2d at 839). A false assertion that a person misappropriated or misused other people's money involves, at a minimum, the latter two categories. *See Giant Screen Sports v. Canadian Imperial Bank*, 553 F.3d 527, 533–35 (7th Cir. 2009) (holding that lender's false statements that a business was "still in default" were, in effect, statements that the business' "contractual word to meet an obligation is meaningless," thereby qualifying as defamation per se under Illinois law because they imputed inability or want of integrity in performing duties and prejudiced the business in its trade, profession, or business). Meanwhile, theft is a type of crime that qualifies under the first category of defamation per se. *Muzikowski*, 322 F.3d at 926.

The Amended Complaint alleges statements squarely within these categories. Most directly, Plaintiffs allege that Rose falsely represented that Karum "had been sued for misappropriated money from the budget" (Am. Compl. ¶ 173), and falsely told a fellow actor that *The Unseen*'s investors had sued Karum "for her misused funds" (*id*. at 27 ¶ 143). Plaintiffs further allege that Rose spread the false rumor that Karum was suing 21 other filmmakers in federal court (*id*. ¶ 137) and represented to ERIS Talent that a class-action lawsuit was "in the works" by supposed victims of Karum's "abuse" (*id*. ¶ 140).

### c. Rose's defamatory statements do not qualify as opinion or hyperbole, nor are they subject to any innocent construction.

Rose seeks to classify her false statements as examples of opinion and hyperbole. (Mem. at 6.) Under Illinois law governing defamation, false statements "can be defamatory even when couched within an apparent opinion or rhetorical hyperbole." *Madison v. Frazier*, 539 F.3d 646, 657 (7th Cir. 2008). Illinois courts consider the following nonexclusive factors to determine whether a statement is nonactionable opinion or a factual assertion: "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content." *Id*. at 654 (citing Illinois state court cases). Meanwhile, "a statement should only be considered rhetorical hyperbole when it is obviously an exaggeration, rather than a statement of literal fact." *Stanley v. Carrier Mills-Stonefort Sch. Dist. No. 2*, 459 F. Supp. 2d 766, 774 (S.D. Ill. 2006) (citing *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 607 N.E.2d 201, 208 (1992)). Whether a statement is a protected opinion/hyperbole or an actionable assertion of fact is a question of law. *Trahanas v. Nw. Univ.*, 64 F.4th 842, 859 (7th Cir. 2023) (quoting *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 882 N.E.2d 1011, 1022 (2008)).

9

Just because Rose calls something an "opinion" or "hyperbole" does not make it so. The statements that Karum was "sued" for "misused funds" and "misappropriated money from the budget" are the paradigm of verifiable fact. The false statements are analogous to, and arguably more egregious than, a lender's false statements accusing a business of a "failure or refusal to pay" or "still being in default," which the Seventh Circuit found to be defamatory per se under Illinois law. *See Giant Screen Sports*, 553 F.3d at 535 ("Expressing that a party delinquently failed to meet a contractual obligation, particularly that it 'did not pay' or 'refused to pay' or remains 'in default,' is an objectively factual assertion, clearly capable of being verified as a statement of fact, and does not fall within the protective ambit of the Constitution."). Whether Karum misappropriated or was sued for money is no less verifiable, nor are these statements rhetorical hyperbole. An accusation that Karum was sued for, and misappropriated investors' money is a literal, checkable factual assertion, not obvious exaggeration.

Though Rose does not explicitly invoke the innocent construction rule, this too does not change the result, and it too is a question of law for the Court. *Maui Jim*, 386 F. Supp. 3d at 940 (quoting *Bryson*, 174 Ill. 2d 77). A statement escapes per se liability only if it is *reasonably* capable of an innocent construction, read in context and given its natural and obvious meaning. *Giant Screen Sports*, 553 F.3d at 532–33; *see also*, *Muzikowski*, 322 F.3d at 925 (reasonableness inquiry "requires that statements be read in their natural sense, not in the light most favorable to the defendant."). "Courts are not obligated to be naïve" or "to engage in mental gymnastics to find the most innocent possible message." *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 730 F. Supp. 3d 740, 753 (N.D. Ill. 2024) (citing *Giant Screen Sports*, 553 F.3d at 533). A false accusation that Karum was sued for misusing funds has no reasonable innocent construction.

10

**d. Plaintiffs did not have the obligation to plead the existence of "actual malice" for purposes of the defamation claim, but Plaintiffs have nevertheless sufficiently alleged the existence thereof.**

Rose's suggestion that Plaintiffs must plead that Rose *knew* her statements were false also misstates the law. (Mem. at 7.) "A defamation claim requires proof that the defendant made a false statement, but it does not require that the defendant knew of the statement's falsity." *Utica Mut. Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d 922, 927 (N.D. Ill. 2004) (citing *Krasinski v. United Parcel Service*, 124 Ill.2d 483, 490, 530 N.E.2d 468, 471 (1988)). The constitutional "actual malice" standard applies only to public officials and public figures. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342–43 (1974). Just because Karum participates in the entertainment industry does not make her a public figure. *See Svanaco, Inc. v. Brand*, 417 F. Supp. 3d 1042, 1062 (N.D. Ill. 2019) (holding that merely performing services for famous clients does not transform a company into a public figure for defamation purposes, requiring clear evidence of general fame or notoriety and pervasive involvement in the affairs of society); *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1141 (7th Cir. 1985) (distinguishing a "budding celebrity eager to be seen in the nude by millions of people" from a performer in a local amusement park). Either way, the actual malice standard can be met not only on the basis of knowledge but also based on reckless disregard for the truth. *Gertz*, 418 U.S. at 342–43. Even assuming that the actual malice standard applies here, Plaintiffs allege that Rose acted "with full knowledge of [the statements'] falsity" and "purposefully and with malice" (Am. Compl. ¶¶ 172, 174) – far more than the law requires.

**e. Plaintiffs have sufficiently alleged the existence of special damages for purposes of defamation per quod.**

As discussed above, Plaintiffs have adequately pleaded defamation per se. Even if any statement were treated as actionable only as defamation per quod, however, the claim would still stand, because Plaintiffs have pleaded the required special damages by identifying concrete losses.

11

"It is sufficient to identify 'specific business opportunities that had been available to [plaintiff] earlier but that, following the defendants' statements, were available no more.'" *MFB Fertility*, 730 F. Supp. 3d at 754 (quoting *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013)). The termination of Karum's representation by Bankston Talent and ERIS Talent qualifies as such. (Am. Compl. ¶¶ 139–140). Count II adequately states a claim against Rose for defamation.

### III. Plaintiffs Have Properly Alleged a Claim for False Light Invasion of Privacy in Count III.

Rose argues that Plaintiffs' false light claim fails for the same reasons as Plaintiff's defamation claim. (Mem. at 8–9.) While the two torts share some of the same concepts, they are distinct causes of action and can survive independent of each other. *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 534 N.E.2d 987, 991 (1989). "Courts universally have held that a statement need not be defamatory for a false-light privacy action to lie." *Boese v. Paramount Pictures Corp.*, 952 F. Supp. 550, 558 (N.D. Ill. 1996) (collecting cases). Illinois courts require that the plaintiff was placed in a false light before the public, that the false light would be highly offensive to a reasonable person, and that the defendant acted with knowledge of or reckless disregard for the falsity of the publicized matter (*i.e.*, with actual malice). *Kolegas*, 607 N.E.2d at 209–10 (citing *Lovgren*, 126 Ill. 2d at 419–23). Plaintiffs have sufficiently pled each element of false light.

The publicity element is satisfied many times over: Rose and Ancel published their falsehoods "across multiple social media channels" (Am. Compl. ¶ 178), including in groups with "tens of thousands of members" (*id*. ¶ 123) and in a casting group in which Rose is a "Top Contributor" (*id*. ¶ 142). The false light in which Rose placed Karum is not merely unflattering – it is a portrait of Karum as a criminal, a physical danger, and a professional pariah, and no reasonable person would tolerate being cast that way before her entire industry. Specifically, Rose spread the falsehood that Karum had "misused funds" and "had been sued for misappropriated

12

money from the budget" (*id*. ¶¶ 143, 173), branding Karum a thief. She echoed and amplified the smear that Karum is "dangerous" and "unsafe" (*id*. ¶¶ 116, 145), and promoted the lie that Karum had been "blacklisted" in the Chicago film community (*id*. ¶¶ 120, 124). Rose told talent agents that a "class action lawsuit [was] in the works by the victims of [Karum's] alleged 'abuse'" (*id*. ¶ 140), falsely painting Karum as a serial abuser trailed by victims. Rose also publicly declared that Karum "has to be stopped" because "[t]oo many lives are getting ruined" (*id*. ¶ 142), while privately relishing that she "[h]ope[d] [Karum] goes down hard" (id. ¶ 143). A reasonable person subjected to a sustained, public campaign falsely depicting her as a fund-misappropriating, dangerous abuser who deserves to be shunned and to "go down hard" would find that portrayal deeply and highly offensive. At a minimum, whether a portrayal is highly offensive is ordinarily a question for the trier of fact, and on these allegations the answer is not close. Rose acted "with knowledge of [the statements'] falsity, and with the express intention of harming Karum's reputation" (*id*. ¶ 180), which pleads the requisite actual malice. Count III, just like Count II, states a claim.

IV. **Plaintiffs Have Properly Alleged Tortious Interference Claims in Counts VII and VIII.**

Counts VII and VIII allege that Rose tortiously interfered with Lakefront's and Karum's prospective and existing business relationships. To state a claim for interference with prospective economic advantage, a plaintiff must allege a reasonable expectancy of a valid business relationship, the defendant's knowledge of that expectancy, purposeful and unjustified interference preventing the expectancy from ripening, and resulting damages. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 568 N.E.2d 870, 878 (1991)). A claim for interference with an existing contract requires a valid contract, the defendant's awareness of it, intentional and unjustified inducement of a breach, a subsequent breach caused by

13

the defendant's conduct, and damages. *Id*. (citing *Lusher v. Becker Bros., Inc.*, 155 Ill. App. 3d 866, 509 N.E.2d 444, 445 (1987)). Plaintiffs plead both claims sufficiently.

Rose attacks the claim's sufficiency with respect to several of the elements: existence of specific protectable business relationships or expectancies, intentionality of Rose's actions, proximate causation, and the purportedly conclusory nature of the allegations. Tellingly, beyond citing cases for the bare elements, Rose offers no authority for her attacks on the tortious interference claims – only conclusory assertions that the Amended Complaint's allegations are insufficient. Rose's approach is the very sort of unsupported say-so that Rule 8 does not condone.

### a. Despite not having an obligation to identify specific third parties in the pleadings, the Plaintiffs have nevertheless done so.

A plaintiff in a federal court applying Illinois law is not obligated to name the specific third party or class of third parties with which the defendant purportedly interfered. *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998). Alleging that an expectancy existed and that the defendant purposely interfered is enough, and the identities may await discovery. *Id*. In any event, Plaintiffs identify specific relationships and expectancies. Bankston Talent had represented Karum for three years and secured her an appearance on *Better Call Saul* before Rose induced it to drop Karum (Am. Compl. ¶ 139); ERIS Talent dropped Karum after Rose's "forewarned is forearmed" email (*id*. ¶ 140); Karum had been a paying client of Shari Shaw's workshop for a year (*id*. ¶ 138); and Rose interfered with Karum's relationship with casting director Erica Arvold and with Lakefront's internship pipelines at DePaul University and Columbia College, as well as with Lakefront's membership in the Independent Film Alliance-Chicago (*id*. ¶¶ 136, 147–150).

### b. Plaintiffs have sufficiently pleaded that Rose caused damages to Plaintiffs through Rose's tortious interference.

Rose's causation argument – that Plaintiffs allege only temporal sequence – both misreads the pleading and misstates the law. The elements do not require direct inducement of the breaching

14

party, but rather just "[a]llegations that a defendant's behavior caused a third party not to perform its contract." *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 161 F. Supp. 2d 876, 885 (N.D. Ill. 2001) (citing Restatement (Second) of Torts § 766). Plaintiffs allege the mechanism, not mere timing: Rose made specific false statements and direct entreaties to these third parties. Plaintiffs further plead the results – Bankston's chief executive terminated Karum days after dining with Rose (Am. Compl. ¶ 139), and, at Rose's prompting, DePaul discontinued its internship pipeline to Lakefront (*id.* ¶ 147). Whether a third party ultimately acted for independent reasons is an evidentiary question resolved on a developed record at summary judgment, not on the pleadings.

### c. The Court has already acknowledged that Plaintiffs have sufficiently pleaded that Rose's interference was intentional and unjustified.

Rose similarly cannot controvert that Plaintiffs have adequately pleaded the intentionality and unjustified nature of Rose's conduct. Plaintiffs have alleged that Rose acted out of spite, declaring Rose "[h]ope[d] [Karum] goes down hard." (Am. Compl. at 27 ¶ 143.) The Court has already resolved a similar challenge earlier in this case. In denying the prior motion to dismiss, the Court held that these same allegations of a smear campaign directed to Lakefront's "clients, prospects and partners" are sufficient to plead intentional and unjustified interference. (Dkt. 42 at 6–8.) The Amended Complaint pleads the same conduct relating to Rose, and more.

### V. Plaintiffs Have Properly Alleged a Claim for Intentional Infliction of Emotional Distress in Count IX.

Intentional infliction of emotional distress (IIED) requires (1) extreme and outrageous conduct, (2) intent to cause, or knowledge of a high probability of causing, severe emotional distress, and (3) conduct that in fact causes severe distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 533 N.E.2d 806, 809 (1988)). In assessing outrageousness, courts weigh, among other factors, whether the defendant reasonably

15

had a "legitimate objective"; a defendant who pursues no legitimate purpose but instead acts to "ruin" the plaintiff forfeits the latitude the law reserves for legitimate conduct. *See Kibbons v. Taft Sch. Dist. 90*, 563 F. Supp. 3d 798, 814 (N.D. Ill. 2021) (quoting *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 742 N.E.2d 858, 867 (2000)). Abusive conduct that "serves no legitimate purpose" is extreme and outrageous. *Kibbons*, 563 F. Supp. 3d at 814 (quoting *Graham*, 742 N.E.2d at 867). Conduct "may become extreme and outrageous by virtue of its publication to the community at large." *Kolegas*, 607 N.E.2d at 212. "The paradigm case [of IIED] is repeated harassment over time." *Daniels v. City of Chicago*, 920 F. Supp. 901, 904 (N.D. Ill. 1996).

Measured against these standards, the Amended Complaint adequately states the claim. Plaintiffs do not rest on isolated insults. Rather, Plaintiffs detail a spite-driven, multi-year campaign – continuing "for three years running" (Am. Compl. ¶ 119) – in which Rose recruited a "whole team" to a "crusade" because Karum "has to be stopped" (*id*. ¶ 142), threatened to hurl a "vile slur" at Karum (*id*. ¶ 138), declared she "[h]ope[d] [Karum] goes down hard" (*id*. ¶ 143), and set out to strip Karum of her representation, teaching opportunities, and professional standing. Rose's standing in the close-knit Chicago film community, which Rose used to broadcast her attacks on Karum to audiences of "tens of thousands" and to induce agencies, casting directors, and universities to shun Karum, aggravates the outrageousness. A federal court sustained an IIED claim on materially similar allegations of "a malicious campaign of harassment" designed to have the plaintiff "arrested, committed, or expelled," holding that "the extent of [the defendant's] alleged efforts and the serious consequences that could (and did) result" sufficed at the pleading stage – even absent any power relationship. *Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 656 (N.D. Ill. 2011).

16

A recent Seventh Circuit case in which the court found some IIED claims sufficient and others inadequate helps illustrate the distinction between actionable and nonactionable IIED. In *Sun v. Xu*, the Seventh Circuit set aside a jury verdict on an IIED claim as a matter of law against one defendant on the ground that his online accusations served a genuinely held, legitimate purpose – warning others – and that he held no position of power over the plaintiff, whom he "barely knew." 99 F.4th 1007, 1013–14 (7th Cir. 2024). Meanwhile, as to the co-defendant who fabricated reputation-destroying accusations and broadcast them, the court held that such conduct – "which could – and did – jeopardize [the plaintiff's] career and reputation" – is extreme and outrageous under Illinois law. *Id*. at 1015–16. Rose falls squarely on the actionable side of that line. Unlike the *Sun* defendant, who "barely knew" the plaintiff, held no position of power over her, and acted for the legitimate purpose of warning others, Rose is alleged to have turned her standing as a "Top Contributor" in the close-knit Chicago film community against a former friend, for no purpose but spite, boasting that she "[h]ope[d] [Karum] goes down hard" and that Karum "has to be stopped." (Am. Compl. ¶¶ 142, 143.) Power over the plaintiff, wielded for an illegitimate end, is exactly the combination *Sun* holds is extreme and outrageous.

The third element – severe emotional distress – is likewise adequately pleaded. Illinois courts, following the Restatement, tend to merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress, in effect requiring more evidence of outrageousness the weaker the evidence of distress. *Honaker*, 256 F.3d at 496. The extreme character of the conduct alleged here – a coordinated, multi-year campaign to brand a former friend a criminal and an abuser so as to drive her from her profession – is itself powerful evidence that the resulting distress was severe. Plaintiffs do not rest on that inference alone. They allege that Rose acted "with the express intention of causing severe emotional distress to Karum"

17

(Am. Compl. ¶ 217), that the campaign caused Karum "severe and substantial reputational harm" (*id*. ¶ 118), and that Rose "purposely exploited Karum's sensitivities and vulnerability" as a person on the autism spectrum (*id*. ¶ 218)[1] – precisely the susceptibility that makes distress more likely and more severe. At the pleading stage, no more is required.

Two further points confirm the validity of Plaintiffs' IIED claim. First, Rose knew Karum is neuro-diverse and on the autism spectrum, yet, together with Ancel, "purposely exploited Karum's sensitivities and vulnerability." (Am. Compl. ¶¶ 18, 218.) Conduct that might otherwise be merely inconsiderate "may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil." *Honaker*, 256 F.3d at 492. Second, this Court has already denied a Rule 12(b)(6) motion – brought by all defendants, including Rose – directed at the IIED claim in the original complaint, on materially the same allegations of a coordinated campaign of cyberbullying and "dangerous" smears, and expressly crediting Karum's autism-related susceptibility. (Dkt. 42 at 9–10.) The referenced conduct attributed specifically to Rose independently satisfies each element, and the Court's prior ruling confirms that these same campaign allegations state an IIED claim. Nothing in the Amended Complaint warrants a different result.

## VI.   Plaintiffs Have Properly Alleged Civil Conspiracy Claims in Counts X and XI.

Illinois civil conspiracy requires an agreement between two or more persons to accomplish an unlawful purpose, or a lawful purpose by unlawful means, and a tortious act committed in

---

[1] Paragraph 218 of the Amended Complaint contains a scrivener's error, reading: "Ancel and Karum were aware that Karum is on the autism spectrum . . ." This should, of course, read "Ancel and Rose were aware . . ." Any dismissal premised on the scrivener's error in paragraph 218 would be improper, because pleadings must "be so construed as to do substantial justice," and "confusion or ambiguity [is to be] dealt with by means other than dismissal." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); *see also*, *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992) (reversing Rule 12(b)(6) dismissal; "complaints are construed favorably to their drafters," and whether language in a complaint "can be interpreted" as deficient "is immaterial").

18

furtherance of that agreement. *Molina v. Latronico*, 430 F. Supp. 3d 420, 438–39 (N.D. Ill. 2019) (citing *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 720 N.E.2d 242, 258 (1999)). The agreement need not be express, and a defendant is liable if she agreed, either explicitly or implicitly, to do her part to further those objectives. *Id*. (citing *McClure*, 188 Ill.2d at 133). "The gist of a civil conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement." *Yost v. Carroll*, No. 20 C 5393, 2022 WL 185199, at *4 (N.D. Ill. Jan. 20, 2022) (quoting *Scott v. Aldi, Inc.*, 301 Ill. App. 3d 459, 703 N.E.2d 526, 529 (1998)). "[A]ny act in the furtherance of or implementation of the conspiracy agreement creates the liability." *Lenard v. Argento*, 699 F.2d 874, 894 (7th Cir. 1983). Circumstantial evidence may provide adequate proof. *Id*. at 883. The agreement may be inferred from circumstantial allegations and "common-sense knowledge of the behavior of persons in similar circumstances," including where "parties pursue the same object by common means, one performing one part and another performing another part." *Milliman v. McHenry Cnty.*, No. 11 C 50361, 2012 WL 5200092, at *3 (N.D. Ill. Oct. 22, 2012) (quoting *McClure*,188 Ill. 2d at 133, and *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill.App.3d 340, 350, 733 N.E.2d 835 (2000)). Even under the higher pleading standard required by Illinois state courts, a plaintiff "cannot be required to plead with specificity the very facts that can only be proven by circumstantial evidence." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 66, 645 N.E.2d 888, 895 (1994).

The Amended Complaint pleads far more than the "parallel conduct" Rose invokes. (*See* Mem. at 14.) Plaintiffs allege direct coordination between Rose and Ancel. Rose sent Ancel a screenshot identifying a Lakefront collaborator as "the girl I sent you the email for" (Am. Compl. ¶ 128); Ancel "liked" Rose's disparaging posts (*id*. ¶ 125); Rose reported the campaign's results to Ancel and their recruits in group texts (*id*. ¶¶ 147, 150); Rose recruited a "whole team" to join

19

the effort (*id.* ¶ 142); and Rose and Ancel together "directed, encouraged, incentivized and/or rewarded" others to pile on (*id.* ¶ 158). Courts routinely sustain conspiracy claims on comparable allegations of coordinated communications and joint action. *See, e.g.*, *Molina*, 430 F. Supp. 3d at 438–39; *DAN Joint Venture III, L.P. v. Touris*, 598 B.R. 430, 447–48 (N.D. Ill. 2019). Rose's authority does not hold otherwise. The rule from the *McClure* case cited by Rose – requiring that "mere parallel conduct" is insufficient, and that circumstantial proof "must be clear and convincing" – is an evidentiary standard applied at summary judgment to "prove the existence of a civil conspiracy" – not the Rule 12(b)(6) pleading test. *See Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1065 (N.D. Ill. 2015) (citing *McClure*, 720 N.E.2d at 258). Because the underlying torts are adequately pleaded, the conspiracy claims survive with them.

Here too, the Court has already rejected a materially identical challenge. In denying the prior motion to dismiss, it held that Plaintiffs adequately pleaded civil conspiracy by identifying the conspiracy's parties (including Rose and Ancel), its general purpose, and its approximate date, and that a conspiracy claim need not be pleaded with particularity. (Dkt. 42 at 11–12.)

### VII. Plaintiffs Have Properly Alleged The Breach-of-Contract Claim in Count XII.

Plaintiffs' breach-of-contract claim against Rose is also well pleaded. The claim requires a valid and enforceable contract, substantial performance by the plaintiff, breach by the defendant, and resulting damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 814 N.E.2d 960, 967 (2004)). Plaintiffs allege that Rose entered into the Demo Reel Agreement, under which she agreed to refrain from any act "which might tend to bring [Lakefront,] its members or owners into public disrepute, scandal or ridicule" (Am. Compl. ¶ 231); that Lakefront performed by producing Rose's demo scene (*id.* ¶ 232); that Rose breached by publicly slandering and maligning Lakefront and its members (*id.* ¶ 233); and that Lakefront was injured (*id.* ¶ 234). Karum – the target of

20

Rose's statements – is a member and owner of Lakefront, squarely within the persons the covenant protects. (*Id*. ¶ 5).

Rose's argument that the nondisparagement covenant imposes no post-performance obligation cannot be resolved in Rose's favor. A breach claim survives dismissal unless the contract *unambiguously* forecloses the plaintiff's reading. *The Ctr. for Self Leadership, Inc. v. PESI, Inc.*, No. 25 C 11339, 2026 WL 963123, at *10 (N.D. Ill. Apr. 9, 2026) (On a motion to dismiss, "the court must construe the allegations in the Complaint, along with the agreement attached to the Complaint, in the light most favorable to plaintiff. But plaintiff's claim may be resolved in a motion to dismiss if it is barred by the unambiguous terms of the contract, as the interpretation of an unambiguous contract is a matter of law for the Court.") (cleaned up).

By its terms, the nondisparagement covenant contains no durational limit. Rose agreed to "refrain from committing any act" of the specified kind, without restricting that promise to the period of performance of other covenants. (Am. Compl. ¶ 231.) That the Agreement expressly imposes time limits elsewhere – a 30-day footage-archiving window and defined refund periods – while attaching no durational limit to the non-disparagement covenant confirms that the omission was deliberate. *See Delta Mining Corp. v. Big Rivers Elec. Corp.*, 18 F.3d 1398, 1405 (7th Cir. 1994) ("when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded"); *Zaidi v. 1-800-Pack-Rat, LLC*, No. 24 C 9857, 2025 WL 744080, at *3 (N.D. Ill. Mar. 8, 2025) (applying the doctrine of *expressio unius* to contract provisions); *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 904 N.E.2d 1102, 1109 (2009) ("every clause in the contract was inserted deliberately and for a purpose").The agreement is silent with respect to the duration of the nondisparagement covenant and therefore does not unambiguously exempt Rose's post-production disparagement. At worst, even if the agreement's

21

temporal scope were susceptible to more than one reasonable reading, such ambiguity would present a question of fact that cannot be resolved on a Rule 12(b)(6) motion. In either instance, the breach of contract claim would survive a motion to dismiss.

Rose is also wrong to suggest that a nondisparagement obligation cannot survive completion of the demo-reel work. Courts applying Illinois law enforce nondisparagement covenants against conduct occurring after the parties' active relationship has ended, giving the promise its plain terms. *See, e.g.*, *Patlovich v. Rudd*, 949 F. Supp. 585, 594–95 (N.D. Ill. 1996) (enforcing a covenant not to "at any time" disparage, against statements made after the defendant's departure, and holding a statement need not be defamatory to disparage in the contractual sense). Rose entered into the Demo Reel Agreement at arm's length with full awareness of the obligations contained therein, including the nondisparagement covenant that did not have temporal limitations.

Rose's lack-of-consideration argument similarly fails as a matter of law. Consideration "consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them." *PNC Bank, Nat'l Ass'n v. Boytor*, 109 F.4th 495, 504 (7th Cir. 2024) (internal quotation marks omitted). Illinois courts "will not inquire into the adequacy of the consideration" as long as the promisor receives something of value. *Id.* That the demo reel was worth less than some threshold sum is therefore irrelevant.

Rose's reliance on *Fifield v. Premier Dealer Services* (*see* Mem. at 20) is inapposite. Courts depart from the traditional rule and scrutinize the adequacy of consideration only "when examining post-employment covenants not to compete," because a promise of at-will continued employment may be an illusory benefit. *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 715 (N.D. Ill. 2014). In effect, this approach only applies to noncompetition and nonsolicitation covenants that restrict trade or an individual's ability to secure future work. Nondisparagement

22

obligations are not restraints on competition or trade, and instead are more akin to confidentiality obligations. *See Coady v. Harpo, Inc.*, 308 Ill. App. 3d 153, 719 N.E.2d 244, 250 (1999) (holding that a confidentiality agreement that does not restrict the employee's future career, does not restrict commerce, and does not restrict the employee's ability to work in any chosen career field is not subject to the same time-limitation requirements as traditional restrictive covenants). Indeed, the recently implemented Illinois Freedom to Work Act, 820 ILCS 90/1, *et seq.*, codified and expanded the *Fifield* adequate consideration framework for covenants not to compete and not to solicit. The Act's definitions expressly exclude confidentiality agreements and other anticompetitive restrictions from the scope of the Act's prohibitions. *See* 820 ILCS 90/5, 90/15. This reinforces the principle that nondisparagement covenants are not restrictions on competition or individuals' ability to obtain future work. To iterate, Rose knowingly entered into an arm's-length agreement with Lakefront, agreeing not to disparage Lakefront or its representatives without any time limits on such obligation. Rose received the benefit of the contract but chose not to uphold her end of the bargain. That contract is now being properly enforced against Rose for her breach.

## VIII. Any Potential Dismissal Should Be Without Prejudice.

Rose's request for dismissal with prejudice should be rejected. A court should deny leave to amend only if it is "certain that amendment would be futile or otherwise unwarranted", and the norm is to afford a plaintiff at least one opportunity to amend. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). While the Amended Complaint is an amendment of the original complaint, the amendment is based on additional facts uncovered during discovery, rather than any prior deficiencies with the original complaint. In fact, every claim the defendants actually challenged in the original complaint – tortious interference, IIED, and civil conspiracy – survived their Rule 12(b)(6) motion. (Dkt. 42.) If the Court finds any claim against Rose deficient, Plaintiffs respectfully request leave to replead.

23

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny, in its entirety, Defendant Candice Rose's Motion to Dismiss the Amended Complaint. In the alternative, if the Court deems it appropriate to dismiss any claim against Rose, Plaintiffs request that the dismissal be without prejudice and with leave to amend.

Dated: July 28, 2026

Respectfully submitted,

LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and THE CURSE, LLC

By: /s/ *Ilya G. Zlatkin*
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
ilya@zce.law

George J. Spathis
LEVENFELD PEARLSTEIN, LLC
120 South Riverside Plaza, Suite 1800
Chicago, Illinois 60606
Tel: (312) 346-8380
gspathis@lplegal.com

*Attorneys for Plaintiffs Lakefront Pictures, LLC, Jennifer Karum, and The Curse, LLC*

24