**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC,** | ) | |
| **Plaintiffs,** | ) | **No. 24 C 1108** |
| **v.** | ) | **Magistrate Judge M. David Weisman** |
| **JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS, LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20,** | ) | |
| **Defendants.** | ) | |

**ORDER**

The case is before the Court on the Ancel defendants' ("Ancel") motion to dismiss the amended complaint. For the reasons set forth below, the Court grants in part and denies in part the motion [ECF 136].

**Discussion**

On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court "tak[es] as true all well-pleaded factual allegations and mak[es] all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (citing *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010)). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations, . . . [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004)).

Ancel also moves to dismiss Count IV, in which plaintiff Lakefront seeks to hold him personally liable for alleged breaches of the nondisclosure agreement ("NDA") between Lakefront Pictures and Ancel's company, Ancel Jordan International, LLC. (*See id.*, Ex. B.) Because Ancel is not a party to the NDA, he can only be held liable if there is a basis for piercing the corporate veil of his company. The NDA states that it "shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflict or choice of laws." (*Id.* ¶ 17.) Under California law,"[t]he corporate form is disregarded only in narrowly defined situations when the ends of justice so require." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992 (E.D. Cal. 2012) (citing *Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 607 (1985)). To

show injustice, plaintiff "'must make allegations of fact from which it appears that recognition of the corporate entity would sanction a fraud or promote injustice.'" *Id.* (quoting *Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 1140460, at *4 (C.D. Cal. April 17, 2007) (citing *Meadows v. Emett & Chandler*, 99 Cal. App. 2d 496, 499, 222 P.2d 145 (1950))). Mere "[c]onclusory allegations of alter-ego status are not sufficient." *Id.* (citing *Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C. D. Cal. 1983)).

Plaintiff alleges that "Ancel Internation[al] is a mere subterfuge formed by Ancel to shield himself from liability for his misconduct," "[t]here is a complete and total unity of interest between Ancel International and Ancel," and "[o]n information and belief, Ancel International was at all times substantially undercapitalized, and the entity has since been dissolved." (ECF 130 ¶¶ 183-85.) Unity of interest between the corporate entity and its shareholders is the norm, especially for small, closely held entities, and using a corporate entity to shield individuals from liability is a primary purpose of creating a corporate entity. Finally, undercapitalization standing alone is not necessarily indicative of fraud. In short, these are not "allegations of fact from which it appears that recognition of the corporate entity would sanction a fraud or promote injustice." *NuCal Foods, Inc.*, 887 F. Supp. 2d at 992 (citations omitted). *See Associated Vendors, Inc. v. Oakland Meat Co.*, 26 Cal. Rptr. 806, 813–15 (Ca. App. Ct. 1962) (allegations that support corporate veil piercing include commingling of funds, diversion of corporate assets, an individual treating corporate assets as his own; failure to maintain corporate records; sole ownership of all corporate stock by one person; the absence of corporate assets and undercapitalization; disregard of legal formalities; and contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability) (citations omitted). Plaintiff's conclusory allegations of alter-ego status are insufficient to state a claim against Ancel personally for breach of the NDA. As asserted against Ancel, Count IV is dismissed without prejudice.

Ancel argues that the Count V claim for rescission must be dismissed. "Rescission is available only when a contract is procured by fraud or misrepresentation, when it is based on a material mistake, or in the presence of substantial non-performance or breach of contract by a party." *Home Sav. Ass'n of Kansas City, F.A. v. State Bank of Woodstock*, 763 F. Supp. 292, 296 (N.D. Ill. 1991) (citing *Farmer v. Koen*, 542 N.E.2d 1326, 1328 (Ill. App. Ct. 1989)). "Breach of contract or substantial nonperformance warrants rescission where the matter, in respect to which the failure of performance occurs, 'is of such a nature and of such importance that the contract would not have been made without it.'" *C3 Techs., Inc. v. Fontana Mach. & Eng'g Co.*, No. 90 C 1599, 1992 WL 97712, at *4 (N.D. Ill. May 1, 1992) (quoting *Ahern v. Knecht*, 563 N.E.2d 787, 792 (Ill. App. Ct. 1990)). To state a claim for rescission, plaintiffs must allege: "(1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the status quo ante." *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 942 (Ill. App. Ct. 2010) (citing *Ahern*, 563 N.E.2d at 792).

The Curse alleges that: (1) "The Producer Agreement is a valid and enforceable contract;" (2) "[Plaintiff] performed its obligations due to date pursuant to the Agreement;" (3) "Rock City and Ancel failed to perform duties under the Agreement in a workmanlike manner, including among other things, violating SAG Rules regarding drug use on set, giving THC infused gummies

to an underage intern, and disrupting production at every turn;" and (4) "There was a complete and total failure of consideration on Rock City's and Ancel's part with respect to the Producer Agreement, warranting a recission of the Agreement, disgorgement of sums paid to Rock City, stripping Ancel of third-producer credits, and relieving [plaintiff] from making any future payments to Rock City." (ECF 130 ¶¶ 192-95.)

The Producer Agreement requires Ancel to "render all services customarily rendered by producers in the motion picture industry with respect to the development, pre-production, production and post-production of the Picture as and when reasonably required by Production Company and . . . rendering in-person on-set assistance as needed commencing one week in advance of principal photography." (ECF 130, Ex. A ¶ 1.) Plaintiff alleges that Ancel performed only a fraction of those duties. (*See* ECF 130 ¶¶ 57-58, 62-63, 68-72, 74-80 (stating that Ancel initially "introduced [Lakefront] to additional investors" and "offered helpful ideas that Karum incorporated into the script" but later "miss[ed] numerous calls and meetings," sowed discord on the set, and generally abdicated his third producer responsibilities).) Viewing the allegations and inferences in the light most favorable to them, plaintiffs have adequately alleged that Ancel breached the Producer Agreement or substantially failed to perform his obligations under it. What The Curse has not alleged, however, is that the parties can be restored to the status quo ante. Accordingly, the Court dismisses Count V without prejudice.

In Count VII, Lakefront Pictures alleges that Ancel and defendant Rose tortiously interfered with Lakefront's existing contracts with Google, IFA, and others. The elements of this claim are: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiably induced a breach of the contract, (4) that the wrongful conduct of defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result." *Bank Fin., FSB v. Brandwein*, 36 N.E.3d 421, 430 (Ill. App. Ct. 2015) (quoting *Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 728 N.E.2d 547, 557 (Ill. App. Ct. 2000) (citing *Strosberg v. Brauvin Realty Servs., Inc.*, 295, 691 N.E.2d 834, 845 (Ill. App. Ct. 1998)). Ancel contends that this claim should be dismissed because plaintiffs allege that Rose, not Ancel, was responsible for the interference alleged in this count. In fact, plaintiffs allege that: (1) "Rose and/or Ancel contacted actors Eric Roberts and Harry Lennox, in an effort to undermine the strong working relationship that Lakefront and Karum had maintained with both men;" (2) "Rose and/or Ancel also contacted Joseph Bowes, the Head of Production at Periscope Studio, with which Lakefront had a strong working relationship, but has since refused to work on any projects;" and (3) "Rose and/or Ancel directed, encouraged or induced Erica Arvold, a major casting director out of LA, not to permit Karum to attend a casting/audition workshop even though Karum had previously auditioned with Arvold on multiple occasions, and now refuses to even respond to calls and emails;" (4) "Lakefront had contracts with clients, as well as with Google and IFA, and a reasonable expectancy of continuing an internship pipeline with DePaul and Columbia Universities and continued professional hiring relationship with crew members;" (5) "Ancel and Rose, through their smear campaign and direct acts of interference described above, caused the termination of those contracts, and prevented the prospective contracts and relationships from being solidified;" (6) "As a result of the coordinated smear campaign against Karum and Lakefront, a number of Lakefront

clients canceled their contracts with the company, including contracts to film and produce demo reels, contract to sponsor an industry event, and a contract for post-production editing." (ECF 130 ¶¶ 133-34, 136, 151, 206-07.) Those allegations are sufficient to sustain Count VII against Ancel.

In Count VIII, Karum alleges a claim for tortious interference with prospective economic advantage against Ancel. To state a viable claim, plaintiff must allege that: (1) she had a reasonable expectation of entering into a business relationship; (2) Ancel knew about the expectation; (3) Ancel unjustifiably interfered, preventing plaintiff's expectation from being realized; and (4) plaintiff was damaged as a result. *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). Plaintiff alleges that: (1) Ancel conducted a smear campaign against her by word of mouth and on social media; (2) before Ancel started that campaign, Karum had relationships with casting directors and talent agencies and had a reasonable expectation of obtaining acting roles through them; (3) Ancel's smear campaign caused those relationships to end and prevented the opportunities from being solidified; and (4) Karum was injured as a result. (ECF 130 ¶¶ 211-13.)

Ancel argues that this claim must be dismissed because Karum does not identify any specific role, audition, or booking that his alleged interference caused her to lose. But the tortious interference claim is subject to the notice pleading standard of Rule 8, not the heightened pleading standard of Rule 9(b). Under Rule 8, "'[t]he only function the pleadings must serve is to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process.'" *Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2002 WL 31507167, at *3 (N.D. Ill. Nov. 12, 2002) (quoting *Int'l Marketing, Ltd. v. Archer–Daniels–Midland Co., Inc.*, 192 F.3d 724, 733 (7th Cir. 1999)). Moreover, "'plaintiff can plead conclusions as long as those conclusions provide defendant with minimal notice of the claim." *Id.* (quoting *Liberty Mutual Fire Ins., Co. v. Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d 887, 892 (N.D. Ill. 2000)). Plaintiffs' allegations pass muster under this standard.

Ancel next argues that the conspiracy claims Lakefront and Karum assert in Counts X and XI (respectively) must be dismissed. Under Illinois law, a claim of civil conspiracy requires plaintiffs to allege that: "(1) [there is] an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. App. Ct. 1999)). Ancel says plaintiffs allege that he and Rose made an agreement to harass plaintiffs and interfere with their business starting in spring 2023. (*See* ECF 130 ¶¶ 115, 116.) He argues that the conduct underlying the only viable tort claim, defamation, allegedly occurred before spring of 2023 and thus cannot support a conspiracy claim. However, as discussed above, defamation is not the only viable tort claim plaintiffs have alleged. Thus, the conspiracy claims stand.

Ancel also requests that the Court dismiss the Count I defamation claim to the extent it is premised on allegedly defamatory statements he made in his state court litigation because they are subject to the absolute litigation privilege. But the litigation privilege is an affirmative defense. *Semmerling v. Bormann*, No. 18 CV 6640, 2019 WL 10375623, at *1 (N.D. Ill. Sept. 11, 2019), *aff'd*, 840 F. App'x 869 (7th Cir. 2021). "Complaints need not anticipate defenses and attempt to

defeat them." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Indeed, the Seventh Circuit has admonished the lower courts "[to] respect the norm that complaints need not anticipate or meet potential affirmative defenses." *Id.* at 638. Accordingly, the Court denies Ancel's motion to dismiss Count I.

Finally, Ancel asks the Court to dismiss Karum's Count IX claim for intentional infliction of emotional distress because the amended complaint alleges that defendant Rose and non-party Amanda Gecewicz are the source of the allegedly egregious actions. On the contrary, among other things, plaintiffs allege that: (1) "Ancel was misogynistic and verbally abusive, frequently engaging in tirades laced with grotesque profanity that should never be tolerated in any work environment;" (2) "Ancel and Rose are responsible for all or substantially all of the false and misleading smears against Karum and Lakefront, . . . which have either been sent by or at their express direction by those seeking favors or opportunities in return;" (3) "Ancel also tried to weaponize Karum's autism, bullying her, and often doing so in front of the cast and crew to embarrass her and foment division on the set, creating an unnecessarily stressful work environment, and one that was particularly difficult for Karum (as someone who is neuro-diverse), who is hypersensitive about conflict and conflict resolution;" (4) "Ancel would cruelly mock Karum's autism, telling her and others that Karum merely 'uses' autism as a crutch to excuse or justify her actions;" (5) "Ancel's false rumors set off a firestorm of concerns, which he stoked to make people believe that Karum's continued presence on set threatened production, the completion of the project, and payments to crew;" (6) "Ancel purposefully and falsely told the cast and crew that Karum had 'broken into' cast hotel rooms, citing it as proof that she was vengeful and that her presence was 'dangerous'; (7) Ancel "encouraged investors to 'scare the shit out of [Karum];'" (8) "Ancel told anyone who would listen that Karum was 'dangerous,' falsely telling people that she baselessly had accused him of sexual assault (which she did not) and 'broken into' cast's hotel rooms;" and (9) for three years running, Karum has been harassed and cyber bullied by Ancel, Rose and their friends and supporters. (ECF 130 ¶¶ 73-75, 80, 92, 105, 108, 119, 132.) Because the amended complaint does not absolve Ancel of his allegedly tortious behavior, his motion to dismiss Count IX is denied.

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Ancel's motion to dismiss the amended complaint and dismisses without prejudice the claims asserted in Counts IV and V. In all other respects, the motion [ECF 136] is denied.

**SO ORDERED.** **ENTERED: October 26, 2026**

M. David Weisman

**M. David Weisman**
**United States Magistrate Judge**