**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAKEFRONT PICTURES, LLC, JENNIFER KARUM and THE CURSE, LLC,** | ) | |
| **Plaintiffs,** | ) | **No. 24 C 1108** |
| **v.** | ) | **Magistrate Judge M. David Weisman** |
| **JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS, LLC, CANDICE ROSE, and DOE DEFENDANTS 1-20,** | ) | |
| **Defendants.** | ) | |

**ORDER**

The case is before the Court on defendant Rose's motion to dismiss the amended complaint For the reasons set forth below, the Court grants in part and denies in part the motion [143].

**Discussion**

On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court "tak[es] as true all well-pleaded factual allegations and mak[es] all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (citing *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In Counts II and III, plaintiffs assert claims for defamation and false light invasion of privacy, respectively. To state a defamation claim, plaintiffs must allege that Rose made a false statement concerning plaintiffs, there was an unprivileged publication of the defamatory statement to a third party by Rose, and plaintiffs suffered damages as a result. *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008) (citing *Seith v. Chi. Sun–Times, Inc.*, 861 N.E.2d 1117, 1126 (Ill. App. Ct. 2007)). To state a claim for false light invasion of privacy, plaintiffs must allege that: (1) Rose placed Karum before the public in a false light; (2) the false light would be highly offensive to a reasonable person; and (3) Rose acted with actual malice. *Kolegas v. Heftel Broad. Corp.*, 607 N.E. 2d 201, 209-10 (Ill. 1992).

Rose argues that plaintiff has not stated these claims with sufficient specificity because the complaint does not allege "what Rose allegedly said, when she said it, to whom it was communicated, how the recipient acted in response, or facts demonstrating that any independent decision made by those third parties was caused by Rose rather than their own independent judgment." (ECF 143 at 4.) But these claims are governed by the notice pleading standard of Federal Rule of Civil Procedure 8, not the heightened pleading standard of Rule 9(b), or the fact pleading standard under Illinois law. *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). Thus, plaintiffs' failure to engage in fact pleading does not doom these claims.

Rose also argues that plaintiffs have impermissibly engaged in group pleading because they attribute the allegedly defamatory statements to both Rose and defendant Ancel. However, "group pleading is not per se improper." *Martinez v. Wexford Health Servs., Inc.*, No. 3:18-CV-50164, 2021 WL 1546429, at *3 (N.D. Ill. Apr. 20, 2021) (citing *Sibley v. Dart*, No. 17-cv-6298, 2019 WL 670270, at *4 (N.D. Ill. 2019); *Bailey v. Mansfield Indep. Sch. Dist.*, 425 F. Supp. 3d 696, 713 (N.D. Tex. 2019)). Moreover, viewed favorably to plaintiffs, the complaint alleges that Rose—alone—posted on social media that plaintiff Karum had falsely accused Ancel of sexual assault, circulated the false claim that Karum was suing twenty-one film makers, falsely told at least one actor that the investors in *The Unseen* were suing Karum for misuse of funds, and falsely told third-party Amanda Gecewicz that interns who had worked on *The Unseen* had filed complaints about Karum. (ECF 130 ¶¶ 116-18, 137, 140, 143, 148.) These allegations are sufficient to state defamation and false light claims against Rose.

Next, Rose argues that the tortious interference with contract and prospective economic advantage claims must be dismissed. To state a claim for tortious interference with contract, plaintiffs must allege the existence of a valid and enforceable contract with a third party, Rose's knowledge of that contract, Rose's intentional and unjustifiable inducement of breach of the contract, and a consequent breach of the contract that damaged plaintiffs. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). To state a claim for tortious interference with prospective economic advantage, plaintiffs must plead: (1) a reasonable expectation of entering into a valid business relationship; (2) Rose's knowledge of that expectancy; (3) purposeful interference by Rose that prevents the expectancy from ripening into a valid business relationship; and (4) resulting damages. *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991).

Rose argues that these claims fail because plaintiffs do not allege "specific contracts or protectable business expectancies with the certainty required under Illinois law." (ECF 143 at 10.) The Court disagrees. The complaint alleges that: (1) "Rose purposefully began spreading false rumors within the industry that in addition to suing her, Karum was suing 21 other film makers in Federal Court;" (2) "Rose directed, induced or encouraged Shari Shaw not to permit Karum to attend an acting workshop that she hosted in Chicago even though Karum had been a paying client of Shaw's for a year;" (3) "Rose directed, induced or encouraged Bankston Talent, which had represented Karum for three years . . . to drop Karum as a client." (4) "Rose also directed, induced or encouraged ERIS Talent to drop Karum as a client . . . and falsely represent[ed] that there was

a class action lawsuit in the works by the victims of her alleged 'abuse;'" (5) "On information and belief Rose has also bad-mouth[ed] Karum to Presley Talent, Smith Young Talent Agency, as well as other Chicago area filmmakers, casting agents and/or agencies;" (6) "Rose also falsely told at least one other actor (Emma Jo Boyden) that the investors in The Unseen had sued Karum 'for her misused funds;'" (7) Rose prompted third party Amanda Gecewicz, an alumna of DePaul University, from which Lakefront had consistently recruited interns, to persuade the University to discontinue its internship pipeline to Lakefront; (8) Rose also directed Gecewicz to get Lakefront banned from the Columbia University internship programs (with which Lakefront had previously enjoyed a strong working relationship), telling her that interns that had worked on The Unseen filed complaints;" (9) "Rose also directed, induced or encouraged Gecewicz to bad mouth Lakefront to the Independent Film Alliance—Chicago ("IFA"). In turn, Gecewicz directed or encouraged Winter Davis, then an employee of IFA, to contact Google (which she did) to remove Lakefront's business profile, which it did (although it has since been restored);" (10) "Rose directed or encouraged actor Jeff Zarinelli (with whom Karum had enjoyed a good working relationship) to file a police report and/or seek an order of protection against Karum" because she made multiple attempts to contact him to try to restore their friendship; (Am. Compl. ¶¶ 133-43, 147-49, 157.) In addition, plaintiffs allege that (1) Rose and/or Ancel "contacted Joseph Bowes, the Head of Production at Periscope Studio, with which Lakefront had a strong working relationship, but has since refused to work on any projects;" (2) Rose and/or Ancel "contacted actors Eric Roberts and Harry Lennox, in an effort to undermine the strong working relationship that Lakefront and Karum had maintained with both men;" and (3) "Rose and/or Ancel directed, encouraged or induced Erica Arvold, a major casting director out of LA, not to permit Karum to attend a casting/audition workshop even though Karum had previously auditioned with Arvold on multiple occasions;" (4) "Lakefront had contracts with clients, as well as with Google and IFA, and a reasonable expectancy of continuing an internship pipeline with DePaul and Columbia Universities and continued professional hiring relationship with crew members;" and (5) "Ancel and Rose, through their smear campaign and direct acts of interference caused the termination of those contracts and prevented the prospective contracts and relationships from being solidified." (*Id.* ¶¶ 133-34, 13, 206-07.) Those allegations are sufficient to state claims against Rose for tortious interference with contract and tortious interference with prospective economic damage.

Rose also argues that the Count IX intentional infliction of emotional distress claim should be dismissed because plaintiffs do not allege that Rose engaged in conduct "so extreme that it exceeds all bounds tolerated by a civilized society." (ECF 143 at 13); *see McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (stating that the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct defendant; (2) defendant intended to inflict severe emotional distress or knew there was a high probability that such distress would result; and (3) the conduct in fact caused severe emotional distress); *Ulm v. Mem'l Med. Ctr.*, 964 N.E.2d 632, 641 (Ill App. Ct. 2012) ("Whether particular conduct is extreme and outrageous is treated as a question of law as 'extreme and outrageous' is a legal, not a factual, standard."); *see also Thomas v. Fuerst*, 803 N.E.2d 619, 625 (Ill. App. Ct. 2004) ("Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances.").

The complaint alleges that Rose circulated the false rumor that Karum was suing twenty-one filmmakers; falsely told at least one actor that the investors in The Unseen had sued Karum for misuse of funds; induced actor Jeff Zarinelli, with whom Karum had previously had a good working relationship, to file a police report and/or seek an order of protection against Karum; posted on social media: "DEFINITELY do not use LAKEFRONT PICTURES! They did a demo reel clip for me I could not even use. . . . AFTER that I shot THE UNSEEN w Lakefront . . . . and that was an absolute nightmare!! That company needs to close down, it is a complete sh*t show," induced her supporters to encourage the organizer of a Chicago film industry networking event to disinvite Karum because she was dangerous, prompted third party Gecewicz to call DePaul and Columbia Universities, from which Lakefront recruited interns, to persuade them to discontinue their relationships with Lakefront; induced Bankston Talent and ERIS Talent to drop Karum as a client; induced casting director Erica Arvold to ban Karum from a casting/audition workshop and Sherri Shaw to ban Karum from an acting workshop. It also alleges that Rose did these things intentionally to hurt plaintiffs, and she succeeded in damaging their professional and personal reputations and made it difficult for Lakefront to operate in Chicago. (ECF 130 ¶¶ 116, 136-37, 139-40, 143-44, 147-48, 157; *id.*, Ex F.) In other words, Rose is alleged to have organized and participated in a smear campaign against plaintiffs perpetrated in the Chicago film industry by word-of-mouth, email, and on social media that was designed to and succeeded in damaging plaintiffs' reputations and livelihood. (*See id.*) Those allegations are sufficient to state an intentional infliction of emotional distress claim against Rose.

Next, Rose argues that plaintiffs have not alleged claims for civil conspiracy in Counts X and XI. Under Illinois law, the elements of civil conspiracy are: "(1) a combination of two or more persons; (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; and (3) one or more tortious acts committed in furtherance of the agreement." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894-95 (Ill. 1994). Because plaintiffs' conspiracy allegations do not sound in fraud, these claims are not subject to the heightened pleading standards of Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Plaintiffs allege that: (1) "Ancel and Rose conspired and agreed to engage in an[] orchestrated a coordinated tortious campaign of harassment against Lakefront [and Karum] and interference with [their] business with the express purpose of injuring [them];" (2) "Ancel and Rose took acts, described above, in furtherance of the referenced conspiracy;" and (3) "Lakefront [and Karum have] suffered economic loss and reputational harm as a direct and proximate result of the referenced conspiracy." (ECF 130 ¶¶ 220-23, 225-27.)

Rose argues that these allegations are insufficient because they plead conclusions rather than facts. (ECF 143 at 15.) However, "'[t]he federal rules require . . . only that the complaint state a claim, not that it plead the facts that if true would establish . . . that the claim was valid.'" *McMillian v. Litscher*, 72 F. App'x 438, 440 (7th Cir. 2003) (quoting *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002)). Moreover, the Seventh has rejected the argument that conspiracy claims must be pleaded with particularity:

> Citing *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011), defendants argue that the complaint fails to allege a conspiracy under the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). We disagree. While the complaint makes only rather conclusory direct allegations of conspiracy, the complaint also alleges a pattern of harassment by several officers over a period of months. It is a challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy. Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy. *See* 550 U.S. at 556, 127 S. Ct. 1955. . . . *Iqbal* calls on us to apply our "judicial experience and common sense." 556 U.S. at 679, 129 S. Ct. at 1950. If several members of the same police unit allegedly acted in the same inexplicable way against a plaintiff on many different occasions, we will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion.

*Geinosky v. City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2012). Plaintiffs' allegations and the inferences they support are sufficient to state conspiracy claims against Rose. Thus, the motion to dismiss Counts X and XI is denied.

Rose also contends that plaintiffs have not stated a viable breach of contract claim in Count XII. "A breach of contract claim under Illinois [law] requires that Plaintiff plead the following four elements: (1) the existence of a valid and enforceable contract, (2) her substantial performance under the contract, (3) [defendant's] breach of that contract, and (4) damages resulting from the alleged breach of contract." *Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V.*, 529 F. Supp. 3d 856, 865 (N.D. Ill. 2021) (citing *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018)). Plaintiffs allege that Rose contracted with Lakefront "to create, write, produce, film, and edit a demo scene for her." (ECF 130 ¶ 230.) Plaintiffs allege that in the June 2021 agreement, Rose agreed to refrain from doing anything that might bring Lakefront into "public disrepute, contempt, scandal, or ridicule or which might tend to reflect unfavorably on the company . . . or injure the success of Lakefront." (*Id.*, Ex. H.) Plaintiffs allege that Rose's conduct in 2023 violates this portion of the agreement.

Rose argues that her alleged comments in 2023 did not violate the contract because nothing in it states or suggests that the non-disparagement obligation survives contract completion. Generally, "an expired contract releases all its parties from their respective contractual obligations." *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 646 (7th Cir. 2006) (citing *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 488 (E.D. Mich. 1993)). Plaintiffs do not identify any contract language that indicates the parties agreed to depart from that general rule. As a result, they have not stated a viable contract claim in Count XII.

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Rose's motion to dismiss [ECF 143]. The motion is denied as to the claims alleged in Counts II, III, and VII-XI. The motion is granted with respect to the contract claim in XII, which is dismissed without prejudice.

**SO ORDERED.** **ENTERED: October 26, 2026**

M. David Weisman

**M. David Weisman**
**United States Magistrate Judge**