**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAKEFRONT PICTURES, LLC, JENNIFER KARUM, and THE CURSE, LLC, | ) | Case No. 1:24-cv-01108 |
| Plaintiff, | ) | |
| vs. | ) | |
| JORDAN ANCEL, JORDAN ANCEL INTERNATIONAL, LLC, ROCK CITY ROAD FILMS LLC, CANDICE ROSE, And DOES 1-20, | ) | Honorable Jeffrey I. Cummings<br>Magistrate Judge Hon. M. David Weisman |
| Defendants. | ) | |

## DEFENDANT CANDICE ROSE'S ANSWER TO PLAINTIFFS' AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

NOW COMES Defendant Candice Rose ("Rose"), by and through her attorneys, RIFKIND PATRICK LLC, answers Plaintiffs' Amended Complaint [ECF No. 130] as follows:

## PRELIMINARY STATEMENT

A. Except as expressly admitted below, Rose denies each allegation of the Amended Complaint.

B. Where Rose admits that she authored or received a particular communication, the admission is limited to the exact language of the authenticated communication when considered in its complete context. Rose denies Plaintiffs' characterizations, labels, legal conclusions, and inferences concerning any such communication.

C. Allegations concerning the conduct, intent, knowledge, communications, contracts, or internal affairs of Plaintiffs, the Ancel Defendants, and independent third parties are answered based upon Rose's present knowledge and information.

D. No response is required to the Amended Complaint's headings, characterizations, legal conclusions, or prayers for relief. To the extent a response is deemed required, Rose denies them.

E. The Amended Complaint contains three separate paragraphs numbered 73 and two separate sets of paragraphs numbered 74 through 85. Solely to avoid ambiguity, Rose identifies those paragraphs in their order of appearance as Paragraphs 73(a), 73(b), 73(c), 74(a) through 85(a), and 74(b) through 85(b).

**ANSWER TO NUMBERED ALLEGATIONS**

1. Denied.

2. Rose denies that she participated in any coordinated campaign or acted to carry out any alleged threat by Ancel. Rose lacks knowledge or information sufficient to form a belief as to the truth of the statements attributed to Ancel and therefore denies the remaining allegations.

3. Denied.

4. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum's citizenship, domicile, employment, and residence and therefore denies them.

5. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Lakefront's organization, principal place of business, membership, and management and therefore denies them.

6. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning The Curse's organization, principal place of business, membership, management, and the citizenship or domicile of its members and therefore denies them.

7. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's citizenship or domicile and therefore denies them.

8. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel International's organization, location, or membership and therefore denies them.

9. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Rock City's organization, membership, purpose, or activities and therefore denies them.

10. Rose admits that she is an individual who is a citizen of and domiciled in Wisconsin.

11. Paragraph 11 states a legal conclusion based upon facts concerning Plaintiffs that are not within Rose's knowledge. To the extent a response is required, Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

12. Paragraph 12 states a legal conclusion based upon facts concerning the other Defendants that are not within Rose's knowledge. To the extent a response is required, Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

13. Rose admits that she is not a citizen of or domiciled in Illinois, New Jersey, or Pennsylvania. Rose lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them.

14. Rose does not contest that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332. Rose denies that Plaintiffs sustained any recoverable damages attributable to Rose.

15. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel and the Ancel-related entities and therefore denies them.

16. Rose admits that she entered into the written Demo Agreement with Lakefront and provided acting-related services in Illinois. Rose denies that she directed any tortious act, breached the agreement or caused any injury in Illinois and denies the remaining allegations.

17. Rose does not contest venue in this District. Rose denies any remaining allegations inconsistent with that limited admission.

18. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum's medical diagnosis, childhood experiences, or the alleged effects of those experiences and therefore denies them.

19. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum's childhood, educational history, or personal development and therefore denies them.

20. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum's employment history or claimed professional success and therefore denies them.

21. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum's medical condition, private struggles, social behavior, or motivations and therefore denies them.

22. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum's acting history, training, or study of film production and therefore denies them.

23. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum's departure from employment or her stated professional mission and therefore denies them.

24. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the development of Karum's interest in filmmaking and therefore denies them.

25. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning how Karum met Atkins or Atkins's experience and credits and therefore denies them.

26. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum and Atkins's working relationship or development of Conrad and therefore denies them.

27. Rose lacks knowledge or information sufficient to form a belief as to the truth of the circumstances, motivations, or stated mission surrounding Lakefront's formation and therefore denies the allegations.

28. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Lakefront's development, financing, or promotion of Conrad and therefore denies them.

29. Rose lacks knowledge or information sufficient to form a belief as to the truth of the circumstances under which Eric Roberts or Harry Lennix became associated with Conrad and therefore denies the allegations.

30. Rose lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterizations of their experience producing Conrad and therefore denies them.

31. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the preparation, reception, or promotion of Conrad, including any alleged interest from Netflix, and therefore denies them.

32. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning The Nest and therefore denies them.

33. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Lakefront's work on other films, the awards allegedly received, or the composition and experience of its production crews and therefore denies them.

34. Rose admits that Lakefront provided demo-reel services to her. Rose lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning Lakefront's services to others and therefore denies them.

35. Rose admits that Karum was credited as a writer of The Unseen. Rose lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning development of the script or Vincent Shade's alleged mentorship and therefore denies them.

36. Rose admits that Karum, Atkins, and Lakefront acted as producers of The Unseen. Rose lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning their responsibilities and therefore denies them.

37. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the film's proposed budget, financing, investors, or casting process and therefore denies them.

38. Rose admits that RJ Mitte was cast in The Unseen. Rose lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' alleged motives, efforts, or mission and therefore denies the remaining allegations.

39. Rose admits that RJ Mitte and Karum appeared in The Unseen. Rose lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning how Mitte's participation was secured or how Karum selected her role and therefore denies them.

40. Rose admits that she attended classes with Karum, was friendly with Karum for a period, permitted scenes from Conrad to be filmed at her home, engaged Lakefront to produce a demo-reel scene, and was cast in The Unseen. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Rebekah Kennedy and denies any remaining characterization inconsistent with these admissions.

41. Rose admits that Karum acted in and worked as a producer on The Unseen and that Atkins performed production and cinematography-related work. Rose lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning lessons allegedly learned during Conrad or internal decisions made by Karum and Atkins and therefore denies them.

42. Rose admits that Vincent Shade directed The Unseen. Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged internal discussions, purposes, or agreements and therefore denies the remaining allegations.

43. Rose admits that Ancel served as a producer on The Unseen. Rose lacks knowledge or information sufficient to form a belief as to the truth of the circumstances under which Lakefront contacted or negotiated with Ancel and therefore denies the remaining allegations.

44. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum's prior knowledge of Ancel, her participation in the identified Facebook group, or Ancel's activities in that group and therefore denies them.

45. Rose lacks knowledge or information sufficient to form a belief as to the truth of statements allegedly made by Ancel concerning his wife or his alleged efforts to cultivate networking contacts and therefore denies the allegations.

46. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the status of Plaintiffs' work when they first contacted Ancel and therefore denies them.

47. Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged initial reaction, subsequent interest, statements, or motivations concerning The Unseen and therefore denies the allegations.

48. Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged experience, reputation, résumé, motivations, or intentions and therefore denies the allegations.

49. Rose admits that Ancel served as a producer on The Unseen. Rose was not a party to the Producer Agreement and lacks knowledge or information sufficient to form a belief as to the truth of its alleged execution, purpose, the parties' intentions, or its legal effect and therefore denies the remaining allegations.

50. Rose was not a party to the Producer Agreement and lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterization of its compensation provisions. Rose admits only that the attached Agreement contains the language appearing within it and denies any inconsistent characterization.

51. Rose was not a party to the Producer Agreement and lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterization of its provisions. Rose admits only that the attached Agreement contains the language appearing within it and denies any inconsistent characterization.

52. Rose was not a party to the Producer Agreement and lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterization of its credit provisions. Rose admits only that the attached Agreement contains the language appearing within it and denies any inconsistent characterization.

53. Rose was not a party to the Producer Agreement and lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterization of its publicity, script, character, or warranty provisions. Rose admits only that the attached Agreement contains the language appearing within it and denies any inconsistent characterization.

54. Rose lacks knowledge or information sufficient to form a belief as to whether Ancel International executed the alleged NDA and therefore denies the allegations.

55. Rose was not a party to the alleged NDA and lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterization of its provisions. Rose admits only that Exhibit B contains the language appearing within it and denies any inconsistent characterization.

56. Rose was not a party to the alleged NDA and lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterization of its provisions or Ancel's alleged acknowledgment and therefore denies the allegations.

57. Rose admits that Ancel served as a producer on The Unseen. Rose lacks knowledge or information sufficient to form a belief as to the truth of his alleged activities, introductions, or contributions during the development phase and therefore denies the remaining allegations.

58. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's participation in calls, meetings, or production responsibilities or his alleged personal explanations and therefore denies them.

59. Rose admits that filming for The Unseen occurred in the Greater Chicago area during 2022. Rose lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations concerning the budget, production planning, SAG requirements, or complete filming schedule and therefore denies the remaining allegations.

60. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning who identified or secured the filming locations and therefore denies them.

61. Rose lacks knowledge or information sufficient to form a belief as to the truth of Karum's and Atkins's expectations regarding the filming schedule or coordination among producers and therefore denies the allegations.

62. Rose lacks knowledge or information sufficient to form a belief as to the truth of instructions allegedly given to Ancel or Karum's and Atkins's expectations concerning his conduct and therefore denies the allegations.

63. Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's overall performance as a producer or Plaintiffs' characterizations of that performance and therefore denies the allegations.

64. Rose lacks knowledge or information sufficient to form a belief as to the truth of private conversations allegedly occurring between Ancel and Karum and therefore denies the allegations.

65. Rose lacks knowledge or information sufficient to form a belief as to the truth of Karum's reactions, beliefs, or responses to alleged private conversations with Ancel and therefore denies the allegations.

66. Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged statements or Karum's reactions and characterizations and therefore denies the allegations.

67. Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged private conversations between Ancel and Karum or their alleged effect on the production and therefore denies the allegations.

68. Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged conduct toward a crew member, Karum's alleged request, or the circumstances of any relationship and therefore denies the allegations.

69. Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged conduct, departure from set, or resulting allocation of production responsibilities and therefore denies the allegations.

70. Rose lacks knowledge or information sufficient to form a belief as to the truth of statements allegedly made by Ancel to Karum or Karum's response and therefore denies the allegations.

71. Rose lacks knowledge or information sufficient to form a belief as to the truth of any alleged admonishments, contemplated termination, threats, or investor statements and therefore denies the allegations.

72. Rose lacks knowledge or information sufficient to form a belief as to the truth of Karum's and Atkins's alleged deliberations or reasons for retaining Ancel during filming and therefore denies the allegations.

73(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the authenticity, completeness, context, or meaning of the alleged text exchange between Ancel and Karum and therefore denies the allegations.

74(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterization of Ancel's interest in or performance of his producer responsibilities and therefore denies the allegations.

75(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged representations, experience, conduct, or activities as a producer and therefore denies the allegations.

76(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged incident involving Ancel sleeping on a couch during filming and therefore denies the allegations.

77(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged door damage, Ancel's conduct, the homeowner's response, or responsibility for repairs and therefore denies the allegations.

78(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the assignment, monitoring, or completion of Ancel's alleged tasks or Plaintiffs' resulting workload and therefore denies the allegations.

79(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' characterization of Ancel's producer role or conduct and therefore denies the allegations.

80(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of Karum's and Atkins's expectations or their intended manner of addressing production issues and therefore denies the allegations.

81(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first paragraph numbered 81 and therefore denies them.

82(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first paragraph numbered 82 and therefore denies them.

83(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first paragraph numbered 83 and therefore denies them.

84(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first paragraph numbered 84 and therefore denies them.

85(a). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first paragraph numbered 85 and therefore denies them.

73(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged difficulty taking direction from Karum or the reason for any such difficulty and therefore denies the allegations.

73(c). Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged exchanges between Ancel and Karum or Plaintiffs' characterizations of Ancel's conduct and therefore denies the allegations.

74(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged interactions between Ancel and Karum, including the alleged conduct concerning Karum's autism, and therefore denies the allegations.

75(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of statements allegedly made by Ancel concerning Karum's autism and therefore denies the allegations.

76(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged statements concerning production funds, the information allegedly provided to investors or Mitte's representatives, or any review of the books and therefore denies the allegations.

77(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the discussions, reasons, or professional judgments concerning alleged script revisions and therefore denies the allegations.

78(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of Ancel's alleged reaction to script revisions or Plaintiffs' characterization of the parties' contractual rights and therefore denies the allegations.

79(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged conversation between Karum and Ancel, statements allegedly made to cast members, or the effect of the script revision and therefore denies the allegations.

80(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged rumors, their source, content, or effect on the production and therefore denies the allegations.

81(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second paragraph numbered 81 and therefore denies them.

82(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second paragraph numbered 82 and therefore denies them.

83(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second paragraph numbered 83 and therefore denies them.

84(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second paragraph numbered 84 and therefore denies them.

85(b). Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second paragraph numbered 85 and therefore denies them.

86. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

87. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

88. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

89. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

90. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications between Ancel and Karum and therefore denies them.

91. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Karum, Ancel, or hotel personnel and therefore denies them.

92. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's statements, knowledge, or intent and therefore denies them.

93. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications between Ancel and the hotel and therefore denies them.

94. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's statements, conduct, or intent and therefore denies them.

95. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

96. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's statements, conduct, or intent and therefore denies them.

97. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

98. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Lakefront's communications with Ancel or post-production responsibilities and therefore denies them.

99. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's demands or Lakefront's response and therefore denies them.

100. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications between Ancel and Karum and therefore denies them.

101. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's contractual obligations, media communications, or social-media statements and therefore denies them.

102. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications between Ancel and the film's publicist and therefore denies them.

103. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's communications, beliefs, intent, or alleged admissions and therefore denies them.

104. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications between Ancel and investors and therefore denies them.

105. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications between Ancel and investors and therefore denies them.

106. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's communications with investors or the lead actor and therefore denies them.

107. Rose denies the allegations and characterizations to the extent a response from Rose is required.

108. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's alleged statements and therefore denies them.

109. Rose admits only that public court records reflect that Ancel filed an action against Karum. Rose lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them.

110. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's or his counsel's alleged dissemination, statements, knowledge, or intent and therefore denies them.

111. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's alleged public statements and therefore denies them.

112. Rose admits that she received and participated in communications concerning the possibility of litigation involving Plaintiffs. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's alleged social-media statements or motives and therefore denies them. Rose denies that Ancel directed, encouraged, or induced her to make false representations, that she represented that a class action had been filed, or that she intended to mislead anyone.

113. Rose admits that Lakefront cast her as an actor in The Unseen, that she previously retained Lakefront to create a demo-reel scene, and that she later published a positive review. Rose denies any remaining allegations or implications inconsistent with the complete contents of the review and Demo Agreement.

114. Rose admits that she and Karum exchanged professional and personal communications after the demo-reel project. Rose denies any remaining allegations or implications.

115. Rose admits that she and Karum filmed during different weeks and, to Rose's recollection, were not on set together. Rose further admits that they continued communicating for a period after filming. Rose denies the characterization that they "had no issues" to the extent it purports to state Rose's perceptions and otherwise denies the allegations.

116. Rose admits that she eventually ended direct communications with Karum and later communicated her own subjective concerns and opinions to certain third parties. Rose denies that she did so at Ancel's direction, knowingly repeated any false statement, acted maliciously, or participated in a smear campaign.

117. Rose admits that she authored certain social-media comments concerning Plaintiffs to the extent those comments are authenticated and reproduced completely. Rose denies that she blindly maligned Karum or knowingly published false statements. Rose lacks knowledge or information sufficient to form a belief as to the truth of any confrontation involving Ancel and therefore denies the remaining allegations.

118. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ancel's motives or the significance of the filings in his separate action

and therefore denies them. Rose denies that she made sweeping false public statements, had a duty to correct statements by Ancel, or caused the alleged harm to Karum.

119. Denied. Rose did not harass or cyberbully Karum and did not agree or coordinate with Ancel or anyone else to do so.

120. Rose lacks knowledge or information sufficient to form a belief as to the truth of the communications allegedly received whenever others promoted Plaintiffs and therefore denies those allegations. Rose denies acting as Ancel's proxy, promulgating "myths," or falsely stating that Karum had been blacklisted.

121. Rose lacks knowledge or information sufficient to form a belief as to the truth of attendance and events at each premiere or the basis and scope of any restriction involving Ancel and therefore denies the allegations. Rose denies any implication concerning her own conduct.

122. Rose lacks knowledge or information sufficient to form a belief as to the truth of unidentified third parties' alleged accounts or experiences concerning Ancel and therefore denies the allegations.

123. Rose admits only her authorship of any authenticated and complete communication contained in Group Exhibit F that was authored by her. Rose denies that she harassed or knowingly maligned Plaintiffs, coordinated with Ancel or others, or participated in an orchestrated smear campaign. Rose lacks knowledge or information sufficient to form a belief as to the truth of the conduct of unidentified third parties and therefore denies it.

124. Rose lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' ability to obtain work or the quoted user's identity, statement, or reasons for blocking Karum and

therefore denies those allegations. Rose denies causing any alleged loss of work or reputational harm.

125. Rose admits that she posted the quoted comment substantially as alleged: "Securing an interim agreement with SAG is NOT difficult, if you see a company advertising that they can help you with this . . . RUN!" Rose denies that the comment was false, malicious, coordinated with Ancel, or part of any smear campaign. Rose lacks knowledge or information sufficient to form a belief as to whether Ancel "liked" the comment or the truth of Plaintiffs' allegations concerning their SAG relationships, approval time, or proposed services and therefore denies the remaining allegations.

126. Rose lacks knowledge or information sufficient to form a belief as to the truth of the rules or membership decisions of the unidentified Facebook group and therefore denies the allegations. Rose denies causing any group to expel members or participating in a smear campaign.

127. Rose lacks knowledge or information sufficient to form a belief as to the truth of the anonymous messages allegedly received by Plaintiffs' clients, prospects, or partners and therefore denies the allegations. Rose specifically denies authoring, sending, directing, or causing any anonymous or fictitious-account message.

128. Rose admits that she sent Ancel a screenshot of a public Facebook post and the accompanying identifying message quoted in Paragraph 128. Rose denies that doing so was wrongful, intended to interfere with the writer's relationship with Plaintiffs, or connected to any anonymous email.

129. Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged email except that she denies authoring, sending, directing, or causing it. Rose denies any implication that the email was sent at her request or as part of any agreement involving Rose.

130. Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged email or the sender's identity except that she denies authoring, sending, directing, or causing it.

131. Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged number, contents, senders, recipients, or appearance of the purported spoof emails and therefore denies those allegations. Rose denies authoring, sending, directing, or causing any such email.

132. Denied. Rose did not author, send, direct, or cause the anonymous emails alleged in Paragraphs 127 through 131, did not direct others to publish false or misleading statements, and did not offer favors or opportunities in exchange for statements concerning Plaintiffs.

133. Rose denies that she contacted Eric Roberts or Harry Lennix to undermine Plaintiffs' relationships with them. Rose lacks knowledge or information sufficient to form a belief as to whether Ancel communicated with either person and therefore denies the allegations concerning him.

134. Rose denies that she contacted Joseph Bowes to undermine any relationship with Plaintiffs. Rose lacks knowledge or information sufficient to form a belief as to whether Ancel communicated with Bowes or why Periscope Studio allegedly declined later projects and therefore denies the remaining allegations.

135. Denied. Rose did not contact Karum's high-school friends to malign, harass, humiliate, or gather information concerning Karum.

136. Rose denies directing, encouraging, or inducing Erica Arvold to exclude or ignore Karum. Rose lacks knowledge or information sufficient to form a belief as to the truth of Karum's prior auditions, workshop eligibility, or Arvold's reasons for not responding to Karum and therefore denies the remaining allegations.

137. Rose admits that she discussed litigation involving Karum with an individual identified as Kathy and later referenced that conversation in a group text. Rose denies Plaintiffs' characterization of the communication, denies knowingly spreading a false rumor, and denies acting with any unlawful purpose or in concert with any "accomplices."

138. Rose denies directing, inducing, or encouraging Shari Shaw to exclude Karum from any workshop. Rose admits participating in the referenced group text and making remarks reflecting frustration with Karum. Rose denies causing Shaw to ignore Karum and denies the remaining allegations and characterizations.

139. Rose admits that she communicated with representatives of Bankston Talent concerning professional matters involving Karum and/or The Unseen. Rose denies directing, inducing, or encouraging Bankston Talent to terminate Karum. Rose lacks knowledge or information sufficient to form a belief as to the truth of Bankston Talent's reasons for ending its relationship with Karum and therefore denies those allegations. Rose denies that any communication by her caused the termination.

140. Rose admits that she communicated with Lisa Gal concerning professional matters involving Karum and/or The Unseen and used the subject line "Forewarned is forearmed." Rose denies directing, inducing, or encouraging ERIS Talent to terminate Karum, denies knowingly making any false representation concerning litigation, and lacks knowledge or information

sufficient to form a belief as to the truth of ERIS Talent's independent reasons for any decision concerning Karum and therefore denies the remaining allegations.

141. Rose admits that she communicated with certain industry representatives concerning her own experiences and subjective concerns involving Karum and/or The Unseen. Rose denies falsely bad-mouthing Karum to Presley Talent, Smith Young Talent Agency, or any other person or entity and denies intentionally interfering with any relationship.

142. Rose admits that she authored the quoted communication substantially as alleged. Rose denies that the communication solicited anyone to join an unlawful "crusade," constituted a knowingly false statement of fact, or reflected an agreement or coordination to commit a tort.

143. Rose admits that she communicated privately with Emma Jo Boyden concerning litigation involving Karum and authored the quoted words substantially as alleged. Rose denies stating as an independent fact that Karum stole or misappropriated funds, denies knowingly making a false statement, and denies the remaining allegations and characterizations.

144. Rose denies directing, inducing, or encouraging anyone to contact Sarah Cayce to have Karum disinvited from any event. Rose admits only that she communicated her own subjective concerns in certain private communications and denies the remaining allegations.

145. Rose admits that she communicated with Amanda Gecewicz concerning Rose's experiences and subjective concerns involving Karum. Rose denies directing, inducing, or encouraging Gecewicz to publish any false statement or to describe Karum as dangerous or unsafe.

146. Rose lacks knowledge or information sufficient to form a belief as to the truth of the complete content, basis, or intended meaning of Gecewicz's alleged post and therefore denies the

allegations. Rose denies authoring, directing, or causing the post and denies that Gecewicz acted pursuant to an agreement with Rose.

147. Rose denies prompting, directing, inducing, or encouraging Gecewicz to contact DePaul University or interfere with any internship relationship. Rose lacks knowledge or information sufficient to form a belief as to the truth of the substance or effect of any communication between Gecewicz and DePaul and therefore denies the remaining allegations.

148. Rose admits that she and Gecewicz discussed concerns relating to Plaintiffs and alleged intern complaints. Rose denies directing, inducing, or encouraging Gecewicz to contact Columbia College Chicago or interfere with any internship program and lacks knowledge or information sufficient to form a belief as to the truth of what Gecewicz told the institution or why it took any action and therefore denies the remaining allegations.

149. Rose admits that she communicated with Gecewicz concerning Plaintiffs and industry organizations. Rose denies directing, inducing, or encouraging Gecewicz to make any false statement to IFA or to interfere with Plaintiffs' Google business profile. Rose lacks knowledge or information sufficient to form a belief as to the truth of Winter Davis's alleged communications with Google or Google's reasons for any action and therefore denies the remaining allegations.

150. Rose lacks knowledge or information sufficient to form a belief as to the truth of Gecewicz's alleged communications with IFA, IFA's reasons for any membership decision, or why Lakefront allegedly lost office access and therefore denies those allegations. Rose admits only that she received certain group messages from Gecewicz and denies directing, causing, or agreeing to any interference with Plaintiffs.

151. Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged contracts, cancellations, or reasons for cancellation and therefore denies the allegations. Rose denies causing any cancellation or participating in a coordinated smear campaign.

152. Rose lacks knowledge or information sufficient to form a belief as to the truth of the freelancer's identity, statements, decision, or reasons and therefore denies the allegations. Rose denies causing the alleged decision.

153. Rose lacks knowledge or information sufficient to form a belief as to the truth of the freelancer's identity, alleged threats, decision, or reasons and therefore denies the allegations. Rose denies making any threat that persons working with Lakefront would be blackballed or causing the alleged decision.

154. Rose lacks knowledge or information sufficient to form a belief as to the truth of the prospective partner, negotiations, alleged statement, decision, or reasons and therefore denies the allegations. Rose denies causing the alleged termination of negotiations.

155. Rose lacks knowledge or information sufficient to form a belief as to the truth of the alleged intern acceptances, reversals, or reasons and therefore denies the allegations. Rose denies causing any intern to reverse an acceptance.

156. Rose lacks knowledge or information sufficient to form a belief as to the truth of the unidentified casting agency's conduct or reasons and therefore denies the allegations. Rose denies causing any agency to distance itself from Plaintiffs.

157. Rose admits that she communicated with Jeff Zarinelli and others concerning contacts that Zarinelli described as unwanted and concerning whether he could make a police report. Rose

denies directing or encouraging Zarinelli to make a false report or seek an unfounded order of protection, denies acting to bolster any false narrative, and denies Plaintiffs' characterization that she "lamented" the officers' response.

158. Rose admits that she communicated with some of the listed individuals concerning her own experiences and subjective concerns. Rose denies directing, encouraging, incentivizing, or rewarding anyone to make a false statement, interfere with Plaintiffs' relationships, harass Plaintiffs, or participate in a targeted smear campaign. Rose lacks knowledge or information sufficient to form a belief as to the truth of the independent conduct of the listed individuals and therefore denies it.

159. Rose lacks knowledge or information sufficient to form a belief as to the identity or basis of knowledge of "FriendlyKoala1917" and therefore denies the allegations. Rose specifically denies authoring, directing, or causing the quoted comment or putting any cyberbullying or harassment campaign into motion.

160. Denied. Rose denies acting in coordination or otherwise with Ancel or others to cause damage and denies that any act or statement by Rose caused Plaintiffs hundreds of thousands of dollars in lost revenue, profits, or opportunities.

161. Rose admits that she sent Ancel a message containing the quoted words. Rose denies that the communication acknowledged any coordinated or purposeful smear campaign, denies causing Lakefront to change markets or services, and denies the remaining allegations and characterizations.

162. Rose lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' alleged reputational harm, public-relations plans, or associated costs and therefore denies those allegations. Rose denies propagating disinformation, acting with any co-conspirator, or causing the alleged harm.

**COUNT I**

**(Against Ancel for Defamation)**

163. Rose repeats and realleges her responses to Paragraphs 1 through 162. To the extent Paragraph 163 incorporates allegations inconsistent with those responses, Rose denies them.

164. Paragraph 164 concerns alleged conduct and motives of Ancel and is not directed to Rose. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

165. Paragraph 165 concerns an alleged statement by Ancel and is not directed to Rose. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

166. Paragraph 166 concerns an alleged statement by Ancel and is not directed to Rose. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

167. Paragraph 167 concerns alleged statements by Ancel and is not directed to Rose. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

168. Paragraph 168 concerns statements, intent, and malice attributed to Ancel and is not directed to Rose. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

169. Rose lacks knowledge or information sufficient to form a belief as to whether Karum suffered any injury proximately caused by an actionable statement made by Ancel and therefore denies the allegations.

170. Paragraph 170 concerns alleged conduct by Ancel and is not directed to Rose. Rose lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

No response is required to the prayer following Count I because it seeks relief solely against Ancel.

**COUNT II**

**(Against Rose for Defamation)**

171. Rose repeats and realleges her responses to Paragraphs 1 through 170. To the extent Paragraph 171 incorporates allegations inconsistent with those responses, Rose denies them.

172. Denied. Rose denies making any false statement of fact about Karum with knowledge of its falsity or reckless disregard for its truth.

173. Rose admits that she appropriately communicated privately with Emma Jo Boyden concerning litigation involving Karum and authored the words quoted in Paragraph 143

substantially as alleged. Rose denies that any statement was materially false, defamatory, or defamatory per se.

174. Denied. Rose denies making a false or defamatory statement, acting with actual malice, or intending to cause Karum reputational or economic harm.

175. Denied. Rose denies that Karum suffered any compensable injury proximately caused by an actionable statement made by Rose.

176. Denied. Rose denies acting willfully, maliciously, or in any manner supporting punitive damages.

Rose denies that Karum is entitled to any relief requested in the prayer following Count II.

**COUNT III**

**(Against Ancel and Rose for False Light Invasion of Privacy)**

177. Rose repeats and realleges her responses to Paragraphs 1 through 176. To the extent Paragraph 177 incorporates allegations inconsistent with those responses, Rose denies them.

178. Rose admits that she made certain social-media comments and private communications concerning Karum and Lakefront. Rose denies publishing defamatory or false factual claims about Karum across multiple social-media channels, giving actionable publicity to any false matter, or placing Karum before the public in a false light.

179. Denied.

180. Denied. Rose denies publishing any false statement with knowledge of its falsity, reckless disregard for its truth, or an intent to harm Karum’s reputation.

181. Denied. Rose denies acting willfully or engaging in conduct supporting punitive damages.

Rose denies that Karum is entitled to any relief requested in the prayer following Count III.

**COUNT IV**

**(Against Ancel International and Ancel for Breach of the NDA)**

182. Rose repeats and realleges her responses to Paragraphs 1 through 181. Count IV is not asserted against Rose.

183–190. These paragraphs concern Ancel, Ancel International, and agreements to which Rose was not a party. Rose lacks knowledge or information sufficient to form a belief as to the truth of their factual allegations and therefore denies them. Rose denies their legal conclusions to the extent a response is required.

No response is required to the prayer following Count IV because it seeks relief solely against Ancel and Ancel International.

**COUNT V**

**(Against Ancel and Rock City for Rescission of the Producer Agreement)**

191. Rose repeats and realleges her responses to Paragraphs 1 through 190. Count V is not asserted against Rose.

192–195. These paragraphs concern Ancel, Rock City, The Curse, and an agreement to which Rose was not a party. Rose lacks knowledge or information sufficient to form a belief as to the truth of their factual allegations and therefore denies them. Rose denies their legal conclusions to the extent a response is required.

No response is required to the prayer following Count V because it seeks relief solely against Ancel and Rock City.

**COUNT VI**

**(Against Rock City and Ancel for Breach of the Producer Agreement)**

196. Rose repeats and realleges her responses to Paragraphs 1 through 195. Count VI is not asserted against Rose.

197–203. These paragraphs concern Ancel, Rock City, The Curse, and an agreement to which Rose was not a party. Rose lacks knowledge or information sufficient to form a belief as to the truth of their factual allegations and therefore denies them. Rose denies their legal conclusions to the extent a response is required.

No response is required to the prayer following Count VI because it seeks relief solely against Ancel and Rock City.

**COUNT VII**

**(Lakefront Against Ancel and Rose for Tortious Interference)**

204. Rose repeats and realleges her responses to Paragraphs 1 through 203. To the extent Paragraph 204 incorporates allegations inconsistent with those responses, Rose denies them.

205. Rose lacks knowledge or information sufficient to form a belief as to the existence, validity, terms, or enforceability of the unidentified contracts and prospective relationships alleged and therefore denies the allegations.

206. Rose lacks knowledge or information sufficient to form a belief as to the existence, terms, or status of Lakefront's alleged contracts and expectancies with clients, Google, IFA, DePaul University, Columbia College Chicago, or unidentified crew members and therefore denies the allegations.

207. Denied. Rose denies participating in a smear campaign, wrongfully interfering with any contract or expectancy, inducing any termination, or preventing any prospective relationship from forming.

208. Denied. Rose denies that Lakefront suffered any compensable injury proximately caused by wrongful conduct attributable to her.

209. Denied. Rose denies acting willfully, maliciously, or in any manner supporting punitive damages.

Rose denies that Lakefront is entitled to any relief requested in the prayer following Count VII.

**COUNT VIII**

**(Karum Against Ancel and Rose for Tortious Interference)**

210. Rose repeats and realleges her responses to Paragraphs 1 through 209. To the extent Paragraph 210 incorporates allegations inconsistent with those responses, Rose denies them.

211. Rose lacks knowledge or information sufficient to form a belief as to the nature, terms, status, or continued existence of Karum's alleged relationships or concrete business expectancies with unidentified casting directors, agents, or agencies and therefore denies the allegations.

212. Denied. Rose denies participating in a smear campaign, wrongfully interfering with any relationship or expectancy, causing any relationship to terminate, or preventing any acting opportunity from materializing.

213. Denied. Rose denies that Karum suffered any compensable injury proximately caused by wrongful conduct attributable to Rose.

214. Denied. Rose denies acting willfully, maliciously, or in any manner supporting punitive damages.

Rose denies that Karum is entitled to any relief requested in the prayer following Count VIII.

**COUNT IX**

**(Against Ancel and Rose for Intentional Infliction of Emotional Distress)**

215. Rose repeats and realleges her responses to Paragraphs 1 through 214. To the extent Paragraph 215 incorporates allegations inconsistent with those responses, Rose denies them.

216. Denied. Rose denies engaging in conduct toward Karum that was extreme, outrageous, or beyond all bounds of decency.

217. Denied. Rose denies acting with actual malice, intending to cause Karum severe emotional distress, or knowing that there was a high probability that her conduct would cause such distress.

218. Paragraph 218 alleges that “Ancel and Karum” knew Karum was on the autism spectrum and does not allege conduct by Rose. No response from Rose is required. To the extent Plaintiffs intended to refer to Rose, Rose denies exploiting Karum’s neurodiversity, sensitivities, or any alleged vulnerability.

Rose denies that Karum is entitled to any relief requested in the prayer following Count IX.

**COUNT X**

**(Lakefront Against Ancel and Rose for Civil Conspiracy)**

219. Rose repeats and realleges her responses to Paragraphs 1 through 218. To the extent Paragraph 219 incorporates allegations inconsistent with those responses, Rose denies them.

220. Denied. Rose denies agreeing or conspiring with Ancel or any other person to engage in a campaign of harassment, tortious interference, or any other unlawful conduct against Lakefront.

221. Denied. Rose denies committing any tortious act in furtherance of an alleged conspiracy.

222. Denied. Rose denies that Lakefront suffered any economic or reputational injury proximately caused by a conspiracy or wrongful conduct attributable to Rose.

223. Denied. Rose denies acting willfully, maliciously, or in any manner supporting punitive damages.

Rose denies that Lakefront is entitled to any relief requested in the prayer following Count X.

**COUNT XI**

**(Karum Against Ancel and Rose for Civil Conspiracy)**

224. Rose repeats and realleges her responses to Paragraphs 1 through 223. To the extent Paragraph 224 incorporates allegations inconsistent with those responses, Rose denies them.

225. Denied. Rose denies agreeing or conspiring with Ancel or any other person to engage in a tortious campaign against Karum or to cause Karum financial injury or emotional distress.

226. Denied. Rose denies committing any tortious act in furtherance of an alleged conspiracy.

227. Denied. Rose denies that Karum suffered any economic or reputational injury proximately caused by a conspiracy or wrongful conduct attributable to Rose.

228. Denied. Rose denies acting willfully, maliciously, or in any manner supporting punitive damages.

Rose denies that Karum is entitled to any relief requested in the prayer following Count XI.

## AFFIRMATIVE AND OTHER DEFENSES

Rose asserts the following defenses without assuming any burden that otherwise rests upon Plaintiffs and without admitting that Plaintiffs have stated or can prove any claim. Certain defenses negate elements of Plaintiffs' claims and are included to provide fair notice.

### I. TRUTH AND SUBSTANTIAL TRUTH

1. To the extent any challenged factual statement was made by and is properly attributable to Rose, the statement was true or substantially true as to its overall gist and sting.
2. Plaintiffs cannot impose liability based upon minor inaccuracies that did not materially alter the substance of a communication or cause additional injury.

### II. PROTECTED OPINION, RHETORICAL HYPERBOLE, AND INNOCENT CONSTRUCTION

3. The challenged communications, when considered in their complete context, included Rose's subjective impressions, personal experiences, opinions, warnings, predictions, advocacy, and rhetorical hyperbole rather than objectively verifiable assertions of fact.

4. Alleged language such as “RUN,” “dangerous,” “unsafe,” “has to be stopped,” “I’m thrilled,” and “hope she goes down hard” is evaluative, emotional, and rhetorical language and epithets that cannot reasonably be understood as asserting independently verifiable facts.
5. Alternatively, any allegedly defamatory statement is reasonably susceptible to a nondefamatory or innocent construction and therefore cannot support a claim of defamation per se.

## III. QUALIFIED PRIVILEGE AND LAWFUL JUSTIFICATION

6. To the extent Rose communicated with agents, casting professionals, actors, industry colleagues, or others possessing a corresponding professional, business, or safety interest, those communications were made in good faith, for a proper purpose, and within the scope of a qualified common-interest privilege.
7. Rose did not abuse any privilege through knowing falsity, reckless disregard, excessive publication, or publication to persons lacking a legitimate interest in the subject matter.
8. Rose’s good-faith communications concerning her own experiences and perceived professional or safety concerns were lawful and justified and were not independently wrongful acts undertaken solely to injure Plaintiffs. Accordingly, those communications cannot support Plaintiffs’ tortious-interference claims.

## IV. STATUTE OF LIMITATIONS AND SINGLE-PUBLICATION RULE

9. To the extent Counts II or III are based upon any publication first made more than one year before February 8, 2024, those claims are barred by 735 ILCS 5/13-201.

10. To the extent the Amended Complaint asserts liability based upon a newly alleged and independently actionable publication that does not relate back to a timely claim, that claim is time-barred.
11. Plaintiffs may not create additional causes of action or restart the limitations period based merely upon the continued availability, circulation, or later viewing of an earlier communication.

## V. LACK OF ATTRIBUTION, INDUCEMENT, AND PROXIMATE CAUSATION

12. Rose did not author, control, direct, authorize, or ratify the anonymous or spoofed email accounts, anonymous social-media accounts, alleged "FriendlyKoala1917" account, or unidentified communications described in the Amended Complaint.
13. Ancel, Gecewicz, talent agents, agencies, universities, industry organizations, social-media users, and other third parties acted independently and were not Rose's agents, employees, representatives, or instruments. Their statements, decisions, and conduct cannot be attributed to Rose merely because they communicated with her, shared concerns, or expressed similar opinions.
14. Plaintiffs cannot establish that Rose knowingly and unjustifiably induced an identified third party to breach a valid contract or terminate a concrete business expectancy. Decisions by agents, agencies, clients, universities, organizations, or other third parties were made for their own reasons and were not proximately caused by wrongful conduct attributable to Rose.
15. Plaintiffs improperly aggregate conduct allegedly committed by numerous persons without identifying which particular statement or act by Rose caused any particular cancellation, termination, lost role, lost contract, reputational injury, or other damage.

## VI. ABSENCE OF A CONSPIRACY OR PREDICATE TORT

16. Rose did not enter into an agreement with Ancel, Gecewicz, or any other person to accomplish an unlawful purpose or use unlawful means to accomplish a lawful purpose.
17. Communications, shared concerns, forwarded information, common opinions, temporal proximity, or parallel conduct do not establish a knowing and voluntary agreement to commit a tort.
18. Plaintiffs cannot establish an actionable predicate tort committed by Rose in furtherance of an alleged agreement. In the absence of an agreement, an attributable tortious act, and Rose-specific causation, Counts X and XI fail.

## VII. FAILURE OF THE INTENTIONAL-INFLICTION CLAIM

19. No conduct properly attributable to Rose was so extreme and outrageous as to exceed all bounds of decency or become intolerable in a civilized community.
20. Rose neither intended to cause Karum severe emotional distress nor knew that there was a high probability that her conduct would cause such distress.
21. Karum did not suffer severe emotional distress proximately caused by Rose. General allegations of anger, embarrassment, anxiety, apprehension, or interpersonal discomfort are insufficient to establish the severe distress required to support Count IX.

## VIII. COMPLETION, EXPIRATION, AND DISCHARGE OF THE DEMO AGREEMENT

22. The Demo Agreement was a limited agreement for the creation, filming, and editing of a demo scene. Lakefront completed those services in 2021, Rose accepted the completed work, and the parties' performance obligations were satisfied and discharged.

23. The language relied upon by Lakefront appears under the heading "LOCATION AGREEMENT: On-Set Behavior" and governs conduct associated with the location, set, and filming. The Demo Agreement contains no survival provision and no language creating a perpetual post-performance restriction upon Rose's future speech.

24. Plaintiff improperly attempts to convert an on-set behavior provision in a completed services agreement into an indefinite nondisparagement covenant extending years beyond the project's completion.

25. Rose did not breach any surviving contractual obligation, and Lakefront cannot establish actual, foreseeable, and reasonably certain contract damages proximately caused by an alleged breach.

## IX. LIMITATION OF DAMAGES AND PROHIBITION AGAINST DOUBLE RECOVERY

26. Plaintiffs' alleged special, economic, emotional-distress, and contract damages are speculative, unsupported, and not traceable with reasonable certainty to any particular act or statement by Rose.

27. Plaintiffs may not aggregate the conduct of multiple defendants and independent third parties and impose all resulting damages upon Rose without proving Rose-specific causation.

28. Plaintiffs seek recovery for substantially the same alleged reputational, emotional, and business injuries under multiple theories, including defamation, false light, tortious

interference, intentional infliction of emotional distress, civil conspiracy, and breach of contract. Plaintiffs are prohibited from obtaining multiple recoveries for a single alleged injury.

29. Rose did not act with actual malice or engage in willful, wanton, fraudulent, or aggravated misconduct. Plaintiffs therefore cannot establish entitlement to punitive damages. Any punitive award would remain subject to all applicable statutory and constitutional limitations.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Candice Rose respectfully requests that:

A. Judgment be entered in her favor and against Plaintiffs on all claims asserted against her;

B. Rose be awarded her recoverable costs; and

C. The Court grant such further relief as it deems just and appropriate.

* * *

Respectfully Submitted,

CANDICE ROSE

By: *<u>/s/ Sean Patrick</u>*
Sean Patrick, esq.
An Attorney for Defendant

RIFKIND PATRICK LLC
3025 N Lincoln Ave
Chicago, Illinois 60657
(312) 725-4229
ARDC#: 6313699
legal@rifkindpatrick.com

*Attorneys for the Defendant*